

July 8, 2020

**By ECF**
Hon. Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Denson v. Donald J. Trump for President, Inc.*, No. 20 Civ. 4737 (S.D.N.Y.)

Dear Judge Gardephe:

Plaintiffs submit this letter in response to Defendant's (the "Campaign") July 7, 2020, letter requesting a pre-motion conference on a proposed motion to dismiss. ECF No. 15. That letter misstates both the facts underlying this lawsuit and the legal issue it presents. The proposed motion would be frivolous. It is simply another attempt to delay a judicial determination of the validity of the Campaign's Form NDA.

This case presents a straightforward legal issue: whether the Form NDA that the Campaign routinely required employees, contractors, and volunteers to sign during the 2016 presidential election is valid and enforceable. The Form NDA purports to prohibit signers—including lead plaintiff Jessica Denson—from criticizing President Trump and from disclosing any information he may unilaterally deem private, forever. *See* Compl. ¶¶ 1–6, 23–45, ECF No. 1-1. The Campaign has repeatedly sought to enforce its Form NDA against Ms. Denson and other former Campaign workers. *Id.* ¶¶ 46–69. Just last week, lawyers for Omarosa Manigault Newman revealed that the Campaign has "recently added nearly four hundred additional counts to [its] arbitration action [seeking to enforce the Form NDA against her] and is keeping tabs on everything she says and does." *See* Def.'s Resp. to Pl.'s Mot. to Compel at 8, *United States v. Newman*, No. 19-cv-1868 (D.D.C. July 1, 2020), ECF No. 19 at 8.

The Campaign contends that (1) there is no live controversy because Ms. Denson has not identified what she wants to say, and (2) Ms. Denson's challenge to the Form NDA is barred by collateral estoppel. Its arguments have no basis in law or fact. As a matter of law, the chilling impact of the overbroad Form NDA—and the Campaign's vigorous efforts to enforce it—are more than sufficient to create a live controversy. Ms. Denson and other Campaign workers live under the daily threat of further enforcement, and will continue to do so without the Court's intervention. As a matter of fact, Ms. Denson is not collaterally estopped from challenging the Form NDA because the arbitration award the Campaign invokes was vacated in its entirety by an appellate court. Nor has Ms. Denson sat on her rights; instead, her persistent efforts to have the illegal NDA invalidated have thus far been thwarted by the Campaign at every turn.

Plaintiffs respectfully suggest that the Court should encourage the Campaign to forego its frivolous motion or, alternatively, permit Plaintiffs simultaneously to oppose Defendant's motion and cross-move for summary judgment on the pure legal issue at the heart of this case.



**A. Procedural Posture**

The Campaign concedes that Ms. Denson has been seeking to have the Form NDA ruled unenforceable since 2018, ECF No. 15 at 1, but nonetheless attempts to portray her as sitting on her rights and undeserving of prompt judicial review of the Form NDA. *See id*. at 3. A perfunctory recitation of the procedural history of litigation between these parties belies that characterization.

After the 2016 presidential election, Ms. Denson filed a *pro se* lawsuit against the Campaign in New York Supreme Court, asserting claims of sex-discrimination and slander. *See* Compl. ¶ 52. In response, the Campaign initiated an arbitration against Ms. Denson, arguing she violated the Form NDA simply by filing the lawsuit, *id*. ¶ 53, and demanding that she submit her employment claims to arbitration. Ms. Denson refrained from participating in that arbitration. *Id*. ¶ 55. The Campaign subsequently moved the state court to compel arbitration of Ms. Denson's state-court claims, but the state court denied the Campaign's motion, holding that her claims fell outside the scope of the Form NDA. *Denson v. Trump*, No. 101616/2017, 2018 WL 4352827, at *3 (N.Y. Sup. Ct. Sep. 07, 2018).

On March 26, 2018, while awaiting a ruling from the state court on the motion to compel arbitration, Ms. Denson filed a *pro se* lawsuit in this Court seeking a declaration that the Campaign's Form NDA is void and unenforceable. Compl. ¶ 58. On August 30, 2018, this Court granted the Campaign's motion to compel arbitration, holding that the Form NDA gave the Campaign the right to elect arbitration of the Form NDA's validity. *Denson v. Trump for President, Inc.*, No. 18-CV-2690 (JMF), 2018 WL 4568430, at *1 (S.D.N.Y. Aug. 30, 2018).

On December 12, 2018, the Campaign obtained an arbitration award against Ms. Denson. Compl. ¶ 62. Ms. Denson, who, again, was *pro se* at the time, did not actively participate in the arbitration based on: (1) the fact that the arbitration had been initiated to arbitrate claims the state court found non-arbitrable; and (2) her belief that the Campaign's claim in the arbitration that she breached the Form NDA by filing a lawsuit was improper. Nevertheless, the arbitrator awarded the Campaign $49,507.64 based on his conclusion that Ms. Denson violated the Form NDA by filing the federal court action and by making certain statements on Twitter and on a GoFundMe page. *Id*. ¶¶ 62–63 & Exs. C–D. The Campaign moved to have that award confirmed by both this Court and the state court. *Id*. ¶ 64.

