UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JESSICA DENSON, Individually and on Behalf of All Others Similarly Situated,

*Plaintiffs*,

v.

DONALD J. TRUMP FOR PRESIDENT, INC.,

*Defendant*.

No. 20 Civ. 4737 (PGG)

---

**PLAINTIFFS' RULE 56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56.1 of this Court's Local Rules, Plaintiffs submit the following statement of material facts as to which there is no genuine dispute in support of their motion for summary judgment:

**Parties**

1. Plaintiff Jessica Denson is a *summa cum laude* graduate of The George Washington University, an award-winning journalist, and a member of the Screen Actors Guild – American Federation of Television and Radio Artists with film and TV credits. Declaration of Jessica Denson ("Denson Decl.") ¶ 2.

2. Defendant Donald J. Trump for President, Inc. (the "Campaign") is a Virginia not-for-profit corporation with headquarters in New York City, New York. *See* Declaration of David Bowles, Esq. ("Bowles Decl.") ¶¶ 3–4 & Exs. A, B.

3. Defendant is the primary campaign organization that worked successfully for the election of Donald J. Trump as President of the United States in 2016. *See* Bowles Decl. ¶ 4 & Ex. B.

4. Defendant is currently campaigning for the reelection of President Trump. *See* Bowles Decl. ¶ 5 & Ex. C.

## Ms. Denson's Work With the Campaign

5. Defendant Donald J. Trump for President, Inc. (the "Campaign"), was registered with the Federal Election Commission as then-candidate Donald J. Trump's Primary Campaign Committee on June 29, 2015. Bowles Decl. ¶ 4 & Ex. B.

6. On July 16, 2016, the Republican National Convention voted to make Donald J. Trump its party's nominee for the office of President of the United States. Bowles Decl. ¶ 6 & Ex. D.

7. Shortly thereafter, lead plaintiff Jessica Denson applied to work for the Trump Campaign. Denson Decl. ¶ 4.

8. At the time, she was a registered Republican, and she supported Mitt Romney for President in 2012. Denson Decl. ¶ 3.

9. On August 18, 2016, the Trump Campaign hired Ms. Denson as a national phone bank administrator. Denson Decl. ¶ 5.

10. Prior to beginning work, the Campaign required Ms. Denson to sign a pre-drafted form contract containing nondisclosure and non-disparagement clauses (the "Form NDA"). Denson Decl. ¶ 6 & Ex. A.

11. Ms. Denson was not alone—at least two other Campaign employees, and likely dozens (if not hundreds) more—were required to sign the Form NDA. Bowles Decl. ¶¶ 7–9 & Exs. E–G.

12. Ms. Denson's employment with the Campaign ended on or about November 10, 2016. Denson Decl. ¶ 7.

### The Campaign's Use and Enforcement of the Form NDA

13. President Trump's former attorney, Michael Cohen, testified to Congress that the intent of the Form NDA is to "prevent people from coming forward with claims of wrongdoing," and to "basically try to keep people silent." Bowles Decl. ¶ 10 & Ex. H.

14. On August 14, 2018, former campaign staffer and White House aide Omarosa Manigault Newman published *Unhinged: An Insider's Account of the Trump White House*. Bowles Decl. ¶ 11 & Ex. I.

15. The same day the book was published, the Campaign initiated an arbitration proceeding against Ms. Newman to enforce the Form NDA. Bowles Decl. ¶ 12 & Ex. J.

16. In its arbitration demand, the Campaign claimed that Ms. Newman violated the Form NDA's nondisclosure and non-disparagement clauses by making the following statements in an episode of the television program *Celebrity Big Brother*, aired by CBS on February 8, 2018:

   a. "I was haunted by tweets every single day, like what is he going to tweet next?"

   b. "I tried to be that person [to stop the tweets] and then all of the people around him [President Trump] attacked me. It was like 'Keep her away' 'Don't give her access.' 'Don't let her talk to him.'"

   c. "It's not my circus. Not my monkeys."

    d. "I'd like to say it's not my problem but I can't say that because, like, it's bad."

    e. [Question by Ross Mathews: "Should we be worried?"] Ms. Manigault-Newman nods.

    f. [Question by Ross Mathews: "I need you to say 'No, it's going to be OK.'"] Ms. Manigault-Newman responds: "No, it's not going to be OK. It's not. It's so bad."

    g. [Question by Ross Mathews[sic]: "Would you vote for him [Mr. Trump] again [for President?"] Ms. Manigault-Newman responds: "God no, never. In a million years, never."

    h. "It's just been so incredibly hard to shoulder what I shouldered because I was so loyal to a person and I didn't realize that by being loyal to him it was going to make me lose a hundred other friends."

    i. "When you're in the middle of the hurricane it's hard to see the destruction on the outer bands."

