UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JESSICA DENSON, individually and on behalf of
all others similarly situated,

             Case No.:  20-cv-4737 (PGG)

      Plaintiff,

   -against-

DONALD J. TRUMP FOR PRESIDENT, INC.

      Defendant.
----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

*On the brief:*
*Patrick McPartland, Esq.*
*Jared E. Blumetti, Esq.*

**LAROCCA HORNIK ROSEN**
**& GREENBERG LLP**
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4837/4831
E: PMCPARTLAND@LHRGB.COM
 JBLUMETTI@LHRGB.COM
*Attorneys for defendant*

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES**…………………………………………… ii

**PRELIMINARY STATEMENT**……………………………………… 1

**THE RELEVANT BACKGROUND**………………………………… 2

      A.    Plaintiff's Lawsuit for the Exact Same Claims in 2018……………… 2

      B.    Plaintiff's Motion to Vacate the Awards……………………………… 3

      C.    Plaintiff's Putative Class Action Before the American Arbitration Association……………………………………………… 4

      D.    The Appellate Division, First Department Conclusively Resolved the Prior Dispute…………………………………………… 4

      E.    There is No Current Dispute Between the Parties Regarding the Agreement…………………………………………………………… 6

**ARGUMENT**………………………………………………………… 7

**I.**    **PLAINTIFF HAS NO STANDING TO BRING THIS LAWSUIT**……… 7

      A.    There is No Case or Controversy……………………………………… 8

      B.    Plaintiff is Estopped from Relitigating the Enforceability of the Agreement……………………………………………………… 12

**CONCLUSION**………………………………………………………… 14

**<u>TABLE OF AUTHORITIES</u>**

Page(s)

*Applegate v. Annucci,*
    2017 WL 3049555 (S.D.N.Y. July 18, 2017)…………………………………… 9

*Bordell v. General Elec. Co.,*
    922 F.2d 1057 (2d Cir. 1991)……………………………………………………… 11

*Brown v. Showtime Networks, Inc.,*
    394 F.Supp.3d 418 (S.D.N.Y. 2019)……………………………………………… n.6

*Caruso v. Zugibe,*
    2015 WL 5459862 (S.D.N.Y. June 22, 2015)…………………………………… 7

*Carr v. Devos,*
    369 F.Supp.3d 554 (S.D.N.Y. 2019)……………………………………………… 12

*Cockrum v. Donald J. Trump for President, Inc.,*
    365 F.Supp.3d 652 (E.D. Va. 2019)……………………………………………… n.9

*Denson v. Trump for President, Inc.,*
    2018 WL 4568430 (S.D.N.Y. August 30, 2018)………………………………… 2

*Denson v. Donald J. Trump for President, Inc.,*
    2019 WL 1206352 (Sup. Ct. N.Y. Cty. March 14, 2019),
    *rev'd on other grounds*, 180 A.D.3d 446, 116 N.Y.S.3d 267 (1st Dept. 2020)…… n.2

*Denson v. Donald J. Trump for President Inc.,*
    2019 WL 3302608 (S.D.N.Y. July 23, 2019)…………………………………… n.2

*Dow Jones & Co., Inc. v. Harrods, Ltd.,*
    237 F.Supp.2d 394 (S.D.N.Y. 2002),
    *aff'd* 346 F.3d 357 (2d Cir. 2003)……………………………………………… n.7, 9, 10

*Ferring B.V. v. Serenity Pharmaceuticals, LLC,*
    391 F.Supp.3d 265 (S.D.N.Y. 2019)……………………………………………… 13

*Ford v. Reynolds,*
    326 F.Supp.2d 392 (E.D.N.Y. 2004)……………………………………………… 9

*Fox v. International Conference of Funeral Service Examining Boards,*
    242 F.Supp.3d 272 (S.D.N.Y. 2017)……………………………………………… 8

*Hernandez v. Office of Commissioner of Baseball,*
    2019 WL 5593056 (S.D.N.Y. October 30, 2019)……………………………… 9, 10

*In re Indu Craft Inc.*,
  2012 WL 3070387 (S.D.N.Y. July 27, 2012)…………………………………… 13

*Krouner v. The American Heritage Fund, Inc.*,
  1997 WL 452021 (S.D.N.Y. August 6, 1997)………………………………… 8

