# EXHIBIT E

# Exhibit A

Case 1:09-cv-10345-PGK Document 26-5 Filed 04/25/12 Page 1 of 7

# AGREEMENT

You have requested that the entity signing below (the "**Company**") engage you (as an employee or an independent contractor, Volunteer, or otherwise) to perform services, or an independent contractor that employs you has requested to be engaged by Company to perform services and you desire in your capacity as an employee of such independent contractor to perform all or a part of such services. You have made the promises and agreements set forth below in order to induce the Company to accept your or your employer's, as applicable, offer of engagement and to permit you, in the applicable capacity, to perform all or a portion of the subject services. Those promises and agreements are part of what the Company is receiving in exchange for agreeing to engage you or your employer, and to permit you to perform all or a portion of the subject services, and the Company is relying on your fulfillment of these promises and agreements.

Any initially capitalized terms that are not defined when used in this agreement are defined in paragraph 6 below.

1. <u>No Disclosure of Confidential Information</u>. During the term of your service and at all times thereafter you hereby promise and agree:

   a. not to disclose, disseminate or publish, or cause to be disclosed, disseminated or published, any Confidential Information;

   b. not to assist others in obtaining, disclosing, disseminating, or publishing Confidential Information;

   c. not to use any Confidential Information in any way detrimental to the Company, Mr. Trump, any Family Member, any Trump Company or any Family Member Company;

   d. not to save, store or memorialize any Confidential Information (including, without limitation, incorporating it into any storage device, server, Internet site or retrieval system, whether electronic, cloud based, mechanical or otherwise) except as may be expressly required in connection with the performance of services to the Company;

   e. to (i) provide the Company with written notice of any legal obligation to disclose any Confidential Information as soon as you become aware of such obligation, (ii) not make any disclosure notwithstanding such obligation until the Company (or the appropriate Trump Person) has had a reasonable opportunity to seek an appropriate protective order or similar relief, (iii) fully cooperate and join with the Company (and the appropriate Trump Person) in any request for a protective order or similar relief, (iv) exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded such Confidential Information in the event no such protective order or similar relief is obtained, whether because it has been denied or because the Company (or the appropriate Trump Person) has elected not to seek it, and (iv) under all circumstances, not furnish any greater portion of the Confidential Information than you are advised by counsel is absolutely legally required to be disclosed by you or furnish any

1 | Page

        f. promptly upon the request, whenever made, of the Company, (i) return to the Company all Confidential Information furnished to you, together with all copies, abstracts, notes, reports, or other materials furnished to, or otherwise obtained by, you or prepared by you or on your behalf, without retaining copies, extracts or other reproductions, whether physical, electronic, cloud based or otherwise, in whole or in part, (ii) destroy all documents, memoranda, notes or other writings prepared by you or anyone on your behalf that are based upon the Confidential Information, and (iii) acknowledge such destruction in writing to Company.

The foregoing provisions each apply to Confidential Information and disclosure, dissemination, publication, use and effort to help others obtain, saving, storing and memorializing of Confidential Information, as applicable, (i) by any means of expression, including but not limited to verbal, written, or visual, (ii) whether or not preserved in any medium now known or hereafter discovered or invented, including but not limited to audio recording of any type, written text, drawing, photograph, film, video, or electronic device, (iii) in any manner or form, including but not limited to any book, article, memoir, diary, letter, essay, speech, interview, panel or roundtable discussion, image, drawing, cartoon, radio broadcast, television broadcast, video, movie, theatrical production, Internet website, e-mail, Twitter tweet, Facebook page, or otherwise, even if fictionalized, (iv) in any language, or (v) in any country or other jurisdiction (collectively, the "**Restricted Means and Contexts**").

        2.     No Disparagement. During the term of your service and at all times thereafter you hereby promise and agree not to demean or disparage publicly the Company, Mr. Trump, any Trump Company, any Family Member, or any Family Member Company or any asset any of the foregoing own, or product or service any of the foregoing offer, in each case by or in any of the Restricted Means and Contexts and to prevent your employees from doing so.

