# EXHIBIT L

CHARLES J. HARDER (NY Bar No. 5282371)
ANTHONY J. HARWOOD (NY Bar No. 2187821)
RYAN J. STONEROCK (CA Bar No. 247132)
HARDER LLP
260 Madison Avenue, Sixteenth Floor
New York, New York 10016
Telephone: (212) 799-1400
Facsimile: (212) 937-3167
Email: CHarder@HarderLLP.com
  AHarwood@HarderLLP.com
  RStonerock@HarderLLP.com

Attorneys for Claimant
DONALD J. TRUMP FOR PRESIDENT, INC.

AMERICAN ARBITRATION ASSOCIATION

NEW YORK, NEW YORK

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., a Virginia not-for-profit corporation,<br><br>Claimant,<br><br>v.<br><br>OMAROSA MANIGAULT-NEWMAN, an individual,<br><br>Respondent. | **Case No.**<br><br>**STATEMENT OF CLAIM FOR BREACH OF WRITTEN CONTRACT** |

Claimant DONALD J. TRUMP FOR PRESIDENT, INC. hereby alleges as follows:

**THE PARTIES**

1. Claimant Donald J. Trump for President, Inc. (the "Company") is a not-for-profit corporation organized and existing under the laws of the State of Virginia, with its principal place of business in New York, New York.

2. Claimant is informed and believes, and based thereon alleges, that Respondent Omarosa Manigault-Newman ("Ms. Manigault-Newman") is an individual

-1-
STATEMENT OF CLAIM

residing and domiciled in Jacksonville, Florida.

## RELEVANT FACTS

3. Ms. Manigault-Newman previously served as an outreach advisor for Donald J. Trump for President, Inc. (the "Company"). In connection therewith, Ms. Manigault-Newman entered into a written agreement with the Company (the "Agreement"), effective on or about July 16, 2016. A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

4. The Agreement prohibits Ms. Manigault-Newman from disclosing confidential information (as defined in the Agreement) or disparaging the Company and numerous persons associated with the Company, including Donald J. Trump ("Mr. Trump") and his family members.

5. Paragraph 1 of the Agreement specifically restricts Ms. Manigault-Newman's disclosure of Confidential Information by providing, in pertinent part:

> 1. <u>No Disclosure of Confidential Information</u>. During the term of your service and at all times thereafter you hereby promise and agree:
>
> a. not to disclose, disseminate or publish, or cause to be disclosed, disseminated or published, any Confidential Information;
>
> b. not to assist others in obtaining, disclosing, disseminating, or publishing Confidential Information;
>
> c. not to use any Confidential Information in any way detrimental to the Company, Mr. Trump, any family Member, any Trump Company or any Family Member Company;
>
> d. not to save, store or memorialize any Confidential Information (including, without limitation, incorporating it into any storage device, server, Internet site or retrieval system, whether electronic, cloud based, mechanical or otherwise)…

6. "Confidential Information" is defined in the Agreement, in part, as "all information (whether or not embodied in any media) of a private, proprietary or confidential nature or that Mr. Trump insists remain private or confidential, including, but

not limited to, any information with respect to the personal life, political affairs, and/or business affairs of Mr. Trump or of any Family Member, including but not limited to, … meetings, conversations, notes, and other communications of Mr. Trump, any Family Member, any Trump Company or any Family Member Company." (Ex. A, ¶ 6.a.)

7. Paragraph 2 of the Agreement prohibits Ms. Manigault-Newman from disparaging the Company or any other Trump Person (as defined in the Agreement), as follows:

> 2. <u>No Disparagement</u>. During the term of your service and at all times thereafter you hereby promise and agree not to demean or disparage publicly the Company, Mr. Trump, any Trump Company, any Family Member, or any Family Member Company or any asset any of the foregoing own, or product or service any of the foregoing offer, in each case by or in any of the Restricted Means and Contexts and to prevent your employees from doing so.[1]

8. On or about December 14, 2017, Ms. Manigault-Newman appeared on ABC's "Good Morning America." During that appearance, Ms. Manigult-Newman stated that she planned to disclose Confidential Information, and to make disparaging statements, in violation of the Agreement:

