# EXHIBIT V

**AMERICAN ARBITRATION ASSOCIATION**®

**EMPLOYMENT ARBITRATION RULES
DEMAND FOR ARBITRATION**

**To ensure your demand is processed promptly, please include a copy of the Arbitration Agreement, Plan or Contract.**

| | |
|---|---|
| **Mediation:** If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box ☐. | |

### Parties (Claimant)

| | | |
|---|---|---|
| Name of Claimant:  Jessica Denson | | |
| Address:  3925 Big Oak Drive #4 | | |
| City:  Studio City | State:  California | Zip Code: 91604 |
| Phone No.:  310-927-2300 | Fax No.: | |
| Email Address: | | |
| Representative's Name (if known):  David K. Bowles and Maury B. Josephson | | |
| Firm (if applicable):  Law Offices of David K. Bowles and Law Office of Maury B. Josephson | | |
| Representative's Address:  14 Wall Street, 20th Floor | | |
| City:  New York | State:  New York | Zip Code: 10005 |
| Phone No.:  212-390-8842 | Fax No.:  866-844-8305 | |
| Email Address:  David@LawDKB.com; Mbjlaw@Verizon.net | | |

### Parties (Respondent)

| | | |
|---|---|---|
| Name of Respondent:  Donald J. Trump for President, Inc. | | |
| Address:  725 Fifth Ave. | | |
| City:  New York | State:  New York | Zip Code: 10022 |
| Phone No.: | Fax No.: | |
| Email Address: | | |
| Representative's Name (if known):  Lawrence Rosen | | |
| Firm (if applicable):  LaRocca Hornik Rosen Greenberg & Blaha LLP | | |
| Representative's Address:  40 Wall Street, 32nd Floor | | |
| City:  New York | State:  New York | Zip Code: 10005 |
| Phone No.:  212-530-4822 | Fax No.: | |
| Email Address:  LRosen@LHRGB.com | | |

| |
|---|
| Claim: What was/is the employee/worker's annual wage range? ☐ Less than $100,000  ☐ $100,000-$250,000  ☐ Over $250,000<br>*Note: This question is required by California law.* |
| Amount of Claim:  Declaratory Relief |
| Claim involves: ☑ Statutorily Protected Rights  ☑ Non-Statutorily Protected Rights |

AMERICAN ARBITRATION ASSOCIATION®

**EMPLOYMENT ARBITRATION RULES
DEMAND FOR ARBITRATION**

---

In detail, please describe the nature of each claim. You may attach additional pages if necessary:

Claim for a declaration of invalidity of a non-disclosure agreement containing restrictive covenants. Claim is brought as a class action on behalf of all persons similarly situated.

---

Other Relief Sought: ☑ Attorneys Fees   ☐ Interest   ☑ Arbitration Costs   ☐ Punitive/ Exemplary
☐ Other:

---

Please describe the qualifications for arbitrator(s) to hear this dispute:

Experience in employment arbitration, particularly in restrictive covenants under New York law; experience in class arbitration.

---

Hearing: Estimated time needed for hearings overall:                     hours  or  5                     days

---

Hearing Locale:  New York

*(check one)* ☐ Requested by Claimant   ☑ Locale provision included in the contract

---

Filing Fee requirement or $300 (max amount per AAA)

Filing by Company: ☐ $2,200 single arbitrator  ☐ $2,800 three arbitrator panel          $3,350 as per Class Action Rule 11

---

Notice: To begin proceedings, **please send a copy of this Demand and the Arbitration Agreement, along with filing fee as provided for in the Rules,** to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. Send the original Demand to the Respondent.

---

Signature (may be signed by a representative):          Date:
                                                                 2/20/19

---

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at1-800-778-7879. If you have any questions regarding the waiver of administrative fees, AAA Case Filing Services can be reached at 877-495-4185. Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879.

