EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------- X
                                           :
JESSICA DENSON et. al,                     :
                                           :
                    *Plaintiff*,           :
                                           :
                                           :   Case No. 20-cv-4737
              vs.                          :
                                           :
DONALD J. TRUMP FOR PRESIDENT, INC.,       :
                                           :
                    *Defendant*s.          :
                                           :
----------------------------------------- X


**BRIEF OF *AMICI CURIAE* POST-EMPLOYMENT RESTRICTIONS EXPERTS
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


Neal H. Klausner
Marissa L. Comart
DAVIS & GILBERT LLP
1740 Broadway
New York, NY 10019
(212) 468-4992
nklausner@dglaw.com
mcomart@dglaw.com


*Amici Curiae*

## TABLE OF CONTENTS

INTEREST OF AMICI CURIAE .................................................................... 1

ARGUMENT ................................................................................................. 2

   I.   The NDA Is Unenforceable Because It Is Not Reasonably Limited in Time ........... 2

   II.  The NDA Is Unenforceable Because It Lacks Sufficient Definiteness .................... 4

   III. The NDA Is Broader Than Necessary to Protect the Campaign's Legitimate

       Interests ................................................................................................. 6

   IV. The Court Should Not "Blue Pencil" the NDA ......................................... 8

CONCLUSION ........................................................................................... 11

CERTIFICATE OF SERVICE ...................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Cases** ...........................................................................................................................**Page(s)**

*Alter v. Bogoricin*,
   97 Civ. 0662 (MBM), 1997 U.S. Dist. LEXIS 17369 (S.D.N.Y. Nov. 6, 1997) ................. 4

*AM Medica Communs. Group v. Kilgallen*,
   261 F. Supp. 2d 258 (S.D.N.Y. 2003) ................................................................................. 8

*Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*,
   59 A.D.3d 97 (App. Div. 1st Dept. 2008) ...................................................................... 2, 3

*Ashland Mgmt Inc. v. Janien*,
   82 N.Y.2d 395 (1993) ........................................................................................................ 7

*BDO Seidman v. Hirshberg*,
   93 N.Y.2d 382 (1999) ............................................................................................ 2, 6, 8, 9

*Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*,
   842 F.2d 578 (2d Cir. 1987) .............................................................................................. 4

*Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*,
   1 F. Supp. 3d 224 (S.D.N.Y. 2014) .................................................................................. 5

*Columbia Ribbon, & Carbon Mfg. Co. v. A-1-A Corp.*,
   42 N.Y.2d 496, 498 (1977) ........................................................................................... 6, 8

*Crippen v. United Petroleum Feedstocks, Inc.*,
   245 A.D.2d 152 (1st Dep't 1997) ...................................................................................... 8

*Crye Precision LLC v. Duro Textiles, LLC*,
   689 Fed. Appx. 104 (2d Cir. 2017) ................................................................................... 8

*Elexco Land Servs. v. Hennig*,
   No. 11-CV-214, 2012 U.S. Dist. LEXIS 152240 (W.D.N.Y. Oct. 23, 2012) .................... 10

*Estee Lauder Cos. v. Batra*,
   430 F. Supp. 2d 158 (S.D.N.Y. 2006) ............................................................................... 8

*Flatiron Health, Inc. v. Carson*,
   19 CIV. 8999 (VM), 2020 U.S. Dist. LEXIS 48699 (S.D.N.Y. Mar. 19, 2020) ................. 9

*Foros Advisors LLC v. Digitalglobe, Inc.*,
   333 F.Supp.3d 354 (S.D.N.Y. 2018) .................................................................................. 5

*L.I. City Ventures v. Urban Compass, Inc.*,
   18 Civ. 5853 (PGG) 2019 U.S. Dist. LEXIS 7782, at *37 (S.D.N.Y. Jan 16, 2019) .......... 6

*Heartland Secs. Corp. v. Gerstenblatt*,
   99 CIV. 3694 (WHP), 2000 U.S. Dist. LEXIS 3496 (S.D.N.Y. March 22, 2000) .............. 3

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp*, *LLC*,
   813 F. Supp. 2d 489 (S.D.N.Y. 2011) ............................................................................. 3, 4

*R.R. Donnelley & Sons Co. v. Fagan*,
   767 F. Supp. 1259 (S.D.N.Y. 1991) .................................................................................. 4

