**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESSICA DENSON, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>DONALD J. TRUMP FOR PRESIDENT, INC.,<br><br>*Defendant*. | No. 20 Civ. 4737 (PGG) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

David A. Schulz
Joseph Slaughter
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6103
Fax: (212) 223-1942
Email: schulzd@ballardspahr.com
Email: slaughterj@ballardspahr.com

David K. Bowles
BOWLES & JOHNSON PLLC
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
Email: David@BoJo.Law

John Langford (JL-2367)
Jenny Choi, *law student intern*
UNITED TO PROTECT DEMOCRACY, INC.
555 W. 5th St.
Los Angeles, CA 90013
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: john.langford@protectdemocracy.org

Brittany Williams
UNITED TO PROTECT DEMOCRACY, INC.
1900 Market St., 8th Fl.
Philadelphia, PA 19103
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: brittany.williams@protectdemocracy.org

Anne Tindall
UNITED TO PROTECT DEMOCRACY, INC.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: anne.tindall@protectdemocracy.org

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND...................................................................................................... 2

A.    The Origins and Chronology of Litigation Between the Parties.......................................... 2

B.    The First Department's Decision ...................................................................................... 5

C.    The Ongoing Threat to Ms. Denson and Putative Class Members.................................... 6

LEGAL STANDARD.............................................................................................................. 8

ARGUMENT ......................................................................................................................... 9

I.     THE COMPLAINT PRESENTS A LIVE CONTROVERSY ABOUT
       THE FORM NDA'S VALIDITY ..................................................................................... 9

       A.    The Campaign Mischaracterizes the Nature of the Claims And
             Ignores Key Facts ............................................................................................... 10

       B.    Ms. Denson Plainly Has Standing Because the Form NDA
             Restricts Her First Amendment Rights ................................................................ 12

       C.    Even Setting Aside That Her First Amendment Rights Are At Stake,
             Ms. Denson Has Standing.................................................................................... 15

       D.    Defendant's Arguments to the Contrary Rely on Inapposite Authority ............... 16

II.    MS. DENSON IS NOT ESTOPPED FROM LITIGATING THE
       VALIDITY OF THE FORM NDA BECAUSE NO COURT HAS
       EVER DECIDED THE ISSUE...................................................................................... 20

       A.    The First Department Did Not Resolve The Legal Question of
             The Form NDA's Enforceability .......................................................................... 21

       B.    The First Department's Opinion Has No Preclusive Effect Even If It
             Is Read To Address The Enforceability of The Form NDA................................... 23

CONCLUSION..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arakelian v. Omnicare, Inc.*,
   735 F. Supp. 2d 22 (S.D.N.Y. 2010) ................................................................. 15, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 8

*Babbitt v. Farm Workers*,
   442 U.S. 289 (1979) .................................................................................................... 12

*Bordell v. General Elec. Co.*,
   922 F.2d 1057 (2d Cir. 1991) ..................................................................................... 18

*Bradfield v. Heartland Payment Sys., LLC*,
   No. CV 17-4862(FLW), 2018 WL 5784998 (D.N.J. Nov. 5, 2018) .......................... 16

*Brandon v. Kinter*,
   938 F.3d 21 (2d Cir. 2019) .......................................................................................... 19

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973) .................................................................................................... 12

*City of N.Y. v. Welsbach Elec. Corp.*,
   9 N.Y.3d 124 (2007) ........................................................................................ 20, 23, 24

*Crawford-El v. Britton*,
   93 F.3d 813 (D.C. Cir. 1996), *vacated on other grounds*, 523 U.S. 574 (1998) ...... 19

*Denson v. Donald J. Trump For President, Inc.*,
   180 A.D.3d 446 (1st Dep't 2020) ...................................................................... *passim*

*Denson v. Trump for President, Inc.*,
   No. 18-CV-2690 (JMF), 2018 WL 4568430 (S.D.N.Y. Aug. 30, 2018) .................... 4

*Denson v. Trump*,
   No. 101616/2017, 2018 WL 4352827 (Sup. Ct. Suffolk Cnty. Sept. 7, 2018) .......... 4

*Dow Jones & Co., Inc. v. Harrods, Ltd.*,
   237 F. Supp. 2d 394 (S.D.N.Y. 2002) ........................................................................ 17

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   411 F.3d 384 (2d Cir. 2005) ........................................................................................ 10

**Page(s)**

**Cases (cont.)**

*Fisher v. Glob. Values, Inc.*,
    No. 2:06-cv-178, 2006 WL 3251488 (D. Vt. Nov. 2, 2006) .................................................... 15

*Ford v. Reynolds*,
    326 F. Supp. 2d 392 (E.D.N.Y. 2004), *aff'd*, 167 F. App'x 248 (2d Cir. 2006)...................... 18

*Hernandez v. Off. of Comm'r of Baseball*,
    No. 18-CV-9035 (JPO), 2019 WL 5593056 (S.D.N.Y. Oct. 30, 2019)............................ 16, 17

*Hertz Corp. v. City of N.Y.*,
    1 F.3d 121 (2d Cir. 1992)............................................................................................... 3, 9

*Hoblock v. Albany Cnty. Bd. of Elections*,
    422 F.3d 77 (2d Cir. 2005)................................................................................................ 20

*Hylton v. J.P. Morgan Chase Bank, N.A.*,
    338 F. Supp. 3d 263 (S.D.N.Y. 2018) ................................................................................ 8

*Iannucci v. Segal Co., Inc.*,
    No. 06 CIV. 4720 (PKL), 2006 WL 8407380 (S.D.N.Y. June 27, 2006) ............................... 15

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
    386 F.3d 107 (2d Cir. 2004)......................................................................................... 3, 8, 9

*Jackson v. Bd. of Educ. of City of N.Y.*,
    812 N.Y.S.2d 91 (1st Dep't. 2006) ................................................................................... 23

*Jeffreys v. Griffin*,
    1 N.Y.3d 34 (2003) ..................................................................................................... 20, 23

*Kaplan v. First Options of Chi.*,
    189 B.R. 882 (E.D. Pa. 1995) ........................................................................................... 21

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007)................................................................................................ 8

*Kelly v. Evolution Mkts., Inc.*,
    626 F. Supp. 2d 364 (S.D.N.Y. 2009) ............................................................................... 15

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
    274 F.3d 706 (2d Cir. 2001)............................................................................................... 20

**Page(s)**

**Cases (cont.)**

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) .................................................................... 9, 10, 11, 16

*Mendocino Envtl. Ctr. v. Mendocino Cnty.*,
  192 F.3d 1283 (9th Cir. 1999) ...................................................... 19

*Mignogna v. Sair Aviation, Inc.*,
  937 F.2d 37 (2d Cir. 1991)............................................................ 19

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013)......................................................... 9, 12

*Nicholas v. Trump*,
  433 F. Supp. 3d 581 (S.D.N.Y. 2020) .......................................... 18

*Poller v. BioScrip, Inc.*,
  974 F. Supp. 2d 204 (S.D.N.Y. 2013) .......................................... 15

