UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JESSICA DENSON, Individually and on Behalf of All Others Similarly Situated,

    *Plaintiffs*,

    *v.*

DONALD J. TRUMP FOR PRESIDENT, INC.,

    *Defendant.*

No. 20 Civ. 4737 (PGG)

---

**PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

David A. Schulz
Joseph Slaughter
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6103
Fax: (212) 223-1942
Email: schulzd@ballardspahr.com
Email: slaughterj@ballardspahr.com

David K. Bowles
BOWLES & JOHNSON PLLC
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
Email: David@BoJo.Law

John Langford (JL-2367)
UNITED TO PROTECT DEMOCRACY, INC.
555 W. 5th St.
Los Angeles, CA 90013
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: john.langford@protectdemocracy.org

Brittany Williams
UNITED TO PROTECT DEMOCRACY, INC.
1900 Market St., 8th Fl.
Philadelphia, PA 19103
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: brittany.williams@protectdemocracy.org

Anne Tindall
UNITED TO PROTECT DEMOCRACY, INC.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: anne.tindall@protectdemocracy.org

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

ARGUMENT ........................................................................................................................................ 2

I.     PLAINTIFFS HAVE STANDING TO BRING THIS LAWSUIT ................................... 2

II.    THE FORM NDA IS VOID AND UNENFORCEABLE ................................................. 2

III.   THE COURT SHOULD NOT "BLUE PENCIL" THE FORM NDA .............................. 5

IV.    THE FORM NDA VIOLATES PLAINTIFFS' FIRST AMENDMENT RIGHTS .......... 7

CONCLUSION .................................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*,
   59 A.D.3d 97 (1st Dep't 2008) .................................................................................... 2, 3

*Ashland Mgmt. Inc. v. Janien*,
   82 N.Y.2d 395 (1993) ...................................................................................................... 10

*Banchy v. Republican Party of Hamilton Cnty.*,
   707 F. Supp. 323 (S.D. Ohio 1989), *aff'd*, 898 F.2d 1192 (6th Cir. 1990) .............................. 8

*BDO Seidman v. Hirshberg*,
   93 N.Y.2d 382 (1999) .............................................................................................. 2, 3, 5

*Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*,
   408 F. Supp. 3d 478 (S.D.N.Y. 2019) ............................................................................. 9

*Cockrum v. Donald J. Trump for President, Inc.*,
   365 F. Supp. 3d 652 (E.D. Va. 2019) .............................................................................. 8

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
   82 F. Supp. 3d 344 (D.D.C. 2015) .................................................................................. 9

*Davies v. Grossmont Union High Sch. Dist.*,
   930 F.2d 1390 (9th Cir. 1991) ........................................................................................ 8

*Democratic Nat'l Comm. v. Russian Fed'n*,
   392 F. Supp. 3d 410 (S.D.N.Y. 2019) ............................................................................. 9

*Fed. Election Comm'n v. Machinists Non-Partisan Pol. League*,
   655 F.2d 380 (D.C. Cir. 1981) ....................................................................................... 9

*Federer v. Gephardt*,
   363 F.3d 754 (8th Cir. 2004) .......................................................................................... 8

*Flatiron Health, Inc. v. Carson*,
   No. 19 Civ. 8999 (VM), 2020 WL 1320867 (S.D.N.Y. Mar. 19, 2020) ...................... 6

*Integrated Cash Mgmt. Servs., Inc. v. Digit. Transactions, Inc.*,
   920 F.2d 171 (2d Cir. 1990) ........................................................................................... 10

*Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*,
   323 F. Supp. 2d 525 (S.D.N.Y. 2004) ............................................................................ 5

|  | Page(s) |
|---|---|

**Cases (cont.)**

*Long Is. Minimally Invasive Surgery, P.C. v. St. John's Episcopal Hosp.*,
   164 A.D.3d 575 (2d Dep't 2018) ................................................................................. 6

*Matthews v. Wozencraft*,
   15 F.3d 432 (5th Cir. 1994) ....................................................................................... 10

*McConnell v. Fed. Election Comm'n*,
   251 F. Supp. 2d 919 (D.D.C. 2003) ............................................................................ 9

