UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JESSICA DENSON, Individually and on Behalf of
All Others Similarly Situated,

                                                                              Case No.: 20-cv-4737 (PGG)

                Plaintiff,

      -against-

DONALD J. TRUMP FOR PRESIDENT, INC.

                Defendant.
----------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS

*On the brief:*
*Patrick McPartland, Esq.*
*Jared E. Blumetti, Esq.*

**LAROCCA HORNIK ROSEN
& GREENBERG LLP**
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4837/4831
E: PMCPARTLAND@LHRGB.COM
    JBLUMETTI@LHRGB.COM
*Attorneys for defendant*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**……………………………………………………… ii

**PRELIMINARY STATEMENT**…………………………………………………… 1

**ARGUMENT**………………………………………………………………………… 2

**I.  PLAINTIFF HAS FAILED TO IDENTIFY AN ACTUAL CONTROVERSY**……………………………………………………… 2

    A.    There is No Current or Threatened Dispute Between Plaintiff and the Campaign…………………………………………… 2

    B.    The Mere Existence of the Agreement Does Not Confer Standing………………………………………………………………… 3

    C.    Plaintiff Cannot Demonstrate Standing Under the First Amendment……………………………………………………………… 5

**II.  PLAINTIFF IS COLLATERALLY ESTOPPED FROM RELITIGATING THE ENFORCEABILITY OF THE AGREEMENT**……………………………………………………………… 7

**CONCLUSION**……………………………………………………………………… 10

# **TABLE OF AUTHORITIES**

|   | Page(s) |
|---|---|
| *Accelecare Wound Centers, Inc. v. Bank of New York*, 2009 WL 2460987 (S.D.N.Y. August 11, 2009)……………………………… | 4 |
| *Applegate v. Annucci*, 2017 WL 3049555 (S.D.N.Y. July 18, 2017)…………………………………… | 3 |
| *Arakelian v. Omnicare, Inc.*, 735 F.Supp.2d 22 (S.D.N.Y. 2010)……………………………………………… | 5, n.2 |
| *Bonheur v. Dresdner Bank, A.G.*, 1986 WL 4702 (S.D.N.Y. 1986)……………………………………………… | n.5, 9 |
| *Bradfield v. Heartland Payment Systems*, LLC, 2018 WL 5784998 (D. N.J. 2018)…………………………………………… | n.3 |
| *Caruso v. Zugibe*, 2015 WL 5459862 (S.D.N.Y. June 22, 2015)……………………………… | 3 |
| *Davis v. New York State Board of Elections*, 689 Fed.Appx. 665, 669 (2d Cir. 2017)………………………………………… | 5, 6 |
| *Denson v. Donald J. Trump for President, Inc.*, 180 A.D.3d 446, 116 N.Y.S.3d 267 (1st Dept. 2020)………………………… | 3, 8 |
| *DiSorbo v. Hoy*, 343 F.3d at 183……………………………………………………………… | n.5 |
| *Dorsett v. County of Nassau*, 732 F.3d 157 (2d Cir. 2013)……………………………………………………… | 5, 6 |
| *Ellis v. Provident Life & Accident Ins. Co.*, 3 F.Supp.2d 399 (S.D.N.Y. 1998)…………………………………………… | 9 |
| *Fisher v. Global Values, Inc.*, 2006 WL 3251488 (D. Vt. November 2, 2006)……………………………… | n.3 |
| *Forbes v. Merrill Lynch, Fenner & Smith*, 957 F.Supp. 450 (S.D.N.Y. 1997)…………………………………………… | 9 |
| *Fox v. International Conference of Funeral Service Examining Boards*, 242 F.Supp.3d 272 (S.D.N.Y. 2017)………………………………………… | 2 |

*Ho-Shing v. Budd*,
 771 Fed.Appx. 79 (2d Cir. 2019)……………………………………………… 10

*Iannucci v. The Segal Co.*,
 2006 WL 8407380 (S.D.N.Y. June 27, 2006)……………………………… n.3

*Kelly v. Evolution Markets, Inc.*,
 626 F.Supp.2d 364 (S.D.N.Y. 2009)……………………………………… 3, 5

