UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JESSICA DENSON, Individually and on Behalf of All Others Similarly Situated,

*Plaintiffs*,

v.

DONALD J. TRUMP FOR PRESIDENT, INC.,

*Defendant*.

No. 20 Civ. 4737 (PGG)

---

**PLAINTIFFS' BRIEF ON THE EXTENT TO WHICH THE ARBITRATION PROVISION IN DEFENDANT'S FORM EMPLOYMENT AGREEMENT PRECLUDES CLASS TREATMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................................2

ARGUMENT .........................................................................................................................4

I.      The Campaign Expressly Waived its Right to Arbitrate this Class Action ..........................4

II.     The Campaign's Litigation Conduct Constitutes an Implied Waiver of its
Right to Arbitrate this Class Action ................................................................................6

III.    Even If It Had Not Been Waived, the Arbitration Provision Presents No Bar
to Class Proceedings .......................................................................................................9

       A.     Contractual Silence Cannot Bar a Rule 23 Class Action .........................................9

       B.     The Campaign's Own Authority Demonstrates That Class
Certification Must Precede Any Motion to Compel Arbitration ............................10

CONCLUSION.....................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                        **Page(s)**

*Apollo Theater Found., Inc. v. W. Int'l Syndication*,
    No. 02 CIV. 10037 (DLC), 2004 WL 1375557 (S.D.N.Y. June 21, 2004) ................................ 4

*Baker & Taylor, Inc. v. AlphaCraze.Com Corp.*,
    602 F.3d 486 (2d Cir. 2010) .............................................................................................. 4, 5

*Chen-Oster v. Goldman, Sachs & Co.*,
    449 F. Supp. 3d 216 (S.D.N.Y. 2020) ...................................................................... 10, 11, 12

*Cont'l Cas. Co. v. Hopeman Bros., Inc.*,
    No. 17-CV-00688 (ALC), 2018 WL 1581987 (S.D.N.Y. Mar. 27, 2018) ............................... 6

*Degidio v. Crazy Horse Saloon & Rest. Inc.*,
    880 F.3d 135 (4th Cir. 2018) .................................................................................................. 8

*Denson v. Donald J. Trump for President, Inc.*,
    No. 20 CIV. 4737 (PGG), 2021 WL 1198666 (S.D.N.Y. Mar. 30, 2021) ........................... 7, 9

*Denson v. Trump for President, Inc.*,
    No. 18-CV-2690 (JMF), 2018 WL 4568430 (S.D.N.Y. Aug. 30, 2018) .............................. 3, 7

*Doctor's Ass'n, Inc. v. Distajo*,
    66 F.3d 438 (2d Cir. 1995) ..................................................................................................... 6

*Gilmore v. Shearson/American Express Inc.*,
    811 F.2d 108 (2d Cir. 1987) ................................................................................................... 4

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ...................................................................................................... 9, 10

*Leadertex v. Morganton Dyeing & Finishing Corp.*,
    67 F.3d 20 (2d Cir. 1995) ....................................................................................................... 8

*LG Elecs., Inc. v. Wi-LAN USA, Inc.*,
    No. 13-CV-2237 RA, 2015 WL 4578537 (S.D.N.Y. July 29, 2015) ...................................... 9

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2001) ................................................................................................... 4

*PPG Indus., Inc. v. Webster Auto Parts, Inc.*,
    128 F.3d 103 (2d Cir. 1997) ................................................................................................... 8

*Ralph Lauren Corp. v. U.S. Polo Ass'n, Inc.*,
    No. 13 CIV. 7147, 2014 WL 4377852 (S.D.N.Y. Sept. 4, 2014) ........................................... 6

*In re S & R Co. of Kingston v. Latona Trucking, Inc.*,
    159 F.3d 80 (2d Cir. 1998) ................................................................................. 7, 11

*Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*,
    49 F. Supp. 2d 331 (S.D.N.Y. 1999) ...................................................................... 8, 9

*Schreiber v. Friedman*,
    No. 15-CV-6861 (CBA) (JO), 2017 WL 5564114 (E.D.N.Y. Mar. 31, 2017) ............... 4, 6

*Smith v. Petrou*,
    705 F. Supp. 183 (S.D.N.Y. 1989) .............................................................................. 4

*Stark v. Molod Spitz DeSantis & Stark, P.C.*,
    9 N.Y.3d 59 (2007) ..................................................................................................... 4

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
    559 U. S. 662 (2010) .................................................................................................. 9

*Sweater Bee by Banff, Ltd. v. Manhattan Indus.*,
    754 F.2d 457 (2d Cir. 1985) ....................................................................................... 7

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
    310 F.3d 102 (2d Cir. 2002) ................................................................................. 6, 11

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................... 9, 10

Plaintiff Jessica Denson, on behalf of herself and all others similarly situated, respectfully submits this memorandum in response to the Court's April 27, 2021, Order directing the parties to "submit briefing on the extent to which the Employment Agreement's arbitration provision precludes class treatment of the instant action." ECF No. 59.

