UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSICA DENSON, Individually and on Behalf of All Others Similarly Situated,

*Plaintiffs*,

*v.*

DONALD J. TRUMP FOR PRESIDENT, INC.,

*Defendant*.

No. 20 Civ. 4737 (PGG)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MEMORANDUM OF LAW REGARDING ARBITRATION**

John Langford (JL-2367)
UNITED TO PROTECT DEMOCRACY, INC.
555 W. 5th St.
Los Angeles, CA 90013
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: john.langford@protectdemocracy.org

Anne Tindall
UNITED TO PROTECT DEMOCRACY, INC.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: anne.tindall@protectdemocracy.org

David A. Schulz
Joseph Slaughter
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6103
Fax: (212) 223-1942
Email: schulzd@ballardspahr.com
Email: slaughterj@ballardspahr.com

David K. Bowles
BOWLES & JOHNSON PLLC
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
Email: David@BoJo.Law

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... II

PRELIMINARY STATEMENT .................... 1

ARGUMENT .................... 2

I. The Campaign Expressly Waived Its Right to Arbitrate .................... 2

II. The Campaign has Impliedly Waived Its Right to Arbitrate .................... 5

III. Judicial Efficiency Favors Proceeding with Class Discovery and Certification .................... 7

CONCLUSION .................... 10

# TABLE OF AUTHORITIES

**Cases**

*Agarunova v. Stella Orton Home Care Agency, Inc.*,
No. 16-CV-638 (MKB), 2019 WL 1114897 (E.D.N.Y. Mar. 11, 2019) .................................. 9

*Ambrosio v. Cogent Commc'ns, Inc.*,
No. 14-CV-02182-RS, 2016 WL 4436091 (N.D. Cal. Aug. 5, 2016) ..................................... 6

*Billie v. Coverall N. Am., Inc.*,
444 F. Supp. 3d 332 (D. Conn. 2020). ......................................................................... 9

*Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*,
589 F.3d 917 (8th Cir. 2009) ....................................................................................... 9

*Jock v. Sterling Jewelers Inc.*,
646 F.3d 113 (2d Cir. 2011)........................................................................................ 4, 5

*Jock v. Sterling Jewelers Inc.*,
942 F.3d 617 (2d Cir. 2019)........................................................................................... 4

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019).................................................................................................. 4

*Lanqing Lin v. Everyday Beauty Amore Inc.*,
No. 18-CV-729 (BMC), 2018 WL 6492741 (E.D.N.Y. Dec. 10, 2018) ............................. 8, 9

*Rame, LLC v. Popovich*,
878 F. Supp. 2d 439 (S.D.N.Y. 2012)........................................................................... 5

*Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*,
49 F. Supp. 2d 331, 339 (S.D.N.Y. 1999) ..................................................................... 7

*Doe v. Trump Corp.*,
453 F. Supp. 3d 634 (S.D.N.Y. 2020)........................................................................... 6

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)...................................................................................................... 4

*Thyssen, Inc. v. Calypso Shipping Corp, S.A.*,
310 F.3d 102 (2d Cir. 2002)........................................................................................ 5, 6

**PRELIMINARY STATEMENT**

This case is nearly at an end, and Donald J. Trump for President, Inc. (the "Campaign") is making a desperate last-ditch attempt to avoid final resolution. Lead plaintiff Jessica Denson and those similarly situated (together, "Plaintiffs") all signed the same form contract (the "Employment Agreement"). The Court has ruled on summary judgment that the non-disparagement and confidentiality clauses of that Employment Agreement are invalid. This is a substantive judgment on the merits, and all that remains is the Court's consideration of whether to certify a class and whether Plaintiffs are entitled to injunctive relief prevent the Campaign from further enforcement of those provisions.

The Campaign claims a right to individually arbitrate the validity of the Employment Agreement against each and every class member (except Ms. Denson), based on a misreading of the applicable precedent regarding the availability of class arbitration in the face of contractual silence on that issue. In fact, the arbitration provisions at issue in this case do not bar class arbitration. Regardless, the Campaign has waived its right to compel arbitration of *any* kind, class or otherwise. Plaintiffs brought a class arbitration in February of 2019, and the Campaign never raised the issue of a right to individual arbitration there. Rather, the Campaign *demanded* that Plaintiffs take the class action to this Court. There can be no more express a waiver of arbitration than the rejection of arbitration in favor of litigation.

