UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JESSICA DENSON,
Individually and on Behalf of All
Others Similarly Situated,

    Plaintiff,

v.                                                                                  No. 20 Civ. 4737 (PGG)

DONALD J. TRUMP FOR PRESIDENT, INC.,

    Defendant,

and

OMAROSA MANIGAULT NEWMAN,

    Plaintiff Intervenor,

v.

DONALD J. TRUMP FOR PRESIDENT, INC.,

    Defendant in Intervention.

---

**PLAINTIFF INTERVENOR'S RESPONSE TO JESSICA DENSON AND THE PUTATIVE CLASS' LETTER AND THE CAMPAIGN'S
MEMORANDUM OF LAW IN ACCORDANCE WITH
THE COURT'S JUNE 11, 2021 ORDER**

    In accordance with the Court's June 11, 2021 Order, Plaintiff Intervenor Omarosa Manigault Newman respectfully submits this Response to Jessica Denson and the putative class' letter and the Campaign's Memorandum of Law.

**Response to David K. Bowles Letter on Behalf of Jessica Denson and the Putative Plaintiff Class**

1

As stated by Denson's counsel, their "goal has been, and continues to be, to bring this matter to an expeditious conclusion." While admirable, justice is often slow. None of those sued by Mr. Trump and/or his Campaign has actively litigated for as longer, or in as detail, as Omarosa Manigault Newman other than possibly Ms. Denson. She has successfully prevailed on an arbitration case only for it to be entirely amended to add hundreds of new counts. Ms. Manigault Newman has done a substantial amount of discovery. She has taken depositions, tendered request for production of documents and requested responses to interrogatories. Thus, there is limited need for additional discovery. Ms. Manigault Newman's individual matter is in a similar posture as that of Ms. Denson as her intervention can largely be released by expounding this Court's prior Order to her. In fact, Ms. Manigault Newman is not seeking to do any more than that. She simply wants the same Order provided to her similarly situated counterpart Ms. Denson. This would therefore not "delay the resolution of this case."

As for the contention that Ms. Manigault Newman "does not appear to be any need for this intervention," such a contention is also misplaced. Ms. Manigault Newman should be able to exercise the same rights and privileges which this court has allowed Ms. Denson. Currently, Ms. Manigault Newman is not afforded the same ruling without asking. Her speech has been so severely restricted, it has resulted in substantial financial loss. Those losses are ongoing as we speak. She should not have to wait for a possible class certification and long-term resolution as a class member. She is in dire need now of the same order granted to Ms. Denson.

Finally, Denson contends Ms. Manigault Newman, "makes no allegation that counsel for Lead Plaintiff Denson has not or will not continue to adequately represent Intervenor's interests in this matter, and counsel will continue to work to protect all class members interests." Waiting for whether or not there is a class action and ultimate ruling is not a luxury Ms. Manigault Newman

has. She is currently being prejudiced. She is simply asking for the same ruling that has been granted to Ms. Denson. Note, Ms. Denson, and her counsel, are actually actively calling Ms. Manigault Newman's counsel for information and addresses of witnesses. As such, the question of who can adequately represent who is not only an irrelevant one, but one where Ms. Manigault Newman has used her years of litigation to make progress and do discovery that Denson now seeks. Allowing Ms. Manigault Newman to enter this matter as an intervenor only benefits the class as a whole.

Further, it is imperative that we look at the Campaign's use of the NDA against Ms. Manigault Newman versus that of Ms. Denson. The Campaign was attempting to use the NDA to silence Ms. Denson on a very private and personal matter. This is concerning as the campaign is attempting to have each former employee arbitrate each individual NDA. The factual circumstances surrounding Ms. Denson are so unique other former employees may not get the same benefits. However, the way the campaign is using the NDA to restrict Ms. Manigault Newman is more in line with how the Campaign is weaponizing this NDA against former employees. Many of the former employees have a media presence and are looked at as political commentators and/or experts. Many of the former employees are authors. The use of this NDA has severely limited Ms. Manigault Newman's ability to appear on television and it has also affected her ability to promote her book. This has resulted in a great financial loss. On top of that, she has had to finance the cost surrounding arbitration and litigation. Allowing Ms. Manigault Newman to join the class only benefits the class as a whole to the extent that is even on issue, but the remedy she seeks is far more narrow. Ms. Manigault Newman is the perfect example to show the expansive and debilitating effects this NDA has on not only on a person's civil liberties but financially.

