**HEADQUARTERS**
212 N. Laura Street
Jacksonville, FL 32202

**GEORGIA OFFICE**
901 G Street
Brunswick, GA 31520

**NEW YORK OFFICE**
521 Fifth Avenue, 30th Floor
New York, NY 10175

help@floridajustice.com
(904) 444-4444 PHONE
(904) 508-0683 FAX
**floridajustice.com**

# PHILLIPS & HUNT
### C O M M I T T E D   T O   J U S T I C E

## 904-444-4444

**ATTORNEYS**
John M. Phillips*†
Matthew C. Hunt**
William K. Walker‡
Megan Block‡
Amy Hanna
George J. Farrell

*Board Certified Specialist in
Civil Trial Law (FL)*

**Board Certified Specialist in
Marital & Family Law (FL)*

†*Licensed in Florida, Georgia,
Alabama, Washington D.C.,
New York, Texas, Oklahoma
& Illinois*

‡*Licensed in Florida & Georgia*

March 29, 2022

**Via ECF**
Hon. Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

>    Re:    ***Denson vs. Donald J. Trump for President, Inc.***, No. 20 Civ.4737 (S.D.N.Y.)

Dear Judge Gardephe:

Pursuant to the Order of March 25, 2022, counsel for Ms. Manigault-Newman hereby submits this letter addressing whether or not the Arbitration Order of September 24, 2021 makes intervention moot in the subject case.

We respectfully respond that it is not moot, as (1) the arbitration action is still not final, but should be soon and we respectfully request a ruling be deferred on this issue until arbitration is final; (2) the cited ruling was more limited to the specific claims in two separate Petitions filed by the Campaign and was not a ruling which otherwise would prohibit a third Petition, which is a grave concern and shows the ruling is not dispositive of the subject NDA as a legal document; (3) indeed, the arbitration ruling may necessitate an amendment of the intervention complaint as styled and we would request twenty (20) days to present an amended Petition and motion in support thereof, and (4) even if it is an issue of standing or mootness, the purpose of the class action, as noted by Ms. Denson, is one of a greater purpose and class structure, one which Ms. Manigault-Newman better represents under the First Amendment than Ms. Denson.

Indeed, the arbitrator granted Ms. Manigault-Newman summary judgment, finding, "the confidentiality [and non-disparagement] provisions are vague, indefinite, and therefore void and unenforceable." However, this ruling was based on, "…the exact statements Respondent is alleged to have made in her book and in various media appearances and Twitter posts which are alleged to violate the Agreement." And further,

> "Upon review of the chart (of statements giving rise to the arbitration), the statements contained therein are largely statements of Respondent's personal opinion on the character of Mr. Trump and various of his family members, statements about her dealings with Mr. Trump prior to the time she worked on the campaign, and statements of her general recollection of conversations she had with various campaign officials. Given the general nature of many of these statements, it is hard to see how Respondent could have known that they would be considered "confidential information" under the terms of the Agreement."

As such, the ruling is more myopic than the ruing sought in this action by both Ms. Denson and Ms. Manigault-Newman. It also does not foreclose a third Petition, which is the fear and concern going forward.

The subject order in arbitration is not dispositive of the greater issues addressed in the case at hand. Certainly, Ms. Manigault-Newman is relieved Arbitrator Brown ruled similarly to your honor. It is also worth noting that the arbitrator in the Campaign's case against Alva Johnson has also entered a congruent order, as well as an entitlement to attorney's fees.  (See Exhibit A.) However, the Campaign is still vigorously defending issues pertaining to the subject Agreement and has briefed issues which essentially request reconsideration and to annul any entitlement to attorney's fees and costs. Until this issue is final, we respectfully request no decision as to mootness, simply because the case is not final.

Further, no ruling has been entered on issues of attorney's fees and costs. In the Campaign's responses, they seek to re-litigate the same issues regarding what the subject Agreement allows and what it does not. Until rulings are final in arbitration, this intervention is not moot and we suspect will never be moot until this Court or a sister court addresses the nullity of the subject provisions once and for all. Otherwise, individual defendants (past and future) will continue to be subjected to the weaponized litigation of this Agreement, in the closed-door proceedings of arbitration which does not allow scrutiny of other decisions under the same Agreement, much less create precedent from which to build upon.

Finally, Ms. Manigault-Newman requests an opportunity to Amend her Intervention Complaint and Petition given the recent ruling.

Respectfully submitted,

*/s/ John M. Phillips*
John M. Phillips, Esquire
212 North Laura Street
Jacksonville, Florida 32202
904-444-4444
904-508-0683 (fax)
jmp@floridajustice.com
*Counsel for Omarosa Manigault-Newman*

1
2

**AMERICAN ARBITRATION ASSOCIATION**

3

**NEW YORK, NEW YORK**

4

5   DONALD J. TRUMP FOR PRESIDENT,
    INC., a Virginia not-for-profit corporation,

6

    Claimant,

7

    v.

8

    ALVA JOHNSON, an individual

9

    Respondent.

10

11

CASE NO. 01-19-0003-0216

**ORDER OF THE ARBITRATOR
DESIGNATING RESPONDENT STATUS AS
PREVAILING PARTY AND GRANTS
APPLICATION FOR FEES & COSTS**

Hon. Judge Victor Bianchini (Ret.), Arbitrator

12

13   **I.   INTRODUCTION AND PARTIAL PROCEDURAL HISTORY**

14      This is Respondent's application for fees and costs, predicated on her status as the

15   prevailing party, such status she argues was established when the Arbitrator dismissed the case on

16   Constitutional grounds.  This arbitration was based on an alleged violation of a non-disclosure

17   agreement (NDA) and was filed by Claimant under an arbitration provision of the NDA that

18   provided for resolution of any dispute by arbitration.  The NDA provides for an allocation of fees,

19   based on contractual provisions in of the NDA.  The NDA was entered into by the parties and was

20   agreed to by Respondent as a condition of employment.

21      The Respondent has requested $373,501.60 in attorneys' fees on behalf of both Tycko &

22   Zavareei ("Tycko") and the Public Justice, Inc. law firm (Public Justice), Respondent also requests

23   expenses of $6,151.86.  Respondent has requested arbitration fees and costs, because 1) the

24   Arbitrator ordered Claimant to bear these expenses, subject to showing Respondent's inability to

25   pay at the conclusion of the Arbitration; and 2) based on Respondent's sworn declaration filed in

26   support, with attached documentation consisting of tax returns and income evidence she cannot

27   pay, a condition imposed at the beginning of this case she could have to contribute unless she

28

1  could show she cannot do so.  Said another way, the Arbitrator's order was that she would be

2  excused from contribution, should she be unable to pay.

