UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSICA DENSON, individually and on
behalf of all others similarly situated,

                    Plaintiff,

          -against-

DONALD J. TRUMP FOR PRESIDENT,
INC.,

                    Defendant.

**ORDER**

20 Civ. 4737 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          Plaintiff Jessica Denson brings this putative class action against Defendant

Donald J. Trump for President, Inc. (the "Campaign"), seeking a declaratory judgment that an

agreement she and others entered into with the Campaign (the "Employment Agreement") –

which contains non-disclosure and non-disparagement provisions – is void.  Pending before the

Court is Plaintiff's motion to amend the Complaint to add a request for injunctive relief.  (Dkt.

No. 54)

          For the reasons stated below, Plaintiff's motion will be granted.

## BACKGROUND

### I.  FACTS[1]

          In August 2016 – soon after Donald J. Trump was selected as the Republican

Party's nominee for President of the United States – the Campaign hired Denson to work as a

national phone bank administrator.  (Cmplt. (Dkt. No. 1-1) ¶¶ 16, 19)  As part of the onboarding

---

[1]  The factual background of this dispute is set forth in more detail in this Court's March 30,
2021 memorandum opinion and order, which addresses Defendant's motion to dismiss and
Plaintiff's cross-motion for summary judgment.  (Dkt. No. 48)

process, the Campaign required Denson to execute a form contract – the Employment Agreement – which includes non-disclosure and non-disparagement provisions.  (Id. ¶ 23; Employment Agmt. (Dkt. No. 22-1) ¶¶ 1, 6(a))

As to dispute resolution, the Employment Agreement provides that

> any dispute arising under or relating to this agreement may, at the sole discretion of each Trump Person, be submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association, and you hereby agree to and will not contest such submissions. Judgment upon the award rendered by an arbitrator may be entered in any court having jurisdiction.

(Employment Agmt. (Dkt. No. 22-1) ¶ 8(b))

Denson was employed by the Campaign until November 10, 2016.  (Cmplt. (Dkt. No. 1-1) ¶ 40)  On November 9, 2017, Denson filed a complaint against the Campaign in New York state court alleging sex discrimination, harassment, and slander.  (Id. ¶¶ 52, 57)  In response, the Campaign brought an arbitration proceeding against her, claiming that she had breached the non-disclosure and non-disparagement provisions of the Employment Agreement. (Id. ¶ 53)  The Campaign has brought claims for arbitration against other former Campaign workers for alleged breaches of the Employment Agreement (or similar non-disclosure agreements).  (Cmplt. (Dkt. No. 1-1) ¶¶ 46-49; see Mar. 30, 2021 Mem. Op. & Order (Dkt. No. 48) at 9-10)

On February 20, 2019, Denson served the Campaign with a demand "to arbitrate the validity of the [Employment Agreement]" "on behalf of herself and all others similarly situated."  (Cmplt. (Dkt. No. 1-1) ¶ 70; Bowles Decl., Ex. V (Dkt. No. 26-22) at 4)  On May 29, 2019, the Campaign rejected Denson's demand for a class-wide arbitration, informing both Denson and the arbitrator that the Campaign had the unilateral right to determine whether a class claim could proceed to arbitration, and that it was exercising its right to block any such claim.

2

(Cmplt., Ex. E (Dkt. No. 1-1) at 54 ("In accordance with paragraph 8B of the parties' arbitration

agreement . . . , we write to advise that the Campaign does <u>not</u> consent to the [American

Arbitration Association ("AAA")]'s jurisdiction over the [class] Arbitration." (emphasis in

original)))  In a June 3, 2019 court filing, the Campaign explained its position as follows:

> Under the terms of the parties' written agreement, . . . the Campaign is afforded
> the discretionary right to arbitrate (or not arbitrate) [this] class action before the
> AAA.  The Campaign simply exercised its election rights in this regard and
> notified the AAA that it was declining to arbitrate that claim. . . . [I]f plaintiff
> wants to proceed with a class action lawsuit, she must file her purported claims in
> court, rather than with the AAA.

