**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESSICA DENSON, Individually and on Behalf of All Others Similarly Situated, *Plaintiffs*, *v.* DONALD J. TRUMP FOR PRESIDENT, INC., *Defendant*. | No. 20 Civ. 4737 (PGG) |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

David A. Schulz
Joseph Slaughter
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6103
Fax: (212) 223-1942
Email: schulzd@ballardspahr.com
Email: slaughterj@ballardspahr.com

David K. Bowles
BOWLES & JOHNSON PLLC
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
Email: David@BoJo.Law

John Langford (JL-2367)
UNITED TO PROTECT DEMOCRACY
555 W. 5th St.
Los Angeles, CA 90013
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: john.langford@protectdemocracy.org

Brittany Williams
UNITED TO PROTECT DEMOCRACY
1900 Market St., 8th Fl.
Philadelphia, PA 19103
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: brittany.williams@protectdemocracy.org

Anne Tindall
UNITED TO PROTECT DEMOCRACY
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: anne.tindall@protectdemocracy.org

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................II

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    A.    The Trump Campaign's Employment Agreement and Its Third-Party
        Enforcement Provisions .....................................................................................2

    B.    Enforcement of the Campaign's Employment Agreement ..................................... 3

    C.    Relevant Procedural Posture .................................................................................. 5

    D.    Summary of Class Discovery .................................................................................. 6

LEGAL STANDARD ..................................................................................................... 7

ARGUMENT ................................................................................................................. 8

    I.    THE PROPOSED CLASS ACTION SATISFIES RULE 23(a) ........................... 8

        A.    Numerosity ................................................................................................. 8

        B.    Commonality ................................................................................................. 9

        C.    Typicality ..................................................................................................... 9

        D.    Adequacy of Representation ...................................................................... 10

    II.    THE PROPOSED CLASS ACTION SATISFIES RULE 23(b)(2)...................... 11

    III.    THE PROPOSED CLASS ACTION SATISFIES RULE 23(b)(1)(B) ................ 12

CONCLUSION .............................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) .......................................................................................................... 13

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ............................................................................................................ 7

*Berman v. Narragansett Racing Ass'n*,
   48 F.R.D. 333 (D.R.I. 1969) ............................................................................................. 14

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*,
   290 F.R.D. 409 (S.D.N.Y. 2012) ........................................................................................ 9

*Burdick v. Union Sec. Ins. Co.*,
   No. CV 07-4028 ABC, 2009 WL 6541608 (C.D. Cal. Apr. 2, 2009) ..................................... 13

*Ciaramella v. Zucker*,
   No. 18-CV-6945 (JPO), 2019 WL 4805553 (S.D.N.Y. Sept. 30, 2019) ................................. 9

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ...................................................................................... 10

*Jensen v. Cablevision Sys. Corp.*,
   372 F. Supp. 3d 95 (E.D.N.Y. 2019) ................................................................................. 11

*Jin v. Shanghai Original, Inc.*,
   990 F.3d 251 (2d Cir. 2021) ................................................................................................ 9

*Larionoff v. United States*,
   365 F. Supp. 140 (D.D.C. 1973) .................................................................................. 13, 14

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   323 F.R.D. 145, (S.D.N.Y. 2017) ..................................................................................... 13

*MacNamara v. City of New York*,
   275 F.R.D. 125 (S.D.N.Y. 2011) ........................................................................................ 8

*Madanat v. First Data Corp.*,
   282 F.R.D. 304 (E.D.N.Y. 2012) ...................................................................................... 12

*Magtoles v. United Staffing Registry, Inc.*,
   No. 21-CV-1850 (KAM) (PK), 2022 WL 1667005 (E.D.N.Y. May 25, 2022) ..................... 12

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)..................................................................................... 8

*Mungin v. Fla. E. Coast Ry. Co.*,
  318 F. Supp. 720 (M.D. Fla. 1970)........................................................................ 14

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)................................................................................... 10

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015)...................................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)............................................................................................... 11

