UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA DENSON, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP FOR PRESIDENT, INC.,<br><br>*Defendant*. | No. 20 Civ. 4737 (PGG) |

**JOINT MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT**

I.    INTRODUCTION

After nearly three years of litigation, and more than two years after the Court declared the non-disclosure and non-disparagement provisions contained in lead Plaintiff Jessica Denson's Employment Agreement with the Campaign invalid and unenforceable as to her, the parties have reached a Settlement. The Settlement is fair, reasonable, and adequate, and was the product of arm's length negotiations conducted before Magistrate Judge Figueredo. Under the terms of the Settlement, and with the Court's entry of an order approving it, the members of the settlement class, like Ms. Denson, will not be bound by the non-disclosure and non-disparagement provisions contained in their Employment Agreements with the Campaign.

Accordingly, the parties jointly ask that the Court: (i) preliminarily approve the Settlement, (ii) approve the proposed form of the Class Notice and distribution plan, and (iii) set a date for a Fairness Hearing.

## II.     THE RELEVANT BACKGROUND

The relevant background for this case is laid out in this Court's March 30, 2022, Order at 1–6, ECF No. 76; this Court's March 30, 2021, Memorandum Opinion and Order at 2–11, ECF No. 48 (the "Summary Judgment Opinion"); and elsewhere. The parties assume familiarity with those papers and recount only that background information relevant to the present motion.

On June 1, 2020, Ms. Denson filed this class-action lawsuit in the Supreme Court of the State of New York, *see* ECF No. 1; Summary Judgment Opinion at 10. The Campaign removed the case to this Court on June 19, 2020 on the basis of federal question jurisdiction. *Id*. On July 9, 2020, the Court conducted an initial pretrial conference and issued a briefing schedule, permitting Ms. Denson to move for summary judgment and the Campaign to simultaneously cross-move to dismiss the lawsuit. ECF No. 18. The parties filed their cross motions on July 30, and briefing concluded on August 20, 2020. ECF Nos. 19–27, 32–35, 37–39.

On March 30, 2021, the Court entered a Memorandum Opinion & Order, denying the Campaign's motion to dismiss, granting, in part, Lead Plaintiff's motion for summary judgment, and invalidating both the non-disclosure and non-disparagement provisions as to Ms. Denson only. *See generally* Summary Judgment Opinion at 26-35.

While declaring the Employment Agreement invalid as to Ms. Denson, the Court declined to issue an injunction barring enforcement of the Employment Agreement because Plaintiffs did not specifically request injunctive relief in their complaint. *Id.* at 34–35 n.10. Instead, following subsequent briefing on whether the case could proceed to class discovery, the Court permitted Plaintiffs to amend their complaint to request injunctive relief and ordered the parties to proceed to class discovery.  *See* Order, ECF No. 76.  In connection with that subsequent briefing, the Campaign proffered a declaration that it had not and would not take any steps to violate the Court's Summary Judgment Opinion by enforcing or attempting to enforce

the Employment Agreement's non-disclosure or non-disparagement provisions against Ms. Denson. *Id.* at 8. Nevertheless, the Court ruled that Ms. Denson (as well as the other class members) remained "at risk from enforcement actions brought by countless third-party beneficiaries' of the Employment Agreement." *Id.* at 10.

In June 2022, the Campaign proffered another declaration avowing that "it shall not ever enforce or attempt to enforce any confidentiality or non-disparagement provisions contained in any written agreements signed by any employees, independent contractors, or volunteers who worked for the Campaign on the 2016 Presidential Election." *See* ECF No. 83-1. In addition, the Campaign represents that it sent a signed letter to the putative class members in July 2022 stating that they are "no longer bound" by the Campaign to the Employment Agreement's confidentiality and non-disparagement provisions and that the Campaign "will not enforce these provisions." ECF No. 83-2.

The parties completed class discovery on August 31, 2022. During class discovery, the Campaign disclosed that at least 422 individuals who worked for or with the Trump Campaign in the 2016 presidential election cycle signed an Employment Agreement containing identical non-disclosure and non-disparagement provisions as the Employment Agreement Ms. Denson signed. Langford Decl. ¶ 7 & Ex. 2 at 3. The Campaign also indicated that it had some form of contact information for a large portion of these individuals.

