UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA DENSON, Individually and on Behalf of All Others Similarly Situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP FOR PRESIDENT, INC., <br><br> *Defendant*. | No. 20 Civ. 4737 (PGG) |

**JOINT MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' MOTION
FOR FINAL APPROVAL OF A CLASS ACTION SETTLEMENT**

I.    **INTRODUCTION**

After nearly three years of litigation, and more than two years after the Court declared the non-disclosure and non-disparagement provisions contained in lead Plaintiff Jessica Denson's Employment Agreement with the Campaign invalid and unenforceable as to her, the parties have reached a proposed settlement (the "Settlement"). The Settlement is fair, reasonable, and adequate, and it was the product of arm's length negotiations conducted before Magistrate Judge Figueredo after Plaintiffs initially moved for class certification; the Campaign requested leave to move to dismiss this action on mootness grounds; and the Court entered an order referring this matter for settlement negotiations. Under the terms of the Settlement, and with the Court's entry of an order approving it, the members of the settlement class, like Ms. Denson, will not be bound by the non-disclosure and non-disparagement provisions in their Employment Agreements with the Campaign, and will be able to speak freely about their time on the 2016 Campaign.

Accordingly, the parties jointly ask that the Court: (i) finally approve the Settlement, and (ii) enter an order declaring that the non-disparagement and non-disclosure provisions are invalid and unenforceable and enjoining both the Campaign and any third parties from seeking to enforce those provisions.[1]

## II.   THE RELEVANT BACKGROUND

The relevant background for this case is laid out in this Court's March 30, 2022, Order at 1–6, ECF No. 76; this Court's March 30, 2021, Memorandum Opinion and Order at 2–11, ECF No. 48 (the "Summary Judgment Opinion"); and elsewhere. The parties assume familiarity with those papers and recount only that background information relevant to the present motion.

On June 1, 2020, Ms. Denson filed this class-action lawsuit in the Supreme Court of the State of New York, *see* ECF No. 1; Summary Judgment Opinion at 10. The Campaign removed the case to this Court on June 19, 2020 on the basis of federal question jurisdiction. *Id*. On July 9, 2020, the Court conducted an initial pretrial conference and issued a briefing schedule, permitting Ms. Denson to move for summary judgment and the Campaign to simultaneously cross-move to dismiss the lawsuit. ECF No. 18. The parties filed their cross motions on July 30, and briefing concluded on August 20, 2020. ECF Nos. 19–27, 32–35, 37–39.

On March 30, 2021, the Court entered a Memorandum Opinion & Order, denying the Campaign's motion to dismiss, granting, in part, Lead Plaintiff's motion for summary judgment, and invalidating both the non-disclosure and non-disparagement provisions as to Ms. Denson only. *See generally* Summary Judgment Opinion at 26–35.

---

[1] A proposed order to that effect is included herein as Exhibit 5 to the Declaration of Joseph Slaughter ("Slaughter Decl.").

While declaring the Employment Agreement invalid as to Ms. Denson, the Court declined to issue an injunction barring enforcement of the non-disparagement and non-disclosure provisions because Plaintiff did not specifically request injunctive relief in her complaint. *Id.* at 34–35 n.10. Instead, following subsequent briefing on whether the case could proceed to class discovery, the Court permitted Plaintiff to amend her complaint to request injunctive relief and ordered the parties to proceed to class discovery. *See* Order, ECF No. 76. In connection with that subsequent briefing, the Campaign proffered a declaration that it had not and would not take any steps to violate the Court's Summary Judgment Opinion by enforcing or attempting to enforce the Employment Agreement's non-disclosure or non-disparagement provisions against Ms. Denson. *Id.* at 8. Nevertheless, the Court ruled that Ms. Denson (as well as the other class members) remained "at risk from enforcement actions brought by countless third-party beneficiaries of the Employment Agreement." *Id.* at 10.

In June 2022, the Campaign proffered another declaration avowing that "it shall not ever enforce or attempt to enforce any confidentiality or non-disparagement provisions contained in any written agreements signed by any employees, independent contractors, or volunteers who worked for the Campaign on the 2016 Presidential Election." *See* ECF No. 83-1. In addition, the Campaign represents that it sent a signed letter to each of the putative class members in July 2022 stating that they are "no longer bound" by the Campaign to the Employment Agreement's confidentiality and non-disparagement provisions and that the Campaign "will not enforce these provisions." ECF No. 83-2.