After issuance of the arbitration award, Ms. Denson retained counsel. Pursuant to this Court's order to initiate an arbitration, her counsel promptly submitted a class-action arbitration demand to Defendant and the American Arbitration Association, on February 20, 2019. *Id*. ¶ 70. In response, the Campaign unsuccessfully sought to have Ms. Denson's arbitration submitted to the same arbitrator assigned to its initial arbitration of the state court claims. When its effort to consolidate was rejected, the Campaign reversed course and invoked its unilateral right to reject the arbitration demand and insist on litigation. On May 19, 2019, the Campaign directed Plaintiff to "file her purported claims in court." *Id*. ¶ 78; *see id*. ¶¶ 71–79.

On July 8, 2019, the state court confirmed the Campaign's arbitration award, and on July 23, 2019, this Court held that the state court's affirmance mooted the Campaign's motion to have



the award confirmed and precluded any argument about the award's validity. *Denson v. Donald J. Trump for President, Inc.,* No. 18-CV-2690 (JMF), 2019 WL 3302608, at *2 (S.D.N.Y. July 23, 2019). Ms. Denson immediately appealed the state court's decision, and on February 6, 2020, the Appellate Division, First Department unanimously reversed and vacated the award in its entirety. *Denson v. Donald J. Trump For President, Inc.*, 180 A.D.3d 446 (1st Dep't 2020). It declared void as against public policy the portion of the arbitration award premised on Ms. Denson's statements in court filings, explaining that "the arbitrator improperly punished plaintiff for availing herself of a judicial forum." *Id.* at 454. The court further held that the award could not be supported by statements Ms. Denson made on Twitter and GoFundMe that did not relate to the state court action. *Id.*

Ms. Denson then proceeded to initiate in court this action to determine the Form NDA's validity, as the Campaign directed her to do. This case was filed just as soon as the state court permitted new filings during the COVID crisis. She has never delayed.

### B. Plaintiff Has Standing To Pursue this Challenge, And Her Claims Are Ripe

Having removed this case from state court less than three weeks ago, the Campaign now claims that this court—which it chose—lacks subject-matter jurisdiction because Ms. Denson "fails to identify" the specific "words or speech" the Form NDA prohibits her from saying. ECF No. 15 at 3. According to the Campaign, this means that there is no live "case or controversy" to adjudicate and Ms. Denson therefore lacks standing for herself and the putative class. *Id*.

The Campaign fundamentally misrepresents the nature of this case and standing doctrine. Ms. Denson does not seek a declaration that any specific statement is not barred by the Form NDA. Rather, she seeks a declaration that the Form NDA itself is void and unenforceable under the First Amendment, the New York Constitution, and New York contract law. *See* Compl. ¶¶ 80–129, 139–61. No one disputes that the Form NDA currently remains a live, ostensibly binding contract, and its validity is self-evidently ripe for adjudication.[1]

The Campaign's argument proves just that. In asserting the right to enforce the Form NDA based on its own evaluation of specific statements Ms. Denson might make, the Campaign

---

[1] The Campaign relies upon entirely inapposite authority to support its position. For example, in *Hernandez v. Office of Commissioner of Baseball*, No. 18-CV-9035, 2019 WL 5593056, at * 2 (S.D.N.Y. Oct. 30, 2019), the plaintiff did not seek a declaration that a contractual provision was unenforceable on First Amendment grounds. Rather, he sought a declaration that his employer could not punish him for speaking out against the employer under the anti-retaliation provisions of Title VII. The facts of *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394 (S.D.N.Y. 2002) are even further afield. In that case, the plaintiff sought a pre-emptive declaration and injunction that any judgment arising from a foreign litigation would not be enforceable in the United States. It had nothing to do with a First Amendment challenge to the enforceability of a contractual provision. In short, neither case bears any resemblance to the facts of this case, where there is a contract that all parties agree is live and ostensibly enforceable, and which the Campaign has repeatedly enforced against Ms. Denson and other Campaign workers.



affirms that the threat of civil liability looms over Ms. Denson and the class any time they might speak about the President, his family, or the Campaign. This type of threat, and its concomitant chilling effect on protected speech, is more than sufficient to establish standing. *See, e.g.*, *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 393 (1988) (a plaintiff challenging a prohibition on speech need only "allege[] an actual and well-founded fear" of enforcement against them); *Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000) (risk of civil litigation based on speech-related activities sufficient to establish standing); *see generally Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–67 (2014) (a First Amendment challenge to a prohibition on speech is ripe when enforcement is "sufficiently imminent").[2]