Bowles Decl. Ex. L ¶ 14.

    17. On August 31, 2019, President Trump tweeted: "...Yes, I am currently suing various people for violating their confidentiality agreements. Disgusting and foul mouthed Omarosa is one. I gave her every break, despite the fact that she was despised by everyone, and she went for some cheap money from a book. Numerous others also!" Bowles Decl. ¶ 13 & Ex. K.

    18. On July 1, 2020, in a related civil proceeding against Ms. Manigault Newman, her lawyers asserted that the Trump Campaign "recently added nearly four hundred additional counts to [its] arbitration action [seeking to enforce the Form NDA against her] and is keeping tabs on everything she says and does." Bowles Decl. ¶ 15 & Ex. M.

19. On January 29, 2019, a former Campaign staffer named Cliff Sims published *Team of Vipers*, a book about his experiences in the Trump White House. Bowles Decl. ¶ 16 & Ex. N.

20. On January 29, 2019, the Campaign's then-Chief Operating Officer Michael Glassner publicly stated that the Campaign intended to sue Mr. Sims for violating his NDA. *Id.*

21. Also on January 29, 2019, President Trump tweeted: "A low level staffer that I hardly knew named Cliff Sims wrote yet another boring book based on made up stories and fiction. He pretended to be an insider when in fact he was nothing more than a gofer. He signed a non-disclosure agreement. He is a mess!" Bowles Decl. ¶ 17 & Ex. O.

22. In September of 2019, the Campaign accused former staffer Alva Johnson of breaching her NDA based on Ms. Johnson's filing a lawsuit alleging that President Trump forcibly kissed her. Bowles Decl. ¶ 18 & Ex. P.

23. A lawyer for the Campaign publicly stated that it and President Trump were "weighing their legal options against Ms. Johnson at this time, and have demanded that she reimburse them for the attorneys' fees and costs they incurred in her failed lawsuit." *Id.*

### Prior Litigation with Ms. Denson

24. On November 9, 2017, Ms. Denson filed a *pro se* lawsuit against the Trump Campaign in New York State Supreme Court, asserting claims of sex discrimination, harassment, and slander. Denson Decl. ¶ 8 & Ex. B.

25. On December 20, 2017, the Campaign commenced an arbitration proceeding against Ms. Denson, alleging that she had violated the terms of her NDA by publicly filing the allegations in her lawsuit. Denson Decl. ¶ 9 & Ex. C.

26. The Campaign's arbitration demand stated that Ms. Denson:

>breached confidentiality and non-disparagement obligations contained in a written agreement she executed during her employment with claimant Donald J. Trump for President, Inc. She breached her obligations by publishing certain confidential information and disparaging statements in connection with a lawsuit she filed against claimant in New York Supreme Court. Claimant is seeking compensatory damages, punitive damages, and all legal fees and costs incurred in connection with this arbitration.

Denson Decl. Ex. C at 2.

27. The Campaign sought damages in the amount of $1,500,000. *Id.* at 1.

28. In early 2018, Ms. Denson established a GoFundMe account in hopes of raising funds to secure legal representation in her cases against the Campaign. Denson Decl. ¶ 10.

29. On March 19, 2018, the Campaign moved to compel arbitration of Ms. Denson's pending state-court claims. Denson Decl. ¶ 11 & Ex. D ¶ 5.

30. On August 7, 2018, the New York court denied the Campaign's motion to compel arbitration. *See* Denson Decl. ¶ 17, Ex. H; *Denson v. Trump*, No. 101616/2017, 2018 WL 4352827, at *3 (Sup. Ct. N.Y. Cty. Sep. 7, 2018).

31. Ms. Denson's claims arising out of her employment are still pending in New York Supreme Court. Denson Decl. ¶ 12.

32. On March 26, 2018, Ms. Denson filed a new *pro se* lawsuit in the United States District Court for the Southern District of New York, seeking a declaration that the Form NDA is void and unenforceable. Denson Decl. ¶ 13 & Ex. E; Compl., *Denson v. Donald J. Trump for President, Inc.*, No. 18-CV-2690 (JMF) (S.D.N.Y. Mar. 26, 2018), ECF No. 2.

33. On June 4, 2018, the Campaign moved to compel arbitration of Ms. Denson's federal lawsuit. Denson Decl. ¶ 14 & Ex. F; Mot. to Compel, *Denson v. Donald J. Trump for President, Inc.*, No. 18-CV-2690 (JMF) (S.D.N.Y. June 4, 2018), ECF No. 8.