*Laird v. Tatum*,
  408 U.S. 1, 92 S.Ct. 2318 (1972)…………………………………………… 10

*Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*,
  23 F.Supp.3d 344 (S.D.N.Y. 2014)………………………………………… 13

*Mangiafico v. Blumenthal*,
  471 F.3d 391 (2d Cir. 2006)………………………………………………… n.3

*Nicholas v. Trump*,
  433 F.Supp.3d 581 (S.D.N.Y. 2020)………………………………………… 12

*Olin Corp. v. Consolidated Aluminum Corp*.,
  5 F.3d 10 (2d Cir. 1993)…………………………………………………… 9

*Payment Alliance Intern., Inc. v. Ferreira*,
  530 F.Supp.2d 477 (S.D.N.Y. 2007)………………………………………… n.11

*Poller v. BioScrip, Inc.*,
  974 F.Supp.2d 204 (S.D.N.Y. 2013)………………………………………… n. 11

*Sanger v. Reno*,
  966 F.Supp. 151 (E.D.N.Y. 1997)…………………………………………… n.10

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149, 134 S.Ct. 2334 (2014)……………………………………… n.8

*Vaccariello v. XM Satellite Radio, Inc.*,
  295 F.R.D. 62 (S.D.N.Y. 2013)……………………………………………… n.7

*Velvet Underground v. Andy Warhol Foundation for the Visual Arts, Inc.*,
  890 F.Supp.2d 398 (S.D.N.Y. 2012)………………………………………… n.7, 9

*Vermont Right to Life Committee, Inc. v. Sorrell*,
  221 F.3d 376 (2d Cir. 2000)………………………………………………… n. 8

*Virginia v. American Booksellers Ass'n, Inc.*,
  484 U.S. 383, 108 S.Ct. 636 (1988)………………………………………… n.8

*White v. Department of Law*,
  184 A.D.2d 229, 584 N.Y.S.2d 555 (1st Dept. 1992)……………………… 4

*Younger v. Harris*,
  401 U.S. 37, 91 S.Ct. 746 (1971)…………………………………………………   10


**Electronic Filings**

*Denson*,
  New York County Index No. 101616/2017, NYSCEF Doc. No. 43…………   n.2

*Denson*,
  18-cv-02690, ECF Doc. No. 48………………………………………………   n.2

Defendant Donald J. Trump for President, Inc. (the "Campaign") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, to dismiss plaintiff's putative class action complaint (the "Complaint") in its entirety.

## PRELIMINARY STATEMENT

Having commenced a putative class action lawsuit in which she is the ***sole*** class representative, plaintiff fails to set forth in her pleading (or anywhere else) any alleged statements, opinions, or other forms of speech that the Campaign is purportedly restricting (or threatening to restrict) her from making.  Reduced to its essence, therefore, this lawsuit involves nothing more than a former employee asking a court whether a standard business confidentiality agreement that she signed as a condition of her employment may or may not be deemed unenforceable should she decide to disclose certain information in the future about the Campaign or her time spent working for it.  By definition, any such ruling would be an advisory opinion.

Here, the only actual dispute that ever existed between the parties relating to her contractual agreement with the Campaign—which arose more than two years ago—was previously resolved by the Appellate Division, First Department.  The Campaign has not taken (or threatened to take) any other action against plaintiff for any purported violations of the agreement (speech or otherwise) beyond those claims that were conclusively resolved by the First Department.  Indeed, plaintiff has been publicly expressing her negative views and opinions regarding the Campaign and President Trump on social media undeterred for the past two years.  For these very reasons, plaintiff cannot outline even the vaguest contours of a dispute with the Campaign, much less a sufficiently concrete dispute that would confer her with the standing she is required by law to have to bring this lawsuit.

For these reasons (and the reasons set forth below), plaintiff's lawsuit should be dismissed at the pleadings stage in its entirety.