        3.     No Competitive Services. Until the Non-Compete Cutoff Date you promise and agree not to assist or counsel, directly or indirectly, for compensation or as a volunteer, any person that is a candidate or exploring candidacy for federal or state office other than Mr. Trump and to prevent your employees from doing so.

        4.     No Competitive Solicitation. Until the Non-Solicitation Cutoff Date you promise and agree not to hire or solicit for hiring, or assist any other person, entity or organization to hire or solicit for hiring, any person that is an independent contractor of, employee of an independent contractor of, or employee of Company or any other Trump Person and who at any time provides services for the project or objective for which you or your employer, as applicable, are being engaged.

        5.     No Competitive Intellectual Property Claims. During the term of your service and at all times thereafter you promise and agree never to assert any rights to any intellectual property that (a) includes the name "Trump," (b) is owned by or associated with the Company, Mr. Trump, any Trump Company, any Family Member or any Family Member Company, for example, without limitation, any name, likeness, voice, or image of Mr. Trump or any Family Member, or any logo, motto or phrase created, developed or commonly associated with any of them, or (c) is developed in connection with the project or objective for which your services are

being engaged (all of which will be deemed a "work made for hire" or will be assigned by you to us).

    6.    <u>Definitions</u>. As used in this agreement, the following definitions apply:

    a. **"Confidential Information"** means all information (whether or not embodied in any media) of a private, proprietary or confidential nature or that Mr. Trump insists remain private or confidential, including, but not limited to, any information with respect to the personal life, political affairs, and/or business affairs of Mr. Trump or of any Family Member, including but not limited to, the assets, investments, revenue, expenses, taxes, financial statements, actual or prospective business ventures, contracts, alliances, affiliations, relationships, affiliated entities, bids, letters of intent, term sheets, decisions, strategies, techniques, methods, projections, forecasts, customers, clients, contacts, customer lists, contact lists, schedules, appointments, meetings, conversations, notes, and other communications of Mr. Trump, any Family Member, any Trump Company or any Family Member Company.

    b. **"Family Member"** means any member of Mr. Trump's family, including, but not limited to, Mr. Trump's spouse, each of Mr. Trump's children and grandchildren and their respective spouses, including but not limited to Donald J. Trump Jr., Eric F. Trump and Ivanka M. Trump, Tiffany Trump, and Barron Trump, and their respective spouses, children and grandchildren, if any, and Mr. Trump's siblings and their respective spouses and children, if any.

    c. **"Family Member Company"** means any entity, partnership, trust or organization that, in whole or in part, was created by or for the benefit of any Family Member or is controlled or owned by any Family Member.

    d. **"Non-Compete Cut Off Date"** means the date the current U.S presidential election cycle is over or, if earlier, the date Mr. Trump announces that he will not run or will no longer run for the Presidency of the United States of America in the current U.S. presidential election cycle.

    e. **"Non-Solicitation Cutoff Date"** means the Non-Compete Cut Off Date.

    f. **"Trump Company"** means any entity, partnership, trust or organization that, in whole or in part, was created by or for the benefit of Mr. Trump or is controlled or owned by Mr. Trump.

    g. **"Trump Person"** means each of Mr. Trump, each Family Member, each Trump Company (including but not limited to the Company) and each Family Member Company.

    7.    <u>Remedies for Breach of this Agreement</u>.

    a. <u>Consent to Injunction</u>. A breach of any of your promises or agreements under this agreement will cause the Company, Mr. Trump and each other Trump Person irreparable harm. Accordingly, to the extent permitted by law, and without waiving any other rights or remedies against you at law or in equity, you hereby consent to the entry of any order, without prior notice

to you, temporarily or permanently enjoining you from violating any of the terms, covenants, agreements or provisions of this agreement on your part to be performed or observed. Such consent is intended to apply to an injunction of any breach or threatened breach.

    b. <u>Agreement to Indemnify</u>. You hereby agree to indemnify, defend (with counsel acceptable to the Trump Person you are defending) and hold harmless each Trump Person from and against any claim, demand, suit, proceeding, damages, cost, loss or expense of any kind or nature, including but not limited to reasonable attorneys' fees and disbursements, incurred by any Trump Person as a consequence of your breach of any of your promises or agreements in this agreement.