> There were a lot of things that I observed during the last year that I was very unhappy with, that I was very uncomfortable with…
>
> I'm not going to expand on it because I still have to go back and work with these individuals, but when I have a chance to tell my story, Michael, quite a story to tell as the only African-

---

[1] "Restricted Means and Contexts" is defined in the Agreement as "(i) …any means of expression, including but not limited to verbal, written, or visual, (ii) whether or not preserved in any medium now known or hereafter discovered or invented, including but not limited to audio recording of any type, written text, drawing, photograph, film, video, or electronic device, (iii) in any manner or form, including but not limited to any book, article, memoir, diary, letter, essay, speech, interview, panel or roundtable discussion, image, drawing, cartoon, radio broadcast, television broadcast, video, movie, theatrical production, Internet website, e-mail, Twitter tweet, Facebook page, or otherwise, even if fictionalized, (iv) in any language, or (v) in any country or other jurisdiction." (Agreement, ¶ 1.)

|   |   |   |
|---|---|---|
| 1 | | American woman in this White House, as a senior staff and assistant to the President, I have seen things that made me uncomfortable, that have upset me, that have affected me deeply and emotionally, that has affected my community and my people. And when I can tell my story, it is a profound story that I know the world will want to hear… |

9. On or about January 19, 2018, various news outlets published reports speculating that Ms. Manigault-Newman had secretly recorded communications that potentially involved Confidential Information.

10. On or about January 25, 2018, counsel for Claimant, Charles J. Harder, sent a letter reminding Ms. Manigault-Newman of her obligations under the Agreement and demanding confirmation that she, among other things:

    a. Does not intend to disclose Confidential Information to any person;

    b. Does not intend to make disparaging statements in violation of the Agreement;

    c. Has not retained any Confidential Information, including any audio or video recordings; and

    d. Does not intend to disclose any recordings of Confidential Information to any person.

11. Mr. Harder's letter also demanded that Mr. Manigault-Newman deliver all Confidential Information, including any and all recordings, to Mr. Harder's office, and certify that she did not and will not retain any Confidential Information. A true and correct copy of Mr. Harder's letter is attached hereto as **Exhibit B**.

12. Despite Mr. Harder's demand that Ms. Manigault-Newman respond within forty-eight (48) hours of transmission, Ms. Manigault-Newman did not respond to this letter.

13. Thereafter, Ms. Manigault-Newman materially breached the Agreement by, among other things, disclosing Confidential Information and making disparaging statements about Trump Persons, as set forth immediately below.

/ / /

-4-
STATEMENT OF CLAIM

14. In an episode of the television program *Celebrity Big Brother*, aired by CBS on February 8, 2018, Ms. Manigault-Newman stated:

    a.    "I was haunted by tweets every single day, like what is he going to tweet next?"

    b.    "I tried to be that person [to stop the tweets] and then all of the people around him [President Trump] attacked me. It was like 'Keep her away' 'Don't give her access.' 'Don't let her talk to him.'"

    c.    "It's not my circus. Not my monkeys."

    d.    "I'd like to say it's not my problem but I can't say that because, like, it's bad."

    e.    [Question by Ross Mathews: "Should we be worried?"] Ms. Manigault-Newman nods.

    f.    [Question by Ross Mathews: "I need you to say 'No, it's going to be OK.'"] Ms. Manigault-Newman responds: "No, it's not going to be OK. It's not. It's so bad."

    g.    [Question by Ross Mathews: "Would you vote for him [Mr. Trump] again [for President?"] Ms. Manigault-Newman responds: "God no, never. In a million years, never."

    h.    "It's just been so incredibly hard to shoulder what I shouldered because I was so loyal to a person and I didn't realize that by being loyal to him it was going to make me lose a hundred other friends."

    i.    "When you're in the middle of the hurricane it's hard to see the destruction on the outer bands."