**BEFORE THE AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| JESSICA DENSON<br><br>                    Claimant,<br><br>          v.<br><br>DONALD J. TRUMP FOR PRESIDENT, INC.<br><br>                    Respondent. | Case No. _____<br><br><br>**STATEMENT OF CLAIM** |

## I.       STATEMENT OF CLAIM

Claimant Jessica Denson ("Claimant"), on behalf of herself and all others similarly situated, brings this Statement of Claim against respondent Donald J. Trump for President, Inc. (the "Campaign" or "Respondent") (the "Class Claim").  The Class Claim seeks an Award invalidating, as a matter of federal, state and local law, the ubiquitous non-disparagement and nondisclosure agreements the Campaign required every or nearly every employee, contractor and volunteer to sign.  Claimant states as follows in support of the Class Claim:

## II.      PRELIMINARY STATEMENT

1.       Claimant is a *summa cum laude* graduate of the George Washington University, an award-winning journalist, and a member of SAG-AFTRA with film and TV credits.  Claimant is a registered Republican.

2.       The Campaign is the campaign organization that successfully obtained the election of Donald J. Trump as President of the United States in 2016.

3.       The Campaign required all employees, contractors, and volunteers to execute a virtually identical nondisclosure agreement ("Form NDA") as a condition of working with the Campaign.

4.       The Form NDA prohibits extraordinarily broad categories of communications and actions

that would otherwise be protected by the Constitution and multiple federal, state and local laws and regulations in favor of an extraordinarily broad group of persons and entities, including the Campaign, President Trump and members of President Trump's family and the companies they own or with which they are involved, all of whom are defined in the Form NDA as "Trump Persons."

5.      The Form NDA is fatally flawed and should be invalidated as a matter of law for at least the following reasons:

> it violates federal, state and local public policy by allowing any Trump Person to impose grievous financial penalties on individuals in retaliation for such individuals' assertion of their statutory rights as employees.  As an example, in Claimant's case, the Campaign used the Form NDA to unlawfully retaliate against her for filing a sex discrimination complaint in New York State court and obtain a $50,000 award against her in a secret arbitration proceeding.  The Form NDA can likewise be used to retaliate against and impose monetary penalties on persons filing charges or asserting claims of: other kinds of discrimination and harassment; violation of campaign finance laws and standards; corruption; fraud and financial irregularity; failure to pay wages and other compensation; and violation of occupational safety and health standards;

> it is unenforceable as it is impermissibly vague, allowing Trump Persons to bring secret arbitrations over any negative statement about a Trump Person or disclosure of any "information … that Mr. Trump insists remain private or confidential";

> it subjects any person who has ever signed it, including those who have entered government service and those who remained in the private sector, to grievous financial penalty for the mere act of criticizing the sitting President of the United States or other "Trump Persons," as defined;

> it is unenforceable because it lacks proper temporal or geographic limitations;

> it lacks a legitimate purpose;

> it is void as a prior restraint against free speech by a governmental actor; and

> it is procedurally and substantively unconscionable.

6.      The Form NDAs effectively strip employees, contractors and volunteers of their ability to pursue any of their rights to redress workplace misconduct.  Anything and everything they could do will of necessity contain some information that a Trump Person could find disparaging or a

disclosure of confidential information.  Any complaint to the Equal Employment Opportunity Commission, Department of Labor or National Labor Relations Board, just to name a few, could result in a secret arbitration and a costly award.

7.      In the nineteenth and early twentieth centuries, employers used another common tactic: imposing liability and financial penalties on employees if they joined a labor union.  Congress outlawed these "yellow dog contracts" with the Norris-LaGuardia Act in 1932.  *See* 29 U.S.C. §103.  The Campaign, President Trump and the Trump Persons named in the Form NDA have now managed to revive the tactic, turning it on the exercise of all employee rights.  The Form NDA is nothing short of a "yellow dog contract" for the twenty-first century.

## III.    FACTUAL ALLEGATIONS

### Factual and Procedural Background

8.      Respondent formally began the Campaign to elect Donald J. Trump to the office of President of the United States in or about June of 2015.

9.      From the time the Campaign began until its conclusion in November of 2016, Respondent required its employees, contractors, and volunteers to sign the Form NDA.

10.     The Form NDA was substantially similar for all employees, contractors, and volunteers. Claimant's copy of the Form NDA is attached as Exhibit A hereto.