*Reed, Roberts Assocs., Inc. v. Strauman*,
   40 N.Y.2d 303 (1976) ....................................................................................................... 4

*Scott, Stackrow & Co., C.P.A's, P.C. v. Skavina*,
   9 A.D.3d 805 (App. Div. 3rd Dept. 2004) ........................................................................ 9

*Siegel v. Holson Co.*,
   91 CIV. 1739 (JFK), 1991 U.S. Dist. LEXIS 13238 (S.D.N.Y. 1991) ............................... 9

*Stanacard, LLC v. Rubard, LLC*,
   12 CIV. 5176, 2016 U.S. Dist. LEXIS 15721 (S.D.N.Y. Feb. 3, 2016) ............................ 2

*Trump v. Trump*,
   No. 51585/15, Slip Op. (2d Dep't July 1, 2020) ................................................................ 3

*Veramark Techs., Inc. v. Bouk*,
   10 F. Supp. 3d 395 (W.D.N.Y. 2014) ................................................................................ 8

*Wrap-N-Pack, Inc. v. Eisenberg*,
   No. 04-cv-4887 (DRH) (JO), 2007 U.S. Dist. LEXIS 23084 (E.D.N.Y. Mar. 29, 2007)... 10

## Other Authorities

Talia Kaplan, *President Trump calls Mary Trump's Tell-All 'Stupid' and 'Vicious,'*
   Fox News (July 19, 2020) https://www.foxnews.com/politics/ president-trump-
   calls-mary-trumps-tell-all-stupid-and-vicious ..................................................................... 7

Neal H. Klausner, Esq. and Marissa L. Comart, Esq. submit this brief as *amici curiae* in support of Plaintiff Jessica Denson's motion for summary judgment seeking a declaratory judgment that the non-disparagement and non-disclosure provisions of the form contract she signed pursuant to her employment with Defendant Donald J. Trump for President, Inc. (the "Campaign")  (the "NDA"), and any similar contracts the Campaign required any member of the purported class to sign, are invalid and therefore unenforceable.[1]

## INTEREST OF AMICI CURIAE

*Amici curiae* Neal H. Klausner and Marissa L. Comart are partner and associate, respectively, at the law firm Davis & Gilbert LLP, where they have a specialty in contractual post-employment restrictions in New York.  Mr. Klausner is Co-Chair of the Litigation Practice Group, General Counsel of the firm, and a member of the New York City Bar Association's inaugural Trade Secrets Committee.  He is co-author of "Employment Restrictive Covenants and Other Post-Employment Restrictions" in the Fourth and Fifth Editions of the treatise Commercial Litigation in New York State Courts, a New York County Lawyers Association publication. Since the Fourth Edition of the treatise was first published in 2015, Mr. Klausner and Ms. Comart have co-authored annual pocket parts providing updates of current legislative action and new judicial opinions regarding restrictive covenants.   Mr. Klausner has been litigating restrictive covenant disputes for more than 20 years and has published multiple articles in this area of the law, including, relevant to this brief, the New York Law Journal article "Courts Put Down Their Blue Pencils."

*Amici* respectfully submit this brief to aid the Court's consideration of the contractual issues raised by Plaintiff in this case and to explain why, in our opinion, the NDA's non-disclosure and non-disparagement provisions are unenforceable under New York law.

---

[1] No counsel for a party authored this brief in whole or in part.  No party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amici curiae* made a monetary contribution to the preparation or submission of this brief.

1

## ARGUMENT

The NDA's non-disclosure and non-disparagement provisions are unenforceable because they are not reasonable in time, lack sufficient definiteness in the definition of confidential information, and are broader than necessary to protect the Campaign's legitimate interests.  We respectfully do not believe the Court should exercise its equitable discretion to partially enforce them through "blue penciling"  because the non-disclosure and non-disparagement provisions are patently overbroad and appear designed to intimidate the Campaign's employees and former employees rather than tailored to protect the Campaign's legitimate interests.