*Pollicino v. Roemer & Featherstonhaugh P.C.*,
  716 N.Y.S.2d 416 (3d Dep't. 2000) ............................................. 23

*Rose Park Place, Inc. v. New York*,
  985 N.Y.S.2d 350 (4th Dep't 2014) ............................................. 23

*Ryan v. N.Y. Tel. Co.*,
  62 N.Y.2d 494 (1984) ................................................................... 23

*Sanger v. Reno*,
  966 F. Supp. 151 (E.D.N.Y. 1997) ............................................... 17

*Sarfraz v. Vohra Health Servs., PA*,
  663 F. Supp. 2d 147 (E.D.N.Y. 2009) .......................................... 15

*Sayre v. JPMorgan Chase & Co.*,
  781 F. App'x 667 (9th Cir. 2019) ................................................. 21

*Sec'y of State of Md. v. Joseph H. Munson Co.*,
  467 U.S. 947 (1984).................................................................... 12

*Solow Bldg. Co., LLC v. Morgan Guar. Tr. Co. of N.Y.*,
  294 A.D.2d 224 (1st Dep't. 2002) ................................................ 21

**Page(s)**

**Cases (cont.)**

*Spokeo, Inc. v. Robins*,
　136 S. Ct. 1540 (2016) ......................................................................................... 9

*SR Int'l Bus. Ins. Co., Ltd. v. Allianz Ins. Co.*,
　343 F. App'x 629 (2d Cir. 2009) ....................................................................... 10

*Stone v. Williams*,
　970 F.2d 1043 (2d Cir. 1992) ............................................................................ 21

*Susan B. Anthony List v. Driehaus*,
　573 U.S. 149 (2014) ..................................................................................... 12, 13

*Thacker v. Madaphis Corp.*,
　No. 97 CIV. 2849 (DAB), 1998 WL 684595 (S.D.N.Y. Sept. 30, 1998) .............. 15

*Vermont Right to Life Comm., Inc. v. Sorrell*,
　221 F.3d 376 (2d Cir. 2000) .............................................................................. 12

*Virginia v. Am. Booksellers Ass'n*,
　484 U.S. 383 (1988) ........................................................................................... 12

*Wurtsbaugh v. Banc of Am. Sec. LLC*,
　No. 05 CIV. 6220 (DLC), 2006 WL 1683416 (S.D.N.Y. June 20, 2006) ............. 15

*Younger v. Harris*,
　401 U.S. 37 (1971) ............................................................................................. 18

*Zanotti v. Invention Submission Corp.*,
　No. 18-cv-5893 (NSR), 2020 WL 2857304 (S.D.N.Y. June 2, 2020) ................... 19

**Statutes**

28 U.S.C. § 1738 ...................................................................................................... 20

28 U.S.C. § 2201 ........................................................................................................ 9

**Other Authorities**

Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*,
　81 N.Y.U. L. Rev. 1249 (2006) .................................................................... 23, 24

## INTRODUCTION

Plaintiff Jessica Denson and the class she represents have a clearly justiciable claim: that a form contract (the "Form NDA") they all were required to sign is unenforceable as a matter of New York contract law and under the free speech and free press clauses of the United States and New York constitutions. Defendant Donald J. Trump for President, Inc. (the "Campaign") now moves to dismiss on two grounds, both of which are baseless.

First, despite having repeatedly invoked the Form NDA to punish class members for criticizing the President, the Campaign argues that Ms. Denson lacks standing because it has no "current dispute" with her. To the contrary, the Campaign maintains that its Form NDA remains binding on Ms. Denson and other class members, and that contract purports to circumscribe their free speech rights, at this moment and forever. The Campaign previously sued Ms. Denson for allegedly violating the Form NDA, won an award, and aggressively attempted to enforce the award. Even in moving to dismiss, the Campaign insinuates that Ms. Denson's recent tweets violate the Form NDA and could have allowed it—or any third-party beneficiary of the agreement—to seek sanctions. The Campaign is currently, right now, attempting to enforce the Form NDA against other putative class members. On these facts, there is plainly a live controversy that Ms. Denson has standing to pursue, particularly given that the bar to establish standing is lowered for claims alleging the suppression of speech – especially political speech.

Second, the Campaign argues that Ms. Denson's challenge to the Form NDA is barred by the doctrine of collateral estoppel. The Campaign rests that argument on a decision issued earlier this year by the New York Supreme Court, Appellate Division, First Department, which vacated the arbitration award and judgment the Campaign obtained against Ms. Denson. Although it lost in the First Department, the Campaign claims that the court's decision estops Ms. Denson from disputing the enforceability of the Form NDA in this case. The First Department, however, did

not resolve the validity *vel non* of the Form NDA itself; it struck down the arbitrator's award on other grounds. Its opinion has no collateral estoppel effect here.

The Campaign's motion to dismiss is just its latest effort to avoid any judicial determination of the enforceability of the Form NDA, something Ms. Denson has doggedly sought for more than two years. When she filed a federal lawsuit in March 2018, the Campaign moved to compel arbitration; when she demanded arbitration, the Campaign invoked its unilateral right not to arbitrate and told her to file her claims in court; and, when she filed this action in state court, the Campaign removed it here, only to contend now that this Court lacks jurisdiction to proceed. It is time to put a stop to the Campaign's gamesmanship and its use of a patently unenforceable NDA to chill, harass and punish the speech of former Campaign workers.

## FACTUAL BACKGROUND

The factual background and procedural posture of this case are laid out in Plaintiffs' memorandum in support of their motion for summary judgment, incorporated here by reference. *See* Pls.' Mem. Supp. Summ. J. (hereinafter, "Pls.' Mem.") at 1–10, ECF No. 20. It does not materially deviate from the facts recounted by the Campaign, Def.'s Mem. Supp. Mot. to Dismiss (hereinafter, "Def.'s Mem.") at 2–7, ECF No. 25, but the Campaign's presentation distorts the origins of this dispute, the chronology of events, the scope of the First Department's decision, and the existing threat to those who signed its Form NDA, including Ms. Denson.[1]

### A.    The Origins and Chronology of Litigation Between the Parties

On November 9, 2017, Ms. Denson filed a *pro se* lawsuit against the Trump Campaign in New York State Supreme Court, asserting claims of sex discrimination, harassment, and slander.

---

[1] The Campaign moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Def.'s Mot. to Dismiss at 1, ECF No. 23. In ruling on a 12(b)(1) motion, a court may consider affidavits and other materials beyond the pleadings, including

Pls.' Statement of Material Facts Supp. Summ. J. (hereinafter, "SMF") ¶ 24, ECF No. 21. In response, the Campaign initiated an arbitration proceeding on December 20, 2017, alleging that Ms. Denson violated the terms of her NDA by publicly filing the allegations in her state lawsuit (the "Campaign's arbitration"). *Id.* ¶ 25. Shortly thereafter, the Campaign sought to expand its arbitration by filing a motion in the state court proceeding to compel arbitration of Ms. Denson's discrimination, harassment, and slander claims. *Id.* ¶ 29.