*Next Comm., Inc. v. Viber Media, Inc.*,
   758 F. App'x 46 (2d Cir. 2018) ................................................................................. 10

*Overbey v. Mayor of Balt.*,
   930 F.3d 215 (4th Cir. 2019) ...................................................................................... 8

*Perry v. Schwarzenegger*,
   591 F.3d 1147 (9th Cir. 2010) .................................................................................... 9

*Radiance Found., Inc. v. N.A.A.C.P.*,
   786 F.3d 316 (4th Cir. 2015) .................................................................................... 10

*Schroeder v. Cohen*,
   169 A.D.3d 412 (1st Dep't 2019) .............................................................................. 10

*Scott, Stackrow & Co., C.P.A.'s, P.C. v. Skavina*,
   9 A.D.3d 805 (3d Dep't 2004) .................................................................................... 5

*Silverman v. CBS Inc.*,
   870 F.2d 40 (2d Cir. 1989) ....................................................................................... 10

*Town of Newton v. Rumery*,
   480 U.S. 386 (1987) .................................................................................................... 8

*Trahan v. Lazar*,
   No. 1:19-CV-01131-GHW, __ F.3d __, 2020 WL 2086610 (S.D.N.Y. Apr. 30, 2020) ............ 9

*Webb v. Shurling*,
   No. 19-cv-1215, 2019 WL 7938537 (W.D. La. Sept. 23, 2019) ................................ 8

*Wrap-N-Pack, Inc. v. Eisenberg*,
   No. 04-cv-4887 (DRH)(JO), 2007 WL 952069 (E.D.N.Y. Mar. 29, 2007) ................ 6

**Page(s)**

**Cases (cont.)**

*Wyoming v. U.S. Dep't of Agric.*,
   208 F.R.D. 449 (D.D.C. 2002) ................................................................................................. 9

*Yang v. Kosinski*,
   960 F.3d 119 (2d Cir. 2020) ..................................................................................................... 9

**Other Authorities**

Robert C. Post & Jennifer E. Rothman, *The First Amendment and the Right(s) of Publicity*,
   130 Yale L.J. (forthcoming 2020) (cited with permission of the authors), *available at*
      https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3553946&dgcid .................................. 10

**PRELIMINARY STATEMENT**

Jessica Denson and all persons similarly situated ("Plaintiffs") have moved for summary judgment based on a clear showing that a form contract containing nondisclosure and non-disparagement clauses that defendant Donald J. Trump for President, Inc. (the "Campaign") forced all workers to sign (the "Form NDA") is invalid as a matter of New York contract law, as well as under the free speech clauses of the New York and United States constitutions. The Campaign does not dispute a single material fact asserted by Plaintiffs, and this matter is therefore ripe for summary judgment on the pure legal issues presented.

On the law, the Campaign does little to refute Plaintiffs' showing that the Form NDA is void and unenforceable under New York contract law. Indeed, the Campaign all but concedes that the Form NDA is unenforceable as written, asking the Court to "blue pencil" the agreement to save it—that is, to prune the Form NDA from something blatantly illegal to something plausibly within the bounds of legality. But coming to the court with unclean hands, while continuing to use the Form NDA to stifle and punish political speech critical of the President, the Campaign is not entitled to the benefit of blue penciling as a matter of New York law.

The Campaign objects to Plaintiffs' First Amendment claim by arguing that it is not a state actor (a claim Plaintiffs do not make), and contending that Plaintiffs waived their First Amendment rights without addressing the second half of the waiver test. The Campaign also asserts that its own First Amendment rights of free association somehow justify the patently overbroad restraints in the Form NDA, as though its associational rights somehow give the Campaign the right to censor the free speech of its workers for life.

The Campaign's arguments lack all merit, and Plaintiffs respectfully request that the Court grant Plaintiffs' motion for summary judgment and declare the Form NDA invalid *in toto*.