*Kraus USA, Inc. v. Magarik*,
 2019 WL 4744772 (S.D.N.Y. September 30, 2019)………………………… 10

*Malloy v. Trombley*,
 50 N.Y.2d 46, 427 N.Y.S.2d 969 (1980)…………………………………… 9

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007)……………………………………………………… 4

*Murphy v. Gallagher*,
 761 F.2d 878 (2d Cir. 1985)……………………………………………… 9

*Poller v. BioScrip, Inc.*,
 974 F.Supp.2d 204 (S.D.N.Y. 2013)……………………………………… 4

*Rosa Park Place, Inc. v. State*,
 120 A.D.3d 8, 985 N.Y.S.2d 350 (4th Dept. 2014)………………………… n.6

*Salvation Army v. Department of Community Affairs of State of N.J.*,
 919 F.2d 183 (3d Cir. 1990)……………………………………………… 4

*Sarfraz v. Vohra Health Services, PA*,
 663 F.Supp.2d 147 (E.D.N.Y. 2009)……………………………………… n.3

*Schwartz v. Public Adm'r of Bronx County*,
 24 N.Y.2d 65, 298 N.Y.S.2d 955 (1969)…………………………………… 9, 10

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149, 134 S.Ct. 2334 (2014)……………………………………… n.4

*Velvet Underground v. Andy Warhol Foundation for the Visual Arts, Inc.*,
 890 F.Supp.2d 398 (S.D.N.Y. 2012)……………………………………… 2, 3

*Virginia v. American Booksellers Ass'n, Inc.*,
 484 U.S. 383, 108 S.Ct. 636 (1988)………………………………………… n.4

*Zappin v. Cooper*,
 2018 WL 708369 (S.D.N.Y. February 2, 2018)…………………………… 7

The Campaign respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint in its entirety.

## PRELIMINARY STATEMENT

Tellingly, plaintiff now reveals in her opposition papers that by this action she is seeking nothing more than an advisory opinion from this Court guiding her on whether she may "continue" with her "course of conduct" of "criticizing the President, his Administration, his family, his businesses, and the Campaign, and otherwise sharing information that the Campaign has argued or could argue is covered by [her Agreement]."[1] More tellingly, plaintiff does not (or refuses to) identify to this Court with any specificity the actual information—whether confidential or otherwise—that she intends to generally publish or disclose to third parties.

As an initial matter, it bears repeating that plaintiff—as presented in the Campaign's moving papers (and unrebutted by plaintiff in her opposition)—has for at least the past two years been engaging in a "course of conduct" of publicly "criticizing" the Campaign and President Trump on social media, and yet the Campaign has not taken (or threatened to take) any action against her for expressing any of these negative opinions or critical views. Indeed, the Campaign has also confirmed in this action that plaintiff is free to continue doing so and stated that it has no intention of taking any action against plaintiff for expressing her opinions and views.

By this lawsuit, plaintiff has quite simply put the cart before the horse. She expects this Court to provide an advisory opinion on the enforceability of the Agreement before she can even identify what information—confidential or otherwise—is even in dispute. Such advisory opinions are impermissible, however. Indeed, the Campaign—which itself has constitutionally-based rights under the First Amendment in maintaining privacy over its own internal matters—should not be

---
[1] ECF Doc. No. 32, p. 19.

required to defend a lawsuit in a vacuum. It is plaintiff's burden to identify an actual controversy between the parties, and the record before this Court demonstrates that she has failed to do so.

Beyond plaintiff's failure to identify an actual controversy, her claims are, in any event, barred by collateral estoppel. The Appellate Division, First Department has already rejected all of her arguments regarding the validity and enforceability of the Agreement.

## ARGUMENT

## I.

## PLAINTIFF HAS FAILED TO IDENTIFY AN ACTUAL CONTROVERSY

Plaintiff has the burden of demonstrating to this Court that there is a "substantial controversy…of sufficient immediacy and reality" between the parties. *See Fox v. International Conference of Funeral Service Examining Boards*, 242 F.Supp.3d 272, 291 (S.D.N.Y. 2017) (*citations omitted*). Her own submissions confirm that no such controversy exists.