## PRELIMINARY STATEMENT

This straightforward, but important, challenge to a form contract (the "Employment Agreement") is very near to final resolution. This Court has already decided in Plaintiffs' favor the core substantive claim—that the non-disclosure and non-disparagement provisions in the Employment Agreement are invalid and unenforceable as a matter of New York law. *See* ECF No. 48 (the "Summary Judgment Opinion"). All that remains to be determined is the scope of the final relief that properly flows from that decision. This requires just two further steps: (1) the Campaign's identification of those individuals whom it has subjected to contractual provisions that are the same or substantially similar to those the Court has declared invalid; and (2) judicial confirmation that the legal analysis of the invalidity of Ms. Denson's Employment Agreement applies equally to those individuals.

The Campaign seeks to sow confusion by asserting that an arbitration provision in the form Employment Agreement forecloses this Court from taking these steps. It does not. The Campaign's position is a procedural red herring based on a willful disregard for the ramifications of its own prior strategic decisions. The Campaign previously *rejected* Plaintiffs' attempt to arbitrate this matter, directing Plaintiffs to purse this class litigation in court. Having now litigated the merits of the case through summary judgment without ever raising the arbitration provision, the Campaign has waived its right to raise it now.

Furthermore, the Campaign's about-face on the arbitration issue makes no sense because even if it had the right to compel the putative class members into arbitration, there is nothing left

to arbitrate. No substantive issue remains in this case for an arbitrator to take up that has not already been decided. This case challenges only the enforceability of the Employment Agreement, this Court has already declared the Agreement unenforceable, and the putative class includes only individuals subject to the same Employment Agreement (or a substantially similar one).

The Campaign's obvious purpose in seeking to invoke the arbitration provision now is to re-litigate the issue of law it has already lost, and to hope for inconsistent decisions by future arbitrators. Indeed, the Campaign *is already doing so* – in a pending arbitration involving the same Employment Agreement, it has filed papers urging the arbitrator to ignore the Summary Judgment Opinion, describing it as "poorly reasoned and result-oriented," and strongly insinuating that this Court was motivated not by fealty to the law, but by its own personal motives. This Court should not countenance the Campaign's brazen attempts to evade enforcement of the Summary Judgment Opinion.

## **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

A brief synopsis of the procedural history of this litigation is necessary to lay bare the hollowness of the Campaign's invocation of the arbitration provision at this stage.

1. Ms. Denson first challenged the enforceability of the Employment Agreement in a *pro se* federal court complaint filed in this Court on March 26, 2018. The Campaign immediately moved to compel arbitration and to dismiss the case, relying on the following language in the Employment Agreement:

> Without limiting the [Campaign]'s or any other Trump Person's right to commence a lawsuit in a court of competent jurisdiction in the State of New York, any dispute arising under or relating to this agreement may, at the sole discretion of each Trump Person, be submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration

> Association, and you hereby agree to and will not contest such submissions.

Decl. of Jessica Denson, Ex. A at 4, ECF No. 22-1 (Employment Agreement). Judge Furman granted the Campaign's motion, ruling that the Campaign had the right to decide whether to arbitrate or litigate a challenge to the enforceability of the Employment Agreement, under the plain language of the arbitration provision. *Denson v. Trump for President, Inc.*, No. 18-CV-2690 (JMF), 2018 WL 4568430, at *2 (S.D.N.Y. Aug. 30, 2018). The Court then dismissed the case in its entirety. *Id*.