Once Plaintiffs arrived before this Court in June of 2020, the Campaign said not a word about any desire to return to arbitration – class or otherwise – until it lost on summary judgment. Through numerous letters, briefs, and conferences, the Campaign never raised arbitration at all. Even when the Court ordered the parties to file a joint letter specifying any defenses and planned motions, the Campaign was silent on the subject of arbitration. Only when it had lost the

substance of the case, some eleven months after it began, did they seek to flee the forum. Thus, the Campaign impliedly waived arbitration as well.

What the Campaign clearly hopes for – and what they make explicit in a letter submitted in an ongoing arbitration – is results from other tribunals inconsistent with this Court's decision. They seek to continue to use the Employment Agreement as a tool of intimidation. They seek judicial and arbitral inefficiency. This is exactly what Rule 23 actions are designed to avoid. Plaintiffs respectfully request that the Court preclude the Campaign from seeking arbitration, individually or collectively, and proceed to class certification and determination of Plaintiffs' request for an injunction.

## ARGUMENT

### I. The Campaign Expressly Waived Its Right to Arbitrate

Plaintiffs' opening brief demonstrated that, by expressly refusing Plaintiffs' unambiguous demand for class arbitration, and explicitly directing Plaintiffs to "file [their] claims in court," the Campaign expressly waived any right to seek to compel arbitration now. ECF No. 62, at 4–6.

The Campaign now claims that it could not have expressly waived its right to arbitrate this class action "because class arbitration is prohibited under the Agreement's arbitration provision" and therefore "the Campaign's refusal to allow plaintiff to proceed with a jurisdictionally defective class arbitration" does not constitute a waiver of its arbitration rights. ECF No. 61 at 2. The Campaign's position misrepresents the applicable facts and misconstrues the applicable law.

First, the Campaign's assertion that it rejected Plaintiffs' class arbitration demand because it deemed it "jurisdictionally defective" based on the class action allegations is revisionist history. In fact, despite making multiple submissions challenging the viability of

Plaintiffs' class arbitration demand, the Campaign *never once* raised this purported jurisdictional defect before the AAA.[1] To wit:

- On March 18, 2019, the Campaign submitted a letter brief to the AAA stating that it would seek a ruling from the former arbitrator, Judge Kehoe, confirming the validity of the Employment Agreement. The letter stated that the Campaign "intends to seek dismissal of the [class arbitration] by submitting a formal application to Arbitrator Kehoe," the individual who had overseen the prior arbitration brought by the Campaign against Ms. Denson. ECF No. 26-23 at 2. The letter further stated that the basis for the Campaign's motion to dismiss was that "the claims are barred, as a matter of law, under the doctrines of *res judicata* and collateral estoppel, as well as by the AAA Commercial Arbitration Rules, which bar a redetermination of the merits of a claim that has already been decided by another AAA arbitrator." *Id*. at 1. The letter said *nothing* about the propriety of class arbitration under the terms of the Agreement, nor any form of jurisdictional challenge to the class arbitration demand.

- On March 29, 2019, the Campaign followed up with a second letter brief addressed to Arbitrator Kehoe, acknowledging that Ms. Denson filed a "putative class action arbitration[,]" and once again seeking dismissal based only on *res judicata* and collateral estoppel grounds. *See* Declaration of David K. Bowles ("Bowles Decl.") Ex. A. Again, the Campaign said nothing about the ability of Plaintiffs to bring the action as a class under the terms of the Agreement.

- On May 20, 2019, Arbitrator Kehoe denied the Campaign's motion to dismiss, ruling that he lacked jurisdiction over the motion because the class arbitration demand had not been formally assigned to him. Bowles Decl. Ex. B. It was only then, after its motion to dismiss was denied, that the Campaign provided Plaintiffs notice that, pursuant to its unilateral right under the Agreement to choose whether to arbitrate any dispute, it was rejecting the demand and refusing to submit to the jurisdiction of AAA over the class action. ECF No. 26-24. Once again, the Campaign's correspondence said nothing about the propriety of class arbitration under the Agreement.