**Response to Donald J. Trump for President, Inc.'s Memorandum of Law**

I. <u>Jurisdiction</u>

The Campaign contends, "Ms. Manigault Newman cannot demonstrate an independent basis for subject matter jurisdiction, as required on any application to intervene." Despite clearly stated grounds for jurisdiction in Manigault Newman's Complaint and Motion, it seems that the Campaign is not making a jurisdictional argument, as much as a contractual one, as they claim arbitration provides "exclusive jurisdiction." This same argument has failed before. Further, despite the contention, Omarosa Manigault Newman is "required under the terms of her Agreement with the Campaign to arbitrate any claims regarding the validity and enforceability of the Agreement on an individual basis before the American Arbitration Association (the "AAA")." The issue is not the arbitration provision, it's the confidential and/or disparagement provisions. One cannot be compelled to arbitrate claims which cannot, and according to this court, do not legally exist.

II. <u>Intervention</u>

The next series of attacks concern Rule 24 itself. Omarosa Manigault Newman's status as a putative class member does not protect her from the ongoing harms and losses she suffers right now. She is not moving for intervention in an effort to take over "class representation" in any way. She simply wants the same relief granted to Ms. Denson and to make sure she is adequately protected given her current situation and the Campaign's CEO's claims the Campaign is "winding down" or dissolving.

The Campaign is correct that, "This Court's March 30, 2021 Memorandum, Opinion and Order does nothing to provide Ms. Manigault Newman with an interest in this action within the meaning of Rule 24, as the Order is limited to Ms. Denson only." However, all parties and this Court should be interested in avoiding conflicting rulings, promoting judicial economy and otherwise doing what it held out to do- strike down not just one person's offending contract's provision, but the provision itself, even if it is just in <u>one more</u> instance ripe before this Court.

III.   Campaign's Desire to Limit or Ignore this Court's Ruling

The Campaign is attempting to have its cake and eat it to. This can be seen in their response to Motions for Summary Judgment that Ms. Manigault Newman filed in arbitration. Ms. Manigault Newman filed Denson's Letter Brief.  Letter, 06/11/2021, ECF No. 68. Shortly thereafter, both parties were set for a scheduling conference.

In a scheduling hearing in the arbitration action, Justin Clark appeared for the Campaign and unequivocally said:

> "No, I think we all tend to acknowledge the importance of the Denson decision here, which is the reason why I think this motion for summary judgment we're talking about is going to be mean a great deal, and potentially be dispositive in this arbitration here."

Attorney Clark goes on to confirm his understanding of the significance of this Order by stating the following:

> "I am not a counsel of record on that other matter, on the Denson matter that is being argued, but yeah, I think we all can recognize the importance of that decision. It was certainly clear."

Despite that, in response to Motions for Summary Judgment, including those specifically based around this Court's decision, Justin Clark has argued, "And Respondent's recent desperate attempt to intervene in a separate case only highlights the fact that she knows she has breached the Agreement and cannot succeed on the merits here. For the foregoing reasons, the Campaign respectfully requests that Respondent's motions be denied in their entirety."

Making matters worse, the Campaign never, not once, references, cites to or distinguishes this Court's March 30, 2021 Order in its recent arbitration filings. *Mem. Op. and Order*, 1-36, ECF No. 36. The Campaign similarly stated, "Respondent likely sought intervention in that case because she realizes she breached the Agreement and cannot prevail on the merits in this case." This is simply not true, but stands an example of how the Campaign is using subterfuge to delay, and concurrently deny, justice to those substantially (if not identically) situated to Ms. Denson.

In arbitration, the Campaign continues to argue, Respondent's many public statements fall within the scope of "Confidential Information" or "disparaging statements" in the Agreement." And, "Each statement cited by the Campaign either demeans or disparages Claimant or a covered individual or entity or includes Confidential Information and in each case violates the Agreement." Further, "And the statements also include examples of Respondent disclosing Confidential Information, including private information and statements made by Mr. Trump or other covered individuals to Respondent..." These are points which were clearly and unequivocally resolved by this court in its March 30, 2021 Order, which even cites Ms. Manigault Newman as an example. *Mem. Op. and Order*, 9, ECF No. 36. Failure to allow her to appear and

6

receive consistent justice simply invites not only judicial inefficiency, but inconsistent findings-the exact opposite of what Ms. Denson seeks with her class action.