3          Thus, the arbitration having now been decided by way of a dismissal in its entirety on

4  Constitutional grounds, the time has now come to decide who is the prevailing party and whether

5  Attorneys' fees and costs should be awarded, and, if so, how they are to be allocated and

6  calculated.

7      A.  **A Brief Procedural History**:

8          This arbitration had its procedurally tortured beginnings following an encounter during a

9  campaign stop by then candidate Trump before the Presidential election. At a campaign stop,

10  Respondent and Trump had an encounter in a small trailer among several campaign workers.

11  Respondent related that, "during a presidential campaign rally in Tampa, Florida on August 24,

12  2016, in a campaign recreational vehicle ("RV") filled with approximately 12 other people that

13  "[Mr.] Trump grasped her hand and did not let go.  He told her he knew she had been on the road

14  for a long time and that she had been doing a great job. He also told Respondent he would not

15  forget about her, and that he would take care of her.  "[H]e tightened his grip on [Respondent's]

16  hand and leaned towards her.  He moved close enough she could feel his breath on her skin."

17  Respondent then claimed that she "suddenly realized that Defendant Trump was trying to kiss her

18  on the mouth," and attempted to avoid this by turning her head to the right. Defendant Trump

19  kissed her anyway, and the kiss landed on the corner of her mouth.

20          Separate litigation then began between the parties, in what was a technically unrelated

21  federal lawsuit filed by Respondent as *Alva Johnson v. Donald J. Trump and Donald J. Trump for*

22  *President, Inc.,* based on the alleged campaign stop encounter. *(Case No. 8:19-cv-00475-WFJ-*

23  *SPF)* in the U.S. District Court in the Middle District of Florida (Tampa), when Respondent (in

24  this action) sued as a plaintiff against the then Presidential candidate Donald J. Trump

25  ("Candidate") for battery, and against the Candidate's campaign organization, Donald J. Trump

26  for President, Inc., ("Claimant") based on a claim of unequal pay founded on gender and race, on

27

28

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION
FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1  February 25, 2019, approximately two and one-half years after her claimed alleged battery by

2  Candidate.

3        The Arbitrator notes that before her Florida federal lawsuit was filed, however, both at the

4  time of the encounter and during the next approximately two-and-one-half years, and before

5  Claimants demanded this arbitration, Respondent made numerous supportive and positive

6  statements about Candidate.  Before filing her federal lawsuit, but after leaving her position with

7  the Campaign and shortly after Candidate's successful election, Respondent sent one or more job

8  applications to the White House asking to be appointed to the important positions within the U.S.

9  Departments of State, Labor and Agriculture, including a position equivalent to the United States

10  Ambassador to Portugal.  In a radio interview in 2017, she praised Trump with phrases like "the

11  nicest guy," "incredible person," "treats everyone as if they're part of his family,"—acts and

12  statements inconsistent with a reasonable person's reaction to having been battered.  It is notable,

13  that after Candidate was elected president, Respondent applied for several positions in the new

14  Presidential Administration, but those applications went nowhere.  Then, in 2019, Respondent

15  filed her lawsuit in Florida.

16        According to Claimant's allegations, at the time of filing her complaint, Respondent was

17  represented by eight litigation attorneys from multiple law firms and that she and they "launched a

18  full-scale public relations assault on Candidate and the Campaign which included approximately

19  100 communications to national news reporters…". The Claimant, in the federal action, stated that

20  it was not seeking to hold her liable for "in-court statements communicated by or on behalf of…"

21  Respondent.  The defendants, the Campaign (the Claimant in this action), and the Candidate

22  prevailed before the U.S. District Court, (U.S. District Court Judge William Jung) who dismissed

23  the complaint in its entirety, without prejudice, because the lawsuit was "political," effectively

24  admonishing Respondent that the court would try a tort and wage lawsuit, but not a political one.

25  Thus, the Court dismissed the entire matter in June 2019, without prejudice, meaning that

26  Respondent could refile after changing her Complaint.

27

28

-3-
**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION
FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1    **1.    The Video:**

2    Following the entry of dismissal and before Respondent's deadline to file an amended

3    complaint in the District Court, the Campaign (the Claimant in this Arbitration) surfaced a video

4    of the alleged "kiss" calling into question the truthfulness of the allegations of battery, and

5    submitted the video to the District Court.  Judge Jung, after viewing the video, apparently

6    expressed surprise, called counsel and in a most appropriate manner, politely and professionally,

7    suggested there might be a "little bit of reflection, a little objectivity, more distant view of where

8    you're going to go with this," in an effort to give counsel for Respondent a perspective and gentle

9    guidance as to the viability of her case, should they file an amended complaint.  After that phone

10   call, Respondent abandoned her claim and notified the court she was declining to amend her

11   pleading.

12   A true copy of the video, recorded by a campaign volunteer present at the time of the

13   incident was shared with this Arbitrator and counsel.  Candidly, your Arbitrator observes that the

14   video demonstrating the interaction between Candidate and Respondent shows no inappropriate

15   conduct, leading to the conclusion that Respondent's factual allegations regarding the August

16   2016 interaction were false.

17   The video shows a brief interaction between Respondent and Candidate, lasting only a few

18   seconds, inside of the campaign RV surrounded by numerous people who are not identified on

19   camera.  In the Video, Respondent can be seen offering her cheek to Candidate and her lips are in

20   the air next to his cheek with Candidate's mouth clear of her face.  They are cheek-to-cheek.  The

21   Arbitrator finds that the video shows that Candidate did not "forcibly kiss" Respondent, nor kiss

22   her mouth, nor attempt to kiss her mouth, as Respondent claimed in her lawsuit.  No reasonable

23   person viewing this video could conclude that anything improper took place.[1]

24   _____

[1] See Videotaped Deposition of Alva Johnson, July 8, 2019, (Ms. Johnson admits she continued working for the Campaign and
said "a lot of very supportive things about Mr. Trump in those six weeks after the alleged kiss"); (Email message from Ms.

25   Johnson, Sept. 26, 2016: "The Boss is doing a phenomenal job tonight!! Keep praying and cheering him on."); (Text message from
Ms. Johnson, Oct. 8, 2016: "Mr. Trump is doing so well. Holding him up in prayer."), (Letter of recommendation authored by Ms.