(Def. Resp., <u>Denson v. Donald J. Trump for President, Inc.</u>, No. 18-CV-2690 (JMF) (S.D.N.Y.

June 3, 2019) (Dkt. No. 50) at 3; Bowles Decl., Ex. Y (Dkt. No. 26-25) at 4)

        In asserting that she can proceed with the instant putative class action, Denson

contends that – by virtue of the Campaign's refusal to consent to her February 20, 2019 demand

for a class-wide arbitration – "the Campaign [has] waived any right to arbitrate the current

dispute."  (Cmplt. (Dkt. No. 1-1) ¶ 79)

## II.   <u>PROCEDURAL HISTORY</u>

        The Complaint was filed on June 1, 2020, in Supreme Court of the State of New

York, New York County, and was removed to this District on June 19, 2020.  (Not. of Removal

(Dkt. No. 1))  The Complaint seeks the following relief:

    A.    [d]esignation of this action as a class action;

    B.    [d]esignation of Plaintiff as a representative Plaintiff of all employees,
          independent contractors, and volunteers for the Campaign who have
          signed the [Employment Agreement] or any contract containing similar
          nondisclosure and non-disparagement clauses;

    C.    [a] [d]eclaratory judgment that the Campaign's [Employment Agreement],
          including the one signed by Plaintiff, and any similar contracts the
          Campaign required any member of the class to sign, are invalid and
          therefore unenforceable;

      D.       [an] [a]ssessment of Plaintiff's reasonable costs and attorneys' fees, along with any notice costs and forum fees against the Campaign in their entirety; and

      E.       [s]uch other relief as the Court deems just and equitable.

(Cmplt. (Dkt. No. 1-1) at 30)

In a July 2, 2020 letter, Plaintiff states that she "seek[s] declaratory and injunctive relief invalidating the [Employment Agreement] under New York Contract law. . . ." (July 2, 2020 Jt. Ltr. (Dkt. No. 14) at 1)

On July 30, 2020, the Campaign moved to dismiss (Dkt. No. 23), arguing that Denson lacks standing, and that her claims are barred by collateral estoppel. (Def. MTD Br. (Dkt. No. 25) at 12-19) Denson cross-moved for summary judgment (Dkt. No. 19), seeking a declaratory judgment that the Employment Agreement's non-disclosure and non-disparagement provisions are unenforceable under New York contract law. (Pltf. Sum. J. Br. (Dkt. No. 20) at 18-27) Denson also moved to "permanently enjoin[] the Campaign and any party entitled to enforce the [Employment Agreement] from enforcing, attempting to enforce, and/or threatening to enforce the [Employment Agreement]." (Pltf. Sum. J. Mot. (Dkt. No. 19) at 1)

On March 30, 2021, this Court denied Defendant's motion to dismiss, and granted Plaintiff's cross-motion for summary judgment "to the extent that the Employment Agreement's non-disclosure and non-disparagement provisions are declared invalid and unenforceable as to the Denson." (Mar. 30, 2021 Mem. Op. & Order (Dkt. No. 48) at 35 (internal citation omitted))

In deciding whether Denson has standing to pursue her claim for a declaratory judgment, this Court was required to determine whether she had alleged "a credible threat of enforcement" by the Campaign. (Id. at 15) This Court found that

the Campaign has engaged in a pattern of enforcing or threatening to enforce the Employment Agreement's non-disclosure and non-disparagement provisions

against former Campaign employees, including Denson [and others].  (Pltf. R.
56.1 Stmt. (Dkt. No. 21) ¶¶ 15, 20; Bowles Decl., Ex. P (Dkt. No. 26-16))  And
the primary intended beneficiary of the Employment Agreement – President
Trump – has tweeted about his efforts to enforce non-disclosure agreements.
(Bowles Decl., Exs. K, O (Dkt. Nos. 26-11, 26-15))  Given this record, Denson
has demonstrated a "well-founded fear" that the Employment Agreement will be
enforced against her and has adequately alleged . . . that "there is a substantial risk
that the harm will occur."