*Zimmerman v. Portfolio Recovery Assocs., LLC*,
  276 F.R.D. 174 (S.D.N.Y. 2011) ...................................................................... 9, 10

## Rules

Fed. R. Civ. P. 23 .............................................................................................*passim*

**INTRODUCTION**

The end is now in sight for this putative class action challenging the validity of non-disclosure and non-disparagement provisions in an employment agreement that the 2016 Trump Campaign required its workers to sign. The Court has already ruled that the challenged provisions are unenforceable as a matter of law as to lead plaintiff Jessica Denson. The only substantive issue that remains is for the Court to confirm that its ruling applies equally to *all* Campaign workers who signed the employment agreement.

As a matter of logic, that conclusion flows inevitably from what the Court has already decided – provisions that are unenforceable as a matter of law against Ms. Denson are equally so against others to whom the same provisions apply. As a matter of law, the Court can confirm this result with two simple steps: first, certify a class consisting of those individuals who signed the employment agreement; and second, issue an order that (1) restates the Court's determination that the challenged provisions are unenforceable; and (2) permanently enjoins *anyone* – including all third parties that ostensibly are beneficiaries of the Employment Agreements – from attempting to enforce them against any class member. By this motion, Plaintiffs respectfully request the Court to take the first of those two steps and certify this case as a class action pursuant to Federal Rule of Civil Procedure 23.

There is no question that Plaintiffs satisfy the requirements for class certification. With respect to the showing Plaintiffs must make under Rule 23(a), discovery has shown that hundreds of Campaign workers signed the employment agreement, making the proposed class sufficiently numerous. And the "commonality" and "typicality" factors are easily satisfied because (1) the proposed class consists only of those individuals subject to the challenged provisions in the employment agreement; and (2) the declaration sought by Plaintiffs would invalidate and enjoin enforcement of only the challenged provisions. There is no question that

the lead plaintiff, Ms. Denson, who has been nearly single-handedly responsible for bringing the case to this point, is an adequate representative, and there is no question that Plaintiffs' counsel are adequate representatives. Moreover, Plaintiffs also satisfy the requirements of Rule 23(b)(2), because they seek only equitable relief, and Rule 23(b)(1)(B), because class members would clearly be prejudiced by varying adjudications of the validity of the challenged provisions.

For all of these reasons, and as explained in more detail below, the Court should grant Plaintiffs' motion and certify the proposed class.

## BACKGROUND

The factual background and procedural posture of this case are laid out in this Court's March 30, 2022, Order at 1–6, ECF No. 76; this Court's March 30, 2021, Memorandum Opinion and Order at 2–11, ECF No. 48 (the "Summary Judgment Opinion"); and elsewhere. Plaintiffs assume familiarity with those papers and recount only that background information relevant to the present motion for class certification.

**A.      The Trump Campaign's Employment Agreement and Its Third-Party Enforcement Provisions**

During the 2016 presidential election cycle, Donald J. Trump for President, Inc. ("the Campaign")[1] required Ms. Denson and all other individuals who worked with or for the Campaign to sign a form contract (the "Employment Agreement"). Summary Judgment Opinion at 2; *see infra* at p. 7. The Employment Agreement contains non-disparagement and non-disclosure clauses. Summary Judgment Opinion at 2.

The non-disparagement clause prohibits signors from ever criticizing former President Trump, his family, and their companies. *Id.* at 5. The non-disclosure clause prohibits signors

---

[1] The Campaign has since been renamed the "Make America Great Again PAC." ECF No. 83-1 ¶ 1. For consistency and clarity, Plaintiffs will continue to refer to Defendant as "Donald J. Trump for President, Inc." or the "Campaign."

from ever disclosing confidential information, defined to include any information that former

President Trump unilaterally decides is confidential. *Id*. at 2–4. Both provisions purport to bind

signors forever. *Id*. at 2–5.

Important here, the Employment Agreement contains an enforcement provision. *Id*. at 5.