### III.   SUMMARY OF THE SETTLEMENT AGREEMENT

On October 7, 2022, the Court referred the parties to a settlement conference before Magistrate Judge Figueredo, which took place on December 13, 2022. At the conference, the parties agreed on a settlement in principle, subject to the Court's approval. The parties' proposed settlement agreement and mutual release (the "Proposed Agreement") is submitted herewith as Exhibit 3 to the Declaration of John Langford, and it contains the following material terms:

- The parties will ask the Court to enter an Order which, among other things: (i) certifies the proposed class consisting of all Campaign employees, contractors, and volunteers who executed the Employment Agreement, or any contract containing substantively identical non-disclosure and non-disparagement provisions, during the 2016 election would be provisionally certified for the purposes of settlement only, and (ii) enjoins the enforcement of those provisions by the Campaign or any third parties;[1]

- Following the Court's entry of the above-referenced Order, the Campaign will pay class counsel an aggregate total of $450,000, which includes any and all attorneys' fees and costs (including notice-related costs) and an incentive fee of $25,000 to Ms. Denson; and

- The Campaign will provide the contact information that it has in its possession custody, or control for the putative class members so that class counsel can provide notice to the class of the settlement.

The Proposed Agreement provides Plaintiffs with the relief sought in the Amended Complaint.

## IV.   LEGAL ARGUMENT

### A.   The Proposed Class Should Be Certified for Settlement Purposes

Class certification is appropriate where the four prerequisites of Federal Rule of 23(a) are met, and at least one of the three subsections of Rule 23(b) is satisfied. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 79–81 (2d Cir. 2015); *see also, e.g.*, *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). "[T]he district court is afforded broad discretion in class certification questions due to the fact that 'the district court is often in the best position to assess the propriety of the class [action] and has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted.'" *MacNamara v. City of New York*, 275 F.R.D. 125, 137 (S.D.N.Y.2011) (*quoting Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001) (alterations in original)). In

---

[1] The Settlement Agreement contemplates the entry of an injunction by the Court because only the Court has the ability to enjoin enforcement of the non-disclosure and non-disparagement provisions by third parties.

4

general, the Second Circuit has made clear that Rule 23 should be "given liberal rather than restrictive construction." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

### i. Proposed Settlement Class Definition

An order certifying a class must contain a definition of that class.  Fed. R. Civ. P. 23(c)(1)(B).  Here, as stated in the Amended Complaint, Plaintiffs seek certification of a settlement class consisting of:

> All Campaign employees, contractors, and volunteers who executed a Form NDA, or any contract containing similar nondisclosure and non-disparagement clauses, during the 2016 election cycle.

Am. Compl. (ECF No. 77) ¶ 131.

### ii. The Proposed Settlement Class Meets the Requirements of Fed. R. Civ. P. 23(a): Numerosity

Rule 23(a)(1) requires a showing that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). "Numerosity is presumed at a level of 40 members" of a putative class. *Zimmerman v. Portfolio Recovery Assocs., LLC*, 276 F.R.D. 174, 179 (S.D.N.Y. 2011) (Gardephe, J.) (citing and quoting *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995)); *see also Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 n. 20 (2d Cir. 2021) (same). Here, the proposed settlement class consists of at least 422 members, or more than ten times the threshold at which numerosity is presumed. Langford Decl. ¶ 7 & Ex. 2 at 3-4. The proposed settlement class therefore satisfies Rule 23(a)(1).

### iii. The Proposed Settlement Class Meets the Requirements of Fed. R. Civ. P. 23(a): Commonality

To satisfy Rule 23(a)(2)'s commonality requirement, "there must be a showing that common issues of fact or law exist and that they affect all class members." *Zimmerman*, 276 F.R.D. at 179 (internal quotation marks omitted). "The test for commonality, however, is not demanding and is met so long as there is at least one issue common to the class." *Brooklyn Ctr.*

*for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 418 (S.D.N.Y. 2012) (internal quotation marks omitted). And "when the plaintiff class seeks to enjoin a practice or policy, rather than individualized relief, commonality is assumed." *Ciaramella v. Zucker*, No. 18-CV-6945 (JPO), 2019 WL 4805553, at *13 (S.D.N.Y. Sept. 30, 2019) (citing and quoting *Shepard v. Rhea*, No. 12 Civ. 7220, 2014 WL 5801415, at *4 (S.D.N.Y. Nov. 7, 2014)).

All members of the proposed settlement class signed the same contract. Langford Decl. ¶ 7 & Ex. 2 at 3-4.  In addition, Plaintiffs seek only a declaration that the challenged provisions are invalid and an injunction against their enforcement, not any form of individualized relief. Am. Compl. (ECF No. 77) at 28. Plaintiffs therefore satisfy Rule 23(a)(2)'s commonality requirement. *See Zimmerman*, 276 F.R.D. at 179 (finding commonality requirement satisfied where class members all received the same "pre-suit package" from a debt collector).