The parties completed class discovery on August 31, 2022. During class discovery, the Campaign disclosed that at least 422 individuals who worked for or with the Trump Campaign in the 2016 presidential election cycle signed an Employment Agreement containing identical non-

disclosure and non-disparagement provisions as the Employment Agreement Ms. Denson signed. Declaration of John Langford, ECF No. 114, ¶ 7 & Ex. 2 at 3. The Campaign also indicated that it had some form of contact information for a large portion of these individuals.

On October 6, 2022, Plaintiffs filed a motion for class certification, which the Campaign opposed on the grounds that Plaintiffs' claims were moot, and that class certification was barred by the Employment Agreement's arbitration provision.[2] ECF Nos. 85–92, 99–100.

### III. SUMMARY OF THE SETTLEMENT AGREEMENT

On October 7, 2022, the Court referred the parties to a settlement conference before Magistrate Judge Figueredo, which took place on December 13, 2022. ECF Nos. 93–95, 98. At the conference, the parties agreed on a settlement in principle, subject to the Court's approval. The parties' proposed settlement agreement and mutual release (the "Settlement") contains the following material terms:

- The Settlement is contingent upon the Court's entering an order which, among other things, enjoins enforcement of the non-disclosure and non-disparagement provisions against the class members by the Campaign or any third parties;[3]

- Following the Court's entry of the above-referenced Order, the Campaign will pay class counsel an aggregate total of $450,000, which includes any and all attorneys' fees and costs (including notice-related costs) and an incentive fee of $25,000 to Ms. Denson; and

- Class members will release the Campaign from future claims arising from the non-disclosure or non-disparagement provisions.

---

[2] Two months earlier, on August 9, 2022, the Campaign filed a pre-motion letter seeking leave to file a motion to dismiss this action on mootness grounds. ECF No. 83.

[3] The Settlement Agreement requires the Court to enter an injunction because only the Court has the ability to enjoin enforcement of the non-disclosure and non-disparagement provisions by the "countless" third parties the Employment Agreement purports to empower to enforce the contract. ECF No. 76 at 10.

4

ECF No. 114-3.  The Settlement provides the Class with substantially all of the relief sought in the Amended Complaint.

### IV.     PRELIMINARY APPROVAL, NOTICE, AND OBJECTIONS

#### A. The Court Has Granted Preliminary Approval of the Settlement

Following the settlement in principle, on April 28, 2023, the parties submitted a motion seeking certification of the class for settlement purposes and preliminary approval of the Settlement.  ECF Nos. 114-121.  In response to that motion, on June 7, 2023, the Court issued an order that, in relevant part:

- Certified the proposed class pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure;

- Appointed Ms. Denson as class representative;

- Appointed Bowles & Johnson PLLC, Ballard Spahr LLP, and Protect Democracy as class counsel;

- Preliminarily approved the terms and conditions of the Settlement as the "product of arm's length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel" and "within the range appropriate for possible approval";

- Approved the form of Class Notice and the procedures for disseminating that notice as "valid, due, and sufficient" and "the best notice practicable under the circumstances";

- Directed counsel to provide affidavits that they disseminated notice to the Class no later than 21 days before the fairness hearing;

- Directed counsel to respond to any objections from the Class no later than 21 days before the fairness hearing;

- Directed counsel to submit the parties' motion for final approval of the settlement no later than 21 days before the fairness hearing; and

- Scheduled a fairness hearing for October 11, 2023.

*See generally* Order Granting Preliminary Approval of a Class Action Settlement, Certifying a Settlement Class, Approving Notice, and Setting Dates for Final Approval, ECF No. 122, ¶¶ 3-14, 19-20 (the "Preliminary Approval Order").

### B. <u>Notice Has Been Provided</u>

In accordance with the notice distribution plan described in the Preliminary Approval Order, Plaintiffs' counsel caused the Court-approved class notice to be disseminated as contemplated in Paragraph 10 of that Order. Specifically, defense counsel provided plaintiffs' counsel the Campaign's most comprehensive existing list of the names, addresses, and (where applicable) e-mail addresses of class members. Plaintiffs' counsel then physically mailed the class notice to each address on that list and sent the class notice by e-mail to every e-mail address provided by the Campaign. *See* Slaughter Decl. ¶¶ 2-4.

Additionally, Plaintiffs' counsel caused class notice to be physically mailed to the Attorney General of each state in which a class member resides, as well as to the Attorney General of the United States, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715. *See* Slaughter Decl. ¶ 5.