Moreover, federal courts "have long accepted jurisdiction" in declaratory judgment actions where "the plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of a private party[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 130 (2007). Indeed, federal courts do so all the time in analogous circumstances. *See, e.g.*, *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 214 (S.D.N.Y. 2013) (adjudicating validity of non-compete, non-solicitation, and non-disclosure provisions in employment contract under DJA); *Iannucci v. The Segal Co.*, No. 06-cv-4720, 2006 U.S. Dist. LEXIS 43339 (S.D.N.Y. June 26, 2006) (adjudicating validity of non-compete clause in employee contract under DJA); *Fisher v. Glob. Values, Inc.*, No. 2:06-cv-178, 2006 U.S. Dist. LEXIS 85029 (D. Vt. Nov. 2, 2006) (adjudicating validity of nondisclosure agreement under DJA); *cf. Bradfield v. Heartland Payment Sys., LLC*, No. CV 17-4862(FLW), 2018 WL 5784998, at *5 (D.N.J. Nov. 5, 2018) (rejecting argument that plaintiff lacked standing to challenge enforceability of employment agreement prior to any alleged violation).

To establish standing to bring a declaratory judgment action requires only that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127. Where, as here, "'[t]he factual and legal dimensions of the dispute are well defined' and 'nothing about the dispute would render it unfit for judicial resolution,' jurisdiction is not defeated by a party's decision to refrain from taking some action and thus 'make[] what would otherwise be an imminent threat [of suit] at least remote, if not nonexistent.'" *AARP v. 200 Kelsey Assocs., LLC*, No. 06-cv-0081, 2009 U.S. Dist. LEXIS 969, at *18 (S.D.N.Y. Jan. 6, 2009) (quoting *MedImmune*, 549 U.S. at 128, 137). The existence of jurisdiction here is undeniable, as the Campaign has repeatedly enforced the Form NDA against those whose speech it does not like, including Ms. Denson. Compl. ¶¶ 46–69.

Finally, even if there were any merit to the Campaign's subject-matter jurisdiction argument, the proper remedy would not be dismissal, but rather remand back to state court. *Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991); *Zanotti v. Invention Submission Corp.*, No. 18-CV-5893 (NSR), 2020 WL 2857304, at *11 (S.D.N.Y. June 2, 2020); *see also*

---

[2] In an attempt to disprove the existence of any controversy, the Campaign includes an annex of Ms. Denson's tweets and disingenuously asserts that it has not challenged tweets by Ms. Denson opposing the President. ECF No. 15 at 1; *see* ECF No. 15-1. In fact, one of the examples they submit—Ms. Denson's July 18, 2018, tweet—was the basis for the Campaign's arbitration demand against her and the vacated award it obtained.



*Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) (observing that "the literal words of § 1447(c) . . . give . . . no discretion to dismiss rather than remand an action"). This reality underscores that the Campaign's true objective is only delay.

### C.  Plaintiffs' Claims Are Not Barred By Collateral Estoppel

The Campaign's now-vacated arbitration award against Ms. Denson plainly cannot collaterally estop her from pursuing this litigation. "Under the doctrine of *res judicata*, or claim preclusion, *a final judgment* on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (emphasis added). Simply put, where there is no final judgment, there is no collateral estoppel. "A judgment vacated or set aside has no preclusive effect." *Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir. 1992). An arbitration award that is vacated, like a vacated judgment, has no preclusive effect. *Sayre v. JPMorgan Chase & Co.*, 781 F. App'x 667, 668 (9th Cir. 2019); *see also Solow Bldg. Co., LLC v. Morgan Guar. Tr. Co. of New York*, 294 A.D.2d 224, 224–25 (1st Dep't 2002).

Nor did the First Department reach the merits of Ms. Denson's claims, as the Campaign's letter might be read to suggest. Rather, the First Department concluded that it could not address Ms. Denson's claims in the procedural posture before that court. It held only that the arbitration award could not be vacated as against public policy on the grounds that "non-disparagement agreements *per se* violate public policy," and to the extent Ms. Denson made "legal arguments concerning the scope of the [Form] NDA, any error by the arbitrator [wa]s, at most, a mistake of law that c[ould] not serve as a predicate basis for vacating these awards." *Denson v. Donald J. Trump For President, Inc.*, 180 A.D.3d 446, 452 (1st Dep't 2020). The First Department then vacated the arbitration award in its entirety on other public policy grounds, stripping it of any preclusive effect. *See id.* at 453–55.

\* \* \* \* \*

This Court should not countenance the Campaign's procedural gamesmanship. Given the nature of Plaintiffs' claims and the approaching election, the Campaign's motion should be denied, or, at a minimum, simultaneous briefing on a cross-motion for summary judgment authorized.

Respectfully submitted,

By:  /s/ *John Langford*
John Langford
UNITED TO PROTECT DEMOCRACY, INC.
555 W. 5th St.
Los Angeles, CA 90013
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: john.langford@protectdemocracy.org

Cc (by ECF): Counsel of Record