34. Meanwhile, the Campaign's arbitration against Ms. Denson continued. Still proceeding *pro se*, Ms. Denson did not meaningfully participate in the arbitration. Denson Decl. ¶¶ 15–16.

35. On July 23, 2018, the Campaign submitted an application for an award in its arbitration. Denson Decl. ¶ 15 & Ex. G.

36. The Campaign alleged that she violated the nondisclosure and non-disparagement clauses by, among other things, filing the state and federal lawsuits. Denson Decl. Ex. G at 2–3.

37. The Campaign alleged she further violated the nondisclosure and non-disparagement clauses by posting statements critical of the President and his Administration on her Twitter account, including, for example, "Camilo Sandoval rewarded for his slander/sabotage of @DavidShulkin w/TEMP post over our #Vets data/health records.[] 1 mo ago: Congress demands Sandoval's removal. Still there. WHY @POTUS @jaredkushner @AviBerkow?" *Id.* at 10.

38. The Campaign's motion to compel arbitration in the federal action was granted on August 30, 2018. Denson Decl. ¶ 18, Ex. I; *Denson v. Trump for President, Inc.*, No. 18-CV-2690 (JMF), 2018 WL 4568430 (S.D.N.Y. Aug. 30, 2018).

39. On October 19, 2018, the arbitrator issued a partial award of $24,808.20 in favor of the Campaign, based on a finding that Ms. Denson "breached the [Form NDA] by disclosing confidential information in the [First] Federal Action, and by making disparaging statements about Claimant and the [Form NDA] on the Internet on her GoFundMe page and on her Twitter account." Denson Decl. ¶ 19 & Ex. J.

40. Shortly thereafter, Ms. Denson retained counsel. Denson Decl. ¶ 20; Bowles Decl. ¶ 2.

41. On December 11, 2018, the arbitrator issued a final award in favor of the Campaign, increasing the original award to include an additional $4,291.85 in attorneys' fees for work on Ms. Denson's federal lawsuit, $20,286.27 in attorneys fees' for the uncontested arbitration proceeding, and $121.32 in costs, for a total award of $49,507.64 against Ms. Denson. Bowles Decl. ¶ 19 & Ex. Q.

42. On December 21, 2018, and June 12, 2019, the Campaign moved to have the award confirmed in both the Southern District of New York and in New York State Supreme Court. Bowles Decl. ¶¶ 20–21 & Exs. R–S.

43. On July 8, 2019, the state court confirmed the Campaign's arbitration award. Bowles Decl. ¶ 22 & Ex. T.

44. Two weeks later, the federal court held that the state court's confirmation of the arbitration award mooted the Campaign's motion to affirm the award and precluded any further consideration of the issues. Bowles Decl. ¶ 23 & Ex. U; *see Denson v. Donald J. Trump for President, Inc.*, No. 18-CV-2690 (JMF), 2019 WL 3302608 (S.D.N.Y. July 23, 2019).

45. On February 6, 2020, the Appellate Division, First Department unanimously reversed the state court decision confirming the arbitration award, and vacated the award in its entirety on the grounds that the arbitrator's decision to penalize Ms. Denson for availing herself of a judicial forum was improper and against public policy. Bowles Decl. ¶ 28 & Ex. Z; *see also Denson v. Donald J. Trump For President, Inc.*, 116 N.Y.S.3d 267 (App. Div. 2020).

46. On February 20, 2019, Ms. Denson submitted a class-action arbitration demand to the Campaign and simultaneously filed it with the American Arbitration Association. Bowles Decl. ¶ 24 & Ex. V.

47. On March 18, 2019, the Campaign sent a letter requesting that the class-action arbitration demand be heard by the same arbitrator assigned to its initial arbitration against her. Bowles Decl. ¶ 25 & Ex. W.

48. On May 29, 2019, the Campaign emailed Ms. Denson's counsel to inform them that it did not consent to arbitration of her class claims pursuant to its "sole discretion" under Paragraph 8(b) of the Form NDA. Bowles Decl. ¶ 26, Ex. X.

49. On June 3, 2019, the Campaign stated in a federal court filing in the Southern District of New York that if Ms. Denson "wants to proceed with a class action lawsuit, she must file her purported claims in court, rather than with the AAA." Bowles Decl. ¶ 27, Ex. Y.

50. On August 2, 2019, the Campaign attempted to execute on the award by serving subpoenas and restraining notices on Ms. Denson's counsels' escrow accounts. Bowles Decl. ¶ 30 & Exs. BB–EE.

**Trump Companies and Family Member Companies**

51. President Trump is affiliated with over 500 companies. *See* Bowles Decl. ¶ 29 & Ex. AA.