## THE RELEVANT BACKGROUND

### A.    Plaintiff's Lawsuit for the Exact Same Claims in 2018

More than two years ago, plaintiff filed a lawsuit in this Court alleging the very same claims that she presents here, *to wit* that the agreement she signed as a condition of her employment with the Campaign was "void and unenforceable" (the "Agreement").  *See paragraph 58 of the Complaint, which is attached as **Exhibit A** to the Declaration of Patrick McPartland, dated July 30, 2020 (the "McPartland Decl.")*.  At that time, there was indeed ***an actual dispute*** between plaintiff and the Campaign regarding her compliance with the Agreement, as the Campaign had a pending arbitration against plaintiff before the American Arbitration Association for alleged breaches of the Agreement (the "Arbitration").  *McPartland Decl., Exh. A, ¶¶ 53, 60.*

On August 30, 2018, Judge Jesse M. Furman of this Court enforced the valid arbitration provision in the Agreement and ordered plaintiff to arbitrate her claims and defenses that the Agreement was "void and unenforceable."  *McPartland Decl., Exh. A, ¶ 59; Denson v. Trump for President, Inc.*, 2018 WL 4568430 (S.D.N.Y. August 30, 2018).  Despite Judge Furman's Order (and an actual dispute pending between the parties), plaintiff knowingly and intentionally refused to formally present her assertions regarding the validity and enforceability of the Agreement in the

Arbitration.[1]  *McPartland Decl., Exh. A, ¶¶ 60, 62.*  The arbitrator subsequently issued two awards in favor of the Campaign, the first of which included an express finding that the Agreement was, in fact, "valid and enforceable" (the "Awards").  *McPartland Decl., Exh. A, ¶ 62, Exhs. C–D.*

### B.    Plaintiff's Motions to Vacate the Awards

Following the issuance of the Awards against her, plaintiff undertook to attack the Awards in state and federal court on the same exact grounds that she previously asserted before Judge Furman and now asserts in this lawsuit—i.e. that the Awards must be vacated because the Agreement was "void and unenforceable."  *McPartland Decl., Exh. A, ¶¶ 64–65.*  Her motions then—which included both a motion to vacate and a motion to reargue before Judge Arlene P. Bluth in New York County Supreme Court and also a motion to vacate before Judge Furman—were rejected in both courts.[2]  *Id.*  Because Judge Bluth's denial of plaintiff's motion to vacate the

---

[1] As outlined in the Awards, the AAA provided ample notice and opportunity for plaintiff to participate in the Arbitration.  *McPartland Decl., Exh. A, ¶ 62, Exhs. C–D.*  She refused to do so— both before and after she obtained counsel.  On this point, we note that her representation to this Court that she was not represented by counsel during the pendency of the Arbitration is simply untrue.  ECF Doc. No. 16, p. 2.  In actuality, Maury B. Josephson, Esq. unsuccessfully sought to stay the Arbitration prior to the second arbitral award being issued in favor of the Campaign (a fact also recited in the arbitrator's second award).  *McPartland Decl., Exh. A, ¶ 62, Exh. D, pp. 1– 2* ("[b]y letter to the undersigned dated November 27, 2018, Maury B. Josephson, Esq., on behalf of [plaintiff], requested a stay of further proceedings in this arbitration…").

[2] Judge Bluth excoriated plaintiff for refusing to participate in the Arbitration to advance her arguments regarding the validity and enforceability of the Agreement.  *See e.g. Denson v. Donald J. Trump for President, Inc.*, 2019 WL 1206352, * 6 (Sup. Ct. N.Y. Cty. March 14, 2019) ("[p]laintiff had an opportunity to make an argument about why the [Agreement] was unenforceable; instead she chose not to participate in the arbitration and the arbitrator found the [A]greement enforceable"), *rev'd on other grounds*, 180 A.D.3d 446, 116 N.Y.S.3d 267 (1st Dept. 2020); *Denson*, New York County Index No. 101616/2017, NYSCEF Doc. No. 43.  As with Judge Bluth, plaintiff also submitted fully briefed arguments to Judge Furman asserting that the Awards should be vacated on the grounds that the Agreement is "void and unenforceable."  *See Denson*, 18-cv-02690, ECF Doc. No. 48.  Judge Furman rejected these arguments as moot given the preclusive effect of Judge Bluth's recent confirmation of the Awards.  *See Denson*, 2019 WL 3302608 (S.D.N.Y. July 23, 2019).

Awards was, by operation of law, tantamount to a confirmation of the Awards, the parties' prior dispute regarding the Agreement was, for all intents and purposes, concluded on March 14, 2019. *See e.g. White v. Department of Law*, 184 A.D.2d 229, 230, 584 N.Y.S.2d 555, 556 (1st Dept. 1992) ("there was no need for respondents to cross-petition for confirmation of the award since CPLR 7511(e) mandates an automatic confirmation upon denial of a motion to vacate or modify").