    c. <u>Damages and Other Remedies</u>. Notwithstanding anything to the contrary, each Trump Person will be entitled to all remedies available at law and equity, including but not limited to monetary damages, in the event of your breach of this agreement. Nothing contained in this agreement will constitute a waiver of any Trump Person's remedies at law or in equity, all of which are expressly reserved.

    d. <u>Third Party Beneficiaries</u>. Mr. Trump and each Family Member, Trump Company and Family Member Company is an intended third party beneficiary of this agreement. Without limiting the preceding sentence, Mr. Trump, each Family Member, Trump Company and Family Member Company, in addition to the Company, will be entitled to the benefit of this agreement and to enforce this agreement.

**8.    <u>Resolution of Disputes</u>.**

    a. <u>Governing Law; Jurisdiction and Venue</u>. This Agreement is deemed to have been made in the State of New York, and any and all performance hereunder, breach hereof, or claims with respect to the enforceability of this agreement must be interpreted and construed pursuant to the laws of the State of New York without regard to conflict of laws or rules applied in the State of New York. You hereby consent to exclusive personal jurisdiction and venue in the State of New York with respect to any action or proceeding brought with respect to this agreement.

    b. <u>Arbitration</u>. Without limiting the Company's or any other Trump Person's right to commence a lawsuit in a court of competent jurisdiction in the State of New York, any dispute arising under or relating to this agreement may, at the sole discretion of each Trump Person, be submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association, and you hereby agree to and will not contest such submissions. Judgment upon the award rendered by an arbitrator may be entered in any court having jurisdiction.

    c. <u>Prevailing Party Fees</u>. Any court judgment or arbitration award shall include an award of reasonable legal fees and costs to the prevailing party.

    d. <u>Interpretation and Representation by Counsel</u>. This agreement has been drafted on behalf of the undersigned only as a convenience and may not, by reason of such action, be construed against the undersigned. Each of the parties (i) has had the opportunity to be and/or

4 | Page

has elected not to be, represented by counsel, (ii) has reviewed each of the provisions in this agreement carefully and (iii) has negotiated or has had full opportunity to negotiate the terms of this agreement, specifically including, but not limited to Paragraph 7 hereof. You waive any claims that may be available at law or in equity to the effect that you did not have the opportunity to so consult with counsel.

    e. No Waiver. Neither the failure or delay to exercise one or more rights under this agreement nor the partial exercise of any such right, will be deemed a renunciation or waiver of such rights or any part thereof or affect, in any way, this agreement or any part hereof or the right to exercise or further exercise any right under this agreement or at law or in equity.

    9. Miscellaneous. **Modifications.** No change or waiver of the terms, covenants and provisions of this agreement will be valid unless made in writing and signed by the undersigned. **Relationship.** Nothing herein contained is intended to, nor shall it be construed as, reflecting any employer-employee or independent contractor relationship between you and the undersigned or any other individual or entity. **Counterparts.** This agreement may be executed in any number of counterparts, all of which taken together will constitute one and same instrument. Delivery of an executed signature page of this this agreement by facsimile transmission or .pdf, .jpeg, .TIFF, or other electronic format or electronic mail attachment will be effective as delivery of an original executed counterparty hereof.

    10. Survival. This agreement will survive the expiration, cancellation or termination of any employment or independent contractor relationship that you may have with the Company or with any individual, entity, partnership, trust or organization that the Company has engaged.

Donald J. Trump for President

Signature: _____
Name: Cassidy Dumbauld
Title:

**CLIFTON DAVID SIMS ACKNOWLEDGES THAT HE HAS READ AND UNDERSTOOD THIS AGREEMENT, AND AGREES TO COMPLY WITH THE FOREGOING WHICH CREATES A VALID AND BINDING LEGAL OBLIGATION ON HIM.**

Clifton David Sims

Signature: _____
Name: Clifton David Sims
Address: 1201 Boundary St. Birmingham, AL 35242