15. On or about July 26, 2018, Simon & Schuster issued a press release stating that Gallery Books, a division of Simon & Schuster, planned to publish a book written by Ms. Manigault-Newman entitled, "UNHINGED: An Insider's Account of the Trump White House by Omarosa Manigault Newman" (the "Book"), on August 14, 2018. The press release stated, in part:

-5-
STATEMENT OF CLAIM

> Few have been a member of Donald Trump's inner orbit longer than Omarosa Manigault Newman. Their relationship has spanned fifteen years—through four television shows, a presidential campaign, and a year by his side in the most chaotic, outrageous White House in history. But that relationship has come to a decisive and definitive end, and Omarosa is finally ready to share her side of the story in this explosive, jaw-dropping account.
>
> A stunning tell-all and takedown from a strong, intelligent woman who took every name and number, **UNHINGED is** a must-read for any concerned citizen.
>
> **<u>UNHINGED will be published on August 14, 2018.</u>** Simon & Schuster Audio and Simon & Schuster UK will simultaneously publish.

16. On or about July 27, 2018, Ms. Manigault-Newman announced the Book via Twitter by linking to the listing of the Book on Amazon.com. The listing states, in part:

> **The former Assistant to the President and Director of Communications for the Office of Public Liaison in the Trump White House provides an eye-opening look into the corruption and controversy of the current administration.**
>
> Few have been a member of Donald Trump's inner orbit longer than Omarosa Manigault Newman. Their relationship has spanned fifteen years—through four television shows, a presidential campaign, and a year by his side in the most chaotic, outrageous White House in history. But that relationship has come to a decisive and definitive end, and Omarosa is finally ready to share her side of the story in this explosive, jaw-dropping account.
>
> A stunning tell-all and takedown from a strong, intelligent woman who took every name and number, *Unhinged* is a must-read for any concerned citizen.

17. Excerpts from the Book containing Confidential Information and disparaging statements, in violation of the Agreement, have been published on the internet at numerous websites, including:

///

     a.    https://www.thedailybeast.com/omarosa-book-excerpt-trump-has-mental-decline-that-could-not-be-denied

     b.    https://www.washingtonpost.com/politics/2018/08/13/why-omarosas-comments-about-trump-race-will-have-little-impact/?utm_term=.b87de7ab8aab

     c.    https://www.theguardian.com/us-news/2018/aug/10/omarosa-trump-book-the-apprentice-memoir

     d.    https://www.cnn.com/2018/08/11/politics/omarosa-tell-all-white-house/index.html

18. On or about August 12, 2018, during an interview with NBC's *Meet the Press* to promote the Book, Ms. Manigault-Newman stated:

> Donald Trump is a con and has been masquerading as someone who is actually open to engaging with diverse communities. But…he is truly a racist.

19. During her interview on *Meet the Press*, Ms. Manigault-Newman also stated:

> They continue to deceive this nation by how mentally declined [Mr. Trump] is, how difficult it is for him to process complex information, how he is not engaged in some of the most important decisions that impacts (sic) our country.

20. During her interview on *Meet the Press*, Ms. Manigault-Newman also released an surreptitious recording that purports to be a conversation between Ms. Manigault-Newman and General John F. Kelly, the White House chief of staff, which Ms. Manigault-Newman alleges was recorded in the Situation Room of the White House. If accurate, this recording contains Confidential Information.

21. On August 13, 2018, during an interview with *The Today Show* to promote the Book, Ms. Manigault-Newman released an surreptitious recording that purports to be a conversation between Ms. Manigault-Newman and Mr. Trump. If accurate, this recording contains Confidential Information. During this interview, Ms. Manigault-Newman disclosed additional Confidential Information and made disparaging statements, in violation of the Agreement.

-7-
STATEMENT OF CLAIM

22. Also on August 13, 2018, in a subsequent interview on MSNBC's "*Velshi & Ruhle*" to promote the Book, Ms. Manigault-Newman said she "absolutely" has more tapes in her possession, but has not yet decided whether she will release them publicly. During this interview, Ms. Manigault-Newman disclosed additional Confidential Information and made disparaging statements, in violation of the Agreement.