11.     The Form NDA had the following critical terms:

    a.  It defined "Confidential Information" as, *inter alia*, "all information . . . that Mr. Trump insists remain private or confidential . . . ."  Ex. A at ¶ 6(a).

    b.  It defined "Family Member Company" as "any entity . . . that . . . was created for or for the benefit of any Family Member or is controlled or owned by any Family Member."  Id. at ¶ 6(c).

    c.  It bound the worker "not to disclose . . . any Confidential Information" and "not to

use any Confidential Information in any way detrimental to" Mr. Trump, his family, or any Family Member Company.  Id. at ¶ 1.

d.  It forbade the disclosure of Confidential information "[d]uring the term of your service and *at all times thereafter*."  Id. at ¶ 1 (emphasis added).

e.  It forbade any disparagement of, *inter alia*, Mr. Trump or any Family Member Company, and it did so "[d]uring the term of your service and *at all times thereafter.*" Id. at ¶ 2 (emphasis added).

f.  It allowed permissive arbitration of any claims "arising under or relating to" the Form NDA, requiring that "any dispute arising under or relating to this agreement *may, at the sole discretion of each Trump Person*, be submitted to binding arbitration."  Id. at ¶ 8(b) (emphasis added).

g.  "Trump Person" was defined so as to include Mr. Trump, his family members and any Trump Company.  Id. at ¶ 6(g).

h.  "Trump Company" was defined to include any company that "was created by or for the benefit of Mr. Trump or is controlled or owned by Mr. Trump."  Id. at ¶ 6(c).

i.  It shifted fees so that the prevailing party in any lawsuit or arbitration was to be awarded fees and costs.  Id. at ¶ 8(c).

j.  It stated that the "laws of the State of New York" were to govern any disputes under the NDA.  Id. at ¶ 8(a).

12. On or about August 18, 2016, Respondent hired Claimant.

13. On or about that same date, as a condition of Claimant's hire, Claimant executed an NDA in the form of the Form NDA (the "Claimant NDA", and together with the Form NDA, the "NDAs").

14. On information and belief, the Campaign did not at that time execute the Claimant NDA.

15. The Campaign hired Claimant as a national phone bank administrator, but due to Claimant's strong skillset, shortly thereafter promoted her to Hispanic Engagement Director.

16. The Campaign slandered and systematically sexually discriminated against Claimant in various ways that are clearly in violation of New York law, including, *inter alia*, the New York State and New York City Human Rights Laws.  Such sex discrimination also violates federal law, *i.e.* Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* as well as the laws of every other or nearly every other State and those of hundreds of municipalities had the discrimination and harassment been engaged in therein.

17. On or about November 10, 2017, Claimant filed a lawsuit against the Campaign in the New York Supreme Court, County of New York, entitled <u>Jessica Denson v. Donald J. Trump for President, Inc.</u>, Index No. 101616-17 (the "State Court Action"), to address the sex discrimination and slander perpetrated by the Campaign.

18. On or about December 20, 2017, in response to the State Court Action, the Campaign filed an expressly retaliatory arbitration (the "Sham Arbitration") to punish Claimant for enforcing her right to be free of a discriminatory and hostile workplace.

19. In its arbitration demand, the Campaign stated that Claimant "breached her obligations [under the Claimant NDA] . . . in connection with a lawsuit she filed against [the Campaign] in New York Supreme Court."  A copy of the arbitration demand in the Sham Arbitration is attached hereto as Exhibit B.

20. In March of 2018, the Campaign moved the court in the State Court Action to compel Claimant's participation in the Sham Arbitration.

21. In March of 2018, shortly after the Campaign began the Sham Arbitration, Claimant sued in federal court in the Southern District of New York, in an action entitled <u>Jessica Denson v. Donald J. Trump for President, Inc.</u>, Civil Action No. 18-cv-2690 (JMF), to have the

Claimant NDA declared invalid (the "Federal Court Action").

22. On August 9, 2018, the court in the State Court Action denied the Campaign's motion, finding that all of Claimant's claims, including sex discrimination, harassment, and common law claims, were outside the scope of the Claimant NDA.

23. Undeterred by the ruling in the State Court Action that Claimant's sex discrimination claims were non-arbitrable, the Campaign continued the Sham Arbitration.

24. Relying on the ruling of non-arbitrability in the State Court Action, Claimant did not participate in the Sham Arbitration.

25. No party in the Sham Arbitration ever raised or argued the issue of invalidity of the Claimant NDA.

26. On August 30, 2018, the court in the Federal Court Action ruled that any action to invalidate the Claimant NDA must be brought before an arbitrator in the first instance.  The federal court then dismissed the Federal Court Action.

27. On December 12, 2018, the arbitrator in the Sham Arbitration issued a final award of $49,507.64, despite the fact that Claimant never participated in that arbitration.