## I.   The NDA Is Unenforceable Because It Is Not Reasonably Limited in Time

The NDA's non-disclosure and non-disparagement provisions are restrictive covenants. *Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*, 59 A.D.3d 97, 2012 (App. Div. 1st Dept. 2008) (referring to confidentiality agreement as restrictive covenant); *Stanacard, LLC v. Rubard, LLC*, 12 CIV. 5176, 2016 U.S. Dist. LEXIS 15721, at *2 (S.D.N.Y. Feb. 3, 2016) (referring to non-disparagement provision as restrictive covenant)

It is axiomatic under New York law that "a restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee."  *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389 (1999). Reasonableness of the duration of a covenant of a non-unique employee depends on the underlying facts and circumstances.

The NDA prevents the Campaign's employees from, among other things,  (a) disclosing any "confidential information" and (b) "demean[ing] or disprag[ing] publicly" Mr. Trump, his family, or any of his and his family's companies and assets "[d]uring the term of . . . service and at all times thereafter."  (NDA §§ 1, 2).  Public policy militates against enforcement of restrictive covenants such as these that have no time limitation.  As New York's Appellate Division, Second Department, recently held, as time passes and circumstances change, "at least some of

the restrained information" becomes "less significant than it was at the time" the contract was formed. *See Trump v. Trump*, No. 51585/15, Slip Op. at *5 (2d Dep't July 1, 2020). This is particularly true here, as the subject of the NDA—employment during and information obtained in connection with the 2016 election cycle—has concluded. The NDA's perpetual non-disclosure and non-disparagement provisions would in essence provide a lifetime gag order on persons the Campaign employed for a limited period of time to assist the Campaign with a discrete election cycle.

Indeed, the Campaign's legitimate interests largely expired after the 2016 election. The NDA itself recognizes this by limiting other provisions to "the date the [then] current U.S. presidential election cycle is over," *i.e.*, November 8, 2016. (NDA § 6(d)-(e)). That President Trump was subsequently elected and that he is running again does not alter the necessity to require a reasonable temporal limitation on the NDA's restrictive covenants. Under these circumstances, the lack of *any* time limit on the NDA's non-disclosure and non-disparagement provisions—let alone any reasonable limit—renders those covenants unenforceable. *See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp*, *LLC,* 813 F. Supp. 2d 489, 507 (S.D.N.Y. 2011) (finding a ten year non-compete provision to be unreasonable); *Heartland Secs. Corp. v. Gerstenblatt*, 99 CIV. 3694 (WHP), 2000 U.S. Dist. LEXIS 3496, *22 (S.D.N.Y. March 22, 2000) (finding two- and four-year restrictive covenants "patently unreasonable and unenforceable."); *but see Ashland Mgmt.* 59 A.D.3d 97 (unlimited restrictive covenant of non-unique employee is not *per se* unenforceable). While the *Ashland* majority did not deem the confidentiality agreement at issue wholly unenforceable based on its lack of temporal restriction, *Ashland* was a 3-2 decision in which the Court found it may be appropriate to blue pencil the agreement's duration provision because because—unlike in this case—the employer was "legitimately attempting to protect information that it had taken years to develop." *Id.* at 106-07. Here, because partial enforcement is inappropriate as explained further below, the non-disclosure and non-disparagement provisions are unenforceable due to their unlimited duration.

## II.   The NDA Is Unenforceable Because It Lacks Sufficient Definiteness

Under New York law, a contract is only enforceable if the agreement between the parties is "definite and explicit so [that the Parties'] intention may be ascertained to a reasonable degree of certainty."  *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 587 (2d Cir. 1987).  "Under the definiteness doctrine, New York courts will not enforce a material contract term if it is impossible to determine what in fact the parties have agreed to."  *Alter v. Bogoricin*, 97 Civ. 0662 (MBM), 1997 U.S. Dist. LEXIS 17369 at *6 (S.D.N.Y. Nov. 6, 1997); *accord Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 514 (S.D.N.Y. 2011) (analyzing intellectual property provision in employment agreement under definiteness doctrine).

A well-drawn confidentiality agreement defines with particularity the information that is to be kept confidential, such as patents, trade secrets, and non-public customer lists.  *See Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 308 (1976) ("Restrictive covenants will be enforceable to the extent necessary to prevent the disclosure or use of trade secrets or confidential customer information.").  In contrast, the NDA defines Confidential Information to include, among other things, "all information (whether or not embodied in any media) of a private, proprietary or confidential nature or that Mr. Trump insists remain private or confidential."  (NDA § 6(a)).