While the Campaign's motion to compel remained pending, Ms. Denson—still proceeding *pro se*—did not actively participate in the Campaign's arbitration. *Id.* ¶ 34. She was particularly concerned that, if she participated in the Campaign's arbitration, she would be forced to arbitrate her own state-law claims. So instead, she opposed the Campaign's motion to arbitrate in state court and, on March 26, 2018, she filed a separate *pro se* lawsuit in this Court seeking a declaration that the Form NDA is void and unenforceable (the "First Federal Action"). *Id.* ¶ 32. In response, on June 4, 2018, the Campaign moved to compel arbitration of Ms. Denson's federal lawsuit, too. *Id.* ¶ 33.

Before either the state court or the federal court ruled on the Campaign's motions to compel arbitration, and without ever amending its arbitration demand to add claims related to Ms. Denson's *pro se* federal lawsuit, the Campaign applied for an award in its arbitration. *Id.* ¶ 35; Decl. of Jessica Denson Supp. Pls. Mot. Summ. J. (hereinafter, "Denson Decl.") Ex. G, ECF No. 22-7. Its July 23, 2018, award application argued that Ms. Denson violated the Form NDA by (a) filing public complaints in state and federal court, in which she made disparaging remarks about the Campaign and disclosed her conversations with individuals employed by the

---

matters of which judicial notice may be taken, to resolve the jurisdictional issue. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004); *Hertz Corp. v. City of N.Y.*, 1 F.3d 121, 125 (2d Cir. 1992).

Campaign; (b) refusing to arbitrate her employment claims; and (c) making disparaging statements on Twitter and on a GoFundMe page she set up in hope of raising money to pay an attorney. Denson Decl. Ex. G. at 2–3, ECF No. 22-7.

Ms. Denson did not respond to the application, still concerned about having her state claims improperly subject to arbitration, SMF ¶ 34, and still awaiting a decision by the state and federal courts on the Campaign's motions to compel arbitration.

On August 7, 2018, the New York Supreme Court denied the Campaign's motion to compel Ms. Denson to arbitrate her state-law employment claims. SMF ¶ 30; *Denson v. Trump*, No. 101616/2017, 2018 WL 4352827, at *3 (Sup. Ct. Suffolk Cnty. Sept. 7, 2018). On August 30, 2018, this Court granted the Campaign's motion to compel arbitration of Ms. Denson's *pro se* challenge to the Form NDA's validity. SMF ¶ 38; *Denson v. Trump for President, Inc.*, No. 18-CV-2690 (JMF), 2018 WL 4568430 (S.D.N.Y. Aug. 30, 2018).[2]

On October 18, 2018, the arbitrator in the Campaign's arbitration issued an initial award, SMF ¶ 39, and two months later, on December 12, 2018, the arbitrator issued a final award of nearly $50,000 in favor of the Campaign, *id*. ¶ 41. The Campaign then moved to have the award confirmed by this Court on December 21, 2018. *Id*. ¶ 42. On January 18, 2019, Ms. Denson, now with the assistance of counsel, filed a cross-motion to vacate the arbitration award. Cross-Mot. to Vacate, *Denson v. Trump for President, Inc.*, No. 18-CV-2690 (JMF), 2018 WL 4568430 (S.D.N.Y. Jan. 18, 2019), ECF No. 37.

---

[2] Contrary to the Campaign's assertion, *see* Def.'s Mem. at 5 n.4, Judge Furman did not order Ms. Denson to participate in the Campaign's arbitration; he simply held that, given the Form NDA's arbitration clause, "the parties' dispute — including the threshold question of arbitrability itself — [wa]s for an arbitrator, not this Court, to decide," *Denson v. Trump for President, Inc.*, No. 18-CV-2690 (JMF), 2018 WL 4568430, at *1 (S.D.N.Y. Aug. 30, 2018).

While the parties' cross-motions were pending before this Court, and pursuant to this Court's order compelling arbitration of Ms. Denson's claim that the Form NDA is invalid and unenforceable, on February 20, 2019, Ms. Denson submitted a class-action arbitration demand to the Campaign challenging the Form NDA's validity and simultaneously filed it with the American Arbitration Association. SMF ¶ 46. In response, the Campaign sought to have Ms. Denson's arbitration demand submitted to the same arbitrator assigned to its arbitration against her. *Id*. ¶ 47. When its request was denied, on May 29, 2019, the Campaign exercised its "sole discretion" under Paragraph 8(b) of the Form NDA and rejected the arbitration demand, insisting instead that Ms. Denson "file her purported claims in court." *Id*. ¶¶ 48–49.

On June 12, 2019, the Campaign moved to have its arbitration award confirmed by the state court. *Id.* On July 8, 2019, the state court confirmed the arbitration award; two weeks later, this Court held that the state court's affirmance mooted the Campaign's motion to affirm the award and precluded any further consideration of Ms. Denson's motion to vacate the arbitration award. SMF ¶¶ 43–44.

Ms. Denson timely appealed the state court's decision affirming the award.

## B.     The First Department's Decision

On February 6, 2020, the Appellate Division, First Department unanimously reversed the order confirming the arbitration award and vacated the award in its entirety. *Denson v. Donald J. Trump For President, Inc.*, 180 A.D.3d 446 (1st Dep't 2020); SMF ¶ 45. The First Department vacated that portion of the award based on statements made by Ms. Denson in her Complaint in the First Federal Action on those grounds that the arbitrator had "improperly punished plaintiff for availing herself of a judicial forum." *Denson*, 180 A.D.3d at 454. The First Department then vacated the remainder of the award premised on statements Ms. Denson made on GoFundMe

and Twitter both because those statements were not made in connection with the state action which was the only subject of Campaign's arbitration demand, and because they were made after the Campaign submitted its arbitration demand. *Id.* at 454–55. That portion of the award thus "was made in excess of the arbitrator's enumerated authority." *Id.* at 455. Ultimately, the First Department concluded that the award "must be vacated in its entirety." *Id.*

Contrary to the Campaign's claim that the First Department expressly rejected Ms. Denson's challenge to the enforceability of the Form NDA, the First Department did not reach the merits of the claim Ms. Denson makes here. The First Department noted only that *the arbitrator's* finding that the Form NDA was enforceable did not fall within one of four narrow statutory grounds for vacating an arbitration award under New York CPLR § 7511(b). *Id.* at 450–53. In reaching this conclusion, the court noted that there was no basis to conclude *generally* "that non-disparagement agreements per se violate public policy," and saw no reason that issues regarding the permissible scope of NDAs "cannot be decided by an arbitrator." *Id.* at 452. The court then remarked that, regarding the enforceability of the Form NDA, "any error by the arbitrator [wa]s, at most, a mistake of law that c[ould ]not serve as a predicate basis for vacating the[] awards." *Id.* The First Department nonetheless vacated the arbitrator's award in its entirety as described above, leaving it a legal nullity. *Id.* at 454–55.

## C.   The Ongoing Threat to Ms. Denson and Putative Class Members

The Campaign suggests there is no ongoing controversy between Ms. Denson and the Campaign. If only it were so.