## ARGUMENT

I. **PLAINTIFFS HAVE STANDING TO BRING THIS LAWSUIT**

In its memorandum opposing summary judgment, the Campaign begins by regurgitating the same standing arguments it advanced in its motion to dismiss. *See* Mem. of Law in Opp'n to Pls.' Mot. Summ. J. (hereinafter, "Def.'s Opp'n") at 3–5, ECF No. 34; Def.'s Mem. Supp. Mot. to Dismiss (hereinafter, "Def.'s Mem.") at 8–12, ECF No. 25. Plaintiffs rebutted those arguments in opposing the Campaign's motion to dismiss. *See* Pls.' Opp'n to Def.'s Mot. to Dismiss (hereinafter, "Pls.' Opp'n"), ECF No. 32.

II. **THE FORM NDA IS VOID AND UNENFORCEABLE**

Plaintiffs' opening brief demonstrated that restrictive covenants like those at issue here are broadly disfavored under New York law, and will be enforced only where they are: (1) reasonable in time and area, (2) necessary to protect the employer's legitimate interests, (3) not harmful to the general public, and (4) not unreasonably burdensome to the employee. *See* Pls.' Mem. Supp. Summ. J. (hereinafter, "Pls.' Mem.") at 11, ECF No. 20. The Campaign has no response and does not refute this black-letter law.

Instead, the Campaign expounds upon the privacy and confidentiality interests the Form NDA supposedly protects. Def.'s Opp'n at 7–9, 15–16. Its defense misses the point entirely.[1] For starters, whether there may be some confidential information the Campaign has a legitimate interest in protecting from disclosure is irrelevant to the non-disparagement provision in the Form NDA, which the Campaign has repeatedly used—and continues to use—as a cudgel against those whose speech it does not like. *See* Pls.' Opp'n at 4–9. And even as pertains to the

---

[1] Plaintiffs have never disputed that the Campaign, like any other organization, has legitimate confidentiality interests. *See, e.g.*, Compl. ¶ 2, ECF No. 1-1. The extent of those interests is determined by the same test applicable to every other organization. *See infra* at p. 9.

2

nondisclosure clause, the relevant legal question is not whether the Campaign *has* any legitimate confidentiality interest, but whether the Form NDA is "necessary to protect" that interest. *Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*, 59 A.D.3d 97, 101–02 (1st Dep't 2008) (*quoting BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389 (1999)). Ignoring that dispositive question, the Campaign makes no attempt to demonstrate that the Form NDA is appropriately tailored to the ends it purports to serve.[2]

The Campaign's attempts to show that the Form NDA is both "reasonable in time" and not "unduly burdensome" equally miss the mark. With respect to the Form NDA's unlimited duration, the best the Campaign can muster is to: (1) cite cases observing that, in some circumstances, the lack of a time limitation is not "ipso facto" proof that a restrictive covenant is unenforceable; and (2) attempt to distinguish a plethora of cases finding the lack of a time limitation sufficient to render a contract unenforceable on the ground that those cases did not involve political campaigns. Def.'s Opp'n at 10–11. Both arguments ignore the more salient fact that, while restrictive covenants with no time limits may occasionally be reasonable, *the Campaign bears the burden* of justifying the unlimited duration of its Form NDA. *See Ashland Mgmt.*, 59 A.D.3d at 106 (burden is on the employer to demonstrate that it has in good faith sought to protect a legitimate interest). It has not done so, or even tried to do so.[3]

---

[2] The various cases the Campaign cites in its misdirected effort to justify the nondisclosure provision concern attempts by litigants to compel the disclosure of information from campaigns and political parties in discovery in litigation. *See* Def.'s Opp'n at 8. None of those cases purport to hold that a political campaign has a First Amendment right to ignore generally applicable state law governing the propriety of restrictive covenants in employment contracts, *see infra* at 9 n.11, and they have nothing to do with the legal issue here: whether the Campaign can continue to silence and punish its employees via its vastly overbroad Form NDA.