**A.** **There is No Current or Threatened Dispute Between Plaintiff and the Campaign**

It is now undisputed that plaintiff has in fact been expressing her negative opinions and critical views regarding the Campaign and President Trump on social media for at least the past two years. ECF Doc. No. 24-2, pp. 2–30. Yet, the Campaign has not enforced (or threatened to enforce) the Agreement against her for any of this speech, and there is nothing in the record that suggests otherwise. ECF Doc. No. 33, ¶ 8. Lest there be any doubt, in its motion papers the Campaign expressly disavowed any intent to enforce the Agreement against plaintiff in the future for expressing her opinions and views. ECF Doc. No. 33, ¶ 8; *see also Velvet Underground v. Andy Warhol Foundation for the Visual Arts, Inc.*, 890 F.Supp.2d 398, 404 (S.D.N.Y. 2012) (to invoke the DJA, "the dispute must be presented in the context of a specific live grievance that justifies invoking the protections of the courts to shield the plaintiff against the defendants' actual

interference with [his or her] legal interests"). As such, plaintiff cannot establish standing based on her purported future intent to express her negative opinions or critical views as a matter of law.

Likewise, plaintiff cannot establish standing based on the parties' one and only prior dispute pertaining to the Agreement, as that dispute was conclusively resolved by the First Department. *See Denson v. Donald J. Trump for President, Inc.*, 180 A.D.3d 446, 116 N.Y.S.3d 267 (1st Dept. 2020); *see also Applegate v. Annucci,* 2017 WL 3049555, * 8 (S.D.N.Y. July 18, 2017) ("a plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future") (*internal alteration and citation omitted*). Plaintiff—who as the sole class representative must demonstrate standing on her own—also cannot establish standing as a matter of law based upon purported disputes between the Campaign and other individuals who are not named as putative class representatives in this lawsuit. *See e.g. Caruso v. Zugibe*, 2015 WL 5459862, * 6, n. 4 (S.D.N.Y. June 22, 2015) ("if the named plaintiff lacks standing the entire class action fails").

B.  **The Mere Existence of the Agreement Does Not Confer Standing**

Plaintiff fails to cite to even one case that supports her repeated and conclusory contention that the mere existence of a "live contract" is sufficient—***in itself***—to confer standing under the Declaratory Judgment Act. ECF Doc. Nos. 16, p. 3; 32, pp. 7, 17, 23. To the contrary, the federal courts routinely find that the "mere existence" of an agreement or claim ***does not*** give rise to a justiciable controversy. *See e.g. Kelly v. Evolution Markets, Inc.*, 626 F.Supp.2d 364, 374–375 (S.D.N.Y. 2009) (declining to consider the enforceability of a non-recruitment covenant on ripeness grounds, reasoning that even if the former employee "harbors a strong desire" to recruit an employee away from her former employer, she "has not identified any such potential recruit, and the Court is neither inclined nor permitted to guess [her] recruitment strategy and target"); *Velvet Underground v. Andy Warhol Foundation for the Visual Arts, Inc.*, 890 F.Supp.2d at 405

3

("an actual controversy cannot be based on the mere existence of the Warhol Foundation's claim to copyright in the Banana Design").

This is especially true here because, as noted above, the Campaign has not taken (or threatened to take) any action against plaintiff under the Agreement for the past two years, and has confirmed that it does not intend to enforce the Agreement against her in the future for expressing her opinions and views.[2] ECF Doc. No. 33, ¶ 8; *see also Accelecare Wound Centers, Inc. v. Bank of New York*, 2009 WL 2460987, * 7 (S.D.N.Y. August 11, 2009) (declining to consider enforceability of non-compete where there was no allegation that the former employer intended to enforce the covenant); *Salvation Army v. Dept. of Community Affairs*, 919 F.2d 183, 192–193 (3d Cir. 1990) (district court should not provide "an advisory opinion" regarding the constitutionality of certain statutory provisions where the "record reflects not only the absence of a threat of enforcement but an express assurance that there will be no enforcement [of those provisions]").