      2. Accepting Judge Furman's conclusion that questions regarding the enforceability of the Employment Agreement were arbitrable at the Campaign's discretion, in February 2019 Plaintiffs submitted a class action arbitration demand to both the Campaign and the American Arbitration Association alleging—as in the prior federal action—that the Employment Agreement was unenforceable. *See* Decl. of David Bowles, Esq., Ex. V at 2, ECF No. 26-22. In response, the Campaign first sought to have the class action claims heard by the same arbitrator that had already adjudicated its prior case against Ms. Denson in the Campaign's favor. *Id*. Ex. W, ECF No. 26-23. When the AAA denied that request, the Campaign notified the AAA in writing that it *did not consent to arbitration of this lawsuit*. *Id*. Ex. X, ECF No. 26-24. Days later, the Campaign again disclaimed arbitration of the class claims in a letter to Judge Furman, who at the time was considering the Campaign's application to confirm a prior arbitral award against Ms. Denson. In its letter to Judge Furman, the Campaign stated flatly that if Ms. Denson "wants to proceed with a class action lawsuit, she must file her purported claims in court." *Id*. Ex. Y, ECF No. 26-25.

3. This lawsuit—a class action challenging the enforceability of the Employment Agreement—was filed as a direct result of the Campaign's exercise of its discretion to litigate rather than arbitrate the class claims. *See* Compl. ¶¶ 70–79, ECF No. 1-1.

## ARGUMENT

**I.   The Campaign Expressly Waived its Right to Arbitrate this Class Action**

It is black letter law that arbitration provisions like that in the Employment Agreement are "a creature of contract." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001). Thus, "[t]here is . . . nothing irrevocable about an agreement to arbitrate," and parties to an arbitration agreement "may abandon this method of settling their differences, and under a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration." *Baker & Taylor, Inc. v. AlphaCraze.Com Corp.*, 602 F.3d 486, 490 (2d Cir. 2010); *see also Stark v. Molod Spitz DeSantis & Stark, P.C.*, 9 N.Y.3d 59, 66 (2007) ("Like contract rights generally, a right to arbitration may be modified, waived or abandoned."). The most obvious of these circumstances is where a party "waive[s] its right to arbitration by expressly indicating that it wishes to resolve its claims before a court." *Schreiber v. Friedman*, No. 15-CV-6861 (CBA) (JO), 2017 WL 5564114, at *7 (E.D.N.Y. Mar. 31, 2017). But express waiver can also be found in less direct circumstances, such as where a party has previously opposed a motion to compel arbitration, *see Smith v. Petrou*, 705 F. Supp. 183, 185–86 (S.D.N.Y. 1989), or withdrawn its own motion to compel, *see Gilmore v. Shearson/American Express Inc.*, 811 F.2d 108, 112 (2d Cir. 1987). Where express waiver is concerned, "[n]o showing of prejudice to the opposing party is necessary if a litigant has expressly waived its right to arbitration." *Apollo Theater Found., Inc. v. W. Int'l Syndication*, No. 02 CIV. 10037 (DLC), 2004 WL 1375557, at *3 (S.D.N.Y. June 21, 2004).

Here, there is no doubt that the Campaign has expressly waived its right to arbitrate. It has unambiguously and on multiple occasions stated that it wanted to resolve this class action in court. The genesis of this action was a class-action arbitration demand Plaintiffs submitted against the Campaign in February 2019. *See* Pls.' Rule 56.1 Statement of Material Facts ("SMF") ¶ 46, ECF No. 21. The Campaign—which asserts its "sole discretion" to decide whether to arbitrate claims under the Employment Agreement for all putative class members—***rejected*** plaintiffs' demand to arbitrate this class action. *Id.* ¶ 48. The Campaign then doubled down on its position, stating in a federal court filing that:

> [u]nder the terms of the parties' written agreement, . . . the Campaign is afforded the discretionary right to arbitrate (or not arbitrate) [this] class action before the AAA. The Campaign simply exercised its election rights in this regard and notified the AAA that it was declining to arbitrate that claim. . . . ***[I]f plaintiff wants to proceed with a class action lawsuit, she must file her purported claims in court***, rather than with the AAA.

Bowles Decl., Ex. Y at 2 (emphasis added), ECF No. 26-25. The Campaign's own words clearly show that it chose to litigate, rather than arbitrate, this class action. Given that the Campaign purports to have sole discretion over whether to arbitrate this class action for all putative class members, it has thus expressly waived its right to compel this case back into arbitration.

Indeed, it is difficult to imagine a clearer case of express waiver. The Second Circuit has recognized that "explicit disclaimer of any legal obligation to arbitrate and the[] refusal to do so effectively waives any" ability to later compel arbitration. *Baker & Taylor*, 602 F.3d at 491–92. That is exactly what happened here. When Plaintiffs sought to arbitrate these precise claims, the Campaign refused to do so, asserting that, due to the "one-way" nature of the arbitration clause, it had no legal obligation to acquiesce to Plaintiffs' demand. The Campaign then reasserted that position in a federal court filing. The Campaign's current position that it is entitled to seek to enforce the arbitration provision necessarily ignores its own choice to litigate this class action in

court. But basic waiver principles contradict the Campaign's implicit claim that it has the right to change its mind regarding whether to invoke its arbitration rights whenever and wherever it wants. Like all other litigants, the Campaign must live with the consequences of its own strategic decisions, including its decision to face this class action in court, rather than arbitration.