- On June 3, 2019, after Plaintiffs' counsel informed Judge Furman (who was overseeing proceedings regarding confirmation of the prior arbitral award) of the Campaign's refusal to arbitrate the class action, the Campaign submitted a letter acknowledging its refusal, stating that it was based only on the Campaign's "discretionary right to arbitrate (or not arbitrate) that class action before the AAA," and further stating that "***if plaintiff wants to proceed with a class action lawsuit, she must file her purported claims in court***, rather

---

[1] Notably, the Campaign cannot and does not deny that the arbitration demand Plaintiffs submitted on February 20, 2019, clearly indicated that it was brought on behalf of a class. *See* ECF No. 26-22 at 4 ("Statement of Claim" made "on behalf of [Ms. Denson] and all others similarly situated[,]" *id*. at 3, 12–13 (detailing "Class Action Allegations.").

> than with the AAA." Dkt. 26-25 at 2 (emphasis added).[2] Not only did the Campaign not assert that the Agreement barred class proceedings, it affirmatively recognized the possibility of *both* class arbitration and a Rule 23 class action under the terms of the Agreement.

As this history demonstrates, the Campaign's position now – that its rejection of Plaintiffs' attempt to bring this class action in arbitration did not constitute an express waiver because it was premised on the fact the Agreement does not allow for such proceedings – has no support in the record, is obviously pre-textual, and should be rejected.

Second, the Campaign is simply wrong as a matter of law to assert that the arbitration provision of the Agreement, which on its face is silent on the issue, does not permit class proceedings, whether they be in arbitration or in Federal court. *See* ECF No. 61 at 4–5. As support for this contention, the Campaign relies on the Supreme Court's decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, which holds only that an arbitration provision's silence as to class arbitration, without more, may not be construed as reflecting an agreement to authorize class arbitration. 559 U.S. 662, 685–87 (2010); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019). But as the Second Circuit has explained, the Court in *Stolt-Nielsen* "declined to hold that an arbitration agreement must *expressly* state that the parties agree to class arbitration." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011) (citing *Stolt-Nielsen*, 559 U.S. at 687 n.10). To the contrary, *Stolt-Nielsen* recognized that parties may "implicitly" authorize class arbitration. 599 U.S. at 685; *see also Jock*, 646 F.3d at 121.[3] The

---

[2] Remarkably, although Plaintiffs raised this representation to Judge Furman as the paradigmatic example of express waiver in its April 23, 2021, letter to the Court, *see* ECF No. 53, the Campaign fails to even *mention* it in its brief.

[3] The Second Circuit has since confirmed that the Supreme Court's decision in *Lamps Plus* "leaves undisturbed the proposition, affirmed in *Stolt-Nielsen*, that an arbitration agreement may be interpreted to include implicit consent to class procedures." *Jock v. Sterling Jewelers Inc.*, 942 F.3d 617, 626 (2d Cir. 2019), *cert. denied*, 141 S. Ct. 255 (2020).

takeaway is that *Stolt-Nielsen* and its progeny stand only for the proposition that "agreeing to submit the dispute to an arbitrator does not," without more, "equal an agreement to class-action arbitration." *Jock*, 646 F.3d at 121. There is therefore no legal basis for the Campaign's contention that Plaintiffs' class arbitration demand was *ipso facto* defective based on the Employment Agreement's silence on the availability of class arbitration. Moreover, if the Campaign wished to contest whether the parties implicitly consented to class arbitration, it should have made that argument to the arbitrator. *See id.*[4]

**II. The Campaign Has Impliedly Waived Its Right to Arbitrate**

Plaintiffs' opening brief explained why, even if it had not expressly waived its right to arbitrate, the Campaign has nonetheless impliedly waived that right through its conduct in this litigation. ECF No. 62 at 6–9. The Campaign, for its part, correctly states the applicable test for applied waiver, but then ignores the most basic facts about the course of this litigation when those facts are inconvenient to its arguments.

First, the Campaign acknowledges that the "key to a waiver analysis is prejudice." ECF No. 61 at 5 (quoting *Thyssen, Inc. v. Calypso Shipping Corp, S.A.*, 310 F.3d 102, 105 (2d Cir. 2002)). The Campaign then argues that Plaintiffs will not be prejudiced if forced to arbitrate because "the Campaign has not taken any discovery" nor has it caused Plaintiffs "to incur any