The fact the Campaign completely omitted the Denson decision, and the separate Delgado decision, only clarify the Campaign's attempt to weaponize litigation and force contract holders to individually pay attorney's fees to navigate arbitration and then possibly navigate litigation in the courts. Although the Campaign is technically correct the NDA has a severable arbitration provision, it cannot arbitrate claims which do not exist as a matter of law.

This honorable court has already said the subject claims do not exist as a matter of law for Ms. Denson and that same rationale should be applied to Ms. Manigault Newman. This Court notes "the vagueness and breadth of the provision is such that a Campaign employee would have no way of what may be disclosed, and accordingly Campaign employees are not free to speak about anything concerning the Campaign. The non-disclosure provision is thus much broader than what the Campaign asserts is necessary to protect its legitimate interests, and therefore is not reasonable." *Mem. Op. and Order*, 28, ECF No. 36.

This Court elaborates stating, "It is difficult if not impossible for Denson **or another Campaign employee** to know whether any speech might be covered by one of the broad categories of restricted information; whether that speech might relate to one of the several hundred potential subjects of the non-disclosure provision; or whether that speech may relate to a matter that President Trump will determine is confidential." *Id.* The Court notes language in the non-disclosure agreement is meant to chill the speech of former Campaign workers about matters of public interest.

Not only does this agreement fail the Ashland Test, it violates general principles of contract law as there could not possibly be mutual assent. "Because of its vague and indefinite nature, there is no "manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms[.]" *Mem. Op. and Order*, 29, ECF No. 36.

The Court concludes that there is no "manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to [the scope of the non-disparagement provision]." Express Indus. & Terminal Corp., 93 N.Y.2d at 589. Id.

It has already been determined that selective enforcement of the certain provisions of the agreement is not a suitable means of resolving the issues at hand. Judge Gardephe specifically mentions, "Blue penciling" is not appropriate here. The Court elaborates, "blue penciling" in this case would involve much more than a paring down of duration and geographical scope. In order to render the non-disclosure and non-disparagement provisions enforceable, the court would have to engage in a wholesale re-drafting of these provisions." *Mem. Op. and Order*, 33, ECF No. 36.

Ms. Manigault Newman is a prime example how this campaign utilizes the NDA to silence former employees. In fact, Ms. Manigault Newman was one of many high-profile former campaign employees referenced in Denson's Motion for Summary Judgment. As Ms. Manigault Newman has constantly maintained, her interest in making public statements were to shed light on actions she felt were harmful to the American people. The Court goes further by stating, "The non-disclosure provision is harmful not only to former campaign employee but highlights the harm this creates concerning the general public." Silencing Ms. Manigault Newman harms the public as it appears The Campaign is attempting to silence Ms. Manigault Newman in an effort to shield improprieties of the then seated President of the United States. The Campaign is attempting to quiet Ms. Manigault for an indefinite period of time. This unreasonable and ambiguous in a way

8

that gives Donald Trump for President Inc. unjust enrichment that was not intended or contemplated at the time of signing of the agreement. Ms. Manigault Newman has had to retain legal counsel and has participated in an intrusive and exhaustive resolution process that can only be described as unduly burdensome. Therefore, the enforcement of this agreement against Ms. Manigault Newman is inappropriate as it fails the Ashland test and defies the basic principles of contract law.

IV.    Conclusion

For the afore mention reasons, the Court should grant Plaintiff-Intervenor's Motion to Intervene. Alternatively, she simply requests the extension of the Denson Order to her.

Dated: New York, New York    July 2, 2021

Respectfully Submitted,

**PHILLIPS & HUNT**

John Phillips

_____

JOHN M. PHILLIPS, ESQUIRE
Bar Number: 5749619
212 North Laura Street
Jacksonville, FL 32202
(904) 444-4444
(904) 508-0683 (facsimile)
Attorneys for Plaintiff Intervenor
jmp@floridajustice.com
erica@floridajustice.com