26   Johnson, signed by a campaign worker and sent to two U.S. Senators, Aug. 18, 2017: "[Ms. Johnson's] commitment to the
President is unwavering") (emphasis added), Ex. 28 (Letters of recommendation authored by Ms. Johnson, signed by Republican

27   Men's Club President and sent to two U.S. Senators, Aug. 14, 2017: "[Ms. Johnson continues to maintain ardent support for the
President and his policies . . . . She is an early supporter of President Trump and is well known by ex-campaign staff and the

28   -4-
**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION
FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1         Ultimately, the Arbitrator dismissed this case on Constitutional grounds, using the

2   reasoning in two proceedings involving NDA either identical or substantially similar to the one in

3   this Arbitration.  The Arbitrator employed those decisions as persuasive authority.  As was

4   decided by the Arbitrator in a previous Order, that any other causes of action arising out of the

5   filing and dismissal of the federal lawsuit for battery, among other causes of action filed, are

6   unrelated to this set of claims *and will not be the basis of any determination by the Arbitrator.*

7         **2.  The First Motion to Dismiss:**

8         In his July 23, 2020, decision on a Motion to Dismiss filed by Respondent, your Arbitrator

9   denied the Motion to Dismiss substantially and granted it in part, leaving intact the primary claims

10  of Claimant.[2],[3]  During the pendency, several parallel cases had been filed involving other former

11  employees involving NDAs either identical to, or substantially similar to the NDA in this case.

12  One case, involving an identical NDA as this one, *Denson v. Donald Trump for President, Inc.*,

13  (*Denson II*), Then, as hereinbefore mentioned, while the decision in *Denson II* was pending,

14  Respondent moved for a stay of proceedings until *Denson II* could be decided.  The Arbitrator also

15  denied this motion, holding that the motion was premature.

16        **3.  The Second Motion to Dismiss:**

17        The U.S. District Court for the Southern District of New York decided *Denson II* against

18  the Claimant, involving the Constitutionality of an NDA identical to this one.  Respondent

19  renewed her Motion to Dismiss immediately after *Denson II* was rendered by the U.S. District

20  Court, Southern. District of California, U.S. District Court Judge Gardephe presiding.  Then, while

21  her Motion to Dismiss before this Arbitrator was pending, she supplemented her Motion to

22  Dismiss with an additional case involving an employee of Claimant, former television personality

23

24  President's supporters as one of his staunchest loyalists") (emphasis added), Ex. 29 (Email message from Ms. Johnson, Feb. 22, 2017: Johnson vows to "remain [a] vocal cheerleader[] for President Trump and his policies").
  [2] After extensive briefing and oral argument, on July 23, 2020, the Arbitrator, in a 28-page Order, denied the Motion to Dismiss,

25  wherein, amongst other rulings and based upon New York law, this Arbitrator held that the First Amendment to the U.S. Constitution did not preclude considering the validity and enforceability of the non-disclosure agreement (NDA) in this case.
  [3] Concurrently with the Motion to Dismiss on March 20, 2020, the parties disputed the categorization of the dispute as either

26  "commercial" or "employment, affecting the fee-sharing aspects of the suit.  In an Order filed on April 27, 2020, the Arbitrator

27  ruled under New York law that the Claimant would be required to advance fees with a final determination on allocation to be made at the conclusion of the case.

28
**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1   Omarosa Manigault-Newman, ("Manigault-Newman), a case rendered by a New York Arbitrator,[4]

2   which addressed the Constitutionality of an identical confidentiality agreement and dismissed it.

3   And, the niece of the Candidate, Mary Trump, prevailed in an unrelated action based, the

4   Arbitrator believes, but is not certain, on Constitutional principles.  Respondent has cited this

5   *Manigault-Newman* case decision as further support for the unconstitutionality of this NDA.  Thus,

6   the Arbitrator's dismissal was based on the principles and reasoning in the decisions rendered in

7   the *Denson II* and *Manigault-Newman* cases.  Respondent has acknowledged these cases are

8   technically not precedent and has cited these decisions as persuasive authority, and the usage that

9   New York law allows.  As mentioned, the Arbitrator relied on those two cases only as persuasive

10  authority.

## II.  THE PARTIES' RESPECTIVE MOTIONS:

### A.  Respondent's Motion for Fees as the Prevailing Party:

13  Respondent supports her motion for Fees and Costs because she prevailed by securing a

14  dismissal, becoming the prevailing party, and seeks to compensate the efforts of her attorneys who

15  defended her.  Thus, she asks the Arbitrator to designate her as the prevailing party.  In support of

16  this request, Respondent points out that the "NDA unambiguously awards 'reasonable legal fees

17  and costs" to the prevailing party."  She states that the matter before the Arbitrator was dismissed

18  in its entirety, and logic, law, and the NDA persuasively support this conclusion.

19  She emphasizes that her attorneys, at the beginning, procured a ruling that her case was an

20  employment case, and not a commercial case.  This ruling required Claimant to bear the fees, at

21  least until it was determined that she could not afford cost-splitting of the of the arbitration costs.

22  Through counsel, Respondent represents that she still cannot afford the substantial arbitration

23  costs, having been unemployed until recently.

24  Counsel for Respondent in supporting fees, recounted the various and substantial motion

25  practice efforts engaged in defending Respondent.  Besides discovery challenges, Motion practice

26  consisted of fee allocation, two motions to dismiss, discovery disputes, and several conferences

27  ---

[4] *Donald J. Trump for President, Inc. v. Omarosa Manigault Newman*, AAA-Case No.: 01-18-0003-0751, issued September 24, 2021 ("Order") by T. Andrew Brown, Arbitrator, (hereinafter "*Manigault-Newman*"), attached hereto as Exhibit "B."

28

-6-

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION
FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1   associated with disputes between the parties, including, but not limited to this fee allocation

2   dispute.  In addition, Counsel followed two parallel cases, substantially similar at this arbitration,

3   and monitored those cases and informed the Arbitrator of the developments.

4          Counsel filed a detailed spreadsheet listing the work by the firm representing her, and

5   highlighted the many events that required them to engage in comprehensive representation,

6   including, but not limited to extensive motion practice.  Counsel engaged in difficult discovery

7   efforts necessary to properly defend Respondent.  Their work also included researching and

8   consulting potential expert witnesses who could examine damages.  This activity, Respondent

9   argues, warrants granting her fees and costs motion.