. . . .

Denson is not relying on a hypothetical risk of enforcement of the Employment
Agreement's non-disclosure and non-disparagement provisions, or even a single
past instance of enforcement.  Rather, she has pled facts and proffered evidence
demonstrating a pattern of conduct on the Campaign's part, in which the
Employment Agreement's non-disclosure and non-disparagement provisions have
been enforced both against Denson and against other former Campaign
employees.  This pattern of conduct plainly demonstrates that there is a
substantial risk of a future action if Denson or other Campaign employees speak
in a way that the Campaign believes violates the Employment Agreement.

(Id. at 16, 18 (citations omitted))

This Court further determined that

the Campaign's past efforts to enforce the non-disclosure and non-disparagement
provisions demonstrate that it is not operating in good faith to protect what it has
identified as legitimate interests.  The evidence before the Court instead
demonstrates that the Campaign has repeatedly sought to enforce the non-
disclosure and non-disparagement provisions to suppress speech that it finds
detrimental to its interests.

(Id. at 33)

As to Denson's request – in her summary judgment motion – for an injunction,

this Court denied that application, noting that the Complaint does not seek such relief:

Plaintiff seeks "an injunction preventing the Campaign and any other individual
and entity entitled to enforce the contract from enforcing, attempting to enforce,
and/or threatening to enforce the [Employment Agreement]."  (Pltf. Sum. J. Br.
(Dkt. No. 20) at 33)  The Complaint does not seek injunctive relief, however.
(Cmplt. (Dkt. No. 1-1))  Accordingly, the application for injunctive relief is
denied.

(Id. at 34 n.10)

Plaintiff now moves for leave to file an amended complaint that includes the following request for injunctive relief:

> Plaintiff, on behalf of herself and the Class, prays for . . . [a]n injunction prohibiting the Campaign and all third parties from attempting to enforce the Campaign's [Employment Agreement], including the one signed by Plaintiff and any similar contracts the Campaign required any member of the class to sign, against Plaintiff and all class members.

(Pltf. Br., Ex. A (Prop. Am. Cmplt.) (Dkt. No. 55-1) at 29 ¶ D)  Defendant opposes the application.  (Dkt. No. 60)

## DISCUSSION

## I.   LEGAL STANDARD

A party may amend a pleading with the court's leave, and "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); see also Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" (quoting Foman v. Davis, 371 U.S. 178, 182 (1962))).  "Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile."  Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016).  "[D]istrict court[s] ha[ve] broad discretion in determining whether to grant leave to amend."  Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000).

An amendment would be futile if it "would not survive a motion to dismiss."  On Track Innovations Ltd. v. T-Mobile USA, Inc., No. 12-CV-2224 (AJN) (JCF), 2014 WL 406497, at *4 (S.D.N.Y. Feb. 3, 2014) (citing AEP Energy Serv. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 726 (2d Cir. 2010); Penn Group, LLC v. Slater, No. 07-CV-729 (MHD), 2007 WL

2020099, at *4 (S.D.N.Y. June 13, 2007)).  "The opposing party bears the burden of establishing

that an amendment would be futile."  Id. (citing Amaya v. Roadhouse Brick Oven Pizza,

Inc., 285 F.R.D. 251, 253 (E.D.N.Y. 2012)).

       "There is a strong preference for allowing plaintiffs to amend inadequate

pleadings[,] . . . particularly . . . if the plaintiff has not had the benefit of a court ruling with

respect to the deficiencies of its pleading."  Allianz Glob. Invs. GmbH v. Bank of Am. Corp.,

473 F. Supp. 3d 361, 364 (S.D.N.Y. 2020), report and recommendation adopted, 2020 WL

4927575 (Aug. 21, 2020) (quoting In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA

Litig., No. 08-MDL-01963 (RWS), 2011 WL 4357166, at *2 (S.D.N.Y. Sept. 13, 2011); citing

Loreley Fin. v. Wells Fargo Secs., LLC, 797 F.3d 160, 190 (2d Cir. 2015)).