That provision specifies that any "Trump Person"—defined to include the former President, his

family, their families, and any company affiliated with the former President, his family, and their

families—may enforce the Employment Agreement against signatories for money damages. *Id*.

In addition, the Employment Agreement includes a third-party beneficiary clause that provides

that former President Trump, his family, their families, and any company affiliated with any of

them "is an intended third party beneficiary of this agreement" and "will be entitled to the benefit

of this agreement and to enforce this agreement." *Id*. As the Court previously found, former

"President Trump himself is affiliated with more than 500 companies, and his family members

may be affiliated with yet more." *Id*. at 27. Accordingly, more than 500 individuals and

companies are ostensibly empowered to enforce the Employment Agreement against signatories,

including Ms. Denson. Order at 10, ECF No. 76.

**B.      Enforcement of the Campaign's Employment Agreement**

Following former President Trump's election in 2016, the Campaign sought to enforce

the Employment Agreement's non-disparagement and non-disclosure clauses against numerous

signatories, including Ms. Denson. The enforcement activities that Plaintiffs are aware of

include:

- on December 20, 2017, the Campaign initiated an enforcement action against Ms. Denson for violating the Employment Agreement after she filed a lawsuit against the Campaign, alleging sex discrimination, harassment, and slander;

- on August 14, 2018, the Campaign initiated an enforcement action against former employee Omarosa Manigault-Newman for violating the Employment Agreement after she published a book critical of former President Trump;

- on January 29, 2019, the Campaign initiated an enforcement action against former employee Cliff Sims for violating the Employment Agreement after he published a book critical of former President Trump; and

- after Alva Johnson filed a lawsuit against former President Trump alleging battery and unequal pay based on gender and race, the Campaign initiated an enforcement action against her for violating the Employment Agreement.

Summary Judgment Opinion at 6, 9–10, 16.[2]

In Ms. Denson's case, the Campaign initially succeeded in securing damages in the amount of $49,507.64, before a state appellate court threw the award out. *See id*. at 7–9.

The former President appears to be well aware of the Employment Agreement and his power to enforce the non-disclosure and non-disparagement provisions directly. On August 31, 2019, he tweeted, "*I* am currently suing various people for violating their confidentiality arguments":



Summary Judgment Opinion at 9; *see also* Bowles Decl. Ex. K, ECF No. 26-11.[3]

---

[2] The Campaign refused to provide any records or answer any interrogatories concerning its enforcement activities. *See See* Langford Decl. Ex. 2 at 6–9 (Interrogatory Responses Nos. 8–11);  Langford Decl. Ex. 4 at 4 (Request for Production Response No. 3).

[3] In his business and personal lives, as well as in his political career, Trump has demonstrated a well-documented predilection for suing or threatening to sue individuals over purported violations of NDAs, including in some cases many years after the NDAs are executed. *See, e.g.*, Matthew Chapman, *Trump Claims His Niece Signed an NDA, Threatens to Sue Her*

**C.**     **Relevant Procedural Posture**

After spending over two years seeking to have the Campaign's Employment Agreement invalidated in other fora, *see* Summary Judgment Opinion at 6–9, Ms. Denson filed this class-action lawsuit in the Supreme Court of the State of New York on June 1, 2020, *see* ECF No. 1; Summary Judgment Opinion at 10. The Campaign removed the case to this Court on June 19, 2020. *Id*. On July 9, 2020, the Court conducted an initial pretrial conference and issued a briefing schedule, permitting Ms. Denson to move for summary judgment and the Campaign to simultaneously cross-move to dismiss the lawsuit. ECF No. 18. The parties filed their cross motions on July 30, and briefing concluded on August 20, 2020. ECF Nos. 19–27, 32–35, 37–39.