### iv. The Proposed Settlement Class Meets the Requirements of Fed. R. Civ. P. 23(a): Typicality

Rule 23(a)(3)'s typicality requirement is satisfied where the lead plaintiff's claims arise from the same factual and legal circumstances that provide the basis for the class members' claims. *Zimmerman*, 276 F.R.D. at 179. This requirement is also "not demanding." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). Here, Lead Plaintiff's claims arise from the same factual and legal circumstances that provide the basis for the proposed settlement class members' claims – namely, they all signed the same contract containing the same non-disclosure and non-

6

disparagement provisions which they allege to be unenforceable. Langford Decl. ¶ 7 & Ex. 2 at 3-4; Am. Compl. ¶¶ 130–61.  The typicality requirement is thus also easily satisfied.

### v. The Proposed Settlement Class Meets the Requirements of Fed. R. Civ. P. 23(a): Adequacy of Representation

Rule 23(a)(4)'s requirement of adequacy of representation is satisfied so long as the lead plaintiff's interests are not "antagonistic to the interests of other members of the class" and "plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Zimmerman*, 276 F.R.D. at 179–80.

Here, Lead Plaintiff Jessica Denson's interests are clearly aligned with that of the proposed settlement class.  Like Ms. Denson, all proposed settlement class members are or were subject to the restrictions imposed by the non-disclosure and non-disparagement provisions of the Form NDAs.  Moreover, Ms. Denson has already proven herself an effective advocate for the settlement class as a whole, including because she initiated this action and litigated *pro se* before retaining counsel, and because she has continued to seek relief for the entire settlement class. *See generally* Declaration of Jessica Denson.

In addition, Plaintiffs' counsel consists of a team of lawyers with over 120 years combined litigation experience, and has substantial expertise with the issues attendant to this litigation. *See* Bowles Decl. ¶¶ 1-6; Langford Decl. ¶¶ 1-6 & Ex. 1; Schulz Decl. ¶¶ 1-6 & Ex. 1; Slaughter Decl. ¶¶ 1-6 & Ex. 1. Further, as the pleadings, motion practice, and evidence marshalled in support of their summary judgment motion and this memorandum demonstrate, Plaintiffs' counsel continues to vigorously and diligently litigate this case on behalf of the proposed settlement class.

### vi. The Proposed Settlement Class Meets the Requirements of Fed. R. Civ. P. 23(b)(2)

This settlement class is tailor-made for certification under Fed. R. Civ. P. 23(b)(2), which permits certification in circumstances where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "In other words, Rule 23(b)(2) applies . . . when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 118 (E.D.N.Y. 2019) ("Actions for injunctive relief will satisfy the requirements of Rule 23(b)(2) if the injunctive relief sought will benefit the entire class."). Rule 23(b)(2) does not require that every class member be injured in the exact same way by the defendant's conduct – rather, the standard is satisfied when "[a]ction or inaction is directed to a class . . . even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23(b)(2), Advisory Committee's Note.

Here, the standard is easily satisfied. Plaintiffs do not seek money damages, only declaratory and injunctive relief – relief that would clearly apply to every member of the settlement class. Plaintiffs seek a declaration that the non-disclosure and non-disparagement provisions of the Employment Agreement are unenforceable, and an injunction barring any attempt to enforce them. Because the settlement class Plaintiffs seek to certify for the purposes of settlement consists only of individuals who signed form contracts with identical language, the requested relief necessarily would provide relief to each settlement class member. In a sense, the settlement class is "self-executing" for the purposes of the Rule 23(b)(2) analysis, because it seeks only to have contractual provisions declared unenforceable, and because the settlement

class consists only of those individuals who are bound by those contractual provisions, the relief sought is "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Indeed, Courts regularly certify classes under Rule 23(b)(2) in circumstances where the plaintiffs challenge a generally applicable standard-form contractual provision as unenforceable, regardless of the extent to which the provision has actually been enforced. *See, e.g.*, *Magtoles v. United Staffing Registry, Inc.*, No. 21-CV-1850 (KAM) (PK), 2022 U.S. Dist. LEXIS 93924, at *29-30 (E.D.N.Y. May 25, 2022) (certifying class of nurses challenging contractual non-compete and liquidated damages provisions pursuant to Rule 23(b)(2)); *Madanat v. First Data Corp.*, 282 F.R.D. 304, 314-15 (E.D.N.Y. 2012) (certifying class of merchants challenging provisions of payment processor standard contract pursuant to Rule 23(b)(2)); *Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC, 2009 U.S. Dist. LEXIS 35611, at *49-50 (C.D. Cal. Apr. 2, 2009) (certifying class challenging provision in standard insurance contract pursuant to Rule 23(b)(2)). The same result should obtain here.