### C. <u>The Minimal Objections Received Do Not Provide Reason Not to Finally Approve the Settlement</u>

Of the nearly 500 notices that were sent out, each of which included contact information for all counsel, only three resulted in objections. Consistent with the Court's June 7, 2023 Preliminary Approval Order, the parties respond to those objections below.

**<u>Castellano Objection</u>**

The first objection, filed by a Lucia Castellano on July 24, 2023, did not provide a reason for her objection and stated only that she "did not want to participate or be a part of" the Settlement. ECF No. 124. Ms. Castellano's objection provides no basis for the Court to conclude that the Settlement is not fair, reasonable, and adequate to the class as a whole.

**<u>Delgado Objection</u>**

The second was a letter counsel and the Court received from an Arlene "AJ" Delgado, post-marked on September 6, 2023.[4] Ms. Delgado raises four purported objections that she asserts should preclude approval of the Settlement: *first*, she asserts that notice was defective because it was not received by all possible members of the class; *second*, she claims that notice was defective because the approved class notice does not specifically state that, if the Settlement is approved, class members will no longer be able to bring claims for money damages arising from the non-disparagement and non-disclosure provisions; *third*, she asserts that the class should not have been certified because different class members suffered different injuries as a result of the non-disparagement and non-disclosure provisions; and *fourth*, she claims that the settlement is unfair and inequitable because it does not provide financial damages for the class members. *See generally* Slaughter Decl. Ex. 2. None of these arguments provides a reason not to finalize the settlement.

As an initial matter, Ms. Delgado's concerns about the form of notice are not part of the Court's consideration in deciding whether or not to finally approve the settlement. In this Circuit, that inquiry is governed by the nine *Grinnell* factors, which do not include adequacy of notice among their number. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Moreover, "Rule 23, of course, accords considerable discretion to a district court in fashioning notice to a class." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987). "Receipt of actual notice by all class members is required neither by Rule 23 nor the Constitution," *Jermyn v. Best Buy Stores, L.P.*, No. 08-cv-00214, 2010 WL 5187746, at *3

---

[4] Ms. Denson's employment suit against the Campaign includes alleged mistreatment of Ms. Denson by both Ms. Castellano and Ms. Delgado when the three worked together on the 2016 Trump Campaign. *See* Slaughter Decl., Ex. 4, ¶¶ 18-20, 25-34.

7

(S.D.N.Y. Dec. 6, 2010).  Indeed, even in cases seeking monetary relief on behalf of a class, Rule 23 itself specifies only that the settling parties must provide "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2); *see also* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice *in a reasonable manner*" to members of a settlement class) (emphasis added).

That is exactly what happened here.  The Campaign has represented to Plaintiffs and to the Court that it has provided the names and most current contact information it has for each individual class member.  The parties fashioned a plan for dissemination of notice, and the form of the notice itself, based upon that information.  The Court has already approved both aspects of the notice, finding that:

> The Notice constitutes valid, due, and sufficient notice to the settlement Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure.  The proposed Notice apprises settlement Class members in a fair and neutral way of the existence of the Settlement Agreement and their rights with respect to the Settlement Agreement.

Preliminary Approval Order ¶¶ 9-11.  That is all the Rule requires, and Ms. Delgado's objection to the narrow aspects of the content of the notice is neither properly before the Court, nor provides any basis to reject the Settlement.[5]

Ms. Delgado next argues that the class was not properly certified because different members supposedly suffered "different degrees of harm" as a result of the NDAs, and therefore

---

[5] Ms. Delgado's objection also argues that the notice is defective for failing to specify that class members are releasing claims potential claims based on the non-disclosure and non-disparagement provisions.  But "[p]ractically speaking, class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005).

have no "commonality" as required for class certification under Rule 23. Ms. Delgado's argument misapprehends the nature of the "commonality" requirement. Commonality has nothing to do with the nature of any purported damages, but rather asks whether "common issues of fact or law exist and that they affect all class members." *Zimmerman v. Portfolio Recovery Assocs., LLC*, 276 F.R.D. 174, 179 (S.D.N.Y. 2011) (Gardephe, J.) (citing *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995). This test "is not demanding and is met so long as there is at least one issue common to the class." *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 418 (S.D.N.Y. 2012) (internal quotation marks omitted). And where, as here, "the plaintiff class seeks to enjoin a practice or policy, rather than individualized relief, commonality is assumed." *Ciaramella v. Zucker*, No. 18-cv-6945, 2019 WL 4805553, at *13 (S.D.N.Y. Sept. 30, 2019). By definition, all class members here signed the NDA containing the same non-disclosure and non-disparagement provisions of the NDA. On that basis alone, it is self-evident that there are issues of law and fact common to the class.[6]