**C.     Plaintiff's Putative Class Action Before the American Arbitration Association**

On February 20, 2019, plaintiff next filed a putative class action complaint in arbitration before the American Arbitration Association seeking a ruling that the Agreement was "void and unenforceable." *McPartland Decl., Exh. A, ¶ 70*.  At that time and like now, the only purported dispute identified by plaintiff related to the prior claims that the Campaign had asserted against her in the Arbitration.  However, because that prior dispute was resolved by Judge Bluth's denial of her motion to vacate, it could not—as a matter of law—have provided plaintiff with grounds to maintain her claims.  As such, on May 29, 2019, the Campaign exercised its contractual right under the Agreement to decline to arbitrate that claim.  *McPartland Decl., Exh. A, ¶¶ 75–76*. Plaintiff was thereafter contractually entitled under the Agreement to file a lawsuit in federal or state court, at which time the Campaign intended to file a pre-answer motion to dismiss for lack of subject matter jurisdiction.  Of note, plaintiff did not proceed with her lawsuit.

**D.     The Appellate Division, First Department Conclusively Resolved the Prior Dispute**

Plaintiff next appealed Judge Bluth's confirmation of the Awards to the Appellate Division, First Department, where she again raised the very same arguments that she raises in this lawsuit regarding the validity and enforceability of the Agreement (the "Appeal").  Specifically, plaintiff asserted that the Agreement's confidentiality and non-disparagement provisions are "so vague" and "so broad" that the Agreement itself violates "public policy."  *See pages 22–27 of the*

4

*Appellant's Brief that plaintiff submitted to the First Department, which is attached as **Exhibit C** to the McPartland Decl.*[3]  She also asserted that the Agreement is unenforceable because its confidentiality and non-disparagement provisions are not properly limited in "temporal or geographic scope." *McPartland Decl., Exh. C, pp. 27–29.*  She further asserted, without any factual support, that the Agreement was being "weaponized" by the Campaign to "suppress" unidentified "political speech" and otherwise infringe on her First Amendment rights in violation of the United States Constitution and the New York State Constitution.[4]  *McPartland Decl., Exh. C, pp. 4, 29–30.*

On February 6, 2020, the First Department **_expressly rejected_** plaintiff's assertions that the Awards should be vacated because the Agreement was "void and unenforceable" in its written decision on the Appeal.  *See Denson*, 180 A.D.3d at 452, 116 N.Y.S.3d at 274–275.  It found that there was "no legal basis" to conclude that the Agreement is "so broad and over-inclusive" that it is "void or should be invalidated as against public policy."  *Id.*  It further found that the non-disparagement provision contained in the Agreement "between private parties…does not impermissibly intrude on plaintiff's rights of free expression."  *Id.*

Nevertheless, the First Department proceeded to vacate the Awards **on other grounds**, *to wit* because (i) the Awards "improperly punished plaintiff" for the statements she made in

---

[3] In her Complaint, plaintiff expressly references the Appeal, the First Department's decision, and the decision's purported impact on this lawsuit, so her Appellant's Brief may properly be considered here as part of the record.  *McPartland Decl., Exh. A, ¶¶ 66–67; see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[t]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference...[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint") (*citation omitted*).

[4] Of course, plaintiff could have (and should have) raised all of these claims and defenses regarding the Agreement in the context of the Arbitration (i.e. as Judge Furman ordered her to do).

connection with the lawsuit she filed in this Court in 2018 and (ii) the arbitrator "exceeded his authority" by premising a portion of the Awards on certain statements plaintiff made on the internet (relief that the Campaign did not specifically request in its Demand for Arbitration).  *See Denson*, 180 A.D.3d at 454–455, 116 N.Y.S.3d at 276–277.

The Campaign did not appeal this decision.  As such, the First Department conclusively resolved any pending dispute between the parties regarding the Agreement.