23. Remedies for Ms. Manigault-Newman's breach of the Agreement include monetary damages, injunctive relief and all other remedies available at law and equity. With regard to injunctive relief, Paragraph 7 of the Agreement provides, in pertinent part:

> a. <u>Consent to Injunction</u>. A breach of any of your promises or agreements under this agreement will cause the Company, Mr. Trump and each other Trump Person irreparable harm. Accordingly, to the extent permitted by law, and without waiving any other rights or remedies against you at law or in equity, you hereby consent to the entry of any order, without prior notice to you, temporarily or permanently enjoining you from violating any of the terms, covenants, agreements or provisions of this agreement on your part to be performed or observed. Such consent is intended to apply to an injunction of any breach or threatened breach.

24. The Agreement provides that the prevailing party in any dispute arising out of the Agreement shall be entitled to "an award of reasonable legal fees and costs." (Ex. A, ¶ 8.c.)

25. In addition, Paragraph 8.b of the Agreement provides for arbitration of this dispute, stating:

> <u>Arbitration</u>. Without limiting the Company's or any other Trump Person's right to commence a lawsuit in a court of competent jurisdiction in the State of New York, **any dispute arising under or relating to this agreement** may, at the sole discretion of each Trump Person, be submitted to **binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association**, and you hereby agree to and will not contest such submissions. Judgment upon the award rendered by an arbitrator may be entered in any court having jurisdiction.

(Emphasis added.)

# FIRST CAUSE OF ACTION

## Breach of Written Agreement

26. Claimants incorporate each and every allegation in the preceding paragraphs as through set forth in full herein.

27. The Company and Respondent entered into the Agreement, effective on or about July 16, 2016.

28. The Company has performed all of the covenants and conditions of the Agreement to be performed on its part, if any, except to the extent that such performance has been hindered, prevented, excused or waived.

29. Ms. Manigault-Newman materially breached the Agreement by, among other things, disclosing Confidential Information and making disparaging statements in an episode of the television program "Celebrity Big Brother."

30. Ms. Manigault-Newman further materially breached the Agreement by, among other things, making alleged unauthorized recordings of people in the White House, including, without limitation, Mr. Trump and Mr. Kelly, and releasing those recordings to the press.

31. The Company is informed and believes, and based thereon alleges, that Ms. Manigault Newman has further materially breached the Agreement by, among other things, disclosing Confidential Information and making disparaging statements in the Book. The Company has not had an opportunity to review and analyze the Book, which is scheduled for release on the date of this filing. On this basis, the Company reserves the right to supplement this Statement of Claim at the appropriate time to identify the Confidential Information disclosed in the Book, and disparaging statements made therein about the Company and Trump Persons, in violation of the Agreement.

32. As a result of Ms. Manigault-Newman's breaches of the Agreement, the Company has suffered damages in the millions of dollars, the specific amount of which will be presented and proven at arbitration.

///

33. Unless Ms. Manigault-Newman is restrained from further breaches of the Agreement, the Company will suffer and continue to suffer irreparable harm.

WHEREFORE, the Company requests the following relief:

1. For general, special, consequential and incidental damages according to proof at arbitration;

2. For a preliminary and permanent injunction enjoining Ms. Manigault-Newman from: (a) further disclosure or publication of any Confidential Information; and (b) making further disparaging statements in violation of the Agreement.

3. For a preliminary and permanent injunction requiring Ms. Manigault-Newman to: (a) identify and turn over all Confidential Information, including all audio and/or video recordings in her possession, custody or control of Trump Persons and/or of all persons she recorded in the White House; (b) confirm under penalty of perjury that she has complied with subsection (a); and (c) preserve and turn over all communications to any persons regarding Confidential Information or her disparagement statements in violation of the Agreement;

4. For attorneys' fees;

5. For costs of arbitration;

6. For prejudgment and post judgment interest at the maximum legal rate; and

7. For such other and further relief as the Arbitrator may deem just and proper.

DATED: August 14, 2018

_____
CHARLES J. HARDER
Counsel for Claimant

-10-
STATEMENT OF CLAIM