28. As of the date of this arbitration demand, motions are pending in both the Federal Court Action and the State Court Action to either confirm or vacate the award in the Sham Arbitration, but at no point in any action has the validity or invalidity of the NDAs been tested.

29. Consistent with the court's ruling in the Federal Court Action that any action to invalidate the Claimant NDA must be brought before an arbitrator in the first instance, Claimant now brings this arbitration to have the NDAs declared invalid under New York and federal law.

**Invalidity as Against Public Policy**

30. The NDAs are invalid because they are against public policy.  The NDAs violate federal,

state and local public policy by allowing any Trump Person to impose grievous financial

penalties on individuals in retaliation for such individuals' assertion of their statutory rights

as employees.

31. As an example, in Claimant's case, the Campaign used the Claimant NDA to unlawfully

retaliate against her for filing a sex discrimination complaint in New York State court and

obtain a $50,000 award against her in a secret arbitration proceeding.

32. Laws on the federal, state and local level prohibit the Campaign from retaliating against

Claimant for asserting such claims in court or before an administrative agency.  These laws

include Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a); the New York State

Human Rights Law, Executive Law §296(7); and NYCHRL, NYC Admin. Code §8-107(7).

33. The Form NDA can likewise be used to retaliate against and impose monetary penalties on

persons filing charges or asserting claims – just to name a few – of other kinds of

discrimination and harassment; violation of campaign finance laws and standards; corruption;

fraud and financial irregularity; failure to pay wages and other compensation; and violation

of occupational safety and health standards.

34. Federal, state and local law universally prohibit such retaliation.  *See*, *generally*, *Fact Sheet:*

*Retaliation Based on Exercise of Workplace Rights Is Unlawful*, published jointly by the

United States Department of Justice, National Labor Relations Board, United States

Department of Labor and the Equal Employment Opportunity Commission.  A copy of the

Fact Sheet is attached hereto as Exhibit C.

35. As stated above in Paragraph 18 *et seq.*, the Campaign used the arbitration clause in the

Claimant NDA to retaliate against Claimant for bringing the State Court Action to enforce

her rights to be free of a discriminatory and hostile workplace.

36. Since arbitrations are usually confidential, it is impossible to know absent discovery how

many other Campaign workers have been threatened with arbitration or actually compelled to arbitration in retaliation for enforcing their rights under these or any other laws.

37. Indeed, in the arbitrator's final award in the Sham Arbitration, he noted that "all documents and proceedings in this arbitration are confidential pursuant to AAA rules."

38. The public has a right to know of the Campaign's abuses and retaliatory actions, and this arbitration is brought as a class arbitration in part to ensure it will be available to the public.

39. Since the Campaign is using the Form NDA as an impermissible tool of retaliation against individuals who seek to enforce their rights to be free of a discriminatory and hostile workplace, it is invalid.

**<u>Invalidity as Impermissibly Vague</u>**

40. The NDAs are also invalid due to the impermissible vagueness of their terms.

41. Courts only enforce confidentiality clauses in employment agreements to the extent necessary to protect the interests of the employer.  In practice, this means that the courts will protect information such as trade secrets or confidential customer lists.

42. The definition of Confidential Information in the Form NDA is so vague as to be unintelligible.

43. As stated above at Paragraph 11.a, the Form NDA defines "Confidential Information" to include "all information . . . that Mr. Trump insists remain private or confidential . . . ."  Ex. A at ¶ 6(a).

44. It is impossible for any signatory to the Form NDA to know what information Mr. Trump might insist remain private or confidential.

45. The Form NDAs purport to protect not only Mr. Trump, but also any "Trump Company" and any "Family Member Company" – indeed, the entire category of "Trump Persons."  Ex. A at ¶ 1(c), ¶ 6(g).

46. Upon information and belief, these definitions would encompass over 500 individual companies, only approximately half of which use the "Trump" branded name.

47. It is impossible for any signatory to know what companies and persons the NDAs purport to protect.

48. The NDAs are therefore impermissibly vague and subject their signatories to retaliatory penalties without any reasonable basis upon which they can determine that they might be liable.

### Invalidity due to Lack of Limitations

49. The law rarely allows restrictive covenants of infinite scope: they must be limited to a geographic and temporal range to be enforceable.  The NDAs have no such limitations and therefore re invalid.