This is a quintessential example of unenforceable, indefinite language as it is impossible for Plaintiff to ascertain what Mr. Trump may prospectively and unilaterally, and potentially arbitrarily, "insist[] remain private or confidential."  *See R.R. Donnelley & Sons Co. v. Fagan*, 767 F. Supp. 1259, 1263 (S.D.N.Y. 1991) (denying request for injunction to enforce terms of Confidentiality Agreement where employer's definition of Confidential Information "includes, but is not limited to, 'Trade secrets' to the full extent of the definition of that term under Illinois law," but "does not include 'general skills, knowledge and experience' as those terms are defined under Illinois law," and describing the definition as "sweeping," "vague, contradictory and

conclusory"). Any inherently subjective definition, such as this, is per se indefinite. *See, e.g., Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*, 1 F. Supp. 3d 224, 261 (S.D.N.Y. 2014) ("A unilateral declaration of confidentiality relating to an entire commercial field is so vague and indefinite that it could not have provided the requisite particularity that a sophisticated, knowledgeable company . . . would need to ascertain the limits of . . . allegedly confidential information.").

The definition of Confidential Information in the NDA also includes "communications of . . . any Family Member, any Trump Company or any Family Member Company . . . ." (NDA § 6(a)). This is particularly unreasonable because the NDA also includes an expansive definition of "Family Member," including "any member of Mr. Trump's family, including, but not limited to, Mr. Trump's spouse, each of Mr. Trump's children and grandchildren and their respective spouses, including but not limited to Donald J. Trump Jr., Eric F. Trump and Ivanka M. Trump, Tiffany Trump, and Barron Trump, and their respective spouses, children and grandchildren, if any, and Mr. Trump's siblings and their respective spouse and children, if any," and is not limited to any specific topic. (*Id.* § 6(b)). Would the Campaign consider a Family Member to include a distant cousin of President Trump? How about his former spouses or, for that matter, a former spouse of one of his distant cousins? It is impossible to know, given the NDA's vague and indefinite restrictions.

The non-disparagement provision, which refers broadly to "Mr. Trump, any Trump Company, any Family Member, or any Family Member Company or any asset any of the foregoing own, or product or service any of the foregoing offer," suffers from the same failures of definiteness. (NDA § 2). It is impossible to determine its scope without a clear and definitive list of all of the individuals, companies, assets, products, and services that it references. The NDA's vague language "leave[s] no room for legal construction or resolution of ambiguity." *Foros Advisors LLC v. Digitalglobe, Inc.*, 333 F.Supp.3d 354, 360 (S.D.N.Y. 2018).

For this independent reason, this Court should declare that the NDA's non-disclosure and non-disparagement provisions are unenforceable.

### III. <u>The NDA Is Broader Than Necessary to Protect the Campaign's Legitimate Interests</u>

Restrictive covenants are only enforceable to the extent they are "no greater than is required for the protection of the legitimate interest of the employer." *BDO Seidman,* 93 N.Y.2d at 388. In *Columbia Ribbon*, *& Carbon Mfg. Co. v. A-1-A Corp.*, the New York Court of Appeals analyzed a non-disclosure provision that prevented an employee from disclosing to "any person, firm or corporation, the name, address or requirements of any customer or prospective customer of the Company and . . . any other information that he has or shall have acquired during his period of employment, insofar as the same is or may be necessary to protect the Company's business." 42 N.Y.2d 496, 498 (1977). The Court held that this restriction was unenforceable, finding it "clear" that the "broad-sweeping language is unrestrained by any limitations keyed to uniqueness, trade secrets, confidentiality or even competitive unfairness. It does no more than baldly restrain competition." *Id.* at 499.

Likewise, in *L.I. City Ventures v. Urban Compass, Inc.*, this Court refused to enforce a non-disclosure provision because it was "impermissibly overbroad" and "not necessary to protect [the employer's] legitimate interests." 18 Civ. 5853 (PGG) 2019 U.S. Dist. LEXIS 7782, at *37 (S.D.N.Y. Jan. 16, 2019). There, the provision purported to restrain the employee from disclosing "any information to which [she] ha[d] access at [place of employment] and/or which is related to the business of [employer]" regardless of whether that material was proprietary or confidential. *Id.*

For the same reasons, this Court should declare that the NDA's non-disclosure and non-disparagement provisions are unenforceable. The Campaign's sweeping definition of "Confidential Information" is not limited to information that is truly confidential or necessary to protect the Campaign's legitimate interests. Information that "Mr. Trump insists remain private

or confidential" does not, *ipso facto*, become confidential information under New York law justifying judicial protection. For example, the NDA would literally prohibit Plaintiff from disclosing what Mr. Trump had for breakfast if Mr. Trump unilaterally "insist[ed]," though there is no legitimate interest in maintaining the secrecy of that fact. *See Ashland Mgmt Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993) ("[A] trade secret must first of all be secret.").