While the Campaign is not—at this very moment—pursuing an arbitration to enforce its Form NDA against Ms. Denson, that is hardly the point. From December 20, 2017, when the Campaign filed its arbitration demand claiming $1,500,000 in damages, until February 6, 2020,

when the First Department vacated the Campaign's arbitration awards, Ms. Denson faced potential financial ruin for having the gumption to pursue employment claims and to criticize the Campaign and President Trump on social media. *See* SMF ¶¶ 27, 39, 41.

Moreover, the Campaign has now twice suggested in this litigation that it could pursue damages from Ms. Denson for tweeting critical statements about the Campaign, President Trump, and his Administration. When the Campaign sought leave to file its motion to dismiss, it argued there is no justiciable controversy here because the Campaign did not send Ms. Denson cease and desist letters when she "expressed her opinions and views regarding the Campaign and President Trump on social media." Def.'s Pre-Mot. Letter at 2, ECF No. 15; *id.* Ex. A. The Campaign makes the same point in its motion to dismiss. Def.'s Mem. at 7, 11; *see also* Decl. Patrick McPartland (hereinafter, "McPartland Decl.") Ex. B, ECF No. 24-2. The Campaign, however, never says that Ms. Denson's tweets are not covered by the Form NDA or that the Campaign will not enforce the Form NDA. The clear subtext is that the Campaign *could choose* to punish Ms. Denson again for tweeting criticisms of the President, his Administration, and the Campaign—but has not, at least in this round. Never mind that there is a record of enforcement against Ms. Denson for tweets of the very same nature that the Campaign now claims to have no objection to. Def.'s Mem. at 7 n.5. The Campaign's inconsistency is further evidence of the ripeness of Ms. Denson's dispute and the arbitrary threat of enforcement she faces.

Nor is Ms. Denson alone. The Campaign threatened arbitration under the Form NDA against Alva Johnson and Cliff Sims. SMF ¶¶ 20, 23. The Campaign is *currently*, right now, pursing claims against Omarosa Manigault Newman. SMF ¶ 15. In that arbitration, the Campaign claims Ms. Newman violated the Form NDA by, among other things:

- posting a link to an Amazon listing of her book, *Unhinged*, on her Twitter account, where the listing describes the book as "provid[ing] an eye-opening look into the corruption and controversy of the current administration";

- stating, in an interview to promote her book that, "Donald Trump is a con and has been masquerading as someone who is actually open to engaging with diverse communities. But…he is truly a racist";

- stating in the same interview that, "They continue to deceive this nation by how mentally declined [Mr. Trump] is, how difficult it is for him to process complex information, how he is not engaged in some of the most important decisions that impacts (sic) our country";

- stating in another interview that, "I was haunted by tweets every single day, like what is [President Trump] going to tweet next?"; and

- in that same interview, responding to the interviewer's question about whether she would vote for President Trump, by saying, "God no, never. In a million years, never."

Bowles Decl. Supp. Pls.' Mot. Summ. J. Ex. L ¶¶ 14, 16, 18–19, ECF No. 26-12. As Plaintiffs noted in their earlier briefing, Ms. Manigault Newman's lawyers revealed that the Trump Campaign "recently added nearly ***four hundred*** additional counts to [its] arbitration action [seeking to enforce the Form NDA against her] and is keeping tabs on everything she says and does." SMF ¶ 18 (emphasis added).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 273 (S.D.N.Y. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he court is to accept as true all facts alleged in the

complaint, and must draw all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)).

In ruling on a 12(b)(1) motion, a court may consider affidavits and other materials beyond the pleadings, including matters of which judicial notice may be taken, to resolve the jurisdictional issue. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004); *Hertz Corp. v. City of N.Y.*, 1 F.3d 121, 125 (2d Cir. 1992). It "may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S.*, 386 F.3d at 110.

## ARGUMENT

## I.   THE COMPLAINT PRESENTS A LIVE CONTROVERSY ABOUT THE FORM NDA'S VALIDITY

The Campaign argues that there is no live case or controversy and Ms. Denson, the sole named class representative, lacks standing to maintain this class action. Specifically, it argues that there is no case here because the Campaign is not actively seeking to enforce the Form NDA against her and Ms. Denson has not identified a specific statement she wants to make but is being prevented from making. Def.'s Mem. at 8–12. This argument both misunderstands the law of standing and misrepresents the claims articulated in the Complaint.

To establish Article III standing, a plaintiff must demonstrate that they have suffered "an injury in fact," which means "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).[3] In cases brought under the Declaratory Judgment Act, 28 U.S.C.

---

[3] The "injury-in-fact" requirement of the standing analysis is closely related to, and largely overlaps with, the "constitutional ripeness" doctrine—"to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013); *see id.* ("Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing.").

§ 2201, there is a live case or controversy, and Article III jurisdiction exists, so long as a dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*; *SR Int'l Bus. Ins. Co., Ltd. v. Allianz Ins. Co.*, 343 F. App'x 629, 632 (2d Cir. 2009) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005)).

Here, Ms. Denson plainly has standing to litigate the live controversy over the validity of the Form NDA.

### A.     The Campaign Mischaracterizes the Nature of the Claims And Ignores Key Facts

As a threshold matter, the Campaign's "case or controversy" argument rests upon a misleading depiction of Plaintiffs' claims and the undisputed facts. The Campaign contends that there is no actual dispute here because Ms. Denson "has refused to identify any speech she intends to make (which she believes would be in violation of her Agreement), much less identify any actual or threatened dispute between the parties regarding the Agreement." Def.'s Mem. at 6–7; *see id.* at 9–11. It speciously points to a two-year course of "continuous and unobstructed statements, opinions, and disparaging public comments regarding the Campaign and President Trump" by Ms. Denson as undermining any claim that there is an actual dispute here. *Id.* at 11.

This misstates the nature of Plaintiffs' claim. Plaintiffs argue that the Form NDA is unenforceable on its face because its scope, indefiniteness, and prohibition on core political

speech violate New York law and the United States and New York constitutions. Compl. ¶¶ 139–161. Indeed, it is the unlawful breadth and indefiniteness of the Form NDA itself that prevents Ms. Denson and class members from identifying, *ex ante*, the set of things which they would like to say but cannot.

The Campaign's argument also blithely ignores the undisputed facts. No party disputes that there is an existing contract, in place, purporting to impose real and ongoing obligations on Ms. Denson and other class members. *See*, *e.g.*, Def.'s Mem. at 1. Nor does the Campaign dispute that: (1) it sued Ms. Denson for *1.5 million dollars* for allegedly making statements in violation of the Form NDA and those claims were only resolved in February; (2) it has previously threatened other signers with similar litigation; (3) it is currently attempting to enforce the Form NDA against other class members; and (4) it could enforce the Form NDA against Ms. Denson again since she has continued to make statements similar to those at issue in the Campaign's initial arbitration. SMF ¶¶ 26–45; Def.'s Mem. at 7, 11. In short, the Form NDA purports to authorize grievous financial punishment should class members speak unfavorably of the President, and its past use and threatened future use restricts all putative class members from exercising their speech rights to this day. Compl. ¶¶ 39–45; 69, 97–98, 146–47, 154, 161. So long as the contract remains in place, every time Ms. Denson (or any class member) opens her mouth, logs on to social media, or gives an interview, she does so knowing that there is a real and credible risk the Campaign—or many other individuals and companies in the Trump orbit—will seek to impose crippling financial penalties on her.