[3] Contrary to the Campaign's assertion, Def.'s Opp'n at 11, New York law does not apply different standards to different types of restrictive covenants. As the very cases the Campaign cites make clear, the question is always whether a restrictive covenant is reasonable, necessary,

The Campaign similarly attempts to defend its Form NDA as not "unduly burdensome" to Ms. Denson simply by arguing that: (1) she agreed to sign it; and (2) she has supposedly not provided evidence that the Form NDA is currently being used to restrict her speech. Def.'s Opp'n at 11–13. The first argument begs the relevant question—*any* case involving a restrictive covenant necessarily involves a signed agreement, but New York law still requires an inquiry into its burden on the signer. The second argument is based on a demonstrably false premise, given the Campaign's well-documented—and undisputed—efforts to enforce the Form NDA against Ms. Denson and others. *See* Def.'s Resp. Pls.' L. Civ. R. 56.1 Statement of Material Facts (hereinafter, "Def.'s SMF") ¶¶ 11–50, ECF No. 35.

With respect to indefiniteness, the Campaign makes two more baseless arguments. Def.'s Opp'n at 13–14. First, the Campaign cherry picks several categories of information ostensibly covered by the NDA that it claims other courts have found "intrinsically private." *Id.* But this only highlights the many other categories of information covered by the terms of the Form NDA that are both indisputably public and unenforceably indefinite. It also ignores the fact that the Form NDA declares the list of identified categories to be *non-exhaustive*. *See* Decl. of Jessica Denson Supp. Pls.' Mot. Summ. J. (hereinafter, "Denson Decl.") Ex. A ¶ 6(a), ECF No. 22-1. Second, the Campaign asserts that President Trump's ability to unilaterally declare information confidential without prior notice does not render the Form NDA indefinite—but provides no legal authority or logical reasoning as to *why* that is the case. Def.'s Opp'n at 14. The plain language of this provision of the Form NDA belies the Campaign's description of it. *See* Denson Decl. Ex. A ¶ 6(a), ECF No. 22-1.

---

not harmful, and not unduly burdensome. *See Ashland Mgmt. Inc. v. Altair Investments NA, LLC*, 59 A.D.3d 97, 104 (2008); *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389 (1999); *see also Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 499 (1977).

4

Finally, the Campaign argues that Plaintiffs must demonstrate that the Form NDA is both procedurally and substantively unconscionable, Def.'s Opp'n at 15, but New York law says otherwise, *see* Pls.' Mem. at 18. Moreover, with respect to substantive unconscionability, the Campaign once again cherry picks aspects of the Form NDA it thinks are justifiable, while ignoring others identified by Plaintiffs for which it can offer no defense. *Compare* Def.'s Opp'n at 16–17 *with* Pls.' Mem. at 19–20.[4]

### III.   THE COURT SHOULD NOT "BLUE PENCIL" THE FORM NDA

Undoubtedly recognizing that the Form NDA, as written, is clearly unenforceable, the Campaign quickly retreats to suggesting that the Court should "blue pencil" it rather than hold the contract unenforceable as a whole—that is, limit the terms of the Form NDA in a way that makes it consistent with New York law. Def.'s Opp'n at 7, 11, 15. Well-settled and long-standing precedent dictates that blue penciling is inappropriate here for two reasons.

*First*, the New York Court of Appeals has definitively stated that blue penciling is only appropriate where an employer "demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but [instead] has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing." *BDO Seidman*, 93 N.Y.2d at 394; *see also Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 540 (S.D.N.Y. 2004) (same). Here, the Campaign has made no showing sufficient to carry its burden, and the undisputed record is replete with examples of exactly the kind of "coercion" and "overreaching" that render blue penciling inappropriate. *See,*

---

[4] The Campaign declines to even address Plaintiffs' arguments that the Form NDA is harmful to the general public and void as against public policy. *See* Pls.' Mem. at 13–14, 16–17.

*e.g.*, Def.'s SMF ¶¶ 13–22; 26.[5] Consistent with the governing law, New York courts regularly decline to blue pencil restrictive covenants where an employer has failed to carry its burden. *See, e.g.*, *Scott, Stackrow & Co., C.P.A.'s, P.C. v. Skavina*, 9 A.D.3d 805, 807 (3d Dep't 2004) (declining to blue pencil where employer failed to carry its burden to demonstrate good faith and lack of overreaching); *Long Is. Minimally Invasive Surgery, P.C. v. St. John's Episcopal Hosp.*, 164 A.D.3d 575, 578 (2d Dep't 2018) (noting that "[t]he fact that the covenant is clearly overbroad casts doubt on the plaintiff's good faith in imposing it"); *see also* Br. of *Amicus Curiae* Post-Employment Restrictive Covenant Experts at 8–11, ECF No. 29-1.[6]