Indeed, plaintiff's own cases confirm that the federal courts will only exercise jurisdiction over "pre-enforcement" claims challenging the enforceability of an agreement where there are specific facts or circumstances before the court that establish the contours of an actual dispute between the parties. *See e.g. MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 121–122 (2007) (assessing enforceability of a patent where licensor sent licensee a letter expressing its belief that a drug was covered by its patent and stated its expectation that licensee would start paying it royalties under the terms of their licensing agreement); *Poller v. BioScrip, Inc.*, 974 F.Supp.2d 204, 211–213 (S.D.N.Y. 2013) (assessing enforceability of restrictive covenant agreement where former employee went to work for a purported competitor which sued her former employer and

---

[2] The *Arakelian v. Omnicare, Inc.* case relied upon by plaintiff is completely inapposite. There, the former employer refused to state that it would not enforce non-compete and non-solicit covenants against its former employee who was seeking employment with its competitors. *See Arakelian v. Omnicare, Inc.*, 735 F.Supp.2d 22, 41 (S.D.N.Y. 2010).

4

there were allegations that the former employee misappropriated files); *Arakelian v. Omnicare, Inc.*, 735 F.Supp.2d at 41 (assessing enforceability of non-compete and non-solicit where former employee "made clear that she intends to compete with [former employer], has sought out employment with…competitors, and has been offered a position with one of [those] competitors"); *Kelly v. Evolution Markets, Inc.*, 626 F.Supp.2d at 367–374 (assessing enforceability of non-solicit where former employer stated its intent to enforce the covenant and plaintiff stated his intent to begin soliciting his former employer's clients).[3]

C. **Plaintiff Cannot Demonstrate Standing Under the First Amendment**

While the Second Circuit has noted that the standing requirements for First Amendment claims are "somewhat relaxed," the Second Circuit has also made clear that allegations of a "subjective chill" on the exercise of free speech rights "are not an adequate substitution for a claim of **specific present objective harm** or a **threat of specific future harm**." *Davis v. New York State Board of Elections*, 689 Fed.Appx. 665, 669 (2d Cir. 2017) (*emphasis added*); *see also Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (affirming decision that plaintiff lacked standing to bring First Amendment retaliation claim due to County's delay in approving settlement noting that "[c]hilled speech is not the *sine qua non* of a First Amendment claim"; a party must show that they have been "adversely affected" or suffered some other "concrete harm").

---

[3] *See also Iannucci v. Segal Co.*, 2006 WL 8407380, * 1–2 (S.D.N.Y. June 27, 2006) (firm sent former employee letter regarding his non-compete and non-solicit obligations after learning his involvement in a client terminating its relationship with the firm); *Bradfield v. Heartland Payment Systems*, LLC, 2018 WL 5784998, * 6 (D. N.J. 2018) (former employer sent former employee letter after he went to work for a competitor regarding his non-compete and non-solicit obligations and advising him that it would seek all available remedies for a breach); *Fisher v. Global Values, Inc.*, 2006 WL 3251488, * 3 (D. Vt. November 2, 2006) (former employer accused former employee of being involved in a conspiracy with a competitor to steal its customers and provided him with a termination notice warning him not to contact any of its customers); *Sarfraz v. Vohra Health Services, PA*, 663 F.Supp.2d 147, 151 (E.D.N.Y. 2009) (addressing $75,000 amount in controversy requirement for diversity jurisdiction, not whether a "case or controversy" existed).

Plaintiff's purported intention to continue criticizing the Campaign and President Trump does not bestow her with any cognizable harm. Plaintiff has been criticizing the Campaign and President Trump undeterred for the past two years, and the Campaign has confirmed that it has no intention of taking any action to restrict plaintiff's ability to freely express her opinions and views in the future. ECF Doc. No. 33, ¶ 8; *see also Dorsett v. County of Nassau*, 732 F.3d at 161 ("it is clear that the County's alleged retaliation did not curtail the [civil rights attorney or his client's] speech" because the attorney "remained politically active" while the settlement with the County was pending and his client "maintained her association" with her attorney).

Moreover, plaintiff's vague desire to "share" unspecified information that could potentially be covered by the Agreement only serves to further illustrate her lack of standing. Plaintiff's failure (or refusal) to identify the information she seeks to disclose with any specificity whatsoever makes it impossible to determine whether any specific threat exists now or in the future. *See Davis v. New York State Board of Elections*, 689 Fed.Appx. at 669. Simply put, there can be no specific threat without any specific information.[4]

Finally, plaintiff cannot even assert a First Amendment claim as a matter of law for the various reasons set forth in the Campaign's brief in opposition to plaintiff's summary judgment motion. ECF Doc. No. 34, pp. 23–28.