**II.      The Campaign's Litigation Conduct Constitutes an Implied Waiver of its Right to Arbitrate this Class Action**

All apart from its express rejection of arbitration, the Campaign's litigation conduct to date constitutes an implied waiver of its right to arbitrate the class claims. "Even absent an express waiver, a party may also impliedly waive its right to arbitration by 'actively participat[ing] in a lawsuit or tak[ing] other action inconsistent with that right.'" *Schreiber*, 2017 WL 5564114, at *7 (quoting *Doctor's Ass'n, Inc. v. Distajo*, 66 F.3d 438, 455 (2d Cir. 1995)). The Second Circuit applies a three-part test in evaluating implied waiver, focusing on "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." *Ralph Lauren Corp. v. U.S. Polo Ass'n, Inc.*, No. 13 CIV. 7147, 2014 WL 4377852, at *5 (S.D.N.Y. Sept. 4, 2014). The "key to a waiver analysis is prejudice." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002). "Prejudice can be (1) substantive, for instance if a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration or (2) based on excessive cost and time delay." *Cont'l Cas. Co. v. Hopeman Bros., Inc.*, No. 17-CV-00688 (ALC), 2018 WL 1581987, at *7 (S.D.N.Y. Mar. 27, 2018) (internal quotation marks omitted).

Here, all three considerations heavily favor a finding of waiver. Most importantly, the Campaign's attempt to compel arbitration fits exactly this Circuit's definition of substantive prejudice. The Campaign has already lost summary judgment on the merits, which in itself is

sufficient to establish prejudice. *See, e.g.*, *Sweater Bee by Banff, Ltd. v. Manhattan Indus.*, 754 F.2d 457, 461 (2d Cir. 1985) ("The rule of this circuit . . . is that the litigation of substantial issues going to the merits may constitute a waiver of arbitration."); *see also In re S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83–84 (2d Cir. 1998) ("Prejudice results when a party . . . makes motions going to the merits of an adversary's claims."). Moreover, the specific nature of this case buttresses the conclusion that any arbitration would be prejudicial to Plaintiffs. Plaintiffs do not seek money damages such that compelling class members to arbitrate might impact the Campaign's total liability. Nor is there anything about the facts or reasoning underlying the Summary Judgment Opinion that would not apply equally to anyone else subject to the Employment Agreement. Thus, there are essentially no substantive issues left to decide that could be addressed in arbitration, and the Campaign's belated attempt to invoke the arbitration provisions is obviously an effort to "re-litigate" exactly the issues that this Court has already decided, in the hope that an arbitrator will reach a different conclusion. That is the very definition of substantive prejudice under Second Circuit precedent.[1]

---

[1] There is no need to speculate as to the Campaign's motives because it has *already begun* its efforts to undermine the Summary Judgment Opinion. As the Court noted in that opinion, in September 2019, the Campaign filed an arbitration against another former Campaign worker, Alva Johnson, for alleged violations of the non-disclosure and non-disparagement provisions. *Denson v. Donald J. Trump for President, Inc.*, No. 20 CIV. 4737 (PGG), 2021 WL 1198666, at *17 (S.D.N.Y. Mar. 30, 2021). After this Court handed down the Summary Judgment Opinion on March 30, 2021, the parties to the Johnson arbitration litigated the impact of that decision on the Campaign's pending claims. While Ms. Johnson argued for dismissal, the Campaign responded by urging the arbitrator to ignore the Opinion, writing that "the *Denson* order is **poorly reasoned and result-oriented; the product of a Court that was looking for a reason to invalidate the agreement in toto** and to avoid effectuating the mutual intention of the parties." *See* Declaration of Joseph Slaughter Ex. 1 (April 13, 2021 Letter Motion from Campaign) (emphasis added). This baseless attack on the Summary Judgment Opinion is proof positive that the Campaign's motive in seeking to enforce the arbitration provision here is precisely to re-litigate the issues it has already lost.