[4] Notably, courts construing agreements similar to those at issue here have regularly upheld arbitration decisions finding that such agreements implicitly authorize class arbitration. In *Jock*, for example, the Second Circuit affirmed an arbitrator's holding that the parties had implicitly consented to class arbitration because the agreement specified that the arbitrator had the "power to award legal or equitable relief that would be available in a court of competent jurisdiction[,]" and class relief is one type of remedy available in court. 646 F.3d at 126–27; *see also Rame, LLC v. Popovich*, 878 F. Supp. 2d 439, 449 (S.D.N.Y. 2012) (upholding arbitrator's determination that parties implicitly agreed to class arbitration where agreement specified that arbitrator could award "*all damages and relief* allowed by law"). Here, the Employment Agreement similarly contains language authorizing "all remedies available at law and equity." ECF No. 22-1 ¶ 7(c).

delay or expense." ECF No. 61 at 6. But its position studiously ignores the actual definition of prejudice in this Circuit, which includes not only "excessive cost and time delay" but also "substantive" prejudice, "such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." *Thyssen*, 301 F.3d at 105. As Plaintiffs explained in their opening brief, that is exactly what the Campaign is doing here. ECF No. 62 at 6–7. Indeed, the Campaign's failure to even *acknowledge* this Court's summary judgment ruling speaks volumes about the deficiency of its prejudice argument.[5]

Second, the Campaign's argument regarding "the amount of litigation" in this action to date also fails to meaningfully engage with the actual procedural history of the case. The Campaign states only that it made a motion to dismiss, and that that alone is not sufficient to waive its arbitration rights. ECF No. 62 at 6. That is simply not the law – many courts have found that litigating and losing a motion to dismiss prior to seeking to compel arbitration is sufficient to constitute waiver. *See, e.g.*, *Doe v. Trump Corp.*, 453 F. Supp. 3d 634 (S.D.N.Y. 2020) (in a class action, defendant who waited until losing motion to dismiss eight months after case began waived right to compel arbitration); *Ambrosio v. Cogent Commc'ns, Inc.*, No. 14-CV-02182-RS, 2016 WL 4436091, at *6 (N.D. Cal. Aug. 5, 2016) (finding defendants waived their right to arbitrate in class action where their "anticipated motions" in the case management document did not indicate an intent to arbitrate).

Moreover, it is simply not accurate for the Campaign to imply that all it did was file a motion to dismiss. The Campaign ignores that it: (a) filed an opposition to Plaintiffs' letter motion to expedite discovery on June 11, 2020, in which it raised numerous issues in the case

[5] For avoidance of doubt, the law is clear that a defendant's conduct can expressly or implicitly waive arbitration with respect to the members of a putative class. *See Doe v. Trump Corp.*, 453 F. Supp. 3d 634 (S.D.N.Y. 2020).

without ever mentioning its intent to seek to compel arbitration, *see* ECF No. 11; (b) filed a joint letter on July 2, 2020, in response to a Court order directing the parties to identify any "claims and defenses" and any "contemplated motions" without ever mentioning its intent to seek to compel arbitration, *see* ECF No. 14; (c) engaged in an initial status conference with the Court on July 9, 2020, at which the parties discussed their proposed dismissal and summary judgment motions, without mentioning its intent to seek to compel arbitration; and (d) fully briefed those motions without ever mentioning its intent to seek to compel arbitration. *See* ECF Nos. 25, 34, 39. In short, the Campaign has had ample opportunity to bring a motion to compel arbitration or inform the Court of its intention to do so. The fact that it did not do so until it lost on summary judgment speaks for itself regarding the Campaign's conduct in this litigation. *See, e.g.*, *Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*, 49 F. Supp. 2d 331, 339 (S.D.N.Y. 1999) ("The fact that the present intent to arbitrate was only discovered once [plaintiff] failed to prevail at the preliminary injunction hearing makes the elapsed four month period not insignificant.").

Finally, the Campaign argues that the 11-month period that elapsed between the initiation of this litigation and its first raising the issue of arbitration is not enough to support a finding of waiver. But that is wrong – many courts have found an even shorter period sufficient to support a finding of implied waiver where circumstances warranted. *See* ECF No. 62 at 8. Here, where the Campaign waited until it *lost on the merits* of the dispute before raising the arbitration issue, 11 months is clearly long enough.