10

11          **B.**     **Claimant's Opposition** *Arguments* **to Respondent's Motion for Fees as the**
              **Prevailing Party:**

12                **1.  On the Basis of Respondent's Inequitable Conduct:**

13          Claimant opposes the award of fees and costs to the Respondent because this arbitration

14   and the preceding litigation was "based on a politically motivated lie."  The "lie" that Claimant

15   refers to is because she filed a frivolous lawsuit in the U.S. District Court in Florida against both

16   Donald J. Trump, a candidate for the Presidency, and the Claimant, Donald J. Trump for

17   President, Inc., based on an allegation for battery, and for unequal pay based on gender and race.

18   Claimant characterizes the federal lawsuit as "a naked political lawsuit."  In support of this

19   "political lawsuit" characterization, Claimant refers to the fact that Respondent and her lawyers

20   were partisans and donors to Democratic political candidates.  Thus, Claimant allege that

21   Respondent and her eight lawyers engaged in a massive public relations assault on the candidate

22   and the Campaign, and repeating the same falsehood, presumably the battery charge.  Thus,

23   Claimant, by this argument, suggests that Respondent's attorneys were somehow aware of the

24   falsity of the Battery charge, motivating Claimant's opposition to an award of fees.

25          Before Claimant could refile an amended complaint, a video surfaced that clearly

26   demonstrated that no battery took place and that the charge of battery was false.  The Court

27   expressed its surprise and counseled Respondent to reconsider her lawsuit, and an amended

28

-7-

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION**
**FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

complaint was never filed by Respondent.  Ms. Johnson later told the press she stood by her claim, but there is no evidence her counsel knew of her false claim before the video surfaced, and counsels' involvement was never litigated before the arbitrator.  Claimant further alleges that Respondent's illicit campaign included public statements disparaging and harassing Claimant and the candidate.  Thus, they argue that she should not profit by being awarded attorneys' fees and costs and that Claimant should not be penalized by seeking to defend itself.  In support of this theme of applying equitable considerations and fairness, "because Respondent has acted in bad faith *throughout this arbitration*," [emphasis supplied], citing *Kralik v. 239 E. 70th St. Owners Corp.*, 93 A.D.3d 569, 570 (2012).  Claimant continues, "this discretion should be exercised "where bad faith is established by the successful party or where unfairness is manifest." Citing Jacreg Realty Corp. v. Barnes, 284 A.D.2d 280, 280 (2001). Equitable considerations and fairness militate against an award of attorneys' fees in a party's favor where a party has made false statements and committed misdeeds, including filing frivolous litigation with false charges. See Flamm, 107 A.D.3d at 585. Notable, however, after alleging bad faith in this arbitration, Claimant states that "Respondent's bad-faith conduct *formed the basis of this action…*" apparently weakening a narrative that bad faith occurred in this Arbitration.  Further conflating the federal action with this arbitration, Claimant states that "given Respondent's egregious actions, there is no question that *Respondent has acted in bad faith throughout this arbitration* and that it would be manifestly unfair for Respondent to profit from her vicious, false statements regarding President Trump and his Campaign. Thus, the Fee Petition should be denied." [Emphasis supplied].

Essentially, Claimant's argument is that Respondent's inequitable behavior in the federal case should carry over.  Thus, Respondent should not be rewarded by awarding her attorneys' fees, costs, and expenses and by extension, paying her attorneys because her attorneys aided her even after the dismissal of the federal case, she continued her "lie," with the aid of her attorneys.

## 2. **Because the Fee Provision is Void as a Matter of Law**:

Claimant Alleges that Respondent is not entitled to attorney's fees "because the Agreement is one entire, non-severable document and thus the fee provision is not severable from the rest of

-8-

Exhibit A

the Agreement and is void." In support of this argument, Claimant cites *Hooper Assoc.*, 74 N.Y.2d at 491, and *F & K Supply, Inc.* 732 N.Y.S.2d at 738, for the proposition that "where a court has invalidated critical portions of an agreement, courts will find the voided portions of the agreement non-severable and void the entire agreement. Yet in *Hooper*, the rule was that while ordinarily a prevailing party may not collect from the loser, it is permissible when "an award is authorized by *agreement of the parties*, statute or court rule." [Emphasis supplied].        Finally, as to the enforcement of an attorneys' fees provision, Counsel for Claimant repeats its equitable argument that Respondent's inequitable conduct is a basis for non-enforcement of the attorneys' fees provision.  In support of this argument, it cites a court ruling that held "a contract assuming that [attorney's fees] obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." Thus, Claimant argues because of her "lie," the arbitrator should not enforce the attorneys' fees provision.  As a basis for supporting their argument they cite *333 E 49th Partners LP v. Flamm*, 107 A.D.3d 584, 585 (2013), for the proposition that when the "moving party has made false statements and acted in bad faith" should not be awarded attorney's fees, even with an attorney's fees provision.

Finally, Claimant argues that because the Arbitrator "voided critical portions of the Agreement, including the confidentiality and non-disparagement provisions, which are the key provisions discussing the consideration provided by Respondent in entering the Agreement, and thus the entire Agreement including the fee provision is non-severable and likewise void," (citing *F & K Supply, Inc.*, supra), a conclusion that the Arbitrator will address below.

**3. That the Respondent's Fee Request is Unreasonable & Unsupported:**

Claimant states that Respondent's fee request should be denied because it is "conclusory and speculative…and manifestly unreasonable and unsupported." It further states she has "failed…her burden to show she is entitled to attorneys' fees and a…reasonable basis for those fees. Their specific arguments follow:

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1                   **a. <u>No Reasonable, Supported Estimate</u>:**

2         Claimant continues by stating that her "estimate underpinning her fee application is

3 speculative, unreasonable, and unsupported by any reliable evidence." In its attack on the fees

4 request, Claimant states that "Respondent has failed to adequately document and support the hours

5 she claims were expended…[b]ut fails to provide contemporaneous fee records to support her fee

6 petition, which dooms the petition." Principally, this objection is premised on the fee records

7 being not "contemporaneous…because they were improperly created in a post-hoc fashion to

8 justify the Fee Petition." Claimant reaches this conclusion because "it appears that Claimant's

9 lawyers have used paralegals and assistants to create post-hoc estimates for the amounts of time

10 they have spent on this arbitration, which…cannot support the reasonableness of a fee application.

11 Therefore, Claimant asserts, the records are not "contemporaneous fee records."

12         Thus, Claimant states that Respondent has failed to substantiate her claim for attorneys'

13 fees and that her claim for fees fails, as a matter of law.

14               **b. <u>Claimant Alleges Respondent Not Entitled to Expenses</u>:**

15         Respondent has claimed $6,151.86 in expenses. Claimant argues that the claim is

16 meritless. They oppose it on their main theme that her bad faith actions and inequitable conduct

17 precludes it. It also argues that because the Agreement is not severable, there can be no award.

18 Finally, it argues there is no evidence these expenses were actually incurred and there is no

19 indication the costs are reasonable.

20             **4. <u>That Agreement Does Not Provide for a Fee Award In the Circumstances</u>:**

21         This argument is based on the observation that because the matter was dismissed, and that

22 the Arbitrator invalidated critical portions of the agreement, neither Respondent nor Claimant has

23 received an arbitration award, it does not result in an arbitration award upon which attorneys' fees

24 can be awarded.