## II.    ANALYSIS

       In opposing Plaintiff's application, Defendant argues that amendment would be

futile because (1) Plaintiff cannot show a risk of irreparable harm in the absence of an injunction;

and (2) putative class members would be required to individually arbitrate any request for

injunctive relief.  (Def. Opp. (Dkt. No. 60) at 3-6)

### A.    Irreparable Harm

       As a general matter, "'a request for permanent injunctive relief should not be

dismissed at the pleading stage unless the underlying claim upon which relief is sought is

dismissed.'"  Bouveng v. NYG Cap. LLC, No. 14-CV-5474 (PGG), 2015 WL 3503947, at *15

(S.D.N.Y. June 2, 2015) (quoting Marino v. Nw. Mut. Life Ins. Co., No. 00-CV-3212 (MBM),

2001 WL 262574, at *3 (S.D.N.Y. Mar. 14, 2001)); see also Messinger v. JPMorgan Chase

Bank, N.A., No. 13-CV-2444 (AJN), 2014 WL 904528, at *2 (S.D.N.Y. Mar. 7, 2014) ("Rather

than determining the appropriate remedy, '[t]he Court's task on a motion to dismiss is to consider

the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to

relief.'" (quoting RJ Cap., S.A. v. Lexington Cap. Funding III, Ltd., No. 10-CV-24 (PGG), 2011 WL 3251554, at *16 (S.D.N.Y. July 28, 2011))).

Here, this Court has already found that Plaintiff's underlying claim has merit; indeed, the Court granted Plaintiff summary judgment on the issue of whether the Employment Agreement's non-disclosure and non-disparagement provisions are unenforceable as to her.  (See Mar. 30, 2021 Mem. Op. & Order (Dkt. No. 48) at 35)

Defendant argues, however, that any request for injunctive relief would fail, because Plaintiff cannot satisfy the irreparable harm element.  (Def. Opp. (Dkt. No. 60) at 3-4)

Injunctive relief is "generally appropriate only when there is an inadequate remedy at law and irreparable harm will result if the relief is not granted."  Munnelly v. Fordham Univ. Fac., 316 F. Supp. 3d 714, 742 (S.D.N.Y. 2018).  "Irreparable harm is an injury that is not remote or speculative but actual and imminent."  Tom Doherty Assocs., Inc. v. Saban Ent., Inc., 60 F.3d 27, 37 (2d Cir. 1995).

Defendant argues that injunctive relief would not be appropriate in light of this Court's order determining that the Employment Agreement's non-disclosure and non-disparagement provisions are unenforceable as to Denson.  According to Defendant, Plaintiff cannot show a risk of "irreparable harm," because "this Court has already declared the [Employment] Agreement's confidentiality and non-disparagement provisions invalid and unenforceable as to plaintiff."  (Def. Opp. (Dkt. No. 60) at 4)  In support of this argument, Defendant has submitted a declaration from its "in-house counsel" stating that "[t]he Campaign has not and will not take any steps to violate [the Court's] existing order by enforcing or attempting to enforce either of these provisions against Ms. Denson."  (Cannon Decl. (Dkt. No. 60-1) ¶ 2)

Defendant's declaration only addresses enforcement as to Denson, however; it does not speak to the Campaign's enforcement of the provisions against putative class members. And there is substantial evidence here that the Campaign will seek to enforce the confidentiality and non-disparagement provisions as against putative class members.