On March 30, 2021, the Court entered a Memorandum Opinion & Order, denying the Campaign's motion to dismiss and granting, in part, Lead Plaintiff's motion for summary judgment. *See generally* Summary Judgment Opinion. On the merits of Ms. Denson's summary judgment motion, the Court declared invalid both the non-disclosure and non-disparagement provisions. *Id*. at 26–35. As to the former, the Court held the non-disclosure provision to be an unreasonable (and therefore unenforceable) restrictive covenant, and invalid for the additional reason that it is vague, indefinite, and lacks an adequate manifestation of mutual assent required of all contracts. *Id.* at 26–30. As to the non-disparagement clause, the Court concluded that its enormous scope—covering undefined statements that might be made about more than 500 individuals and entities—rendered it insufficiently definite to be enforceable. *Id.* at 30–32.

_____

*Over Tell-All Book: Report*, Salon (June 17, 2020), https://www.salon.com/2020/06/17/trump-claims-his-niece-signed-an-nda-threatens-to-sue-her-over-tell-all-book-report_partner/; Haven Orecchio-Egresitz, *How Trump Uses Money, Non-Disclosure Agreements, and Intimidation to Muzzle the People Close to Him*, Bus. Insider (June 18, 2020), https://www.businessinsider.com/how-trump-non-disclosure-agreements-intimidation-silence-mary-trump-book-2020-6.

The Court declined to "blue-pencil" the Employment Agreement's non-disclosure and non-disparagement clause, because doing so would require it "to engage in a wholesale re-drafting of these provisions." *Id.* at 32–34. Blue-penciling would be particularly inappropriate on the facts of this case, the Court explained, because "the Campaign's past efforts to enforce the non-disclosure and non-disparagement provisions demonstrate that it is not operating in good faith to protect what it has identified as legitimate interests." *Id.* at 33.

While declaring the Employment Agreement invalid as to Ms. Denson, the Court declined to issue an injunction barring enforcement of the Employment Agreement because Plaintiffs did not specifically request injunctive relief in their complaint. *Id.* at 34–35 n.10. Instead, following briefing on whether the case could proceed to class discovery, the Court permitted Plaintiffs to amend their complaint to request injunctive relief and ordered the parties to proceed to class discovery. *See* Order, ECF No. 76. Notably, the Court recognized that Ms. Denson herself remains "at risk from enforcement actions brought by countless 'third-party beneficiaries' of the Employment Agreement." *Id.* at 10.

**D.      Summary of Class Discovery**

The parties completed class discovery on August 31, 2022. During class discovery, the Campaign disclosed that at least 422 individuals who worked for or with the Trump Campaign in the 2016 presidential election cycle signed an Employment Agreement containing identical non-disclosure and non-disparagement provisions as the Employment Agreement Ms. Denson signed. Langford Decl. ¶ 7 & Ex. 2 at 3. Of those 422 individuals, the Campaign estimated that 84 were employees, 127 were independent contractors, and 5 were volunteers; the remaining 206 individuals "were either employees, independent contractors, or volunteers." Langford Decl. ¶ 7 & Ex. 2 at 4. While the Campaign refused to identify the identities of these individuals, it

produced copies of either the full Employment Agreement or the signature page of the

Employment Agreement for all, or nearly all of these individuals, with names redacted. *See*

Langford Decl. ¶ 9 & Ex. 4 at 3; *see, e.g.*, Langford Decl. ¶ 10 & Ex. 5.

The Campaign refused to disclose any information about the scope of its efforts to

enforce the Employment Agreement's non-disclosure or non-disparagement provisions and/or an

arbitration demand *See* Langford Decl. Ex. 2 at 6–9 (Interrogatory Responses Nos. 8–11);

Langford Decl. Ex. 4 at 4 (Request for Production Response No. 3).[4]

## LEGAL STANDARD

Class certification is appropriate where the four prerequisites of Federal Rule of 23(a) are

met, and at least one of the three subsections of Rule 23(b) is satisfied. *See Sykes v. Mel S.*

*Harris & Assocs. LLC*, 780 F.3d 70, 79–80 (2d Cir. 2015); *see also, e.g.*, *Amgen Inc. v.*

*Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). "[T]he district court is afforded

broad discretion in class certification questions due to the fact that 'the district court is often in

the best position to assess the propriety of the class [action] and has the ability . . . to alter or

modify the class, create subclasses, and decertify the class whenever warranted.'" *MacNamara v.*

*City of New York*, 275 F.R.D. 125, 137 (S.D.N.Y. 2011) (*quoting Sumitomo Copper Litig. v.*

*Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001) (alterations in original)). In

general, the Second Circuit has made clear that Rule 23 should be "given liberal rather than

restrictive construction." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

---

[4] Plaintiffs notified the Campaign that they have reason to believe that more than 422
individuals signed an Employment Agreement.