      **B.**      <u>**Preliminary Approval of the Settlement Agreement is Warranted**</u>

In this Circuit, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re Painewebber Ltd. Partnerships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998). In granting preliminary approval of a settlement of a class action, a court must decide that the settlement at issue is "fair, reasonable, and adequate," and determine that "the settlement is not the product of collusion." *Mba v. World Airways, Inc.,* 369 F. App'x 194, 197 (2d Cir. 2010); *see also* Fed. R. Civ. P. 23(e). Class-action settlements such as this one are generally subject to a two-step approval process: during the first step, a court grants preliminary approval, wherein it determines that the agreement "is the result of serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other

obvious deficiencies . . . and where the settlement appears to fall within the range of possible approval." *Cohen v. J.P. Morgan Chase & Co.,* 262 F.R.D. 153, 157 (E.D.N.Y. 2009); *see also In re Nasdaq Mkt.-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

In considering whether to preliminarily or finally approve a settlement, the reviewing court should consider some combination of nine factors. These are referred to as the "*Grinnell* factors," and include:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risks of maintaining the class action through the trial;
>
> (7) the ability of the defendants to withstand a greater judgment;
>
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery;
>
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005). Courts also review the reasonableness of any attorney fee award in a class action settlement, *id.* at 120, as well as the reasonableness of incentive fees, which "are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation." *Schwartz v. Intimacy in New York, LLC,* No. 13 CV 5735 (PGG), 2015 WL 13630777, at *6 (S.D.N.Y. Sept. 16, 2015). Of course, certain of these factors – including 5, 7, 8, and 9 – are clearly inapplicable to the instant motion, because the case does not seek monetary damages. To the extent they are applicable at all, the remaining factors all favor approval of the

settlement.

**The complexity, expense and likely duration of the litigation.** This case certainly qualifies as complex and lengthy: it has a complicated history involving multiple other judicial and arbitral forums stretching over four years (ECF No. 77 ¶¶ 50–79), and it has already occupied two and one-half years of litigation before this Court. Moreover, continued litigation would likely result in multiple additional rounds of briefing centered on mootness, the arbitration clause of the NDAs, the appropriate relief, and fees and costs. Resolution by settlement is therefore favored. *Wal-Mart Stores, Inc.*, 396 F.3d at 118.

**The reaction of the settlement class to the settlement.** While this factor is more pertinent to the final approval of the settlement once notice has been provided to the settlement class, it bears noting that the reaction of the settlement class here has, to this point, been favorable. Despite the national publicity of this case, no member of the settlement class has in any way objected to being relieved from the burdens of the NDA. The purpose of this litigation is to release individuals from contractual agreements that purport to restrict their right to express themselves freely on matters of public importance; the relief afforded to the settlement class in the settlement agreement will accomplish that goal without requiring the settlement class members to give up anything in return. Moreover, the record in this case demonstrates that multiple other settlement class members have sought relief from the NDA in various fora, including in response to actions seeking to enforce the NDA against them. *See* ECF No. 20 at 4–6. Finally, the Campaign has already taken steps to inform the settlement class members that it would no longer enforce the NDA, ECF No. 83; it has not reported that anyone objected or expressed reservations about that decision. "[T]he absence of substantial opposition is indicative of class approval." *Wal-Mart Stores, Inc.,* 396 F.3d at 118.

**The stage of the proceedings and the amount of discovery completed.** Discovery is complete in this case. Where discovery has been completed and the parties are ready for trial, "the court obviously has sufficient evidence to determine the adequacy of settlement. *Wal-Mart Stores, Inc.*, 396 F.3d at 118.

**The risks of establishing liability and the risks of maintaining the class action through trial.** Here, the parties are in an unusual posture in that the Court has already ruled Lead Plaintiff Denson's NDA to be invalid, but has not yet extended this ruling to the entire putative class. ECF No. 48. The Campaign has opposed class certification, arguing, among other things, that the claims of the settlement class have been mooted and that arbitration clauses in the NDAs preclude class treatment. ECF No. 100 at 4-9. While Plaintiffs disagree with those arguments, they still demonstrate that there is real risk with respect to certifying a class and succeeding at trial. Thus, the parties agree that the certainty of a settlement is preferable to continued litigation.