Finally, Ms. Delgado argues that the settlement should be rejected because it provides a "windfall" $425,000 payment to the attorneys who litigated the case and $25,000 to Ms. Denson. Plaintiffs' counsel represents, however, that they have litigated this case for over three years *pro bono*. Ms. Denson herself avers that she has spent six years trying to invalidate the Employment Agreement and has not been paid any money for her attempts to do so. The attorneys' fees are part of the Settlement only because there is a fee-shifting provision in the underlying contract.

---

[6] Ms. Delgado's real issue seems to be that the settlement might preclude *her* future damages claims based on the non-disparagement and non-disclosure provisions. But, in determining whether to approve the Settlement, the Court is tasked with deciding whether it is fair, reasonable, and adequate to the class as a whole, not to Ms. Delgado personally. *See Charron v. Pinnacle Group NY LLC*, 874 F. Supp. 2d 179, 184 (S.D.N.Y. 2012) (approving settlement and noting that "[t]he Settlement is not, and cannot be, all things to all people. However, I believe that it is fair, reasonable, and adequate to the class as a whole.").

Plaintiffs' counsel further represent that the agreed-upon fees do not constitute a windfall because the fees represent a substantial *discount* from what Plaintiffs' counsel would seek if this case were litigated through final judgment.

In sum, Ms. Delgado's letter does not raise any material obstacles that would prevent the Court from approving the Settlement.

**Matthews Objection**

Finally, counsel and the Court received an objection from a former Campaign worker named David Matthews. *See generally* Slaughter Decl. Ex. 3. Mr. Matthews objects based on his beliefs of the political and financial motives of Ms. Denson and of class counsel. However, the purported political or other motives of Ms. Denson or her counsel are not factors to be considered by the Court in determining whether the Settlement is fair, reasonable, and adequate to the class as a whole (as discussed in Section V below). To the extent Mr. Matthews questions the amount of attorneys' fees provided in the Settlement, he provides no reason to reject the Settlement for the same reasons described above with respect to Ms. Delgado's comments on the amount of attorneys' fees. Finally, Mr. Matthews questions the Court's decision declaring Ms. Denson's NDA unenforceable, but the Court's prior decision is not at issue here.

V.     **LEGAL ARGUMENT**

   A.     **Final Approval of the Settlement Agreement is Warranted**

In this Circuit, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re Painewebber Ltd. Partnerships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998). In approving the settlement of a class action, a court must decide that the settlement at issue is "fair, reasonable, and adequate," and determine that "the settlement is not the product of collusion." *MBA v. World Airways, Inc.,* 369 F. App'x 194, 197 (2d Cir. 2010); *see also* Fed. R. Civ. P. 23(e).

10

In considering whether to finally approve a settlement, the reviewing court should consider some combination of nine factors. These are referred to as the "*Grinnell* factors," and include:

    (1) the complexity, expense and likely duration of the litigation;

    (2) the reaction of the class to the settlement;

    (3) the stage of the proceedings and the amount of discovery completed;

    (4) the risks of establishing liability;

    (5) the risks of establishing damages;

    (6) the risks of maintaining the class action through the trial;

    (7) the ability of the defendants to withstand a greater judgment;

    (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

    (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005). Courts also review the reasonableness of any attorney fee award in a class action settlement, *id.* at 120, as well as the reasonableness of incentive fees, which "are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation," *Schwartz v. Intimacy in New York, LLC,* No. 13 CV 5735 (PGG), 2015 WL 13630777, at *6 (S.D.N.Y. Sept. 16, 2015). In cases that seek injunctive relief instead of damages, the last three factors may be disregarded, and the fifth element should be examined for the remedy rather than damages. *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 162 (S.D.N.Y. 1999), *aff'd sub nom. Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000). *See also EB v. New York City Dep't of Educ.*, No. 02-cv-5118, 2015 WL 13707092, at *2 (E.D.N.Y. July 24, 2015) (no need to examine the last three factors in case involving declaratory relief; for the fifth

factor the court "will evaluate the risks of establishing remedies instead of the risks of establishing damages"). "Settlements in cases that seek injunctive relief and do not request damages, are routinely found fair, adequate, and reasonable, and are approved." *Newkirk v. Pierre*, No. 19-cv-4283, 2022 WL 20358182, at *5 (E.D.N.Y. Oct. 25, 2022).