**E.**    **There Is No Current Dispute Between the Parties Regarding the Agreement**

On the eve of the 2020 election, plaintiff now brings this lawsuit as the sole class representative seeking yet again to litigate her claims regarding the validity and enforceability of the Agreement.  *McPartland Decl., Ex. A*.  Of note, in her 29-page Complaint, plaintiff fails to identify what statements, opinions, or other speech she is purportedly being prevented from saying, writing, publishing, or otherwise.  *Id*.  She also fails to identify any specific conduct or act on the part of the Campaign (for example, a cease and desist letter) suggesting that she has been threatened with legal action or consequence under the Agreement.  *Id*.

Indeed, right up until the making of this motion and in furtherance of its Rule 26 obligations regarding settlement, the Campaign repeatedly asked plaintiff to identify her current dispute with the Campaign.  In response, she has refused to identify any speech she intends to make (which she believes would be in violation of her Agreement), much less identify any actual or threatened

dispute between the parties regarding the Agreement.[5]

In fact, plaintiff has continually publicly expressed her negative opinions and views regarding the Campaign and President Trump on social media over the past two years (both prior to and following her Appeal), including on her Twitter account (a fact that plaintiff also does not mention in her Complaint).[6]  *Copies of plaintiff's tweets are attached as **Exhibit B** to the McPartland Decl.*  Since the conclusion of the Arbitration in 2018, the Campaign has not sent plaintiff a cease and desist letter or taken any other similar action with respect to any of this speech (as implicitly acknowledged by the lack of any such allegations contained in plaintiff's Complaint).  *McPartland Decl., Exh. A.*

## ARGUMENT

### I.

### PLAINTIFF HAS NO STANDING TO BRING THIS LAWSUIT

It is long established that each plaintiff seeking to act as a class representative in a putative class action lawsuit must have individual standing to assert the claims set forth in the complaint. *See e.g. Caruso v. Zugibe*, 2015 WL 5459862, n. 4 (S.D.N.Y. June 22, 2015) ("if the named plaintiff lacks standing the entire class action fails"), *citing Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) ("the named plaintiff must allege and show that they personally

---

[5] One of the principal reasons why the Campaign has repeatedly requested that plaintiff identify her intended speech is that the Campaign is likely to have no objections to it.  ECF Doc. Nos. 14, pp. 3–4; 15, p. 2.  However, as plaintiff made clear in her pre-motion letter to this Court, plaintiff "does not seek a declaration that any specific statement is not barred by the [Agreement]…[r]ather, she seeks a declaration that the [Agreement] itself is void and unenforceable."  ECF Doc. No. 16, p. 3.

[6] Plaintiff's tweets, which are publicly accessible and integral to the allegations she raises in the Complaint, may also be considered on this motion.  *See e.g. Brown v. Showtime Networks, Inc.*, 394 F.Supp.3d 418, 436 (S.D.N.Y. 2019) (considering documentary film proffered by defendants in support of their motion to dismiss because "the film is integral to the Complaint").

have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent") (*internal quotations omitted*); *Krouner v. The American Heritage Fund, Inc.*, 1997 WL 452021, * 2 (S.D.N.Y. August 6, 1997) ("[a] court must assess standing to sue based upon the standing of the named plaintiff and not upon the standing of unidentified class members") (*internal quotations omitted*).

Here, plaintiff, the sole class representative, lacks standing to bring this lawsuit because she cannot demonstrate that there is any actionable dispute between the parties sufficient to confer subject matter jurisdiction on this Court.  The sole dispute between the parties relating to the Agreement was conclusively resolved by the Appellate Division, First Department, and plaintiff has failed to identify any current or threatened dispute between the parties.

Moreover, plaintiff is collaterally estopped from relitigating the issue of the validity and enforceability of the Agreement.  By plaintiff's own assertions, the very premise of this putative class action lawsuit is that the Agreement is "void and unenforceable" on its face.  However, plaintiff has already presented this identical argument to the First Department, which expressly rejected it.  As such, she is barred from re-litigating this identical issue again here.