50. The NDAs forbid the disclosure of Confidential Information "[d]uring the term of your service and at all times thereafter."  Ex. A at ¶ 1.  This is a restrictive covenant of infinite duration and therefore is invalid.

51. The NDAs forbid disparagement "[d]uring the term of your service and at all times thereafter."  Ex. A at ¶ 1.  This is a restrictive covenant of infinite duration and therefore is invalid.

52. The NDAs provide no geographic scope at all, and therefore are invalid.

### Invalidity due to Lack of Legitimate Interest

53. The Form NDA is invalid because it lacks any legitimate protectable interest that would allow the imposition of draconian penalties for its alleged violation.

54. Restrictive covenants are only valid if they are no greater than is required for the protection of the legitimate interest of the employer, do not impose undue hardship on the employee, and are not injurious to the public.  The Form NDA is invalid for all three of these reasons.

55. The Form NDA purports to protect the disclosure of the "personal life, political affairs, and/or business affairs of Mr. Trump or of any Family Member, including but not limited to, the assets, investments, revenue, expenses, taxes, financial statements, actual or prospective business ventures, contracts, alliances, affiliations, relationships, affiliated entities, bids, letters of intent, term sheets, decisions, strategies, techniques, methods, projections, forecasts, customers, clients, contacts, customer lists, contact lists, schedules, appointments, meetings, conversations, notes, and other communications of Mr. Trump, any Family Member, any Trump Company or any Family Member Company."  Ex. A at ¶ 6(a).

56. The Campaign has no legitimate interest in forbidding the disclosure of this vast and vague list of information.

57. The NDAs impose undue hardship on the employees.

58. The NDAs are injurious to the public, because the public has an interest in information regarding the candidates for President of the United States.

## Invalidity as a Prior Restraint by a State Actor

59. The NDAs are invalid because they impermissibly infringe on the rights of free speech of Claimant and the class via the exercise of state power by President Trump using the Campaign as a cutout.

60. President Trump, after the election and while acting as President of the United States, has indicated his interest in exercising the authority of the United States to enforce the Form NDA.

61. On January 29, 2019, President Trump tweeted:

   A low level staffer that I hardly knew named Cliff Sims wrote yet another boring book based on made up stories and fiction. He pretended to be an insider when in fact he was nothing more than a gofer. He signed a non-disclosure agreement. He is a mess!

62. On information and belief, President Trump's reference to the "non-disclosure agreement" is

a reference to the Form NDA.

63. On the same date, January 29, 2019, Michael Glassner, a representative of the Campaign, retweeted President Trump's tweet, adding "[t]he Trump campaign is preparing to file suit against Cliff Sims for violating our NDA."

64. On information and belief, as implied by the timing of the tweets, President Trump is directing the actions of the Campaign in enforcing the Form NDA.

65. President Trump is therefore using the Campaign as a private surrogate to quash the free speech rights of former Campaign workers, including Claimant.  Indeed, any person who has ever signed the Form NDA, whether or not he or she has entered into government service, subjects himself or herself to grievous financial penalty for the mere act of engaging in constitutionally protected criticism of the sitting President of the United States.

66. When a private entity steps into the shoes of a state actor, the First Amendment is implicated, and prior restraints against free speech are void.

67. Both the First Amendment and New York law prohibit prior restraints on free speech by a state actor.

68. Accordingly, the NDAs are invalid for this reason as well.

**Invalidity Due to Unconscionability**

69. The NDAs are also unconscionable, and therefore are invalid.

70. Contracts are unconscionable when there is a lack of a meaningful choice by one party and where contractual terms are present that unreasonably favor one party.

71. Here, there was a lack of meaningful choice on the part of the workers for the Campaign: if they wished to work for the Campaign, they were forced to sign the Form NDA.

72. Further, the terms of the NDAs are so one-sided as to unreasonably favor the Campaign.

73. Every term in the NDAs runs in favor of the Campaign and the Trump Persons; none run in

favor of the worker.

74. For example, the worker is forbidden from disparaging the Campaign, or any of the Trump entities, but the Campaign and the Trump entities are not forbidden from disparaging the worker.  Ex. A at ¶ 2.

75. The worker is forbidden from disclosing "Confidential Information," which includes personal information, but the Campaign is not forbidden from disclosing personal information about the worker.  Id. at ¶ 1, ¶ 6(a).