The NDA also defines "Family Member" so broadly that enforcing the non-disclosure and non-disparagement provisions as they relate to "Family Members" would be absurd and unrelated to legitimate interests of the Campaign. For example, assuming *arguendo* that the provisions could be properly defined (which, as described above, they cannot), Plaintiff would be prohibited from revealing information about or disparaging Donald Trump's niece Mary Trump, who Donald Trump himself publicly revealed was "not exactly a family favorite," and whose book he openly disparaged as "stupid." *See* Talia Kaplan, *President Trump calls Mary Trump's Tell-All 'Stupid' and 'Vicious,'* Fox News (July 19, 2020) https://www.foxnews.com/politics/president-trump-calls-mary-trumps-tell-all-stupid-and-vicious. The Campaign cannot have a legitimate interest in prohibiting criticism about a "Family Member" whom President Trump discloses personal information and criticizes on national television.

Furthermore, the non-disparagement provision encompasses an unreasonably wide range of people, companies, assets, products, or services about whom and which Plaintiff is prohibited from criticizing, including "Mr. Trump, any Trump Company, any Family Member, or any Family Member Company or any asset any of the foregoing own, or product or service any of the foregoing offer." (NDA § 2). For example, the provision would preclude Plaintiff, years after the 2016 election cycle, or even years after Mr. Trump is President, from writing a negative consumer review about a fashion line distributed by Ivanka Trump, or speaking critically about an experience on a Trump golf course. Prohibiting comments that are construed as unflattering to any of the people or things encompassed by the overbroad NDA is not a legitimate interest of the Campaign.

Similarly, the requirement that the signatory somehow prevent their "employees" from demeaning or disparaging the far-reaching group listed in the NDA cannot possibly be tied to a legitimate purpose of the Campaign. Such a provision would require Plaintiff to control the speech of anyone who works for her anywhere at any time. For these reasons, the NDA is unenforceable.

### IV. The Court Should Not "Blue Pencil" the NDA

Under New York law, courts are empowered to "sever and grant partial enforcement for an overbroad employee restrictive covenant." *Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 180 (S.D.N.Y. 2006). Such partial enforcement or "blue-penciling," however, may be justified only if "the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing." *BDO Seidman*, 93 N.Y.2d at 394.

Courts in New York have been unwilling to partially enforce restrictive covenants that are overbroad as a whole. *See, e.g., Columbia Ribbon*, 42 N.Y.2d at 499-500 (declining to sever impermissible language in order to render restrictive covenant reasonable); *Crye Precision LLC v. Duro Textiles, LLC*, 689 Fed. Appx. 104 (2d Cir. 2017) (affirming district court's refusal to blue pencil non-compete clause in an intellectual property license, where the restriction did not contain any geographic or time limitation); *AM Medica Communs. Group v. Kilgallen*, 261 F. Supp. 2d 258, 263 (S.D.N.Y. 2003) (refusing to blue pencil where the contract, including a confidentiality provision, "as a whole overreaches."); *Veramark Techs., Inc. v. Bouk*, 10 F. Supp. 3d 395 (W.D.N.Y. 2014) (refusing to blue pencil overbroad noncompetition provision); *Crippen v. United Petroleum Feedstocks, Inc.*, 245 A.D.2d 152, 153 (1st Dep't 1997) (refusing to blue pencil where "defendant should have drafted the agreement to include such provisions from the start and allowed plaintiff to decide whether to sign").

The New York Court of Appeals put employers on notice more than twenty years ago in *BDO Seidman* that restrictive covenants are disfavored in New York, must be reasonably tailored to an employer's legitimate interests, and that courts may not blue pencil overly broad restrictions. 93 NY2d at 395. *See Scott, Stackrow & Co., C.P.A's, P.C. v. Skavina*, 9 A.D.3d 805, 808 (App. Div. 3rd Dept. 2004) (affirming denial of partial enforcement of employment agreement where employer continued to require employees to sign overly broad restrictive covenant after the *BDO Seidman* decision and finding that *BDO Seidman* "served as notice to plaintiff that the agreement at issue . . . was also overly broad").