This is the very definition of a dispute "touching the legal relations of parties having adverse legal interests," that is "real and substantial," and "admit[s] of specific relief through a decree of a conclusive character." *MedImmune, Inc.*, 549 U.S. at 127. There is no "hypothetical

set of facts" upon which an advisory opinion is sought—just existing, undisputed facts, which Plaintiffs allege to demonstrate an ongoing, concrete invasion of their constitutional rights.

**B.      Ms. Denson Plainly Has Standing Because the Form NDA Restricts Her First Amendment Rights**

The Second Circuit has instructed that claims implicating First Amendment rights are to be assessed "under somewhat relaxed standing . . . rules." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013). This relaxed standard stems from the danger of self-censorship in cases where First Amendment rights are allegedly infringed, "a harm that can be realized even without an actual" enforcement action. *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000) (risk of civil litigation based on speech-related activities sufficient to establish standing) (citation omitted); *see also Nat'l Org. for Marriage, Inc.*, 714 F.3d at 689.[4]

Accordingly, a plaintiff alleging that their First Amendment rights are at stake "need not demonstrate to a certainty" that it will be subjected to enforcement proceedings in order to show injury, "but only that it has 'an actual and well-founded fear'" of enforcement. *Vermont Right to Life Comm.*, 221 F.3d at 382 (quoting *Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383, 393 (1988)). "Specifically, . . . a plaintiff satisfies the injury-in-fact requirement where [they] allege[] 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed . . . , and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers,* 442 U.S. 289, 298 (1979)).

---

[4] Standing doctrine is particularly permissive where, as here, a challenged restriction on speech protected by the First Amendment is substantially overbroad. The Supreme Court has allowed even third parties whose speech is unaffected to challenge such restrictions "because of a judicial prediction or assumption that the [restriction]'s very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956–57 (1984) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). That is exactly the case here.

Here, Ms. Denson, on behalf of the putative class, has both alleged and—as the

Campaign points out—repeatedly *demonstrated* an intention to continue engaging in a course of

conduct arguably affected with a constitutional interest, but proscribed: namely, criticizing the

President, his Administration, his family, his businesses, and the Campaign, and otherwise

sharing information that the Campaign has argued and could argue is covered by the Form NDA.

*See* Compl. ¶¶ 39–45; 69, 97–98, 146–47, 154, 161; ECF No. 15 at 2; *id.* Ex. A; Def.'s Mem. at

7, 11; McPartland Decl. Ex. B, ECF No. 24-2.[5]

Ms. Denson and class members also face a credible threat of enforcement. To decide if a

credible threat of enforcement exists, courts consider any "history of past enforcement" and other

factors indicating a likelihood of future enforcement. *Susan B. Anthony List*, 573 U.S. at 159. For

example, in *Susan B. Anthony List* the Supreme Court held that a pro-life advocacy organization

had standing to challenge an Ohio statute prohibiting certain false statements during a political

campaign. *Id.* at 152. It held that there was a credible threat of enforcement because (1) the

commission tasked with enforcing the statute had previously attempted to enforce the statute

against the pro-life organization, (2) the statute allowed individuals other than the state to

enforce the statute, (3) the commission held regular enforcement hearings, and (4) the

commission refused to disavow enforcement, if the organization made similar statements in the

future. *Id.* at 164–65.

---

[5] The Campaign suggests that, in order to demonstrate standing, Ms. Denson must identify the set of specific statements she wishes to make that might violate the Form NDA. Def.'s Mem. at 11 n.8. As a legal matter, that is wrong. But even if were not, it is impossible where, as here, the proscription on speech is so broad and so vague as to potentially cover anything Ms. Denson says. *See* Pls.' Mem. at pp. 14–15. In arguing otherwise, the Campaign transparently seeks to leverage the very overbreadth and vagueness Ms. Denson challenges into a shield against judicial resolution of the Form NDA's facial validity. It can always say, "we won't object to Ms. Denson saying X," only to wait another day to punish her for saying "Y," leaving Ms. Denson's freedom of speech to the mercy of the Campaign's ever-shifting enforcement priorities.

These same factors apply here and equally establish a credible fear of enforcement:

1.  The Campaign has attempted to enforce the Form NDA against Ms. Denson in the past—from December 20, 2017, when the Campaign first filed an arbitration demand against Ms. Denson in response to her *pro se* employment lawsuit, until February 6, 2020, when the First Department vacated the arbitrator's award in its entirety, the Campaign aggressively pursued litigation seeking to enforce the Form NDA against her. SMF ¶¶ 24–45.

2.  The Form NDA allows individuals and companies other than the Campaign to enforce its terms at any time, forever—including President Trump, each Family Member, Trump Company, and Family Member Company. Denson Decl. Ex. A (Form NDA) ¶ 7(d), ECF No. 22-1.[6]

3.  The Campaign has regularly acted to enforce the Form NDA, including against Omarosa Manigault Newman, Cliff Sims, and Alva Johnson. SMF ¶¶ 14–23.

4.  The Campaign has not disavowed future enforcement against Ms. Denson. Even now, it lists a string of Ms. Denson's tweets that it implies *could* be used as the basis for litigation—as clear a threat as one can imagine. Def.'s Mem. at 7; McPartland Dec. Ex. B, ECF No. 24-2.

Nor does the Campaign represent that Ms. Denson's course of conduct has not violated the Form NDA or that it will not enforce the Form NDA against Ms. Denson. *See* Def.'s Mem. at 7, 11. It says only that it has chosen not to enforce the Form NDA at various times in the past (ignoring that it has also previously made the opposite decision). *Id.*

Nothing suggests that Ms. Denson or any other class member is free from the continuing obligations of the Form NDA or the specter of financial penalty for speaking out.

---

[6] The list of individuals and entities entitled to enforce the Form NDA at any time and forever includes "Mr. Trump's children and grandchildren and their respective spouses, including but not limited to Donald J. Trump Jr., Eric F. Trump and Ivanka M. Trump, Tiffany Trump, and Barron Trump, and their respective spouses, children and grandchildren, if any, and Mr. Trump's siblings and their respective spouses and children, if any" and over 500 companies. Denson Decl. Ex. A (Form NDA) ¶ 6(b), ECF No. 22-1; SMF ¶ 51.