*Second*, the Form NDA is not susceptible to blue penciling because both the nature of this action and the nature of the provisions at issue do not allow for it. Blue penciling can be appropriate in circumstances where an employer seeks injunctive relief to *enforce* a restrictive covenant, but it is not an available remedy here where a plaintiff seeks a declaration that the restrictive provisions—and by extension the contract itself—are unenforceable as a whole. *Cf. Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-cv-4887 (DRH)(JO), 2007 WL 952069, at *7 (E.D.N.Y. Mar. 29, 2007). And as a practical matter, given the sweeping overbreadth of the nondisclosure and non-disparagement provisions here, there is no way that the Court could blue pencil the Form NDA into compliance with the law. Indeed, the inaptness of blue penciling here is

---

[5] Indeed, the undisputed testimony from President Trump's former attorney, Michael Cohen, is that the President uses the Form NDA and similar NDAs for the *specific purpose* of "prevent[ing] people from coming forward with claims of wrongdoing" and to "basically try to keep people silent." Def.'s SMF ¶ 13; Denson Decl. Ex. H at 3, ECF No. 26-8.

[6] In *Flatiron Health, Inc. v. Carson*, this Court ably explained the rationale for refusing to blue pencil in these circumstances, noting that "[f]or every covenant that finds its way to court, there are thousands which exercise an *in terrorem* effect on employees who respect their contractual obligations," and that if courts apply blue penciling as a default rule, "employers can fashion truly ominous covenants with confidence that they will be pared down and enforced when the facts of a particular case are not unreasonable." No. 19 Civ. 8999 (VM), 2020 WL 1320867, at *23 (S.D.N.Y. Mar. 19, 2020).

underscored by the specific types of interests Mr. Glassner and the Campaign identify as potentially protectable, Def.'s Mem. at 14: exactly **0** of those interests are currently spelled out in the Form NDA. Denson Decl, Ex. A ¶ 6(a), ECF No. 22-1. The blue pencil is for striking-through overbroad provisions, not rewriting contracts from the ground up.

**IV.     THE FORM NDA VIOLATES PLAINTIFFS' FIRST AMENDMENT RIGHTS**

In moving for summary judgment, Plaintiffs demonstrated that the Form NDA violates both the First Amendment of the United States Constitution and the free speech provisions of the New York State Constitution. Pls.' Mem. at 20–25. In response, the Campaign argues that the Form NDA does not violate the First Amendment because (1) the Campaign is not a state actor; (2) Plaintiffs purportedly waived their First Amendment rights; and (3) invalidating the Form NDA would violate the Campaign's own First Amendment rights. Def.'s Opp'n at 18–22. All three arguments are baseless: the first ignores the well-established grounds for state action already identified in Plaintiffs' summary judgment brief; the second misapplies the relevant test for waiver of First Amendment rights; and, the third relies on the Campaign's supposed First Amendment right to silence employees—a right that has no basis in the law.

The Campaign's first argument primarily rebuts an argument Plaintiffs do not make: that there is state action here because the Campaign is itself a state actor. *Compare* Def.'s Opp'n at 18–19 *with* Pls.' Mem. at 21–24. Rather, Plaintiffs have demonstrated that there is sufficient state action to trigger First Amendment protections here for three reasons: (1) the Form NDA restricts core political speech and that restriction is enforced through the exercise of judicial power; (2) the President is deeply entwined with both the Campaign and the enforcement of the Form NDA; and (3) the Form NDA gives the President the right to enforce the contract directly. Pls.' Mem. at

21–24. Collectively, those three features give rise to state action here. Again, the Campaign has no answer and so simply ignores these grounds for state action.[7]

The Campaign next argues that Ms. Denson waived her First Amendment rights because she signed the Form NDA knowingly and voluntarily. Def.'s Opp'n at 20. Setting aside that the waiver was neither knowing nor voluntary, *see* Pls.' Mem. at 24, the Campaign fails to grapple with the fact that even a knowing and voluntary waiver of First Amendment rights is only enforceable where "the interest in enforcing the waiver is not outweighed by a relevant public policy that would be harmed by enforcement." *Overbey v. Mayor of Balt.*, 930 F.3d 215, 223 (4th Cir. 2019); *see generally Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987); *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1396 (9th Cir. 1991). The Campaign fails to make any showing that its interest in enforcing this purported waiver outweighs the substantial damage to free speech worked by the Form NDAs.