---

[4] Indeed, the cases that plaintiff continues to rely on highlight this very principle. By way of example, in *Susan B. Anthony List v. Driehaus*, the petitioners identified the "specific statements" that they intended to make that were "arguably proscribed by" the statute that the respondents refused to disavow enforcement of. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 134 S.Ct. 2334 (2014). Similarly, in *Virginia v. American Booksellers Ass'n, Inc.*, the plaintiffs introduced at trial 16 specific books from their inventory that "they believed to be covered by the [statute]" and the State had "not suggested" that the newly enacted law would "not be enforced." *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 108 S.Ct. 636 (1988).

## II.

## PLAINTIFF IS COLLATERALLY ESTOPPED FROM RELITIGATING THE ENFORCEABILITY OF THE AGREEMENT

Plaintiff does not dispute—much less meet her burden of proof in refuting—that she had a full and fair opportunity to litigate her arguments that the Agreement was "void and unenforceable" before the First Department. ECF Doc. No. 32, pp. 26–31; *see also Zappin v. Cooper*, 2018 WL 708369, * 17 (S.D.N.Y. February 2, 2018) ("burden of demonstrating that the prior proceeding did not afford a full and fair opportunity to litigate the issues rests with the party opposing preclusion").

Plaintiff advances two insufficient arguments in response to the Campaign's assertion that she is collaterally estopped from relitigating these issues, *to wit*, that (i) the First Department's decision was just an academic "discussion of the general enforceability of non-disparagement agreements" and, alternatively, (ii) the First Department's rulings regarding the enforceability of the Agreement were dicta. ECF Doc. No. 32, pp. 28–29. Both of these arguments fail for the exact same reason—plaintiff actually and fully litigated her assertions regarding the enforceability of the Agreement and the First Department expressly considered and decided those issues.

Indeed, plaintiff does not (and cannot) dispute that her ***principal*** arguments for the vacatur of the Awards before the First Department were exactly the same arguments that she makes in this lawsuit. ECF Doc. Nos. 1-1; 24-3. To be sure, she devoted ***more than half*** of her Appellant's Brief to arguing that the Agreement was "void and unenforceable" as a matter of "public policy" because its confidentiality and non-disparagement provisions were "vague," "overbroad," lacked "legitimate purpose," and restricted her free speech rights. ECF Doc. No. 24-3. This was a ***material issue*** on the appeal and, of course, the First Department treated it as such.

In fact, the very first issue resolved by the First Department was "[p]laintiff contends that the [Agreement] is so broad and over-inclusive, prohibiting virtually any negative statement about

7

the campaign and Trump Person, that it is void or should be invalidated as against public policy." *Denson v. Donald J. Trump for President, Inc.*, 180 A.D.3d at 452, 116 N.Y.S.3d at 274. In doing so, it ruled that "non-disparagement and keeping certain matters confidential during the term of plaintiff's service and thereafter were specific conditions of plaintiff's engagement with the [C]ampaign," and "[t]here [was] no legal basis for the court to conclude that non-disparagement agreements per se violate public policy." *Id.* It further ruled that "[t]he inclusion of a non-disparagement provision in the [Agreement], which when executed, was an agreement between private parties, does not impermissibly intrude on plaintiff's rights of free expression." *Id.* In other words, it expressly considered and rejected plaintiff's arguments, which, if the First Department had decided the other way, would have been independent grounds for vacating the Awards (i.e. these were material arguments). And, of course, absent an enforceable agreement, the court would not have had to even consider any other grounds for vacating the Awards. The First Department, however, refused to vacate the Awards on these grounds.