The other factors equally favor waiver. With respect to the time elapsed, this case has been pending in this Court for nearly a year, and it has been more than *two* years since plaintiffs initially served their class arbitration demand—more than enough time to satisfy this prong of the implied waiver inquiry. *See, e.g.*, *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107–09 (2d Cir. 1997) (finding waiver where party seeking to compel arbitration "fil[ed] substantive motions" in a related action for "approximately five months" which "evidenced a preference for litigation that supports a finding of waiver"); *Leadertex v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (defendant's delay of seven months before filing motion to compel arbitration was sufficient for finding of waiver). Moreover, the fact that summary judgment has already been decided renders the Campaign's delay all the more inexcusable. *See, e.g.*, *Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*, 49 F. Supp. 2d 331, 339 (S.D.N.Y. 1999) ("The fact that the present intent to arbitrate was only discovered once SATCOM failed to prevail at the preliminary injunction hearing makes the elapsed four month period not insignificant.").

For much the same reason, the "amount of litigation" prong also favors a finding of waiver. With respect to this inquiry, courts in this Circuit have noted that "there is no requirement that the party against whom waiver is urged have made dispositive motions. . . . [A] filing of pleadings, exchange of discovery, settlement conferences, and litigation of lesser issues related to the merits may be significant." *Satcom*, 49 F. Supp. 2d at 340. It therefore must be true *a fortiori* that a litigant's waiting until *after summary judgment has been adjudicated* to seek to compel arbitration is sufficient to tip this factor in favor of waiver. *Cf. Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 141 (4th Cir. 2018) (finding waiver of arbitration rights in part because summary judgment had already been decided).

8

In sum, when Lead Plaintiff Denson brought a claim in court, the Campaign demanded arbitration; when Plaintiffs sought to arbitrate this class action, the Campaign demanded to proceed in court; now that the Campaign has lost in court, it demands arbitration again. "The touchstone of waiver is the taking of action inconsistent with the right to arbitrate." *LG Elecs., Inc. v. Wi-LAN USA, Inc.*, No. 13-CV-2237 RA, 2015 WL 4578537, at *2 (S.D.N.Y. July 29, 2015) (quoting *Satcom*, 49 F. Supp. 2d at 341). That is exactly what the Campaign has done here, and this Court should not countenance such tactics, particularly where it has already determined that the Campaign "is not operating in good faith" with respect to its use of the Employment Agreements. *Denson*, 2021 WL 1198666, at *17.

## III. Even If It Had Not Been Waived, the Arbitration Provision Presents No Bar to Class Proceedings

### A. Contractual Silence Cannot Bar a Rule 23 Class Action

In its letter to the Court first raising this issue, the Campaign stated without explanation that the arbitration provisions generally "do not permit class treatment." Apr. 12, 2021 Joint Letter at 2, ECF No. 49. To the extent this statement is intended to imply that there is some language in the arbitration provision that precludes a signatory from participating in a Rule 23 class action arising from the Employment Agreement, that is wrong. The arbitration provision—and the Employment Agreement as a whole—say nothing about the signatory's right to participate in class litigation. *See generally* Denson Decl. Ex. A ¶ 8(b), ECF No. 22-1. There is simply no basis to argue that contractual silence regarding Rule 23 class actions can be read to preclude such proceedings.

The Campaign's position may be the result of confusion about the difference between a Rule 23 class action and class *arbitration*. In the context of arbitration, the Supreme Court has held that contractual silence or ambiguity may bar a court from compelling class *arbitration*.

9

*See, e.g.*, *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U. S. 662 (2010); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019).  But the Supreme Court's conclusion in this line of cases was grounded in the fact that agreements to arbitrate are creatures of contract—therefore, "because arbitrators wield only the authority they are given . . . [n]either silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to" class arbitration.  *Lamps Plus*, 139 S. Ct. at 1416–17.  In other words, *Lamps Plus* holds that affirmative consent is required before a court can compel class arbitration—otherwise, a party could be subjected to a contractually-based proceeding to which it had never agreed.  But that line of authority has little application in the context of a Rule 23 class action in federal court, because federal courts' authority to entertain and adjudicate class actions does not derive from private parties' contractual consent.

If anything, the line of Supreme Court authority culminating with *Lamps Plus* supports the conclusion that the Employment Agreement is no obstacle to Plaintiffs' ability to proceed as a class, because it recognizes that contractual silence cannot be read as acquiescence.  In the arbitration context, where the availability and scope of arbitration is wholly a creature of contract, that insight means that a contracting party cannot be ordered to face a class arbitration if it has not agreed to do so.  In the Rule 23 context, where plaintiffs' right to participate in a class action is statutory, not contractual, contractual silence cannot be interpreted to deprive them of that right where they have not unambiguously agreed to forego it.