### III. Judicial Efficiency Favors Proceeding with Class Discovery and Certification

Curiously, the Campaign argues that "proceeding to class-related discovery and motion practice would be an exercise in futility and undermine the principle of judicial economy." ECF

No. 61 at 2.[6] The Campaign's position here appears to be that adjudicating dozens, if not hundreds, of individual arbitrations addressing a claim – that the applicable provisions of the Agreement are unenforceable – that this Court has already decided would somehow serve the interests of "judicial economy." It self-evidently does not, as the Campaign has already demonstrated by its efforts to undermine this Court's summary judgment opinion. *See* ECF No. 62 at 2, 7.

Moreover, the cases the Campaign cites for the proposition that courts will decline to initiate class proceedings where the putative class members are subject to arbitration provisions are wildly inapposite. *Lanqing Lin v. Everyday Beauty Amore Inc.* involved a request for conditional class certification under § 216(b) of the Fair Labor Standards Act. No. 18-CV-729 (BMC), 2018 WL 6492741, at *1 (E.D.N.Y. Dec. 10, 2018). In the Second Circuit, courts conduct a two-step process to determine whether to certify FLSA actions. *Id.* at *2. First, a court makes an initial determination on a modest factual record about who should receive notice. *Id.* Second, the court, on a fuller record, determines whether a class may proceed and whether the class or any members should be decertified. *Id.* In *Langing*, the court refused to conditionally certify the class to include some individuals who had signed arbitration agreements prohibiting them from participating in FLSA agreements. *Id.* at *4–5. But there was no argument that the employer had ever expressly or impliedly waived the arbitration provision; instead, the plaintiffs only offered legal arguments about invalidity that were squarely foreclosed

[6] The Campaign premises this argument on the contention that "it is undisputed that the Agreement contains a valid and enforceable arbitration provision requiring each of these putative class members to submit their claims to arbitration on an individual basis[.]" ECF No. 61 at 1. To be clear, Plaintiffs do not agree that the arbitration provision is either "valid and enforceable" or that it requires claims to be submitted "on an individual basis," and reserve all rights to so argue if and when the Campaign actually moves to compel arbitration.

by binding Second Circuit precedent. *Id.* Accordingly, the court held that although plaintiffs were right that the merits of an FLSA waiver are typically not litigated until step two, it would be judicially inefficient to certify class members which the court would subsequently be required to decertify under binding precedent. *Id.*

*Agarunova v. Stella Orton Home Care Agency, Inc.* was another FLSA class action. No. 16-CV-638 (MKB), 2019 WL 1114897 (E.D.N.Y. Mar. 11, 2019). There, the court simply denied, without prejudice, a motion for conditional class certification (i.e. the step-1 FLSA certification) where cases then pending before the Second Circuit could squarely foreclose the plaintiffs' claims on the merits. *Id.* at *3. Instead, the court denied the motion and tolled the statute of limitations to await the Second Circuit's decision. *Id.*

*Billie v. Coverall N. Am., Inc.* merely deals with the timing of a motion to compel vis-à-vis class certification, holding that a motion to compel may sometimes be decided before class certification. 444 F. Supp. 3d 332, 345 (D. Conn. 2020). There was no issue of waiver there, and to the extent the Campaign argues that class members other than Ms. Denson are required to arbitrate their claims, *Billie* suggests that determination should follow the determination of class certification. *Id.*

Here, as in the Eighth Circuit case of *Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*, the Campaign "wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration." 589 F.3d 917, 922 (8th Cir. 2009). It "'wanted to play heads I win, tails you lose,' which 'is the worst possible reason' for failing to move for arbitration sooner than it did." *Id.* at 922. It is pure gamesmanship, and the Court should not allow it.

## CONCLUSION

For the foregoing reasons, and for those reasons explained in their opening brief, Plaintiffs respectfully request that this Court enter an order providing a schedule for class discovery and the briefing of class certification on an expedited basis.

Dated: May 25, 2021

Respectfully Submitted,

By: /s/ Joseph Slaughter

David A. Schulz
Joseph Slaughter
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6103
Fax: (212) 223-1942
Email: schulzd@ballardspahr.com
Email: slaughterj@ballardspahr.com

David K. Bowles
BOWLES & JOHNSON PLLC
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
Email: David@BoJo.Law

John Langford (JL-2367)
UNITED TO PROTECT DEMOCRACY, INC.
555 W. 5th St.
Los Angeles, CA 90013
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: john.langford@protectdemocracy.org

Anne Tindall
UNITED TO PROTECT DEMOCRACY, INC.
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: anne.tindall@protectdemocracy.org

*Counsel for Plaintiffs*