25

26

27

28

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION
FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

**5. <u>Respondent Must Pay Fair Share of Administrative & Arbitration Fees</u>:**

Finally, Claimant argues that Respondent should have to pay her fair share of the Administrative and Arbitration fees principally because of her bad faith and her inequitable conduct. Claimant also makes a generalized accusation that her attorneys also made critical comments.

## III.  DISCUSSION

Because Claimant argues that 1) the Fee Petition should be denied because Respondent's inequitable conduct and bad faith precludes an award of attorneys' fees, 2) that the fee provision is void, and 3) that the Respondent's fee application is flawed, not in compliance with the New York "Lodestar" method, and excessive, among other arguments, the Arbitrator will weave Claimant's arguments into this analysis.  Based on the briefs of the parties, the Arbitrator discerns three broad areas of argument that address the issues and their sequence in the discussion of the application for Attorneys' fees and costs,  They are: A) the Claimant's objection to Respondent's Motion for Fees because of Respondent's inequitable and bad faith conduct ; B) Respondent's Flawed Motion for Fees; and C) the fees and costs to be awarded to Respondent.

**A.    <u>Claimant's objection to Respondent's Motion for Fees based on Respondent's Inequitable Conduct, Mistakenly Conflates the Federal Lawsuit with This Arbitration</u>:**

Claimant argues that Respondent is not entitled to an award of attorneys' fees and that Respondent's inequitable conduct, which it characterizes as "bad faith" precludes an award of attorney's fees.  Claimant request that "[t]he Arbitrator should exercise his broad discretion to deny the Fee Petition based on equitable considerations and fairness because *Respondent has acted in bad faith throughout this arbitration*," [Emphasis supplied].  Then, in apparent contradiction to the narrative that the bad faith took place in this arbitration, Claimant states that "Respondent's bad-faith conduct *formed the basis of this action*…".  Thus, Claimant conflates the two separate proceedings.

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1.   **The Claimant Asks the Arbitrator to Apply Respondent's Behavior In the Federal Case to this Arbitration:**

The Arbitrator observes that one of Claimant's primary themes in opposing the fee application is that Respondent's federal lawsuit, in which she falsely claimed that Donald J. Trump the candidate for President had battered her, caused this litigation and because her conduct led to this expensive arbitral proceeding, she should not be rewarded for her causal dishonesty granting her application for attorneys' fees and costs. Thus, Claimant argues, this conduct justifies their opposition to her application for fees and costs in the action it brought to enforce the NDA. Their brief opposing Respondent's application for fees, promotes its causation argument throughout, and makes the argument alternating between that *she "acted in bad faith throughout this arbitration"* to alleging that her conduct *"formed the basis for this arbitration."*

a.)   **Respondent's Federal Lawsuit:**

There is no question, in the Arbitrator's opinion that, based upon the video of the encounter with Candidate Trump and Respondent, that no improper conduct by Candidate Trump took place. No objective person could view the video of the encounter as anything even remotely supporting an accusation of battery, kissed, assaulted or anything else similar. The federal judge saw it, and the Arbitrator sees it. In the Arbitrator's decision to dismiss the underlying action, he noted that the Respondent was untruthful in her accusations against the Candidate. Thus, it is understandable that Claimant would be upset that a claim for $373,501.45 in attorney's fees and costs could be made and ultimately awarded. But, to blame the cause of this arbitration on Respondent is misguided and incorrect.

b.)   **This Genesis of this Arbitration:**

Claimant continues to promote the narrative that the Arbitration came about because of her false accusation. But Claimant should know this narrative is unsupportable. That Claimant is ambivalent about how to transfer Respondent's conduct in the Federal lawsuit to this arbitration, demonstrates the difficulty it has had in its attempt to deprive her of the status of prevailing party. From a legal standpoint there is no way to transfer her civil conduct in the federal forum to this

-12-

Exhibit A

1   one. I understand Claimant's frustration, but I cannot act on it for the reasons stated above and

2   below:

3                      **c.) <u>Claimant Had Choices After Dismissal of the Federal Lawsuit</u>:**

4               Without engaging in a lengthy analysis of what remedies were available to Claimant based

5   on the behavior of Respondent, Claimant could have filed for malicious prosecution or defamation

6   in an appropriate forum, but did not do so.  Clearly either or both of these causes of action might

7   have had merit. Claimant seemed to inferentially argue that the Arbitration action was initiated to

8   curtail Respondent's alleged wide proselytizing of the false narrative that the Candidate had

9   battered her.  This theory is not accepted by the Arbitrator.  Claimant was invested in silencing

10  other employees that were terminated or had somehow criticized the Candidate in other ways,

11  such as in *Denson II* or the *Manigault-Newman* cases, by enforcing the same NDA provision

12  where in those cases there were no false allegations of battery by the Candidate.  Claimant's

13  demand for Arbitration appears to have been principally motivated by upholding its NDA and

14  curtailing any criticism of the Candidate.

15              Claimant may have had legitimate reasons to do so, but did not pursue those alternative

16  tort claims.  Instead, Claimant demanded arbitration of an NDA now determined to be

17  unconstitutional in four forums.[5]  Claimant did so in the face of Respondent's strong opposition in

18  this arbitration on Constitutional grounds from its inception.  Claimant sued on the arbitration

19  provision in its unconstitutional NDA, to silence Respondent as Claimant did in the *Denson II* and

20  *Manigault-Newman* cases on the general criticisms of the campaign and the Candidate.  But even

21  if that was not their motive, the enforcement of the NDA was an inappropriate choice because of

22  its unconstitutionality.

23                      **2. <u>Claimant Has Not Acted In Bad Faith *in this Arbitration*</u>:**

24              Although Claimant alleges that Respondent *"acted in bad faith throughout this*

25  *arbitration,"* yet the Arbitrator did not observe and has found no bad faith exhibited by

26  Respondent in this Arbitration.  Notably, the Arbitrator was given no evidence that Respondent

27  _____

28  [5] Denson II, Manigault-Newman, Johnson, and possibly Mary Trump.

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION**
**FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

16

continued her false accusation during this Arbitration.  Yes, Respondent filed a federal lawsuit and falsified the event at the campaign stop.  The falsity was dramatically revealed when the video of the encounter between her and the Candidate surfaced.  She declined to refile the Federal lawsuit as a consequence.  There were allegations she continued her false narrative after she declined to refile it, but those allegations were not a part of the Arbitration because the matter was dismissed by the Arbitrator on Constitutional grounds; but, even had they been, there would have been additional Constitutional issues implicating free speech.  Rather, Respondent defended herself, with the able assistance of her attorneys, and they did so, as the Arbitrator could determine, exceptionally competently and ethically.