As discussed in this Court's summary judgment decision,

> Denson is not relying on a hypothetical risk of enforcement of the Employment Agreement's non-disclosure and non-disparagement provisions, or even a single past instance of enforcement.  Rather, she has pled facts and proffered evidence demonstrating a pattern of conduct on the Campaign's part, in which the Employment Agreement's non-disclosure and non-disparagement provisions have been enforced both against Denson and against other former Campaign employees.  This pattern of conduct plainly demonstrates that there is a substantial risk of a future action if Denson or other Campaign employees speak in a way that the Campaign believes violates the Employment Agreement.

(Mar. 30, 2021 Mem. Op. & Order (Dkt. No. 48) at 18)  This Court further found that

> the Campaign's past efforts to enforce the non-disclosure and non-disparagement provisions demonstrate that it is not operating in good faith to protect what it has identified as legitimate interests.  The evidence before the Court instead demonstrates that the Campaign has repeatedly sought to enforce the non-disclosure and non-disparagement provisions to suppress speech that it finds detrimental to its interests.

(Id. at 33)

And in an April 13, 2021 submission in connection with an arbitration proceeding involving another Campaign worker, the Campaign urged the arbitrator not to follow this Court's summary judgment decision, arguing that the decision "was wrong"; that it "is poorly reasoned and result-oriented"; and that the decision is "the product of a Court that was looking for a reason to invalidate the agreement in toto and to avoid effectuating the mutual intention of the parties."  (See Slaughter Decl., Ex. 1 (Apr. 13, 2021 Trump Campaign Ltr. in Donald J. Trump for President, Inc. v. Alva Johnson, AAA Case 01-19-0003-0216) (Dkt. No. 62-2) at 2, 6)

Suffice it to say that there is substantial evidence that the Campaign will seek to enforce the non-disclosure and non-disparagement provisions against putative class members other than Denson.

As to Denson – notwithstanding the declaration from the Campaign's lawyer – she is at risk from enforcement actions brought by countless "third-party beneficiaries" of the Employment Agreement.  (Employment Agmt. (Dkt. No. 22-1) ¶¶ 6, 7(d))  As this Court has noted, the non-disclosure and non-disparagement provisions

> appl[y] not only to President Trump and his family members – including unnamed spouses, children, and grandchildren – but also to any legal entity "that, in whole or in part, was created by or for the benefit of . . . or is controlled or owned by" President Trump or any of his family members.  (Id. ¶¶ 6(a)-(c), (f))  President Trump himself is affiliated with more than 500 companies, and his family members may be affiliated with yet more.  (Pltf. R. 56.1 Stmt. (Dkt. No. 21) ¶ 51; Bowles Decl., Ex. AA (Dkt. No. 26-27) at 3-13)

(Mar. 30, 2021 Mem. Op. & Order (Dkt. No. 48) at 27)

In sum, Defendant has not demonstrated that a request for injunctive relief would not survive a motion to dismiss.

### B.   Mandatory Arbitration

Defendant argues that "Plaintiff's proposed request for injunctive relief on behalf of [] putative class members . . . is plainly arbitrable [under the Employment Agreement]," and that accordingly the proposed amendment is futile.  (Def. Opp. (Dkt. No. 60) at 5)  Defendant states that it "will exercise its right to compel any putative class member to arbitrate any claims regarding the validity and enforceability of the [Employment] Agreement on an individual basis before the AAA."  (Id. at 6)  Plaintiff counters that "the Campaign has expressly and implicitly waived any right to compel arbitration with respect to this class action."  (Pltf. Reply (Dkt. No.

63) at 6)  Plaintiff also contends that "the arbitrability of putative class members' claims is an issue properly decided at the class certification stage, following class discovery."  (Id. at 7)

As to Plaintiff's waiver argument, as discussed above, when Denson attempted to assert a class claim before the arbitrator, the Campaign announced that it had "the discretionary right to arbitrate (or not arbitrate) [this] class action before the AAA"; that it was "exercis[ing] its election rights in this regard"; and that it had "notified the AAA that it was declining to arbitrate that claim. . . . [I]f plaintiff wants to proceed with a class action lawsuit, she must file her purported claims in court, rather than with the AAA."  (Def. Resp., Denson v. Donald J. Trump for President, Inc., No. 18-CV-2690 (JMF) (S.D.N.Y. June 3, 2019) (Dkt. No. 50) at 3; Bowles Decl., Ex. Y (Dkt. No. 26-25) at 4)