## ARGUMENT

### I.  PROPOSED CLASS DEFINITION

An order certifying a class must contain a definition of that class.  Fed. R. Civ. P.

23(c)(1)(B).  Here, as stated in the Amended Complaint, Plaintiffs seek certification of a class

consisting of:

> [A]ll Campaign employees, contractors, and volunteers who executed a[n Employment Agreement], or any contract containing similar nondisclosure and non-disparagement clauses, during the 2016 election cycle.

Am. Compl. ¶ 131, ECF No. 77.[5]

### II.  THE PROPOSED CLASS ACTION SATISFIES RULE 23(a)

A party seeking class certification must first show that it can satisfy the four requirements

of Federal Rule of Civil Procedure 23(a).  These factors, commonly referred to as "numerosity,

commonality, typicality, and adequacy of representation," are plainly satisfied here.

#### A.  Numerosity

Rule 23(a)(1) requires a showing that "the class is so numerous that joinder of all

members is impracticable." Fed. R. Civ. P. 23(a)(1). "Numerosity is presumed at a level of 40

members" of a putative class. *Zimmerman v. Portfolio Recovery Assocs., LLC*, 276 F.R.D. 174,

179 (S.D.N.Y. 2011) (Gardephe, J.) (citing and quoting *Consol. Rail Corp. v. Town of Hyde

Park,* 47 F.3d 473, 483 (2d Cir. 1995)); *see also Jin v. Shanghai Original, Inc.*, 990 F.3d 251,

263 n.20 (2d Cir. 2021) (same). Here, the putative class consists of at least 422 members, or

---

[5] Plaintiffs originally defined the class to include "any contract containing similar nondisclosure and non-disparagement clauses" to account for contracts that might differ from the Employment Agreement in immaterial ways. The contracts produced by the Campaign thus far contain idential non-disparagement and non-disclosure clauses, though they contain other, immaterial differences (e.g., different signers' names). The Court should certify the class with whatever langue it deems appropriate to capture the universe of form contracts containing the illegal non-disclosure and non-disparagement provisions at issue here.

more than ten times the threshold at which numerosity is presumed. Langford Decl. ¶ 7 & Ex. 2

at 3–4. The putative class therefore satisfies Rule 23(a)(1).

### B.     Commonality

To satisfy Rule 23(a)(2)'s commonality requirement, "there must be a showing that

common issues of fact or law exist and that they affect all class members." *Zimmerman*, 276

F.R.D. at 179 (internal quotation marks omitted). "The test for commonality, however, is not

demanding and is met so long as there is at least one issue common to the class." *Brooklyn Ctr.*

*for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 418 (S.D.N.Y. 2012) (internal

quotation marks omitted). And "when the plaintiff class seeks to enjoin a practice or policy,

rather than individualized relief, commonality is assumed." *Ciaramella v. Zucker*, No. 18-CV-

6945 (JPO), 2019 WL 4805553, at *13 (S.D.N.Y. Sept. 30, 2019) (citing and quoting *Shepard v.*

*Rhea*, No. 12 Civ. 7220, 2014 WL 5801415, at *4 (S.D.N.Y. Nov. 7, 2014)).