**Reasonableness of the attorney's fees and incentive fee awards.** As discussed above, courts also review the reasonableness of any fee award. Here, the $450,000 afforded to Plaintiff's counsel are reasonable given that (1) the attorneys' fees will be split between three entities: two law firms and one nonprofit organization, with at least seven experienced attorneys involved; (3) the fee award is a reduction from what counsel could be entitled under a pure lodestar calculation to date; and (4) the fee agreement was negotiated and reduced by agreement among the parties, under the guidance of Magistrate Judge Figueredo. The incentive fee to Ms. Denson is also reasonable. Lead Plaintiff "expended time and energy assisting and communicating with class counsel, she reviewed and explained necessary information, and assumed the risks of" this litigation, initially *pro se*. *Schwartz*, 2015 WL 13630777, at *7. She

filed this action after successfully vacating two arbitration awards and has spent more than five years challenging the Employment Agreement. Accordingly, the parties jointly and respectfully submit to the Court that the fee awards are reasonable.

### C. The Court Should Direct Distribution of the Notice of Settlement.

Fed. R. Civ. P. 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Actions under Rule 23(b)(2), like this one, have no strict notice requirements, leaving the form and method of notice to the Court's discretion. See Fed. R. Civ. P. 23(c)(2). In a class settlement, notice must be given of the proposed terms for payment of fees and costs "in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The parties have together agreed on the form of notice to be disseminated, *see* Langford Decl., Ex. 4, and the Campaign has agreed to provide all contact information it has on file for the settlement class members. Plaintiffs will distribute the Notice to each and every address they are able to ascertain for the settlement class members, including both mailing and email addresses. As the Notice indicates, settlement class members may object to (or otherwise comment on) the Settlement by submitting their objections to class counsel, the Campaign, and the Court. Objections (if any) will be accepted until a date certain to be set by the Court.

### D. The Court Should Enter the Proposed Scheduling Order

Below is a proposed timeline for issuance of notice, deadlines for objections and written responses to objections, if any, a date for the Fairness Hearing to determine final approval, and related orders and deadlines.

- Plaintiffs will distribute the Notice to all settlement class members in the manner described above within 14 days of the Court granting Preliminary Approval.

- The deadline for objections by settlement class members will be thirty days before the Fairness Hearing.

- Plaintiffs will provide declarations to the Court attesting that they disseminated the Notice by at least twenty-one days before the Fairness Hearing.

- The parties will respond to any timely filed objections to the Settlement, and Plaintiffs will file a Motion for Final Approval of Settlement by twenty-one days before the Fairness Hearing.

- The Fairness Hearing will be at a date to be determined by the Court in accordance with FRCP 23 and 28 U.S.C. § 1715 of the Class Action Fairness Act, but in any event at least 104 days after the Court grants preliminary approval of the proposed settlement.

## V. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court preliminarily approve the Settlement, certify the proposed settlement class for purposes of settlement, appoint Plaintiff as Class representative, appoint Plaintiffs' counsel as Class counsel, order, approve the form of the Notice, and issue the proposed scheduling order, including a date for the Fairness Hearing.

By: *Jared E. Blumetti*
Patrick McPartland
Jared E. Blumetti
LAROCCA HORNIK ROSEN & GREENBERG LLP
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4837, 4831
E: pmcpartland@lhrgb.com
jblumetti@lhrgb.com

*Counsel for Defendant*

By: *Joseph Slaughter*
Joseph Slaughter
David A. Schulz
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6103
Fax: (212) 223-1942
Email: slaughterj@ballardspahr.com
Email: schulzd@ballardspahr.com

David K. Bowles
BOWLES & JOHNSON PLLC
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
Email: David@BoJo.Law

John Langford (JL-2367)
UNITED TO PROTECT DEMOCRACY
555 W. 5th St.
Los Angeles, CA 90013
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: john.langford@protectdemocracy.org

Brittany Williams
UNITED TO PROTECT DEMOCRACY
1900 Market St., 8th Fl.
Philadelphia, PA 19103
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: brittany.williams@protectdemocracy.org

Anne Tindall
UNITED TO PROTECT DEMOCRACY
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: anne.tindall@protectdemocracy.org

*Counsel for Lead Plaintiff*