Here, each of the relevant *Grinnell* factors favor the approval of the settlement. As discussed above, this case involves purely declaratory and injunctive relief. The Court therefore need only examine the first six *Grinnell* factors, and the fifth should be examined for the remedy rather than for damages. Each of the six applicable factors are discussed below.

### 1. The Complexity, Expense and Likely Duration of The Litigation

The first *Grinnell* factor is the complexity, expense, and likely duration of the litigation. *Grinnell*, 495 F.2d at 463. The factor favors approval if the settlement "results in a substantial and tangible present recovery, without the attendant risk and delay of trial." *Am. Bank Note Holographics*, 127 F. Supp. 2d at 425. It is clear that this factor favors approval of the settlement here.

As discussed above, Plaintiffs have already prevailed on summary judgment as to the invalidity of portions of Ms. Denson's employment agreement (ECF No. 48), but as to the Class, several issues remain to be resolved in motion practice and at trial. For example, Defendant has raised issues of mootness and preclusion of class treatment. *See* ECF No. 100. While the parties differ in their views of the merits of these arguments, the issues would need to be resolved by motion practice and potential trial and appeals, and therefore involve a certain amount of risk, time and cost for both parties.

Further, it is clear that the proposed settlement "results in a substantial and tangible" benefit for the Class. *Am. Bank Note Holographics*, 127 F. Supp. 2d at 425. The Settlement is

structured such that, if it is approved, the Court will enter an order (1) declaring the Employment Agreement's non-disclosure and non-disparagement provisions invalid as to *all* class members, not just Ms. Denson; and (2) enjoining not only the Campaign, but also the third-party beneficiaries of the Employment Agreement from seeking to enforce the non-disclosure and non-disparagement provisions against any class members. *See* ECF No. 117-3 ¶ 1. The Settlement also provides Class members with a broad release by the Campaign of any claims relating to the Employment Agreement. *Id.* at ¶ 2(iv). These are substantial, tangible benefits for the class. These benefits are particularly valuable when weighed against the alternative – continued litigation and the attendant risks of motion practice, trial, and the inevitable appeals. This factor thus clearly weighs in favor of settlement. *Am. Bank Note Holographics*, 127 F. Supp. 2d at 425.

### 2. The Reaction of The Class to the Settlement

The second *Grinnell* factor is the reaction of the Class to the settlement. *Grinnell*, 495 F.2d at 463. The receipt of no or only few objections from the class is an indicator of acceptability. *Am. Bank Note Holographics*, 127 F. Supp. 2d at 425. For example, in *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), the court received only three objections from the class, which indicated that "the Class appears to have acquiesced in the Settlement by an overwhelming margin." *Id.* A "lack of [meaningful] objection suggests that the class members find the settlement reasonable." *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 363 (S.D.N.Y. 1988).

Here, as discussed above, Plaintiffs gave e-mail notice to the Class of the proposed settlement pursuant to the Court's order of April 28, 2023. ECF No. 122. The Court has already determined that Plaintiffs' method of service satisfies Rule 23(e). ECF No. 122 ¶ 12. In response to more than 600 combined letters and emails sent out to class members, Plaintiffs

13

received only three objections: from Lucia Castellano, Arlene ("AJ") Delgado, and David Matthews. Slaughter Decl. ¶ 6. As discussed above, none of these three objections provides any basis to reject approval of the Settlement. In any event, such a small number of objections is a strong indication that the settlement is reasonable. *PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. at 126. This factor therefore weighs in favor of settlement.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

The third *Grinnell* factor is the stage of the proceedings and the amount of discovery completed. *Grinnell*, 495 F.2d at 463. It is not necessary that all discovery be completed; rather, "it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Here, very little discovery was required, and has been completed. Plaintiffs issued discovery demands on May 4, 2022. Defendant served formal responses on July 27, 2022, and produced documents on August 9, 2022. The main remaining discovery issues related to the number and identity of the Class and the Agreements they signed (or may have signed), which have been answered by discovery. Accordingly, the parties have engaged in sufficient investigation to allow the Court to appraise the settlement. Where discovery has been completed, "the court obviously has sufficient evidence to determine the adequacy of settlement. *Wal-Mart Stores, Inc.*, 396 F.3d at 118. This factor therefore weighs in favor of approval.