## A.    There is No Case or Controversy

To establish standing for a declaratory judgment action, the plaintiff must allege facts sufficient to show "that there is a ***substantial controversy***…of ***sufficient immediacy and reality*** to warrant the issuance of a declaratory judgment."[7]    *Fox v. International Conference of Funeral*

---

[7] "The phrase 'case of actual controversy' in the [Declaratory Judgment Act] refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."   *Velvet Underground v. Andy Warhol Foundation for the Visual Arts, Inc.*, 890 F.Supp.2d 398, 403 (S.D.N.Y. 2012) (*internal alteration and citations omitted*); *see also Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F.Supp.2d 394, 406 (S.D.N.Y. 2002), *aff'd* 346 F.3d 357 (2d Cir. 2003) (the analysis for determining whether an "actual controversy" exists under the DJA is "coextensive with the analysis applicable to the 'case or controversy' standard embodied in Article III of the United States Constitution").

*Service Examining Boards*, 242 F.Supp.3d 272, 291 (S.D.N.Y. 2017) (*emphasis added*) (*citations omitted*).  The plaintiff bears the burden of proof on the issue of standing.  *See e.g. Hernandez v. Office of Commissioner of Baseball*, 2019 WL 5593056, * 2 (S.D.N.Y. October 30, 2019) ("[t]he burden of proving that a dispute is ripe for adjudication lies with the party asserting the claim at issue") (*citations omitted*).

The "touchstone" for determining "sufficient immediacy and reality is whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility, or even probability of some contingency that may or may not come to pass." *Dow Jones & Co., Inc.*, 237 F.Supp.2d at 406–407.  In other words, "the dispute must be presented in the context of a ***specific live grievance*** that justifies invoking the protections of the courts to shield the plaintiff against the defendants' ***actual interference*** with [his or her] legal interests." *Velvet Underground*, 890 F.Supp.2d 398 at 404 (*emphasis added*) (*internal quotations and citations omitted*); *see also Olin Corp. v. Consolidated Aluminum Corp*., 5 F.3d 10, 17 (2d Cir. 1993) ("[w]e cannot allow the declaratory judgment procedure to be used as a medium for securing an advisory opinion in a controversy which has not arisen") (*internal quotations and citation omitted*).

A plaintiff seeking declaratory relief cannot rely on a past injury to wholly satisfy the injury requirement, but rather must show "a likelihood that he or she will be injured in the future." *Applegate v. Annucci*, 2017 WL 3049555, * 8 (S.D.N.Y. July 18, 2017); *see also Ford v. Reynolds*, 326 F.Supp.2d 392, 404–405 (E.D.N.Y. 2004) ("[a] plaintiff seeking declaratory relief establishes standing by (1) identifying a specific injury he or she has suffered and (2) demonstrating a likelihood that he or she will be similarly injured in the future") (*citation omitted*).

Here, plaintiff's vague and subjective assertion that the Agreement is "preventing her"

from exercising her right to speak freely about the Campaign or President Trump is insufficient to create an actual controversy as a matter of law.  *See e.g. Hernandez*, 2019 WL 5593056 at * 2 (dismissing employee's claim seeking a declaration that he is permitted under Title VII to "speak out" regarding the allegations he raised against his employer in his complaint without reprisal finding that "in the absence of actual speech it is impossible to adjudicate whether the proposed speech would be protected"); *Dow Jones & Co., Inc.*, 237 F.Supp.2d at 410 ("allegations of a subjective chill on the exercise of First Amendment freedoms are insufficient to create an actual controversy absent a concrete claim of specific *present* objective harm or threat of future harm") (*emphasis in original*) (*internal quotations omitted*), *citing Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–2326 (1972) (plaintiffs failed to present a justiciable controversy by complaining of a "chilling" effect on the exercise of their First Amendment rights by the mere existence and operation of the Army's intelligence-gathering and distribution system because they failed to identify any "specific action" that the Army had taken against them); *Younger v. Harris*, 401 U.S. 37, 41–42, 91 S.Ct. 746, 749 (1971) (parties' allegation that they "felt inhibited" in the exercise of their First Amendment rights due to the existence of a state law that criminalized the advocacy or teaching of unlawful acts as a means to accomplish a change in industrial ownership or control or effect political change was insufficient to invoke the equitable jurisdiction of the federal courts); *see also Sanger v. Reno*, 966 F.Supp. 151, 161 (E.D.N.Y. 1997) (plaintiffs, who intended to use the internet to transmit information about abortions, failed to present a ripe controversy challenging the Communications Decency Act of 1996 on First Amendment grounds reasoning that plaintiffs' "uncertainty about enforcement does not establish a credible basis for fearing enforcement…[i]f federal courts had jurisdiction to decide disputes wherever uncertainties exist,

their jurisdiction would be unending").[8]