76. The worker consents to an injunction, but the Campaign and Trump Persons do not.  Id. at ¶ 7(a).

77. The worker consents to indemnify the Campaign and Trump Persons, but it is not reciprocal. Id. at 7(b).

78. Perhaps worst of all, the arbitration clause is both unilateral and discretionary on the part of the Campaign and Trump Persons.  The clause is expressly made "[w]ithout limiting the Company's or any other Trump Person's right to commence a lawsuit," and holds that any disputes "may, at the sole discretion of each Trump Person, be submitted to binding arbitration."  Id. at ¶ 8(b).

79. The NDAs do not even provide for compensation for the worker, or any consideration beyond being allowed to work for the Campaign.

80. In sum, the NDAs are so one-sided in favor of the Campaign as to be unconscionable.

**Class Action Allegations**

81. The arbitration clause in the Claimant NDA and the Form NDA do not exclude arbitration as a class. Ex. A at ¶ 8(b).

82. The arbitration clause selects the American Arbitration Association ("AAA") as the applicable arbitral body.  Id.

83. As arbitration as a class is not excluded, this matter can proceed by class arbitration under Supplemental Rule 3 of the AAA.

84. Upon information and belief, the Campaign employed thousands of employees, independent contracts, and volunteers, all of which signed the NDAs.  Under Supplemental Rule 4(a)(1), the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable.

85. Upon information and belief, the provisions of the Form NDA are substantially consistent across the class, and all such forms are subject to New York law.  Accordingly, there are questions of law and fact common to the class under Supplemental Rule 4(a)(2).

86. Claimant's claims are representative of the claims of the class under Supplemental Rule 4(a)(3).

87. Claimant has energetically pursued her rights in the State Court Action, the Federal Court Action, and now in the current arbitration, and is perfectly suited to fairly and adequately protect the interests of the class under Supplemental Rule 4(a)(4).

88. Claimant has retained competent counsel who are representing her in both the State Court Action and the Federal Court Action, and who will fairly and adequately protect the interests of the class, pursuant to Supplemental Rule 4(a)(5).

89. As stated above, Claimant and each member of the class has entered into a substantially similar NDA with a substantially similar or identical arbitration clause.  Therefore, Supplemental Rule 4(a)(6) is satisfied.

90.  The class action venue is superior to individual arbitration because questions of law and fact common to the members of the class predominate over any questions affecting only individual members, pursuant to Supplemental Rule 4(b).  Indeed, since the only claim alleged here is invalidity of the NDAs, there are only common questions of law and fact here.

**First Cause of Action**
**Declaratory Judgment**

91. The NDAs provide that New York law applies here.

92. New York law provides for declaratory judgment of the validity or invalidity of an agreement.  CPLR § 3001.

93. The federal Declaratory Judgment Act, 28 U.S.C. § 2201 provides likewise for actual controversies within the federal courts' jurisdiction.

94. For the reasons stated above, the NDAs are invalid.

95. Claimant therefore seeks declaratory relief that the NDAs are invalid and unenforceable, on behalf of herself and all others similarly situated.

**WHEREFORE,** Claimant, on behalf of herself and all employees, independent contractors, and volunteers for the Campaign who have signed a Form NDA, prays for relief as follows:

A.      Designation of this action as a class action;

B.      Designation of Claimant as a representative claimant of all employees, independent contractors, and volunteers for the Campaign who have signed a Form NDA;

C.      Declaratory judgment that the Form NDA and any similar NDA executed by any member of the class, including Claimant, is invalid;

D.      Assessing Claimant's reasonable costs and attorneys' fees, along with all notice costs, forum fees and arbitrator compensation against the Campaign in their entirety; and

E.      Such other relief as the arbitrator(s) deem(s) just and equitable.


Dated: New York, New York
       February 19, 2019

THE LAW OFFICE OF DAVID K. BOWLES, PLLC

_____
David K. Bowles
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
DKB@LawDKB.com

THE LAW OFFICE OF MAURY B. JOSEPHSON, P.C.

For    _____
Maury B. Josephson, Esq.
626 RXR Plaza
Uniondale, New York 11556
Tel. (516) 343-0090
Fax (516) 977-1315
Email: mbjlaw@verizon.net

*Attorneys for the Claimant*