The Campaign presented Plaintiff with its NDA in 2016, long after *BDO Seidman* put the Campaign on notice of the requirements for an enforceable post-employment restrictive covenant.  Blue penciling the NDA would absolve the Campaign for failing to draft a proper NDA and imposing patently unreasonable restrictions on its employees.  As Judge Marrero recently and cogently held:

> For every covenant that finds its way to court, there are thousands which exercise an *in terrorem* effect on employees . . . who fear legal complications. . . . If severance is generally applied, employers can fashion truly ominous covenants with confidence that they will be pared down and enforced when the facts of a particular case are not unreasonable. This smacks of having one's employee's cake, and eating it too.

*Flatiron Health, Inc. v. Carson*, 19 CIV. 8999 (VM), 2020 U.S. Dist. LEXIS 48699, at *64 (S.D.N.Y. Mar. 19, 2020).  Likewise, this Court should not reward the Campaign for its overbroad, oppressive NDA.

At the time the Campaign required Plaintiff to sign the NDA, she was a lower-level phone bank administrator.  The extreme breadth of the NDA serves only to intimidate her and other signatories rather than to protect the Campaign's legitimate interests.

A clear line of precedence dictates that the Court decline to rewrite the NDA to render it enforceable.  *See, e.g., Siegel v. Holson Co.*, 91 CIV. 1739 (JFK), 1991 U.S. Dist. LEXIS 13238, at *14 (S.D.N.Y. 1991) (declining to blue pencil overbroad provisions because doing so would

essentially rewrite the agreement); *see also Elexco Land Servs. v. Hennig*, No. 11-CV-214, 2012 U.S. Dist. LEXIS 152240, at *8 (W.D.N.Y. Oct. 23, 2012) ("Since there is no geographical limitation in the contract herein, there is no restriction that is grammatically severable from other parts of the contract.  Therefore, creation of a geographic limitation therein would amount to unwarranted rewriting of the contract on the part of the Court.").

Between the lack of temporal restriction and the amorphous, ill-defined breadth of the material forbidden from disclosure or disparagement, the unlawful elements of the provisions are so intrinsic in the NDA that it would be inappropriate, if not impossible, for the Court to partially enforce them.

Further, Plaintiff seeks a declaration that the NDA is unenforceable as written; under the circumstances, therefore, blue penciling would be inappropriate on Plaintiff's motion for summary judgment.  *See Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-cv-4887 (DRH) (JO), 2007 U.S. Dist. LEXIS 23084, at *22 (E.D.N.Y. Mar. 29, 2007) ("[W]hile a court has the discretion to pare or 'blue pencil' a restrictive covenant as to its duration and geographic scope in the context of granting injunctive relief, the same is not true in other contexts.") (*citing S. Nassau Control Corp. v. Innovative Control Mgmt. Corp.*, No. 95-cv-3724, 1996 U.S. Dist. LEXIS 22603 (E.D.N.Y. 1996) at *5, n.2).

## <u>CONCLUSION</u>

For the foregoing reasons, we respectfully submit that the NDA's non-disclosure and non-disparagement provisions are unenforceable and the Court should not blue pencil them.

Dated: New York, New York
      August 6, 2020

                          Respectfully submitted,

                      By: <u>/s/ Neal H. Klausner</u>
                                Neal H. Klausner
                                DAVIS & GILBERT LLP
                                1740 Broadway
                                New York, NY 10019
                                (212) 468-4800
                                Email: nklausner@dglaw.com

                      By: <u>/s/ Marissa L. Comart</u>
                                  Marissa L. Comart
                                  DAVIS & GILBERT LLP
                                  1740 Broadway
                                New York, NY 10019
                                  (212) 468-4800
                                Email: mcomart@dglaw.com

                                *Amici Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I, Neal H. Klausner, do hereby certify that I have filed the foregoing Brief of Amici Curiae electronically with the Clerk of Court for the United States District Court for the Southern District of New York using the CM/ECF system on August 6, 2020.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


*/s/ Neal H. Klausner*
Neal H. Klausner

*Amicus Curiae*