## C.    Even Setting Aside That Her First Amendment Rights Are At Stake, Ms. Denson Has Standing

Setting aside the "relaxed" standing analysis that applies in light of the First Amendment implications of Plaintiffs' claims, they still have standing. Indeed, courts in this Circuit regularly entertain declaratory judgment actions brought prospectively by plaintiffs challenging the enforceability of agreements like the Form NDA, even where protected political speech is not at issue. *See e.g.*, *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 214 (S.D.N.Y. 2013) (adjudicating validity of non-compete, non-solicitation, and non-disclosure provisions in employment contract); *Sarfraz v. Vohra Health Servs., PA*, 663 F. Supp. 2d 147, 151 (E.D.N.Y. 2009) (finding jurisdiction over case challenging validity of non-compete clause in employment contract); *Iannucci v. Segal Co., Inc.*, No. 06 CIV. 4720 (PKL), 2006 WL 8407380 (S.D.N.Y. June 27, 2006) (adjudicating validity of non-compete clause); *Kelly v. Evolution Mkts., Inc.*, 626 F. Supp. 2d 364, 371 (S.D.N.Y. 2009) (adjudicating validity of non-solicitation and non-recruitment clauses); *Wurtsbaugh v. Banc of Am. Sec. LLC*, No. 05 CIV. 6220 (DLC), 2006 WL 1683416, at *8 (S.D.N.Y. June 20, 2006) (adjudicating validity of non-compete clause); *Fisher v. Glob. Values, Inc.*, No. 2:06-cv-178, 2006 WL 3251488 (D. Vt. Nov. 2, 2006) (adjudicating validity of nondisclosure agreement); *Thacker v. Madaphis Corp.*, No. 97 CIV. 2849 (DAB), 1998 WL 684595, at *5 (S.D.N.Y. Sept. 30, 1998) (denying motion to dismiss declaratory judgment claims challenging the enforceability of non-compete agreement).

In *Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22 (S.D.N.Y. 2010), for example, an employee sought a declaratory judgment that non-compete and non-solicitation provisions she signed while at her former employer were void. *Id.* at 26. This Court rejected the former employer's motion seeking to dismiss the complaint for lack of ripeness. As the Court explained, without resolution of the enforceability of the restrictive covenants, the employee would be left

"uncertain as to whether she will be embroiled in a lawsuit if she accepts a position with [the] competitor." *Id.* at 41. It explained that the former employer could not "move to dismiss [the employee's] claim; refuse to agree not to enforce the Restrictive Covenants Agreement; and at the same time claim that [the employee] ha[d] not shown that it intends to enforce the agreement." *Id.* Other courts have similarly held that a declaratory judgment action regarding a restrictive covenant is ripe where an employer simultaneously refuses to explicitly forego enforcement and moves to dismiss. *E.g.*, *Bradfield v. Heartland Payment Sys., LLC,* No. CV 17-4862(FLW), 2018 WL 5784998, at *6–7 (D.N.J. Nov. 5, 2018); *id.* at *7 (collecting cases).

Here, too, the dispute at issue is ripe. There is "real and substantial" disagreement over whether the Form NDA is an enforceable contract. *MedImmune, Inc.*, 549 U.S. at 127. The Campaign itself suggests that Ms. Denson is in danger of litigation for repeatedly criticizing the President and the Campaign. Def.'s Mem. at 7, 11; McPartland Decl. Ex. B, ECF No. 24-2. The Campaign feigns virtue in not further enforcing the Form NDA against Ms. Denson to date, but it never promises to forbear forever. Ms. Denson and other class members are by no means out of the woods yet, and therefore have standing to challenge the Form NDA.

### D.      Defendant's Arguments to the Contrary Rely on Inapposite Authority

The Campaign barely engages with this controlling precedent, pointing instead to inapposite authority.

The Campaign principally relies on two cases bearing no resemblance to the instant facts to argue that "plaintiff's vague and subjective assertion" that the Form NDA prevents her from exercising her right to speak freely is "insufficient to create an actual controversy as a matter of law." Def.'s Mem. at 9–10. In *Hernandez v. Office of Commissioner of Baseball*, the plaintiff did not seek a declaration that a contract was unenforceable; rather Hernandez sought an anticipatory declaration that his employer could not punish him for speaking out under the anti-retaliation

provisions of Title VII. *See* No. 18-CV-9035 (JPO), 2019 WL 5593056, at *2 (S.D.N.Y. Oct. 30,

2019). The court found that claim unripe because adjudicating whether speech is protected under

Title VII turns not only on the content of the speech, but also its "*manner.*" *Id.* "Because the

manner in which oppositional activity is expressed is relevant to the question whether it is

protected under Title VII," the court had "insufficient evidence to adjudicate the claim." *Id.* The

holding has no proper application here, where issue before the court is a pure matter of law that

turns on the undisputed language of a contract.

The Campaign's other authority, *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp.

2d 394 (S.D.N.Y. 2002), is even further afield. The plaintiff in that case sought a pre-emptive

declaration and injunction that any judgment arising from an ongoing defamation lawsuit in the

United Kingdom would not be enforceable in the United States. *Id.* at 403. The court held that

the request for declaratory relief was not ripe because it was

> grounded on a string of apprehensions and conjectures about future
> possibilities: that the court in the London Action will find a basis to
> assert jurisdiction and will recognize the pleading of a sufficient
> claim; that an adverse ruling on the merits may be rendered against
> Dow Jones; that the adjudication may award Harrods compensatory
> damages or enjoin Dow Jones from publishing the April 5 Article;
> that Harrods may seek to enforce such judgment in the United States
> or elsewhere; that if enforcement is sought, the judgment will be
> recognized somewhere. At this juncture, however, these
> protestations and prospects amount to nothing more than what they
> still are: premature concerns about contingencies that may or may
> not come to pass.

*Id.* at 408.  That is a far cry from this case, where the parties are bound to a live contract which

purports to prohibit the speech of Ms. Denson—and every other signer—now and forever, which

17

the Campaign has previously sought to enforce against Ms. Denson, and which the Campaign is currently seeking to enforce against other class members.[7]

The Campaign does cite one case that is on point, but it supports Plaintiffs. The Campaign cites *Bordell v. General Electric Co.*, 922 F.2d 1057 (2d Cir. 1991), in arguing that the Campaign's decision not to enforce the Form NDA against Ms. Denson for some of the statements she has posted on Twitter undermines any claim that there's a live dispute. Def.'s Mem. at 11. In *Bordell*, a government employee filed a lawsuit seeking a declaratory judgment that a newsletter outlining speech restrictions on employees violated the First Amendment. *Id.* at 1060. The Second Circuit held that the claim was unripe. *Id.* It explained that the employee had regularly spoken to the local news media "*and has never been punished or threatened with punishment as a result.*" *Id.* (emphasis added). The Second Circuit then specifically stated that,

---

[7] In three of the First Amendment cases the Campaign cites, the plaintiffs could muster no credible threat of future harm. In the first, a district court held that a pre-enforcement challenge to a statute was unripe where the statute had been on the books for decades but *never* enforced, and where the U.S. Attorney General explicitly stated that the government would continue its policy of non-enforcement. *Sanger v. Reno*, 966 F. Supp. 151, 161 (E.D.N.Y. 1997); *cf.* Def.'s Mem. at 10. In the second, a district court rejected as unripe a First Amendment challenge to the Presidential Alert system after a one-off test, reasoning that because no statute required future tests and no government official expressed any intention to run future tests, the plaintiff's fears were conjectural and speculative. *Nicholas v. Trump*, 433 F. Supp. 3d 581, 588–89 (S.D.N.Y. 2020); *cf.* Def.'s Mem. at 12. In the third, the court held that former students could not challenge the future enforcement of colleges' policies because they had graduated and had sued only in their individual capacities; and it held that others failed to allege that they were ever harmed in the first place, let alone that they would be harmed in the future. *Ford v. Reynolds*, 326 F. Supp. 2d 392, 406–07 (E.D.N.Y. 2004), *aff'd*, 167 F. App'x 248 (2d Cir. 2006); *cf.* Def.'s Mem. at 12. None of these cases map onto the facts here, where the Campaign has actively (and recently) attempted to enforce the Form NDA against Ms. Denson, is currently enforcing the Form NDA against other putative class members, and refuses to forbear enforcing the Form NDA going forward.