Finally, the Campaign argues that invalidating the Form NDA would amount to a violation of *its* First Amendment right to free association. Def.'s Opp'n at 21–22. Essentially, the

---

[7] Nor do any of the cases cited by the Campaign refute *any* of these bases for finding state action. In *Cockrum v. Donald J. Trump for President, Inc.*, all of the conduct at issue took place *before* Trump became President—hence the court's passing reference to the Campaign as a purely private entity. 365 F. Supp. 3d 652, 665 (E.D. Va. 2019). *Webb v. Shurling* is inapposite for exactly the same reason. No. 19-cv-1215, 2019 WL 7938537, at *2 (W.D. La. Sept. 23, 2019) (holding that there was no state action where "[t]here [wa]s no allegation that [a candidate] actually h[eld] any state or local office"). *Banchy v. Republican Party of Hamilton Cnty.* is even further afield, as the court held that there was no state action in party members' challenge to the election of Ward Chairmen because the conduct at issue involved an election to a party position, not public office, and because the plaintiffs did not allege any constitutional violation at all. 707 F. Supp. 323, 325 (S.D. Ohio 1989), *aff'd*, 898 F.2d 1192 (6th Cir. 1990). And in *Federer v. Gephardt*, the Eighth Circuit held there was no state action where the plaintiff failed to allege that agents of a United States Representative acted on the Representative's behalf in his official capacity. 363 F.3d 754, 759 (8th Cir. 2004). These cases stand in stark contrast to the facts here, where the Campaign enforces the Form NDA at President Trump's urging and in response to criticisms of the President's and his Administration's official acts. *See* Pls.' Mem. at 6.

Campaign is arguing that it has a First Amendment right to censor the speech of its employees. The Campaign identifies no legal or logical basis for this claim because there is none. In the absence of any authority on point, the Campaign cites cases discussing campaigns' and political parties' First Amendment defense to the compelled disclosure of internal documents in litigation, which have no applicability here.[8] None of those cases hold that campaigns or political parties have a freestanding First Amendment right to silence employees, or some constitutionally enhanced power to contract for silence. More to the point, a ruling in Plaintiffs favor here would not compel the Campaign to disclose anything; it would simply prohibit the Campaign from continuing to silence its employees via an unlawful contract.

At most, the Campaign could claim what any organization can claim: the right to protect trade secrets and other protectable commercial information. *Cf. Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 447–48 (S.D.N.Y. 2019); *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 82 F. Supp. 3d 344, 360–62 (D.D.C. 2015); *McConnell v. Fed. Election Comm'n*, 251 F. Supp. 2d 919, 937–38 (D.D.C. 2003). But the Campaign has not even attempted to meet the requirements for demonstrating that the information it seeks to protect falls within the definition of a "trade secret," let alone to do so with the level of specificity required.

---

[8] *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010) (granting writ of mandamus directing district court to grant protective order concerning discovery request for internal campaign communications about strategy and messaging); *Fed. Election Comm'n v. Machinists Non-Partisan Pol. League*, 655 F.2d 380, 396–97 (D.C. Cir. 1981) (vacating district court's order enforcing FEC subpoena to the Machinists Non-Partisan Political League); *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 408 F. Supp. 3d 478, 482 (S.D.N.Y. 2019) (invalidating two provisions of the New York Ethics Law requiring entities that are exempt from federal taxation to publicly report their donors under certain circumstances); *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 455 (D.D.C. 2002) (granting motion to quash subpoenas Wyoming served on non-party witnesses). The Campaign also cites *Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020), for the uncontroversial and irrelevant proposition that "the right to associate with the political party of one's choice is an integral part of this basic constitutional freedom of association." *Id.* at 130 (internal alterations and quotations omitted); Def.'s Opp'n at 7.