The simple fact that the First Department ultimately decided to vacate the Awards on different grounds—notably, grounds which were not even raised by plaintiff—does not permit plaintiff to relitigate the First Department's express rejection of her grounds relating to the enforceability of the Agreement.[5] Both the New York Court of Appeals and the Second Circuit have long recognized that "***when it is clear that the litigant was afforded his day in court,***

---

[5] The fact that these issues were decided in the context of an appeal to vacate arbitral awards is immaterial. The relevant inquiry is whether the party opposing collateral estoppel had a full and fair opportunity to litigate the issue and the issue is decisive of the present action. *See e.g. DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) (police officer had "full and fair opportunity to litigate his indemnification claim" at Article 78 proceeding where standard was "arbitrary and capricious"); *Bonheur v. Dresdner Bank, A.G.*, 1986 WL 4702, * 4 (S.D.N.Y. 1986) (former bank employee had full and fair opportunity to be heard at unemployment benefits proceeding finding that "the doctrines of *res judicata* and collateral estoppel, if applicable, give conclusive effect to the quasi-judicial determinations of administrative agencies").

8

***preclusive effect may be given to issues actually and fully litigated, <u>although not technically necessary to the prior judgment</u>***." *Murphy v. Gallagher*, 761 F.2d 878, 882 (2d Cir. 1985) (*emphasis added*), *citing Malloy v. Trombley*, 50 N.Y.2d 46, 427 N.Y.S.2d 969 (1980); s*ee also Ellis v. Provident Life & Accident Ins. Co.*, 3 F.Supp.2d 399, 408 (S.D.N.Y. 1998) (finding in age discrimination suit that bank did not breach its contract with its former manager "when it altered its incentive compensation system" was not necessary to the determination that there was no discrimination, but was still "an important aspect" of the lawsuit and, thus, estopped him from subsequently seeking to recover certain commissions that he allegedly lost as a result of the bank's "change in the incentive compensation system"); *Bonheur v. Dresdner Bank, A.G.*, 1986 WL 4702, at * 3–4, n. 5 (even if finding during unemployment benefits proceeding that former employee had been discharged for falsifying a bank document "was not *necessary* to the ALJ's decision," it precluded him from subsequently disputing the truth or falsity of an alleged defamatory statement that he had been discharged because he "tried to cheat") (*emphasis in original*).[6]

Here, the First Department's rejection of plaintiff's arguments that the Agreement is void and unenforceable on public policy grounds is necessarily decisive of her claims before this Court, which are based on the exact same arguments. *See Forbes v. Merrill Lynch, Fenner & Smith*, 957 F.Supp. 450, 453 (S.D.N.Y. 1997). As she indisputably had a full and fair opportunity to litigate these issues before the First Department, she is now collaterally estopped from doing so before this Court. *See Murphy v. Gallagher*, 761 F.2d at 881–882, *citing Schwartz v. Public Adm'r of Bronx County*, 24 N.Y.2d 65, 298 N.Y.S.2d 955 (1969) ("New York Law has now reached the

---

[6] Plaintiff's reliance on a purported "First Department" test for identifying dicta is misplaced and intentionally misleading. ECF Doc. No. 32, p. 29. For one thing, the cited case was a decision from the Appellate Division, **<u>Fourth Department</u>** which did not even involve the doctrine of collateral estoppel. *See Rosa Park Place, Inc. v. State*, 120 A.D.3d 8, 985 N.Y.S.2d 350 (4th Dept. 2014). In any event, this test does nothing to dispel the authority of the case law from the Second Circuit and the New York Court of Appeals cited above.

point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel…[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling"); *see also Ho-Shing v. Budd*, 771 Fed.Appx. 79, 81 (2d Cir. 2019) (applying two-part *Schwartz* test); *Kraus USA, Inc. v. Magarik*, 2019 WL 4744772, * 2–3 (S.D.N.Y. September 30, 2019) (applying two-part *Schwartz* test).

## CONCLUSION

Based on the foregoing, defendant respectfully requests that the Court grant the instant motion in its entirety and grant defendant such other relief as the Court deems just and proper.

Dated: New York, New York
       August 20, 2020

                          LAROCCA HORNIK ROSEN
                          & GREENBERG LLP

                          */s/* ***Patrick McPartland***
By: _____
                          Patrick McPartland
                          Jared E. Blumetti
                          40 Wall Street, 32nd Floor
                          New York, New York 10005
                          T: (212) 530-4837, 4831
                          E: pmcpartland@lhrgb.com
                              jblumetti@lhrgb.com

                          *Attorneys for defendant*
                           *Donald J. Trump for President, Inc.*