### B. The Campaign's Own Authority Demonstrates That Class Certification Must Precede Any Motion to Compel Arbitration

In the April 12, 2021, joint letter to the Court, the Campaign cited a single case, *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216 (S.D.N.Y. 2020), to support its position that "every putative class member would be required . . . to submit their claims to arbitration"

10

under the Employment Agreement. ECF No. 49 at 2. As an initial matter, while the court in *Chen-Oster* found that the defendant had not waived its right to compel arbitration, the case arose in completely different factual and procedural circumstances than the instant case, and therefore has little if any applicability to the waiver analysis here. *Cf. Latona Trucking, Inc.*, 159 F.3d at 83 (determination of waiver of arbitration rights is a "fact-specific" inquiry and "there are no bright-line rules."). Two distinguishing factors in particular render *Chen-Oster* inapposite. First, here, unlike in *Chen-Oster*, the Campaign has *expressly* waived its right to compel arbitration by rejecting Plaintiffs' initial class action demand and affirmatively stating that any such claims must be brought in court. In *Chen-Oster*, by contrast, the defendant gave "extensive notice" of its intent to compel arbitration, and therefore did not waive that right. *Chen-Oster*, 449 F. Supp. 3d at 235. Second, here, because summary judgment has already been decided, Plaintiffs face a type of substantive prejudice—the re-litigation of the merits of the dispute—that was not at issue in *Chen-Oster*. *Compare Thyssen*, 310 F.3d at 104–05 ("The key to a waiver analysis is prejudice . . . such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration."), *with Chen-Oster*, 449 F. Supp. 3d at 238 (no prejudice where, among other reasons, there had been no "motions going to the merits of [plaintiffs'] claims").[2]

Finally, the Campaign's reliance on *Chen-Oster* undermines, rather than supports, its position that this case cannot continue as a class action. The primary fact that led the *Chen-Oster* court to grant the defendant's motion to compel arbitration (notwithstanding that the litigation had been pending for nearly 10 years at the time) was that the motion was made soon after the

---

[2] *Chen-Oster* is also distinguishable because the plaintiffs there sought money damages in connection with employment discrimination claims, whereas here Plaintiffs seek only injunctive and declaratory relief enabling them to exercise their basic constitutional rights.

court had certified the class. The court concluded that, under those circumstances, defendant could not have done so earlier, because it was only after certification that "previously putative class members first become subject to a court's jurisdiction." *Chen-Oster*, 449 F. Supp. 3d at 234. The Campaign's own case law thus demonstrates that it has no legal basis to ask this Court to pre-emptively determine its ability to compel arbitration for individual class members who, prior to class discovery and class certification proceedings, are not subject to the Court's jurisdiction. Thus, the question of whether "any putative class members will be bound by the arbitration provision contained in the Agreement," can only be answered after a class has already been certified. ECF No. 49 at 3.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order finding that the Campaign has waived its arbitration rights under the Employment Agreement with respect to the class action claims at issue in this litigation. Plaintiffs additionally request that the Court enter an order providing a schedule for class discovery and the briefing of class certification on an expedited basis.

Dated: May 18, 2021

Respectfully Submitted,

 /s/ Joseph Slaughter

John Langford (JL-2367)
UNITED TO PROTECT DEMOCRACY, INC.
555 W. 5th St.
Los Angeles, CA 90013
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: john.langford@protectdemocracy.org

David A. Schulz
Joseph Slaughter
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6103
Fax: (212) 223-1942
Email: schulzd@ballardspahr.com
Email: slaughterj@ballardspahr.com

Anne Tindall  
UNITED TO PROTECT DEMOCRACY, INC.  
2020 Pennsylvania Ave. NW, Suite # 163  
Washington, DC 20006  
Telephone: (202) 579-4582  
Fax: (929) 777-8428  
Email: anne.tindall@protectdemocracy.org  

Brittany Williams  
UNITED TO PROTECT DEMOCRACY, INC.  
1900 Market St., 8th Fl.  
Philadelphia, PA 19103  
Telephone: (202) 579-4582  
Fax: (929) 777-8428  
Email: brittany.williams@protectdemocracy.org  

David K. Bowles  
BOWLES & JOHNSON PLLC  
14 Wall Street, 20th Floor  
New York, New York 10005  
Tel. (212) 390-8842  
Fax (866) 844-8305  
Email: David@BoJo.Law  

*Counsel for Plaintiffs*