The cases cited by Claimant supporting the proposition that bad faith prevents a designation as a prevailing party, involve bad faith conduct *in the same case as the one where fees were sought*.  See *Kralik v. 239 E. 70th St. Owners Corp.*, 93 A.D.3d 569, 570 (2012), and *Jacreg Realty Corp. v. Barnes*, 284 A.D.2d 280, 280 (2001).

Claimant's effort to defend against imposing a fee request because Respondent's conduct was in bad faith is rejected, because those acts were committed in a jurisdictionally separate and factually different proceeding, with unrelated causes of action, e.g., battery, and wage claim.  It could have ended at that point.  But Claimant then filed this claim in arbitration on an unconstitutional non-disclosure agreement.  That was Claimant's choice, but it didn't carry into this Arbitration Respondent's false accusation against Candidate.

Finally, the Arbitrator has consistently held, including in his ruling in the November 21, 2021, Motion to Dismiss the Federal Action, that the causes of action arising out of the filing and dismissal of the federal action for battery, among other causes of action, "are not a part of this set of claims and will not be the basis of any determination by the Arbitrator."

### 3. **Conclusion**:

The Arbitrator concludes that Respondent is the prevailing party, because there has been no inequitable or bad conduct by her in this Arbitration.  The Arbitrator will now focus on the challenges made by Claimant to the calculation of fees.

-14-

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1       **B.**    **Respondent's Alleged Flawed Motion for Fees:**

2          **1.**  **The Fee-Shifting Agreement is Not Null and Void:**

3         Claimant argues that the fee petition fails on five grounds: a.) fees should not be awarded

4 because Respondent's inequitable conduct precludes an award;  b.) the prevailing party provision,

5 is void because the Arbitrator found the allegedly non-severable confidentiality and non-

6 disparagement provisions in the agreement are likewise void; c.) even if awardable, the fee motion

7 fails to provide a reasonable basis to determine the fees; d.) that because the Arbitration was

8 dismissed, there is no arbitration award upon which to award fees; and e.) that the fee-shifting

9 provision is invalid and against public policy.

10           **a. Argument that Respondent's Conduct Precludes an Award:**

11         This argument was addressed in Section III., A. 1.  Thus, the Arbitrator rejects this

12 argument for ruling in Claimant's favor on the Fee Motion.

13            **b. The Prevailing Party Provision is Not Null and Void:**

14         Claimant advances the argument that because the Arbitrator invalidated the NDA, because

15 the "Agreement is one entire, non-severable document, and thus the fee provision is not severable

16 from the rest of the agreement and is void."  In support of this argument, it cites *Hooper Assoc.*, 74

17 N.Y.2d at 491 and *F & K Supply, Inc.*, 732 N.Y.S.2d at 738.  As its argument goes, "where a court

18 has invalidated critical portions of an agreement, courts will find the voided portions of the

19 agreement non-severable and void the entire agreement."  Thus, "[b]ecause the Arbitrator voided

20 critical portions of the Agreement, including the confidentiality and non-disparagement

21 provisions, which were the key considerations pledged by Respondent in the agreement, and

22 because the agreement lacks a severability clause, the fee provision in the agreement is also void."

23 Claimant also argues that "the agreement is entire and that the fee provision is not severable and

24 thus void."  Claimant stresses that whether a contract is entire is one of intention of the parties and

25 that one of the indicia of intent is that the agreement lacks a severability clause, a strong indicium

26 of intent.

27

28

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION
FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1    Respondent replies opposing Claimant's theory about severability, citing *Greenberg v.*

2  *Fischer*, 156 N.Y.S.2d 350, 352 (Sup. Ct., Kings Cnty., N.Y. Oct. 5, 1956), for the proposition

3  that "where you can sever" unlawful contractual provisions, "you may reject the bad part and

4  retain the good." And, as cited by Respondent, "after the Texas Supreme Court had invalidated an

5  employment agreement's covenant not to compete, the court deemed the agreement otherwise

6  intact, because a separate section survived. Here too, at least three substantive provisions

7  remained intact in the Agreement at bar, including "Competitive Services," "Competitive

8  Solicitation," and "Competitive Intellectual Property Claims."

9    To the Arbitrator, besides adopting the reasoning of Respondent on this point, believes it

10  would be manifestly illogical and contrary to law to invalidate the fee-shifting provision of this

11  NDA, where the Respondent prevailed on Constitutional grounds in a case that was vigorously

12  litigated.   Thus, the Arbitrator declines to adopt the Claimant's reasoning on this point.

13    **C.  There is a Reasonable Basis for a Fee Award and is Supported:**

14    Claimant asserts that Respondent's fee application is "speculative" and is "manifestly

15  unreasonable and unsupported. The first step in arriving at a fair and appropriate award of

16  attorneys' fees under the lodestar method is to determine whether the number of hours claimed

17  were reasonably "expended from contemporaneous time sheets." The Arbitrator disagrees.

18    Counsel for Respondent employed the "lodestar" method of calculating fees.[6] Upon

19  examination of Counsel's exhibits detailing the recordation of the hours expended on representing

20  Respondent, the law firms of Tycko and Public Justice, P.C. expended 698.5 hours in representing

21  Respondent, culminating in a compilation of Fees of $373,501.45. The fee calculation was based

22  on 623.5 hours expended by Tycko law firm with $323,686.20 requested, and 75.1 hours by

23  Public Justice, based on varying hourly rates for the respective firms, resulting in the total fee

24  amount claimed.

25    Mr. Zavareei of the Tycko law firm states that the firm undertook Respondent's

26  representation against this claim without advance compensation from her, as she had no ability to

---

27  [6] The "lodestar" method is commonly used by judges and arbitrators to determine attorney fees for a prevailing party. The loadstar is calculated by multiplying the reasonable number of hours by a reasonable hourly rate.

28

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION**
**FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1    pay their legal fees.  Thus, the firm represented her without knowing whether it would be paid.

2    However, it did have the expectation that should Respondent prevail, based on the provisions of

3    the NDA with its attorneys' fees provision, the firm would be compensated.  Primary counsel for

4    Respondent, Mr. Zavareei, in his sworn declaration, indicates that he initially undertook her

5    representation to first protect her from the arbitration costs.  Subsequent motion practice resulted

6    in shifting the cost burden to Claimants, as employer, because the Arbitrator ruled that the AAA

7    Employment Arbitration rules applied instead of the AAA Commercial Rules, with the cost

8    shifting to be revisited at the conclusion of the case to determine the prevailing party and, should

9    she not prevail, her ability to pay.