In sum, the Campaign invited Denson to file a class claim in court.  Indeed, the Campaign asserted that any class action claim must be asserted "in court, rather than [before] the AAA."  While the Campaign now appears to argue that no class claim of any sort can be brought, its earlier arguments are inconsistent with that position, and raise an issue as to whether the Campaign has impliedly waived its current argument that putative class members must proceed with individual claims in an arbitration.

In any event, to the extent that Defendant argues that putative class members would be required to submit their claims to arbitration, this Court cannot resolve that question at this stage of the litigation.  "[I]n the context of class action litigation, courts routinely hold that 'the earliest time to move to compel arbitration is after class certification.'"  B & R Supermarket, Inc. v. Visa Inc., No. 17-CV-2738 (MKB), 2021 WL 4408167, at *4 (E.D.N.Y. Sept. 27, 2021) (quoting Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 234 (S.D.N.Y. 2020), report and recommendation adopted, 2021 WL 4199912 (Sept. 15, 2021)); see also Jensen v.

Cablevision Sys. Corp., 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) (noting that, prior to

certification, the court cannot "compel absent putative class members who are not before this

Court to binding arbitration or issue a ruling regarding the enforceability of the [arbitration]

provision"; "[a]ny such ruling is procedurally improper and analogous to an advisory opinion");

Gutierrez v. Wells Fargo Bank, NA, 889 F.3d 1230, 1238 (11th Cir. 2018) ("[I]t would have

been impossible in practice to compel arbitration against speculative plaintiffs and

jurisdictionally impossible for the District Court to rule on those motions before the class was

certified.").[2]

        In short, any determination as to the arbitrability of the putative class members'

claims would be premature.  Moreover, any motion to compel arbitration will be addressed after

class discovery and certification is resolved.  See B & R Supermarket, Inc., 2021 WL 4408167,

at *6 ("[T]he Court denies [defendant's] motion to compel [arbitration] as premature.

[Defendant] may renew its motion to compel arbitration against the [putative class plaintiffs]

once the notice and opt-out period for the Class has ended.").

                        *        *        *        *

        Defendant has not demonstrated that Plaintiff's request for injunctive relief would

not survive a motion to dismiss.  Accordingly, leave to amend will be granted.

---

[2]  Aleksanian v. Uber Techs. Inc., 524 F. Supp. 3d 251, 253 (S.D.N.Y. 2021), reconsideration
denied, 2021 WL 6137095 (Dec. 29, 2021), cited by Defendant (Def. Opp. (Dkt. No. 60) at 5), is
not to the contrary.  In Aleksanian, the motion to compel arbitration was directed to the named
plaintiffs, not to any putative class members.  Moreover, the arbitration provision in Aleksanian
expressly covered "'class, collective or representative action[s].'"  Aleksanian, 524 F. Supp. 3d
at 255.  Here, the arbitration provision is silent as to class claims.  (See Employment Agmt. (Dkt.
No. 22-1) ¶ 8(b))  Finally – unlike here – there were no allegations of waiver in Aleksanian.  See
Billie v. Coverall N. Am., Inc., 444 F. Supp. 3d 332, 345 (D. Conn. 2020) ("When an arbitration
agreement arguably does not bind all prospective class members, some courts have found it
appropriate to first decide the issue of class certification.").

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion to amend is granted.  The

Amended Complaint will be filed by **April 7, 2022**.

By **April 13, 2022**, the parties will submit a joint letter proposing a schedule for

discovery concerning class certification.

The Clerk of Court is directed to terminate the motion (Dkt. No. 54).

Dated: New York, New York
       March 30, 2022

SO ORDERED.

Paul G. Gardephe
United States District Judge