All members of the putative class signed the same form contract. Langford Decl. ¶ 7 &

Ex. 2 at 3–4; *id.* ¶ 8 & Ex. 3 at 2–3; *see also id.* ¶ 10 & Ex. 5. In addition, Plaintiffs seek only a

declaration that the challenged provisions—which appear in each contract—are invalid and an

injunction against their enforcement, not any form of individualized relief. Am. Compl. at p. 28,

ECF No. 77. Plaintiffs therefore satisfy Rule 23(a)(2)'s commonality requirement. *See*

*Zimmerman*, 276 F.R.D. at 179 (finding commonality requirement satisfied where class members

all received the same "pre–suit package" from a debt collector).

### C.     Typicality

Rule 23(a)(3)'s typicality requirement is satisfied where the lead plaintiff's claims arise

from the same factual and legal circumstances that provide the basis for the class members'

claims. *Zimmerman*, 276 F.R.D. at 179. This requirement is also "not demanding." *In re MF*

9

*Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015). "When it is alleged that

the same unlawful conduct was directed at or affected both the named plaintiff and the class

sought to be represented, the typicality requirement is usually met irrespective of minor

variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931,

936–37 (2d Cir. 1993). Here, Lead Plaintiff's claims arise from the same factual and legal

circumstances that provide the basis for the putative class members' claims – namely, they all

signed the same contract which contains the same provisions they allege to be illegal and

unenforceable. Langford Decl. ¶ 7 & Ex. 2 at 3–4; *id.* ¶ 8 & Ex. 3 at 2–3; *see also id.* ¶ 10 & Ex.

5; Am. Compl. ¶¶ 130–61. The typicality requirement is thus also easily satisfied.

### D.      Adequacy of Representation

Rule 23(a)(4)'s requirement of adequacy of representation is satisfied so long as the lead

plaintiff's interests are not "antagonistic to the interests of other members of the class" and

"plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Zimmerman*,

276 F.R.D. at 179–80.

Here, Lead Plaintiff Jessica Denson's interests are clearly aligned with that of the class.

Like Ms. Denson, all class members are or were subject to the restrictions on their speech

imposed by the non-disclosure and non-disparagement provisions of the Employment Agreement

and likewise suffer the same harm as Ms. Denson from imposition of those provisions.

Moreover, Ms. Denson has already proven herself an effective and tenacious advocate for the

class as a whole, including because she initiated this action and successfully litigated *pro se*

before retaining counsel, and because she has continued to fight to ensure that appropriate relief

is effectuated for the entire class notwithstanding that she has already won on the merits of this

dispute. *See generally* Declaration of Jessica Denson ¶¶ 1–15.

In addition, Plaintiffs' counsel consists of a team of lawyers with over 122 years' combined litigation experience and has substantial expertise with the issues attendant to this litigation. *See* Bowles Decl. ¶¶ 1–6; Langford Decl. ¶¶ 1–6 & Ex. 1; Schulz Decl. ¶¶ 1–6 & Ex. 1; Slaughter Decl. ¶¶ 1–6 & Ex. 1. Further, as the pleadings, motion practice, and evidence marshalled in support of Ms. Denson's summary judgment motion and this memorandum demonstrate, Plaintiffs' counsel continues to litigate this case vigorously and diligently on behalf of the putative class.

## III.    THE PROPOSED CLASS ACTION SATISFIES RULE 23(b)(2)

This class is tailor-made for certification under Federal Rule of Civil Procedure 23(b)(2), which permits certification in circumstances where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  "In other words, Rule 23(b)(2) applies . . . when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *see also Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 118 (E.D.N.Y. 2019) ("Actions for injunctive relief will satisfy the requirements of Rule 23(b)(2) if the injunctive relief sought will benefit the entire class."). Rule 23(b)(2) does not require that every class member be injured in the exact same way by the defendant's conduct – rather, the standard is satisfied when "[a]ction or inaction is directed to a class . . . even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23(b)(2), advisory committee's note.

Here, the standard is easily satisfied. Plaintiffs do not seek money damages, only declaratory and injunctive relief – relief that would clearly apply to every member of the class.