### 4. The Risks of Establishing Liability

The fourth *Grinnell* factor is the risks of establishing liability. *Grinnell*, 495 F.2d at 463. In this matter, due to its unusual procedural posture, Plaintiffs' risk of not ultimately prevailing is

certainly reduced by the fact that the Court has granted summary judgment to the lead Plaintiff, Ms. Denson, on the issue of invalidity of the confidentiality and non-disparagement clauses in her employment agreement. ECF No. 48. However, the Campaign has still raised several legal arguments that it intends to press if the litigation continues, including that: (1) the action is moot, and (2) the Employment Agreement's arbitration provision precludes class treatment. ECF No. 100. While Plaintiffs dispute these arguments, the Campaign could prevail on one or both of these arguments. As the Second Circuit has recognized, "Litigation inherently involves risks. Indeed '[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome.'" *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126. Here, the settlement would resolve those risks in Plaintiffs' favor. Accordingly, this factor favors approval of the settlement.

### 5. The Risk of Obtaining a Remedy

Plaintiffs have claimed only injunctive and declaratory relief. ECF No. 77. Accordingly, the fifth *Grinnell* factor is focused on the risk of obtaining a remedy for the class, rather than the risk of obtaining damages. *Marisol A.*, 185 F.R.D. at 162. As discussed above, the proposed settlement agreement entirely establishes relief sought by Plaintiffs in the Amended Complaint: the invalidation of the confidentiality and non-disparagement clauses in all of the Class members' employment agreements, and orders ensuring that these clauses cannot be enforced by any third-party beneficiaries. *See* Dkt. 117-3 ¶ 1. Accordingly, the settlement provides the best remedy that Plaintiffs could reasonably hope for at trial. This factor therefore weighs in favor of approval of the settlement.

### 6. The Risks of Maintaining the Class Action Through the Trial

The sixth and last relevant *Grinnell* factor for this case is the risk of maintaining the Class through trial. *Grinnell*, 495 F.2d at 463. The question here is whether the structure of the Class itself would be maintainable through the entire course of the litigation. *PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. at 129. While Plaintiffs are confident that the Class – consisting of all of the individuals subject to the non-disclosure and non-disparagement provisions of the 2016 Campaign NDA – would have been consistent and maintainable, the Campaign already attacked the ability of Plaintiffs to maintain the class action due to the Employment Agreement's arbitration provision. ECF No. 100. Accordingly, there are risks as to whether Plaintiffs can maintain the Class structure through trial, and this final *Grinnell* factor must therefore weigh in favor of approving the settlement.

In sum, the six *Grinnell* factors at issue here – (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing a remedy; and (6) the risks of maintaining the class action through the trial – all weigh in favor of approving the settlement. *Grinnell*, 495 F.2d at 463.

## VI. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court issue an order (1) finally approving the Settlement; (2) declaring the non-disparagement and non-disclosure provisions invalid and unenforceable as against *any* member of the class; and (3) permanently enjoining the Campaign or any third-party beneficiary from seeking to enforce the non-disparagement and non-disclosure provisions against any class member.

Dated: September 20, 2023

By: *Jared E. Blumetti*
Patrick McPartland
Jared E. Blumetti
LAROCCA HORNIK ROSEN & GREENBERG LLP
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4837, 4831
E: pmcpartland@lhrgb.com
jblumetti@lhrgb.com

*Counsel for Defendant*

Respectfully Submitted,

By: *Joseph Slaughter*
Joseph Slaughter
David A. Schulz
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6103
Fax: (212) 223-1942
Email: slaughterj@ballardspahr.com
Email: schulzd@ballardspahr.com

David K. Bowles
BOWLES & JOHNSON PLLC
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
Email: David@BoJo.Law

John Langford (JL-2367)
UNITED TO PROTECT DEMOCRACY
555 W. 5th St.
Los Angeles, CA 90013
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: john.langford@protectdemocracy.org

Brittany Williams
UNITED TO PROTECT DEMOCRACY
1900 Market St., 8th Fl.
Philadelphia, PA 19103
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: brittany.williams@protectdemocracy.org

Anne Tindall
UNITED TO PROTECT DEMOCRACY
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Telephone: (202) 579-4582
Fax: (929) 777-8428
Email: anne.tindall@protectdemocracy.org

*Counsel for Class*