Moreover, this assertion is belied by plaintiff's continuous and unobstructed statements, opinions, and disparaging public comments regarding the Campaign and President Trump over the course of the past two years. *McPartland Decl., Exh. B; see also Bordell v. General Elec. Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991) (rejecting former atomic laboratory employee's assertion that laboratory's stated policy prohibiting public comment on classified or sensitive information constituted a "subjective chill" on the exercise of his First Amendment rights where the evidence before the court demonstrated the former employer "has, in fact, spoken on matters relating to [the laboratory] on numerous occasions").[9]

---

[8] The requirement that a party identify the specific speech or conduct at issue is repeatedly illustrated in the very cases cited by plaintiff in her own pre-motion letter to this Court. ECF Doc. No. 16, p. 4; *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–162, 134 S.Ct. 2334, 2343–2344 (2014) (advocacy organizations had standing to challenge Ohio statute criminalizing false statements about candidates during political campaigns finding, among other things, that "[b]oth petitioners have pleaded *specific statements* they intend to make in future election cycles" that were "arguably prescribed by the [statute]") (*emphasis added*); *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 108 S.Ct. 636, 637 (1988) (adult bookstores had standing to challenge Virginia statute criminalizing the commercial display of certain "sexual or sadomasochistic material that is harmful to juveniles" because at the parties' trial "the owners of the bookstores *introduced as exhibits 16 general-subject books they believed to be covered by the amendment*, and testified that the law might apply to as much as *one-half of their inventory*") (*emphasis added*); *Vermont Right to Life Committee, Inc. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000) (nonprofit corporation had standing to challenge Vermont campaign finance statute establishing disclosure requirements for political advertising and reporting requirements for mass media expenditures, since corporation faced credible threat of civil litigation *based on its activities of publishing advertisements supporting viewpoints with which certain candidates were associated and distributing literature and displaying posters at county-fair booths*).

[9] Notably, plaintiff—who is attempting to assert constitutional claims against an indisputably private entity—fails to allege any facts whatsoever suggesting that state action exists. *McPartland Decl., Exh. A, ¶ 11; see also Cockrum v. Donald J. Trump for President, Inc.*, 365 F.Supp.3d 652, 665 (E.D. Va. 2019) (dismissing First Amendment claims reasoning that "the Campaign is incapable of state action because it is a private entity").

On this point, plaintiff likewise has not (and cannot) identify any action or threatened action being taken against her by the Campaign for any alleged speech, which dooms her declaratory judgment claims as a matter of law.  *See e.g. Nicholas v. Trump*, 433 F.Supp.3d 581, 590 (S.D.N.Y. 2020) (recipients of presidential alert test message lacked standing to challenge the alert system on constitutional grounds because plaintiffs could not demonstrate a "substantial risk of a future test"); *Ford*, 326 F.Supp.2d at 407 (plaintiffs, who often spoke at CUNY campuses and were not paid for a speech they delivered on one occasion at York College, lacked standing to seek a declaration "to prevent future violations of their rights to speak and be paid at York College and other CUNY campuses" because there was "no allegation that they were deprived at any time thereafter of the right to speak at York College or CUNY, or that they were ever denied honoraria for their speeches" and "thus failed to show that they have a reasonable expectation of being subjected to the same injurious action again").

The simple fact is that the only dispute that existed between the parties with respect to the Agreement was conclusively resolved by the First Department.  Having failed to obtain a favorable ruling on the validity and enforceability of the Agreement while that prior dispute was pending, plaintiff now belatedly seeks a second political bite of the apple by manufacturing vague assertions about a "dispute" that does not even exist.  This is not sufficient to establish standing before this Court.  *See e.g. Carr v. Devos*, 369 F.Supp.3d 554, 565 (S.D.N.Y. 2019) (student loan borrowers' claim seeking a declaration that their student loans were unenforceable was not ripe for adjudication because "the legal threat at issue remains entirely hypothetical").