The Campaign also cites *Younger v. Harris*, which, of course, concerns the abstention doctrine in the context of ongoing state criminal proceedings, and has nothing to do with this context. 401 U.S. 37, 41–42 (1971).

"[h]ad [the employee] been prosecuted or otherwise punished for conduct that was proscribed by the September newsletter, he would have suffered a cognizable injury that would be sufficient to confer standing in this case." *Id.* The record here is indisputable that the Campaign has already punished Ms. Denson for speaking out, and therefore *Bordell* supports Plaintiffs, not Defendant.[8]

\* \* \* \* \*

The Campaign's case or controversy argument boils down to the claim that Ms. Denson can establish standing only by (1) pointing to a currently active arbitration or litigation against her, or (2) identifying discrete statements that she would like to make to which the Campaign objects. *See* Def.'s Mem. at 7–12. The former argument is foreclosed under both First Amendment pre-enforcement caselaw and the standing analysis that controls cases challenging restrictive covenants, *see supra* at pp. 12–16; the latter misconstrues the nature of Plaintiffs' claims and the record before the Court. Plaintiffs do not ask this Court to determine whether any particular statement does or does not constitute a breach of the Form NDA. They seek a declaration that the Form NDA is unenforceable because of its scope, indefiniteness and restriction of protected speech—a clearly justiciable claim that Ms. Denson has standing to assert.[9]

---

[8] The Campaign's position that Ms. Denson's public comments undermine her standing also runs contrary to courts' recognition that "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in h[er] protected activity." *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996), *vacated on other grounds*, 523 U.S. 574 (1998)); *accord. Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019).

[9] In making its "case or controversy" argument, the Campaign argues this Court lacks subject matter jurisdiction over plaintiffs' claims, despite the fact that it was *the Campaign itself* that removed the case to this Court. In these circumstances, even if the Campaign's standing argument were correct (which it is not), the proper remedy would be to remand the case to state

## II.     MS. DENSON IS NOT ESTOPPED FROM LITIGATING THE VALIDITY OF THE FORM NDA BECAUSE NO COURT HAS EVER DECIDED THE ISSUE

The Campaign argues that Ms. Denson is barred from challenging the enforceability of the Form NDA by the doctrine of collateral estoppel. It contends that this issue "was presented to and decided by the First Department" in Ms. Denson's appeal of the arbitration award entered against her. Def.'s Mem. at 12–14 (citing *Denson v. Donald J. Trump for President*, 180 A.D.3d 446, 450 (1st Dep't 2020)). It was not. The Campaign's argument is built upon a misrepresentation of the First Department's ruling, which does not purport to resolve the validity of the Form NDA.

Under New York law,[10] collateral estoppel pertains only "if the issue in the second action is identical to an issue which was raised, *necessarily decided and material in the first action*, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." *City of N.Y. v. Welsbach Elec. Corp.*, 9 N.Y.3d 124, 128 (2007) (emphasis added). The burden for establishing that an identical issue was "necessarily decided" lies with the Campaign. *Jeffreys v. Griffin*, 1 N.Y.3d 34, 39 (2003); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001). As explained below, the only legal issue necessarily decided in the First Department's opinion was whether the arbitrator's awards fell within one of New York's four statutory grounds for vacating an arbitration award; that is the only issue for which the opinion could plausibly have preclusive effect.

---

court. *Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991); *Zanotti v. Invention Submission Corp.*, No. 18-cv-5893 (NSR), 2020 WL 2857304, at *11 (S.D.N.Y. June 2, 2020).

[10] Because "the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to accord state judgments the same preclusive effect those judgments would have in the courts of the rendering state, New York preclusion law applies." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005); 28 U.S.C. § 1738.

### A.   The First Department Did Not Resolve The Legal Question of The Form NDA's Enforceability

The Campaign selectively quotes from the First Department decision to misrepresent it as supposedly holding that "there was 'no legal basis' to conclude that the Agreement is 'so broad and over-inclusive' that it is 'void or should be invalidated as against public policy.'" Def.'s Mem. at 13 (selectively quoting *Denson*, 180 A.D.3d at 452). The First Department opinion says no such thing.

In contrast to the issue before the arbitrator,[11] the legal issue before the First Department was whether it should reverse the Supreme Court's denial of Ms. Denson's motion to vacate the arbitration award. *Denson*, 180 A.D.3d at 449. The First Department thus began its opinion by explaining that there are only four grounds that justify vacatur of an arbitration award under C.P.L.R. § 7511(b): "(1) corruption, fraud or misconduct in procuring the award; (2) partiality of the arbitrator; (3) the arbitrator exceeding or imperfectly executing his/her power or (4) the arbitrator failing to follow the procedure of CPLR article 75." *Id.* at 449–50. The Court further noted that, with respect to the third ground, "an award will not be overturned unless the award violates a strong public policy," and "only where [the] court can conclude, *without engaging in any extended fact finding or legal analysis*, that a law prohibits the particular matters to be decided by arbitration, or where the award itself violates a well-defined constitutional, statutory or common law of this state." *Id.* at 450 (emphasis added).

---

[11] The Campaign does not argue that the arbitrator's award carries collateral estoppel effect and it could not. The First Department's decision vacated the arbitrator's awards in their entirety, and vacated arbitration awards, like vacated judgments, carry no preclusive effect. *Solow Bldg. Co., LLC v. Morgan Guar. Tr. Co. of N.Y.*, 294 A.D.2d 224, 224–25 (1st Dep't. 2002) (holding that a vacated arbitration award is not "complete, final, and binding" enough to trigger preclusion doctrines); *accord. Sayre v. JPMorgan Chase & Co.*, 781 F. App'x 667, 668 (9th Cir. 2019); *Kaplan v. First Options of Chi.*, 189 B.R. 882, 895 (E.D. Pa. 1995); *see generally Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir. 1992) ("A judgment vacated or set aside has no preclusive effect.").

In this limited context—that is, in evaluating whether the *arbitration award* should be vacated on public policy grounds—the First Department engaged in a brief discussion of the general enforceability of non-disparagement agreements. It is this language that the Campaign takes entirely out of context to claim preclusive effect. The First Department first noted Ms. Denson's argument that the arbitration award should be voided because the Form NDA was "so broad and over-inclusive" that it violated public policy. *Id*. at 452. The court then stated:

> [t]here is no legal basis for the court to conclude that non-disparagement agreements ***per se*** violate public policy. Quite the contrary, the courts routinely resolve the merits of conflicting claims pertaining to non-disparagement agreements and the scope of their coverage, without relying on public policy grounds.