9

*See, e.g.*, *Trahan v. Lazar*, No. 1:19-CV-01131-GHW, __ F.3d __, 2020 WL 2086610, at *7 (S.D.N.Y. Apr. 30, 2020); *Schroeder v. Cohen*, 169 A.D.3d 412, 412–13 (1st Dep't 2019); *see Democratic Nat'l Comm.*, 392 F. Supp. 3d at 448 (rejecting the DNC's assertion that donor lists and fundraising strategies were trade secrets where the DNC failed to "identif[y] anything about the process of developing donor lists or fundraising strategies or show[] how their particular value derives from their secrecy"); *cf. Next Commc'ns., Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 48 (2d Cir. 2018) (party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial regarding the existence of a trade secret"). Moreover, New York's protections for trade secrets do not extend to employees' expressions of political opinion or every communication they had while employed. *See generally Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993) (defining a trade secret); *Integrated Cash Mgmt. Servs., Inc. v. Digit. Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990) (same).[9] As such, the Form NDA stretches far beyond what the Campaign's legitimate and compelling interests could conceivably justify.[10]

## CONCLUSION

For the reasons above and those laid out in Plaintiffs' opening memorandum, Plaintiffs respectfully request that the Court grant their motion for summary judgment.

---

[9] Even assuming that a *political campaign* could have a protectable interest in its name or reputation akin to those possessed by businesses—an assumption that is anything but intuitive, that interest certainly wouldn't outweigh the public interest in free speech, as evidenced by the fact that even trade dilution laws do not apply to protected public discourse. *See* Robert C. Post & Jennifer E. Rothman, *The First Amendment and the Right(s) of Publicity*, 130 Yale L.J. (forthcoming 2020) (manuscript at 52–63) (cited with permission of the authors), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3553946&dgcid; *see also, e.g.*, *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 331–32 (4th Cir. 2015); *Matthews v. Wozencraft*, 15 F.3d 432 (5th Cir. 1994); *Silverman v. CBS Inc.*, 870 F.2d 40, 48 (2d Cir. 1989).

[10] The Campaign's "associational rights" argument also directly undermines its contention that there is no state action here. It cannot be that a ruling invalidating the Form NDA violates the Campaign's First Amendment rights, but a ruling enforcing the contract is bereft of state action.

Dated: August 20, 2020                                          Respectfully Submitted,

                                                                 By: /s/ John Langford

| | |
|---|---|
| David A. Schulz | John Langford (JL-2367) |
| Joseph Slaughter | UNITED TO PROTECT DEMOCRACY, INC. |
| BALLARD SPAHR LLP | 555 W. 5th St. |
| 1675 Broadway, 19th Floor | Los Angeles, CA 90013 |
| New York, NY 10019 | Telephone: (202) 579-4582 |
| Telephone: (212) 850-6103 | Fax: (929) 777-8428 |
| Fax: (212) 223-1942 | Email: john.langford@protectdemocracy.org |
| Email: schulzd@ballardspahr.com | |
| Email: slaughterj@ballardspahr.com | Brittany Williams* |
| | UNITED TO PROTECT DEMOCRACY, INC. |
| David K. Bowles | 1900 Market St., 8th Fl. |
| BOWLES & JOHNSON PLLC | Philadelphia, PA 19103 |
| 14 Wall Street, 20th Floor | Telephone: (202) 579-4582 |
| New York, New York 10005 | Fax: (929) 777-8428 |
| Tel. (212) 390-8842 | Email: brittany.williams@protectdemocracy.org |
| Fax (866) 844-8305 | |
| Email: David@BoJo.Law | Anne Tindall* |
| | UNITED TO PROTECT DEMOCRACY, INC. |
| | 2020 Pennsylvania Ave. NW, Suite # 163 |
| | Washington, DC 20006 |
| | Telephone: (202) 579-4582 |
| | Fax: (929) 777-8428 |
| | Email: anne.tindall@protectdemocracy.org |
| | |
| | *Counsel for Plaintiffs* |
| | |
| | * Motion for admission *pro hac vice* forthcoming. |