10            From the very beginning of the Arbitration, Counsel for Respondent challenged Claimant's

11   causes of action principally federal Constitutional grounds, a position that they consistently

12   pressed throughout the Arbitration litigation.  The motion practice was extensive and consisted of

13   a number of filings and discovery disputes and all the research, writing, and litigation processes

14   that such motion practice entails.  Counsel also researched and consulted expert witnesses

15   concerning damages. In addition, Counsel for Respondent monitored the unrelated but parallel

16   proceedings brought against former employees of Claimant, including several actions involving an

17   employee Denson, and an action Manigault-Newman.  All of this work resulted, on balance, in a

18   favorable outcome for Respondent.

19            There is no point in recounting and belaboring the details of the amount of work required

20   in this arbitration, as the Arbitrator had a front-row seat during the litigation.  Suffice it to say,

21   Counsel for Respondent engaged in a robust defense of their client, without any guarantee that

22   they would prevail and, for the most part with some reservations, the hours spent by Counsel for

23   Respondent are accepted by the Arbitrator.

24            A word about Counsel.  The firm of Tycko clearly appears to be a quality firm, with first-

25   rate credentials.  Their product filed in this Arbitration has been first-class as has been the

26   representation of the Claimant by the two firms engaged, Harder, LLP, and Election Law, LLC.

27   All counsel on both sides are attorneys of substance and exceptionally competent.  Counsels'

28

-17-
**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION
FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1   representation of their respective clients has been notably professional at all times. Thus, the

2   arguments by Claimant opposing the fee request by alleging that Respondent failed to adequately

3   document and support the hours she claims, is rejected. The Arbitrator will thus award fees, albeit

4   with some modifications.

5          Concerning the objection that the Respondent's time sheets are not contemporaneous is

6   likewise rejected. First of all, the practical problem is the number of attorneys and paralegals who

7   worked on this case made the compiling of expended hours difficult. Second, the Arbitrator

8   appreciates the ease of interpreting the timesheets in the format presented. Third, the Arbitrator

9   could have asked for the contemporaneous time entries from Counsel, but chose not to do so,

10  because the table of hours spent by Counsel was sufficiently specific to satisfy the Arbitrator that

11  the entries were accurate and not subject to question, with the exception of concerns of the

12  Arbitrator, discussed below. Thus, the Arbitrator notes that he has carefully examined their time

13  sheets and the work reportedly done on behalf of Respondent, and with certain exceptions

14  explained below, rejects the argument that these time sheets are unsupported claims for attorneys'

15  fees, because they are not contemporaneously maintained time records. It is obvious, given the

16  specifics and details of the time sheets, that great care and accuracy went into the compilation of

17  the fee accounting. Simply because the records are well organized and printed, does not detract

18  from their integrity and honesty. Fourth, Arbitration is intended to be a process that reduces costs

19  from what might occur in a traditional legal setting, requiring a certain amount of leeway in

20  processes that might inappropriately increase costs. This is one of those areas where such cost

21  could inappropriately increase (as will be discussed below). Finally, the Arbitrator chooses to rely

22  on the integrity of the fine and professional counsel presenting the time sheets as accurate. The

23  Arbitrator has no reason to question the ethics and honesty of Counsel of this reputable firm in

24  their representations.

25          **d.  The Arbitrator's Concerns:**

26          However, the Arbitrator has calculated the hours spent and has reservations on the total

27  amount represented to have been expended in their representation and has some concerns

28
-18-

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION
FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1    beginning first, with the number of hours expended in preparing for the fee request.  Counsel from

2    Tycko represents that the firm spent 134.5[7] hours in preparing its fee request, presumably

3    including any Public Justice calculation.  This amount is excessive.  Based on a 40-hour week, this

4    means that a firm paralegal, and any associated attorney involvement cost expended in the effort

5    would have had to spend *full-time for almost 3 and ½ weeks* to prepare the fee request.  This figure

6    calculates as 21.5% of the entire hourly total of Tyco's 623.5 hours in its hourly calculations.

7    Fees on fees are acceptable.  This figure is not acceptable.  The arbitrator believes that a firm, of

8    the quality representing Respondent, should have been able to calculate its fees in no more than a

9    full 40-hour week, given the modern electronics and record-keeping that is available to a firm.

10   And, having crediting Tycko with possessing contemporaneous billing records, the firm should

11   not have had to expend such an enormous amount of time compiling them.

12          It is unclear from Tycko's submission whether the 27 hours it calls out as the number of

13   hours it reserved for what counsel "will spend on opposing Claimant's fee petition" and oral

14   argument, and whether that 27-hour charge is included in the 134.5 hours it billed for preparation

15   of fee petition.  Accordingly, because the Arbitrator could not find a line item of 27 hours, he has

16   assumed that it is included in the 134.5 hours.  Thus, because Claimant made no application for

17   fees in their brief on this matter, the Arbitrator subtracts first the 27 hours from the 134.5 hours,

18   and reduces, preliminarily, the gross number to 107.5 hours.

19          Based on the foregoing discussion, the Arbitrator thus reduces the total amount of hours

20   spent on this case by an additional 67.5 hours and allows 40 hours, or one week's work, full time,

21   on the average hourly rate, even though the rates were at the paralegal level.

22          Second, analyzing the total number of hours expended of 698.5 hours, which, if divided

23   into the original request of $373,501.60 Tycko and Public Justice billed at an average hourly rate

24   of $534.72, now reduced by 94.5 hours, to a total of 604 hours, and multiplied by the average

25   hourly rate of $534.72, equals $322,970.88.  The Arbitrator recognizes that averaging the

26   attorneys' fees in this manner potentially obliterates the differences in billing rates from attorney

---

[7] This amount clashes with the number of 136.4 hours set forth in Respondent's brief.  The Arbitrator could not discern from the text why the number differs from the table of charges within the brief of 134.5.  The Arbitrator chooses to use the lower number.

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION
FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1   to attorney, and that this method of calculation might not be completely accurate or not seem fair,

2   but in the interests of economy, the Arbitrator would have had to expend a great deal of time and

3   effort to calculate the fees in this manner and has declined to do so.