Plaintiffs seek a declaration that the non-disclosure and non-disparagement provisions of the

Employment Agreement are unenforceable, and an injunction barring any attempt to enforce

them. Because the class Plaintiffs seek to certify consists only of individuals who signed form

contracts with identical language, the requested relief necessarily would provide relief to each

class member. In a sense, the class is "self-executing" for the purposes of the Rule 23(b)(2)

analysis: because it seeks only to have contractual provisions declared unenforceable, and

because the class consists only of those individuals who are bound by those contractual

provisions, the relief sought is necessarily "appropriate respecting the class as a whole." Fed. R.

Civ. P. 23(b)(2). Indeed, Courts regularly certify classes under Rule 23(b)(2) in circumstances

where the plaintiffs challenge a generally applicable standard-form contractual provision as

unenforceable, regardless of the extent to which the provision has actually been enforced. *See,

e.g.*, *Magtoles v. United Staffing Registry, Inc.*, No. 21-CV-1850 (KAM) (PK), 2022 WL

1667005, at *10–11 (E.D.N.Y. May 25, 2022) (certifying class of nurses challenging contractual

non-compete and liquidated damages provisions pursuant to Rule 23(b)(2)); *Madanat v. First

Data Corp.*, 282 F.R.D. 304, 314–15 (E.D.N.Y. 2012) (certifying class of merchants challenging

provisions of payment processor standard contract pursuant to Rule 23(b)(2)); *Burdick v. Union

Sec. Ins. Co.*, No. CV 07-4028 ABC, 2009 WL 6541608, at *15–16 (C.D. Cal. Apr. 2, 2009)

(certifying class challenging provision in standard insurance contract pursuant to Rule 23(b)(2)).

The same result should obtain here.

IV.     **THE PROPOSED CLASS ACTION SATISFIES RULE 23(b)(1)(B)**

        Federal Rule of Civil Procedure 23(b)(1)(B) provides an additional avenue for

certification for the Court to consider, regardless of whether it finds the requirements of (b)(2) to

separately be met. Federal Rule of Civil Procedure 23(b)(1)(B) permits class certification where

> prosecuting separate actions by or against individual class members
> would create a risk of . . . adjudications with respect to individual
> class members that, as a practical matter, would be dispositive of the
> interests of the other members not parties to the individual
> adjudications or would substantially impair or impede their ability
> to protect their interests.

The Rule "looks to possible prejudice to the putative class members." *Leber v. Citigroup 401(k)*

*Plan Inv. Comm.*, 323 F.R.D. 145, 164 (S.D.N.Y. 2017). While Rule 23(b)(1)(B) is most often

employed in limited fund cases, *see Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614

(1997), the Advisory Committee's notes to Rule 23 specify that (b)(1)(B) applies outside of

those circumstances. Fed. R. Civ. P. 23, advisory committee's note.

Applying this Rule, courts have certified classes where the dispute turns on a set of

contracts or a uniform contract that binds all class members and defendants. In *Larionoff v.*

*United States*, for example, the court certified a class of U.S. Navy petty officers under Rule

23(b)(1)(B) where the "sole issue on the merits before the Court requires an interpretation of the

contract which the Department of the Navy uses to secure all its reenlistment obligations." 365 F.

Supp. 140, 143 (D.D.C. 1973). The Court explained that resolving that issue was "a matter of

law applicable to all parties who are bound by these uniform contracts" such that "an

adjudication with respect to the individual members of the class would as a practical matter be

dispositive of the interests of the other members of the class as defined above." *Id.*; *see also*

*Mungin v. Fla. E. Coast Ry. Co.*, 318 F. Supp. 720, 730 (M.D. Fla. 1970) (certifying a class

alleging a breach of a collective bargaining agreement), *aff'd*, 441 F.2d 728 (5th Cir. 1971);

*Berman v. Narragansett Racing Ass'n*, 48 F.R.D. 333, 337 (D.R.I. 1969) (certifying a class

alleging a breach of contract).