**B.**      **Plaintiff is Estopped From Relitigating the Enforceability of the Agreement**

As set forth above, plaintiff's assertions in this lawsuit that the Agreement is "void and unenforceable" are the very same assertions that she unsuccessfully raised in the context of the

parties' prior dispute, which issue was conclusively resolved by the Appellate Division, First Department.  Indeed, plaintiff is contemporaneously moving this Court for summary judgment on the assertion that the Agreement is "void and unenforceable" on its face.  This issue, however, was already presented to and resolved by the First Department, which expressly found, among other things, that there was "***no legal basis***" to conclude that the Agreement is "***so broad and over-inclusive***" that it is "***void or should be invalidated as against public policy***."  *See Denson*, 180 A.D.3d at 452, 116 N.Y.S.3d at 274 (*emphasis added*).

The determination of this issue by the First Department—which had an actual dispute before it—precludes plaintiff from relitigating this same issue before this Court.[10]  *See e.g. In re Indu Craft Inc.*, 2012 WL 3070387, * 12 (S.D.N.Y. July 27, 2012) ("collateral estoppel…bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action"); *Ferring B.V. v. Serenity Pharmaceuticals, LLC*, 391 F.Supp.3d 265 (S.D.N.Y. 2019) (pharmaceutical company was collaterally estopped from seeking a declaration regarding the validity and enforceability of two patents because the issue underlying this claim—i.e. who invented the patents—was "necessarily resolved" against the company in a prior order); *Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F.Supp.3d 344 (S.D.N.Y. 2014) (photographer was collaterally estopped from asserting that he had standing to advance a breach of contract claim

---

[10] The First Department also refused to overturn the arbitrator's finding that the Agreement was "valid and enforceable." *McPartland Decl., Exh. A, Exh. C, p. 3; see also Id.*, at 453, at 275 ("[t]he arbitrator did not exceed his enumerated authority by reaching the gateway issue of the validity of the [Agreement]…[p]laintiff's only articulated defense to arbitration, asserted both in the federal action and her letter to the arbitrator, was that the [Agreement] was void and unenforceable…[t]hus, the issue of the validity of the [Agreement] was properly before the arbitrator…[t]he arbitrator's decision on the validity of the [Agreement] did not run afoul of the rule that a party cannot be forced to arbitrate a dispute it did not agree to submit to arbitration").

against licensees under certain licensing agreements because another district court previously found that the photographer lacked standing to enforce these same agreements).[11]

## <u>CONCLUSION</u>

Based on the foregoing, defendant respectfully requests that the Court grant the instant motion in its entirety and grants defendant such other relief as the Court deems just and proper.

Dated: New York, New York
      July 30, 2020

                              LAROCCA HORNIK ROSEN
                              & GREENBERG LLP

                              */s/ Patrick McPartland*
        By: _____
                              Patrick McPartland
                              Jared E. Blumetti
                              40 Wall Street, 32nd Floor
                              New York, New York 10005
                              T: (212) 530-4837, 4831
                              E: pmcpartland@lhrgb.com
                                 jblumetti@lhrgb.com

                              *Attorneys for defendant*
                               *Donald J. Trump for President, Inc.*

---

[11] As the First Department stated, there is nothing inherently illegal about restrictive covenant agreements such as the Agreement here, which are frequently used by various businesses and regularly enforced by courts throughout the country. *See e.g. Denson*, 180 A.D.3d at 452, 116 N.Y.S.3d at 274 (refusing to find that NDAs "per se violate public policy…[q]uite the contrary, courts routinely resolve the merits of conflicting claims pertaining to [these] agreements and the scope of their coverage, without relying on public policy grounds"). Indeed, this only serves to underscore the need for a party to present an actual controversy with respect to a restrictive covenant agreement because the court needs to analyze the agreement against a particular set of facts and circumstances. *See e.g. Payment Alliance Intern., Inc. v. Ferreira*, 530 F.Supp.2d 477, 484 (S.D.N.Y. 2007) ("[c]ourts assessing the reasonableness of the scope of a restrictive covenant in an employment contract must consider the specific facts underlying the agreement and the nature of the employer's confidential information") (*citation omitted*); *Poller v. BioScrip, Inc.*, 974 F.Supp.2d 204, 221 (S.D.N.Y. 2013) ("[w]here courts find restrictions to be unreasonable, however, they may blue pencil the covenant to restrict the term to a reasonable limitation and grant partial enforcement for the overly broad restrictive covenant"). For this reason too, plaintiff's presentation of this claim as a class action is fundamentally flawed.