*Id.* at 452 (emphasis added). The Campaign quotes the opinion out of order to make it appear that, in making this statement, the First Department passed on the specific question of the validity of the Form NDA at issue in this case. Def.'s Mem. at 13. It did no such thing—the opinion is clear that the First Department was addressing whether non-disparagement agreements generally, not the Form NDA in particular, violate public policy.

The First Department then followed its statement that NDAs do not *per se* violate public policy with some additional principles pertaining to NDAs generally under New York law. *Id.* at 452 (noting that the "permissible scope" of an NDA can typically be decided by an arbitrator and that a non-disparagement agreement between private parties does not necessarily intrude on rights of free expression). The court then expressly declined to speak on the enforceability of the Form NDA in particular, stating that "any error by the arbitrator" concerning its enforceability is "at most, a mistake of law that cannot serve as a predicate basis for vacating these awards." *Id.* Stated differently, the First Department concluded that it could not resolve whether the Form NDA at issue violated public policy "without engaging in any extended fact finding or legal analysis," so whether the arbitrator exceeded his authority by enforcing a contract that violated

public policy was not an available *basis for vacatur* in that case under C.P.L.R. § 7511(b). *Id.* at

450, 452.

### B.     The First Department's Opinion Has No Preclusive Effect Even If It Is Read To Address The Enforceability of The Form NDA

Even if the First Department opinion could be read to address – implicitly or explicitly –

the enforceability of the Form NDA, it would not be preclusive here. Assuming only for the sake

of argument that there is a relevant prior "decision" here, preclusion would apply only if the

Campaign were able to satisfy its burden of establishing that the enforceability issue was

"material" to that decision. *City of N.Y.*, 9 N.Y.3d at 128; *Jeffreys*, 1 N.Y.3d at 39. In other

words, the Campaign must show that any decision in the First Department's opinion as to the

Form NDA's enforceability—to the extent such a thing exists—was *not* "mere dicta," which

carries no preclusive effect. *Jackson v. Bd. of Educ. of City of N.Y.*, 812 N.Y.S.2d 91, 94 (1st

Dep't. 2006) (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.S.2d 494, 500–501 (1984)); *see also Pollicino

v. Roemer & Featherstonhaugh P.C.*, 716 N.Y.S.2d 416, 417 (3d Dep't. 2000) ("Language that

is not necessary to resolve an issue . . . constitutes dicta and should not be accorded preclusive

effect.").

The First Department has a straightforward test for identifying dicta: "If the insertion of

the rejected proposition into the court's reasoning, in place of the one adopted, would not require

a change in either the court's judgment or the reasoning that supports it, then the proposition is

dictum. It is superfluous. It had no functional role in compelling the judgment." *Rose Park

Place, Inc. v. New York*, 985 N.Y.S.2d 350, 354 (4th Dep't 2014).[12] Applying that test to the First

---

[12] The First Department adopted its test from a law review article by Judge Leval. *See Rose Park Place, Inc.*, 985 N.Y.S.2d at 354 (citing and quoting Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1257 (2006)). In that article, Judge Leval offers a helpful example to clarify the operation of the test:

Department decision, its discussion of the enforceability of the Form NDA plainly amounts to *dicta*.

As read (although incorrectly and incompletely) by the Campaign, the First Department opinion: (1) rejected the proposition that the Form NDA violates either contract law or the right to free speech, and (2) accepted the proposition that the arbitrator's awards violated public policy by punishing Ms. Denson for petitioning the courts and exceeded his authority by issuing awards based on statements by Ms. Denson having no connection to the arbitration demand. 180 A.D.3d at 452, 454. Reversing the rejected proposition would change neither the court's judgment that the arbitrator's awards violated public policy and exceeded his authority nor alter the specific reasoning that supported that conclusion. Even accepting that the First Department meant what the Campaign contends, its discussion of the Form NDA's validity was plainly *dicta* and the issue of the Form NDA's enforceability was neither "necessarily decided" nor "material" to its judgment. *City of N.Y.*, 9 N.Y.3d at 128.

---

I illustrate by reference to a hypothetical card game, with rules not yet clearly understood. Let's call it "Poker." The plaintiff has three Jacks; the defendant holds a pair of Queens. Each claims to have the winning hand. The court rules for three Jacks. In explanation, the court writes, "When held in equal numbers, Queens beat Jacks. But three-of-a-kind always beats a pair." The statement that Queens beat Jacks is superfluous to the court's reasoning, which explained the grant of judgment to the plaintiff by reason of the plaintiff's having three-of-a-kind. Were the statement turned around to state the opposite—that Jacks beat Queens—the court's grant of judgment in favor of the three Jacks, on the ground that three-of-a-kind beats a pair, would nonetheless stand unaltered. The statement of priorities between Jacks and Queens played no role in its award of judgment in favor of the three-Jack hand and was accordingly dictum.

Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. at 1257.

In sum, there were only two grounds for the First Department's decision: (1) the arbitrator's award improperly punished Ms. Denson for availing herself of a judicial forum; and (2) the arbitrator's award improperly accorded damages on the basis of statements unrelated to the arbitration demand. Nothing about its resolution of those issues has any preclusive effect in this case.

## CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court deny the Campaign's motion to dismiss.

Dated: August 13, 2020                                  Respectfully Submitted,

                                                        By: /s/ John Langford
                                                        John Langford (JL-2367)
                                                        Jenny Choi, *law student intern*
David A. Schulz                                         UNITED TO PROTECT DEMOCRACY, INC.
Joseph Slaughter                                        555 W. 5th St.
BALLARD SPAHR LLP                                       Los Angeles, CA 90013
1675 Broadway, 19th Floor                               Telephone: (202) 579-4582
New York, NY 10019                                      Fax: (929) 777-8428
Telephone: (212) 850-6103                               Email: john.langford@protectdemocracy.org
Fax: (212) 223-1942
Email: schulzd@ballardspahr.com
Email: slaughterj@ballardspahr.com                      Brittany Williams*
                                                        UNITED TO PROTECT DEMOCRACY, INC.
David K. Bowles                                         1900 Market St., 8th Fl.
BOWLES & JOHNSON PLLC                                   Philadelphia, PA 19103
14 Wall Street, 20th Floor                              Telephone: (202) 579-4582
New York, New York 10005                                Fax: (929) 777-8428
Tel. (212) 390-8842                                     Email: brittany.williams@protectdemocracy.org
Fax (866) 844-8305
Email: David@BoJo.Law                                   Anne Tindall*
                                                        UNITED TO PROTECT DEMOCRACY, INC.
                                                        2020 Pennsylvania Ave. NW, Suite # 163
                                                        Washington, DC 20006
                                                        Telephone: (202) 579-4582
                                                        Fax: (929) 777-8428
                                                        Email: anne.tindall@protectdemocracy.org

                                                        *Counsel for Plaintiffs*

* Motion for admission *pro hac vice* forthcoming