4          In addition, in keeping with the Arbitrator's analysis of the number of hours expended to

5   defend Respondent, of the 698.5 hours expended, subjecting that number to the weekly equivalent,

6   that on a 40-hour week, an attorney, working continuously full-time on the case, would have

7   worked 8-hours per day, 5 days per week, 40 hours per week, for approximately 17.5 weeks, or

8   slightly over four and one third solid months, or approximately 88 days of full-time work. The

9   arbitrator, out of concern that the hours requested are not the product of dishonesty, but of likely

10  inefficiency (the Arbitrator wants it to be crystal-clear that he believes the Tycko and Public

11  Justice firms to be of high quality and impeccably honest). Nevertheless, the Arbitrator is

12  determined to arbitrarily reduce the total compensation of $322,970.88 by another 8%, in the

13  interests of fairness and to compensate for the inefficiency he believes occurred here, and thus

14  awards total fees of $297,133.20. Accordingly, the Arbitrator ORDERS that Respondent be

15  awarded attorneys' fees in the amount of $297,133.20, which number includes a share to the

16  Public Justice firm. The Arbitrator believes that Public Justice should probably receive

17  $43,189.95, a number that reflects its 13.3% share of the total fees requested minus its percentage

18  of the reduction. Thus, Public Justice suffers the effects of the reduction of Tycko's share of the

19  fees; but the Arbitrator will leave this to the respective Respondent's counsel as to settlement

20  between them on the proper amount to be shared. Expenses are also awarded as discussed below.

21                        **e. Respondent Is Entitled to Expenses**.

22         Respondent seeks $6,151.86 in expenses. The NDA entitles the prevailing party to

23  "reasonable . . . costs." What this means is that a prevailing party should recover "reasonable,

24  identifiable out-of-pocket expenses which are ordinarily charged to clients." (Citations omitted).

25  The expenses requested are for conference calls, legal research, photocopies, court document

26  retrievals, secure file storage, and messenger deliveries. See Francis, 2012 WL 398769, at *9,

27  authority cited by Counsel, together with Chen v. Select Income REIT, No. 18-CV-10418 (GBD)

28

-20-

**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION
FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

1   (KNF), 2019 WL 6139014, at *10 (S.D.N.Y. Oct. 11, 2019) (listing "photocopying, travel,

2   telephone costs, postage and computerized research" as sample "reasonable out-of-pocket

3   expenses that are charged to clients ordinarily" and incorporated into fee awards, (citing LeBlanc-

4   Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998))).  The fees requested are supported by the

5   sworn declaration of Counsel, and, as such are accepted by the Arbitrator as legitimate.

6               **f.  Respondent's Financial Condition Excuses Reimbursement**:

7               The Arbitrator finds that Respondent is excused from splitting the costs of the Arbitration,

8   including arbitration costs and Arbitrator fees because of her current financial condition.  Indeed,

9   arguably, as Respondent points out, the arbitration fees, including those for the Arbitrator, come

10  under the "costs" component of the prevailing party's entitlement to "fees and costs." However,

11  even if they did not, Respondent clearly comes under the employment rules.  Recall the

12  Arbitrator's previous order of April 26, 2020, wherein the Arbitrator recognized that under New

13  York law in an employment case, the employer would be responsible for up-front costs and

14  Respondent would be excused from contributing until the conclusion of the case.  Then, at such

15  time, after an examination of her financial condition, whether a determination is made whether she

16  could afford the fees, only then would she be required to split the fees.  Counsel for Respondent,

17  however, has adequately documented Respondent's financial condition such that the Arbitrator

18  finds she is excused from any contribution towards arbitration costs in this Arbitration.

19              For example, Respondent presented information in her brief on fees and costs, including

20  her Declaration that confirmed that she cannot afford her share of the arbitral costs.  Respondent

21  submitted significant evidence of her poor financial condition, including a recent account

22  summary from her bank account, which showed that she is functionally insolvent, with her only

23  compensation coming from unemployment compensation, although she had just obtained a full-

24  time position.  Nevertheless, as the evidence presented demonstrates, she lives from paycheck-to-

25  paycheck.  Thus, the Arbitrator Orders, in keeping with his order of April 26, 2020, Respondent

26  shall be excused from payment of the fees and costs and Claimant shall continue to be held

27  responsible for the Fees and Costs under the AAA Employment Fee Schedule.

28
                                          -21-
               **ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION
               FOR COSTS AND FEES AS THE PREVAILING PARTY**

                                   Exhibit A

## IV.   **CONCLUSION:**

Accordingly, and based on the foregoing discussion, the Arbitrator finds:

1.   Respondent is the prevailing party within the meaning of the NDA.

2.   The Arbitrator rejects Claimant's position that because Respondent's false claim of battery against Candidate in the separate federal lawsuit constituted of bad faith and because of the inequity of it, she should be deprived of her status as the prevailing party for the reasons stated in this ORDER.

3.   Respondent shall be awarded expenses in the amount of $6,151.86, which shall be paid to Tycko firm to reimburse it.

4.   The Arbitrator finds that Respondent is awarded fees, which are to be paid in the respective amounts to Tycko and Public Justice.  The total fees and costs in this matter are $297,133.20 plus costs (expenses) of $6,151.86 for a grand total of $303,285.06.

5.   The administrative fees of the American Arbitration Association totaling $2,950.00 and the compensation of the arbitrator totaling $43,948.10 shall be borne Claimant.

IT IS SO ORDERED:

Dated this 10th day of March 2021,

**Judge Victor E Bianchini, Arbitrator**

-22-
**ORDER OF THE ARBITRATOR GRANTING RESPONDENT JOHNSON'S APPLICATION
FOR COSTS AND FEES AS THE PREVAILING PARTY**

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSICA DENSON, individually and on
behalf of all others similarly situated,

                        Plaintiff,

                -against-

DONALD J. TRUMP FOR PRESIDENT,
INC.,

                        Defendant,

**ORDER**

20 Civ. 4737 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          Omarosa Newman has moved to intervene – pursuant to Federal Rule of Civil

Procedure 24 – in this putative class action.  (Dkt. No. 66)  Newman argues that she is entitled to

intervene because Defendant has "sued [her] in arbitration on [the] invalid and unenforceable

confidentiality and non-disparagement provisions" of the agreement at issue in this matter.  (Dkt.

No. 67 at 4)

          On October 27, 2021, Plaintiff notified this Court that Newman prevailed in

arbitration.  (Dkt. No. 72)  In a September 24, 2021 ruling, the arbitrator granted Newman

summary judgment, finding that "the confidentiality [and non-disparagement] provisions are

vague, indefinite, and therefore void and unenforceable."  (Dkt. No. 72-1 at 13, 15).

          By **5:00 p.m. on March 29, 2022**, Newman will submit a letter addressing why

her motion is not moot in light of the arbitrator's September 24, 2021 ruling.  (Id.)

Dated: New York, New York
          March 25, 2022

                                        SO ORDERED.

                                        Paul G. Gardephe
                                        United States District Judge

Exhibit A