Certification under Rule 23(b)(1)(B) is appropriate in this case for the same reasons. The

sole issue for all class members is whether the non-disclosure and non-disparagement provisions

13

of the uniform contract they each executed with the Campaign are valid. Resolving that issue is

"a matter of law applicable to all parties who are bound by these uniform contracts" such that

"an adjudication with respect to the individual members of the class would as a practical matter

be dispositive of the interests of the other members of the class as defined above." *Larionoff*, 365

F. Supp. at 143.

Moreover, certification under Rule 23(b)(1)(B) is particularly appropriate here because of

the nature of the contract at issue. The damage imposed by overbroad non-disclosure and non-

disparagement agreements occurs not just through enforcement activities, but through the *in*

*terrorem* chilling effect such provisions exert on those subject to them. As the Court noted in the

Summary Judgment Opinion, "the effect" of those provisions of the Employment Agreement "is

to chill the speech of Denson and other former Campaign workers about matters of public

interest." Summary Judgment Opinion at 28–29. That *in terrorem* effect persists to this day.

"[T]here is substantial evidence that the Campaign will seek to enforce the non-disclosure and

non-disparagement provisions against putative class members other than Denson." Order at 10,

ECF No. 76.[6] Moreover, both Lead Plaintiff and all class members remain "at risk from

enforcement actions brought by countless third-party beneficiaries." *Id.* (internal quotation marks

omitted).

Nothing currently prohibits former President Trump, for example, from initiating an

enforcement action in arbitration or in a different judicial forum against any class member. The

---

[6] The Campaign has, for the third time, suggested that it will voluntarily decline to enforce the Employment Agreement's non-disclosure and non-disparagement provisions. ECF No. 83 & Exs. A–B. That representation is not legally binding on the Campaign and should be accorded no weight, given the Campaign's long history of seeking to enforce the Employment Agreement, including even after this Court's ruling that its provisions are invalid. Summary Judgment Opinion at 8–10; *see* ECF No. 84.

mere initiation of such an action would effectively re-silence Ms. Denson and others by throwing open the possibility that third parties might move to enforce the Employment Agreement against them, notwithstanding this Court's decision that those provisions are unenforceable as a matter of law. Further, the Campaign itself remains free to attempt to enforce the Employment Agreement against the vast majority of the putative class, notwithstanding this Court's decision. Indeed, the Campaign has already attempted to do *exactly that* – arguing in one enforcement proceeding that this Court's decision was "poorly reasoned and result-oriented" and that the arbitrator should ignore it. *See. e.g.*, ECF No. 62 at 7 n.1. Failure to secure class-wide relief would undoubtedly lead to many more such situations and give rise to a real risk of varying adjudications that would directly undermine this Court's well-reasoned Summary Judgment Opinion – particularly in light of the hundreds of potential enforcers of the illegal provisions. In sum, the class members' interests in this case are uniquely tethered together: not only do they challenge a uniform contract binding each of them; a loss by any class member in any forum against any enforcer would, "as a practical matter, . . . substantially impair or impede their ability to protect their interests" in speaking freely. Fed. R. Civ. P. 23(b)(1)(B).

**CONCLUSION**

For the reasons above, Plaintiffs respectfully request that the Court grant their motion for class certification.

Dated: October 6, 2022                                        Respectfully Submitted,

By: /s/ *John Langford*_____

David A. Schulz
Joseph Slaughter
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6103
Fax: (212) 223-1942
Email: schulzd@ballardspahr.com
Email: slaughterj@ballardspahr.com

David K. Bowles
BOWLES & JOHNSON PLLC
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
Email: David@BoJo.Law

John Langford (JL-2367)
UNITED TO PROTECT DEMOCRACY
555 W. 5th St.
Los Angeles, CA 90013
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: john.langford@protectdemocracy.org

Brittany Williams
UNITED TO PROTECT DEMOCRACY
1900 Market St., 8th Fl.
Philadelphia, PA 19103
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: brittany.williams@protectdemocracy.org

Anne Tindall
UNITED TO PROTECT DEMOCRACY
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: anne.tindall@protectdemocracy.org

*Counsel for Plaintiffs*

16